UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------
COMMERZBANK AG,

                      **Plaintiff,**               **15-cv-10031 (JGK)**

          - v.-                <u>**MEMORANDUM OPINION**</u>
                                                    <u>**AND ORDER**</u>

DEUTSCHE BANK NATIONAL TRUST COMPANY,

                      **Defendant.**
-------------------------------------
JOHN G. KOELTL, District Judge:

    The plaintiff, Commerzbank AG ("Commerzbank"), allegedly made 74 investments in 50 residential mortgage-backed securities ("RMBS") trusts (the "Trusts") for which the defendant, Deutsche Bank National Trust Company ("Deutsche Bank"), served as trustee. Commerzbank seeks to hold the defendant liable for the poor performance of Commerzbank's investments in the Trusts, and has asserted that the defendant (1) violated the Trust Indenture Act of 1939 (the "TIA"), 15 U.S.C. § 77aaa, et seq.; (2) breached the Pooling and Servicing Agreements (the "PSAs") and the indenture agreements (the "Indentures") governing the Trusts; (3) breached its fiduciary duty to Commerzbank; (4) was negligent or grossly negligent; (5) violated New York's Streit Act, N.Y. Real Prop. Law § 124, et seq.; and (6) breached the covenant of good faith. The defendant has moved to dismiss portions of the Amended Complaint for failure to state a claim

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The motion to dismiss presents the feeling of déjà vu. In a related case before this Court, see Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Trust Co., 14-cv-10103 (JGK) (S.D.N.Y.) (the "Phoenix Light Action"), different plaintiffs brought substantially similar claims against Deutsche Bank that, as described by Commerzbank, are "rooted in the same basic alleged facts and legal theories against the same defendant" and in fact involve nine of the same Trusts. Dkt. 3 (The Related Case Statement Filed by Commerzbank). The law firms representing the parties in this action, and in that action, are the same. On January 22, 2016, this action was stayed pending the decision on the motion to dismiss portions of the Second Amended Complaint in the Phoenix Light Action. See Dkt. 13. In an Opinion and Order dated March 28, 2016 ("Deutsche Bank I"), the motion to dismiss in the Phoenix Light Action was granted in part and denied in part. See Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Trust Co., 172 F. Supp. 3d 700 (S.D.N.Y. 2016). Thereafter, Commerzbank filed the Amended Complaint in this action.

For the reasons explained below, Deutsche Bank's motion to dismiss the Amended Complaint is **granted in part and denied in part**.

2

## I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id. When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing

suit and that are either in the plaintiff's possession or that
the plaintiff knew of when bringing suit, or matters of which
judicial notice may be taken. See Chambers v. Time Warner, Inc.,
282 F.3d 147, 153 (2d Cir. 2002); see also Phoenix Light, 172 F.
Supp. 3d at 704–05.

## II.

The allegations in the Amended Complaint are accepted as
true for purposes of this motion to dismiss.

The allegations in the Amended Complaint are substantially
similar to those in the Second Amended Complaint in the Phoenix
Light Action, as described in Deutsche Bank I. See Phoenix
Light, 172 F. Supp. 3d at 705–07; see also Pl.'s Op. Mem. at 3
("Commerzbank's Amended Complaint is substantially the same as
the Second Amended Complaint in the [Phoenix Light Action].").
Familiarity with that decision, the mechanism by which RMBS
trusts are created, and the alleged misconduct of the third-
party sponsors, originators, depositors, underwriters, and
servicers related to the Trusts (the "Third-Party Entities")
that underlies Commerzbank's claims, is presumed. See id.; see
also Phoenix Light SF Ltd. v. Bank of N.Y. Mellon, No. 14-CV-
10104 (VEC), 2015 WL 5710645, at *1 (S.D.N.Y. Sept. 29, 2015).

Commerzbank is alleged to be an entity organized under the
laws of Germany. Am. Compl. ¶ 16. The defendant is alleged to be
a national banking organization with its principal place of

4

business located in California. Am. Compl. ¶ 21. Commerzbank is
the holder, or former holder, of RMBS certificates (the
"Certificates") issued by the Trusts, for which the defendant
served as trustee pursuant to the PSAs and Indentures governing
the Trusts. Am. Compl. ¶¶ 33, 108. The Certificates have an
original face value in excess of $640 million. Am. Compl. ¶ 3.
Commerzbank has brought in this action "its own claims while it
was [the holder of the Certificates] and the claims that were
assigned to it by [the prior holders of the Certificates]." Am.
Compl. ¶¶ 16-17.

Commerzbank alleges that, over a period of years, the
Third-Party Entities systematically and substantially misbehaved
with respect to the Trusts. The essence of Commerzbank's claims
is that the defendant failed to comply with its statutory,
contractual, and common law duties in monitoring and policing
the Third-Party Entities, and in notifying Commerzbank about the
misconduct. See, e.g., Am. Compl. ¶¶ 9-15, 34-35, 45, 61, 68,
73, 80, 129-32.

The Amended Complaint alleges that the misconduct of the
Third-Party Entities became apparent to the defendant, and later
the public (including Commerzbank), in drips and drabs. The
Trusts were created between 2005 and 2007. Am. Compl. ¶ 2. The
Amended Complaint alleges that the defendant was aware of at
least some of the misconduct as early as 2007. Am. Compl. ¶ 130.

5

The Amended Complaint alleges that, "Beginning in 2009 or 2010, facts began to emerge publicly demonstrating that the Sponsors and Originators had violated the representations and warranties provided in connection with the [] Trusts." Am. Compl. ¶ 77. The Amended Complaint alleges that, in July 2011, the Association of Mortgage Investors wrote a letter to, among others, the defendant notifying the defendant about the Association's concerns regarding the conduct of the Third-Party Entities. Am. Compl. ¶ 114. The Amended Complaint also alleges that, in December 2011, another group of investors "in hundreds of RMBS trusts issued written instructions to [the defendant], as trustee, to open investigations into large numbers of ineligible mortgages in the loan pools securing those trusts and deficient servicing of those loans." Am. Compl. ¶ 115.

In November 2011, Commerzbank sold several of its Certificates. See Am. Compl., Ex. B. The Amended Complaint alleges that, "When the sales were made it was apparent that Deutsche Bank had breached its duties and would not take steps to remedy its failures." Am. Compl. ¶ 163.

The Amended Complaint alleges that the defendant's conduct has caused Commerzbank to suffer hundreds of millions of dollars in losses on its investments in the Trusts. Am. Compl. ¶ 15.

**III.**

**A.**

The defendant has moved to dismiss as time-barred the claims with respect to the "Palmer 3 Certificates," see Biron Decl., Ex. C; the "Commerzbank Certificates," see Biron Decl., Ex. D; and the "Eurohypo Certificates," see Biron Decl., Ex. E.

Commerzbank acquired the Palmer 3 Certificates through its merger with Dresdner Bank AG ("Dresdner") in May 2009. Am. Compl. ¶¶ 16, 20. Prior to the merger, Dresdner was a public limited company incorporated in Germany with its principal place of business in Germany. See Biron Decl., Ex. M (Dresdner Financial Report 2008). Dresdner acquired the Palmer 3 Certificates around August 2008 from Palmer Square 3 Limited ("Palmer 3"), a private limited liability company organized under the laws of Ireland. Am. Compl. ¶¶ 17, 20.

Commerzbank acquired the Commerzbank Certificates at their issuance. Am. Compl. ¶ 17; see also Am. Compl., Ex. B.

Commerzbank acquired the Eurohypo Certificates on December 11, 2013 from Eurohypo AG ("Eurohypo"), now known as Hypothekenbank Frankfurt AG, New York Branch, which was the New York branch of a corporate entity organized under the laws of Germany. Am. Compl. ¶¶ 17, 19; see also Biron Decl., Ex. L (Commerzbank Financial Statements and Management Report 2015).

A federal court sitting in diversity applies the forum state's statute of limitations provisions as well as any provisions that govern the tolling of the statute of limitations. Diffley v. Allied-Signal, Inc., 921 F.2d 421, 423 (2d Cir. 1990); see also Vincent v. Money Store, 915 F. Supp. 2d 553, 562 (S.D.N.Y. 2013). In diversity cases in New York, federal courts apply New York's borrowing statute, N.Y. C.P.L.R. § 202. Stuart v. Am. Cyanamid Co., 158 F.3d 622, 627 (2d Cir. 1998).

N.Y. C.P.L.R. § 202 requires a non-resident plaintiff to file a claim within the shorter of either: 1) the New York statute of limitations; or 2) the statute of limitations in the jurisdiction in which the claim accrued. Glob. Fin. Corp. v. Triarc Corp., 715 N.E.2d 482, 484 (N.Y. 1999) ("When a nonresident sues on a cause of action accruing outside New York, CPLR 202 requires the cause of action to be timely under the limitation periods of both New York and the jurisdiction where the cause of action accrued. This prevents nonresidents from shopping in New York for a favorable Statute of Limitations." (footnote omitted)). When borrowing a foreign jurisdiction's statute of limitations, the tolling provisions are also borrowed. GML, Inc. v. Cinque & Cinque, P.C., 877 N.E.2d 649, 650 (N.Y. 2007).

"[B]ecause the defendant[] bear[s] the burden of establishing the expiration of the statute of limitations as an affirmative defense, a pre-answer motion to dismiss on this ground may be granted only if it is clear on the face of the complaint that the statute of limitations has run." Fargas v. Cincinnati Mach., LLC, 986 F. Supp. 2d 420, 427 (S.D.N.Y. 2013) (citations omitted).

Commerzbank initiated this suit on December 23, 2015.

### (i)

With respect to the Palmer 3 Certificates, the defendant argues that any claims that accrued prior to December 23, 2009, the longest New York statute of limitations applicable to any of Commerzbank's claims, are time-barred under New York law.[1] The defendant presses the application of the relevant New York statute of limitations for any claims related to the Palmer 3 Certificates that accrued prior to the transfer of the Palmer 3 Certificates from Palmer 3 to Dresdner in August 2008.

The parties' papers on this point are like two ships passing in the night. Commerzbank does not dispute the defendant's basic New York untimeliness argument, but instead suggests that the relevant statute of limitations for many of

---

[1] As in Deutsche Bank I, the parties do not dispute the applicable limitations periods for the various claims, and the longest relevant limitations period under New York law is six years. See Phoenix Light, 172 F. Supp. 3d at 708 n.2 (discussing the relevant New York statute of limitations for each claim).

its claims would be tolled under American Pipe & Const. Co. v. Utah, 414 U.S. 538 (1974). See Pl.'s Op. Mem. at 5 & n.1. In reply, the defendant is equally nonresponsive to Commerzbank's position, asserting that "Commerzbank does not dispute that to the extent its claims accrued before December 23, 2009 (i.e., 6 years before this action), they are time-barred under New York law." Def.'s Reply Mem. at 1 n.2.

On December 23, 2014, one year prior to the initiation of this action, the plaintiffs in the Phoenix Light Action brought the same causes of action at issue in this case, which were thus subject to the same statutes of limitations under New York law. See Phoenix Light, 172 F. Supp. 3d at 709. In Deutsche Bank I, this Court ruled that "[a]ny claims arising from facts prior to December 23, 2008, the longest statute of limitations applicable to any of the claims, would be time barred." Id.

The plaintiffs in the Phoenix Light Action did not raise the issue of American Pipe tolling. See Phoenix Light Action, 14-cv-10103, Dkt. 40. Under American Pipe, "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." Am. Pipe, 414 U.S. at 554; see also In re New Oriental Educ. & Tech. Grp. Sec. Litig., 293 F.R.D. 483, 487 (S.D.N.Y. 2013). "[T]he Court of Appeals for the Second Circuit has recognized that

10

American Pipe tolling is part of New York common law." Choquette
v. City of New York, 839 F. Supp. 2d 692, 697 n.3 (S.D.N.Y.
2012) (citing Cullen v. Margiotta, 811 F.2d 698, 719-21 (2d Cir.
1987) ("New York courts have . . . long embraced the principles
of American Pipe."), overruled on other grounds by Agency
Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143
(1987)).

Commerzbank has raised a potentially meritorious argument
that could overcome at least portions of the defendant's New
York statute of limitations defense with respect to the Palmer 3
Certificates. The defendant, represented by counsel, has failed
to respond to the American Pipe tolling argument other than to
assert erroneously that Commerzbank conceded the New York time
bar to its claims. Because the defendant failed to respond to a
potentially meritorious argument by Commerzbank, the defendant's
motion to dismiss as untimely under New York law the claims with
respect to the Palmer 3 Certificates is **denied without prejudice
to renewal in a later motion or answer**. See Stop & Shop
Supermarket Co. LLC v. Goldsmith, No. 10-cv-3052 (VB), 2013 WL
3179501, at *9 (S.D.N.Y. June 24, 2013).

**(ii)**

The defendant argues that all of the claims related to the
Commerzbank Certificates, the Eurohypo Certificates, and the

Palmer 3 Certificates (that accrued after their transfer to Dresdner) are time-barred under German law.

For the purposes of N.Y. C.P.L.R. § 202, a cause of action "accrued" at the time when, and the place where, the plaintiff is injured. Glob. Fin. Corp., 715 N.E.2d at 484; see also Portfolio Recovery Assocs., LLC v. King, 927 N.E.2d 1059, 1061 (N.Y. 2010) (noting that, where a cause of action has been assigned, the question of where and when the cause of action accrued focuses on the original assignor). Absent unusual circumstances, when the injury of a nonresident plaintiff is purely economic, the cause of action accrues where the plaintiff resides and sustains the economic impact of the loss, see Glob. Fin., 715 N.E.2d at 485, rather than where the defendant committed the wrongful acts, see Gordon & Co. v. Ross, 63 F. Supp. 2d 405, 408 (S.D.N.Y. 1999) (citation omitted); see also Vincent, 915 F. Supp. 2d at 568. "If the injured party is a corporation, then the place of residence for the purposes of [the borrowing statute] is traditionally the state of incorporation or the corporation's principal place of business." HSN Nordbank AG v. RBS Holdings USA Inc., No. 13 CIV. 3303 (PGG), 2015 WL 1307189, at *5 (S.D.N.Y. Mar. 23, 2015) (quoting Baena v. Woori Bank, No. 05 Civ. 7018(PKC), 2006 WL 2935752, at *6 (S.D.N.Y. Oct. 11, 2006)). "[T]he thrust of the inquiry is who became poorer, and where did they become poorer as a result

of the conduct complained of." Id. (citation and internal quotation marks omitted).

It is undisputed that the alleged injuries in this case are purely economic in nature; that Commerzbank was incorporated in Germany with its principal place of business in Germany at the time its claims accrued; and that Eurohypo and Dresdner, the banking entities whose claims Commerzbank has acquired, were likewise incorporated in Germany with their respective principal places of business in Germany at the time their claims accrued. The challenged claims plainly accrued in Germany and, pursuant to the New York borrowing statute, are subject to any relevant German statute of limitations as well as any relevant New York statute of limitations.[2] See, e.g., IKB Deutsche Industriebank AG v. McGraw Hill Fin., Inc., No. 14-CV-3443 (JSR), 2015 WL 1516631, at *3 (S.D.N.Y. Mar. 26, 2015), aff'd, 634 F. App'x 19 (2d Cir. 2015) (summary order).

Nevertheless, Commerzbank argues that its claims must be timely under New York and English law, but not German law, because Commerzbank's "acquisitions and other activities related to the Certificates were conducted at and through" Commerzbank's London Branch. Am. Compl. ¶ 16. Commerzbank makes no effort to explain the effect of English law on the timeliness of its

---

[2] The defendant does not argue that the claims are untimely under New York law except with respect to the Palmer 3 Certificates prior to their transfer to Dresdner, as addressed above.

claims. Commerzbank also does not address what law should apply
in the event that the claims accrued prior to their assignment
to Commerzbank from Dresdner and Eurohypo, respectively, but,
presumably, Commerzbank would advocate the application of a
statute of limitations other than that of Germany. See Am.
Compl. ¶ 17 (suggesting that Eurohypo's RMBS purchase decisions
were made from its New York branch); Am. Compl. ¶ 20 (suggesting
that Dresdner's RMBS purchase decisions were made from its
London branch).

Commerzbank argues that the German statute of limitations
should not be applied because a departure from the general New
York rule for corporate claim accrual is warranted based on the
"financial base" exception identified in Lang v. Paine, Webber,
Jackson & Curtis, Inc., 582 F. Supp. 1421, 1426 (S.D.N.Y. 1984).
Under the Lang financial base exception, "Where a plaintiff
'maintain[s] [a] separate financial base' and where the impact
of the financial loss [is] felt at that location, it may
constitute an alternative place of injury." Baena, 2006 WL
2935752, at *6 (citation omitted). In Lang, 582 F. Supp. at
1426, the court found that, although the individual-plaintiff in
that case was a resident of Canada at the time his claims for
securities fraud and breach of fiduciary duty accrued, his
claims should be deemed to have accrued in Massachusetts, where

14

he maintained the bank account --- his "financial base" --- that was allegedly victimized by the defendant's acts.

Commerzbank has cited no case in which a court found that a branch constituted a financial base separate from the bank for purposes of the Lang financial base exception. To the contrary, courts have repeatedly rejected the application of the financial base exception in RMBS cases similar to this one because "it is well established that a 'branch or agency of a bank is not a separate entity.'" HSN Nordbank, 2015 WL 1307189, at *5 (quoting In re Liquidation of N.Y. Agency & Other Assets of Bank of Credit & Commerce Int'l, S.A., 683 N.E.2d 756, 762 (N.Y. 1997)); see also, e.g., Deutsche Zentral-Genossenchaftsbank AG v. HSBC N. Am. Holdings, Inc., No. 12 CIV. 4025 (AT), 2013 WL 6667601, at *6 (S.D.N.Y. Dec. 17, 2013); Deutsche Zentral-Genossenschaftsbank AG, N.Y. Branch v. Citigroup, Inc., 998 N.Y.S.2d 306, 2014 WL 4435991, at *1 (N.Y. Sup. 2014) ("[I]t is well established under New York law that 'a branch/agency is nothing more than a stall in the money market bazaar of international banking in New York.'" (citation omitted)); Stichting Pensioenfonds ABP v. Credit Suisse Grp. AG, 966 N.Y.S.2d 349, 2012 WL 6929336, at *2-3 (N.Y. Sup. 2012); Deutsche Zentral-Genossenschaftsbank AG v. Bank of Am. Corp. (In re Countrywide Fin. Corp. Mort.-Backed Sec. Litig.), Nos. 2:11-ML-02265-MRP, 13-CV-01118, 2014 WL 4162382, at *3 (C.D. Cal.

June 18, 2014); see also Baena, 2006 WL 2935752, at *7; cf.
Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC,
692 F.3d 42, 51 (2d Cir. 2012) ("[A bank branch] is not
separately incorporated, has no legal identity separate from
[the bank], and therefore has no standing to assert a claim
against [the defendant] independent of [the bank's] claim.").

    As Judge Torres explained in Deutsche Zentral-
Genossenchaftsbank, 2013 WL 6667601, "economic injury is said to
occur in a location other than where the plaintiff resides only
in 'extremely rare case[s] where the party has offered unusual
circumstances.'" Id. at *5 (quoting Robb Evans & Assocs. LLC v.
Sun America Life Ins., No. 10 Civ. 5999, 2012 WL 488257, at *4
(S.D.N.Y. Feb. 14, 2012)). "[E]xtending the Lang exception to
non-resident corporations conducting business in New York
without a showing of unusual circumstances 'would allow the
exception to swallow the rule and render New York's borrowing
statute toothless.'" Id. at *6 (quoting Stichting Pensioenfonds,
2012 WL 6929336, at *3).

    There is nothing in the Amended Complaint to suggest that
Commerzbank can meet this showing, or that this case is any
different from the multitude of cases that have rejected the
application of the financial base exception in essentially
identical circumstances. See Deutsche Zentral-
Genossenchaftsbank, 2013 WL 6667601, at *6 ("[T]he information

16

cited in support of [the plaintiffs'] argument [for the Lang
exception] is either irrelevant to the inquiry or
indistinguishable from the conduct of hundreds of other
financial services companies that operate in New York, but are
located abroad."). The allegations in the Amended Complaint
indicate that this is a standard economic injury case, and
certainly not unusual. Indeed, Commerzbank is more circumspect
in the Amended Complaint than in its papers with respect to the
locus of its economic losses, alleging only that, "The sales of
the Sold Certificates were made by London Branch and the
economic losses from those sales were experienced in Commerzbank
in England *and/or* in Germany where Commerzbank is located." Am.
Compl. ¶ 163 (emphasis added). It is apparent from the Amended
Complaint that Commerzbank cannot establish the presence of
unusual circumstances in this case, such as a showing that it
was operating so far outside of normal corporate banking
existence at the time its claims accrued that they could not be
said to have accrued in Germany. Cf. Daimler AG v. Bauman, 134
S. Ct. 746, 755-56 (2014) (noting that a corporation might be
appropriately subject to general jurisdiction in a place other
than its principal place of business or state of incorporation
where the corporation experienced a dislocation of business due
to a war). Even if all of the material decisions with respect to
the purchase of the Certificates were made at the London branch

17

of Commerzbank, Commerzbank ultimately felt its economic losses at its principal place of business and state of incorporation: Germany. See Deutsche Zentral-Genossenchaftsbank, 2013 WL 6667601, at *6 (noting that the Lang exception does not apply "even when the due diligence review was conducted in New York and the certificate purchases were carried out in New York, involving New York accounts, and the certificates were later managed in New York" (citing In re Countrywide, 834 F. Supp. 2d at 958; Stichting Pensioenfonds, 2012 WL 6929336, at *2)).

Commerzbank urges that discovery is required to resolve the issue, but courts have not required discovery to reject the applicability of the financial base exception where the allegations in the complaint made it clear that the exception could not apply. See, e.g., Baena, 2006 WL 2935752, at *7. Landesbank Baden-Wurttemberg v. RBS Holdings USA Inc., 14 F. Supp. 3d 488 (S.D.N.Y. 2014), does not aid Commerzbank. Landesbank, 14 F. Supp. 3d at 501-02, involved claims brought by several related plaintiffs --- two special purposes vehicles, a trustee, and a bank --- that had different principal places of business and incorporation. The defendants argued that the claims of the special purpose vehicles and the trustee accrued at the principal place of business and incorporation of the bank-plaintiff because the bank controlled these other non-bank entities. Id. After noting its skepticism that the Lang

exception could apply in that case, the court permitted the record to be developed. Id. at 502. Landesbank thus involved a complex corporate structure shared by several related plaintiffs that had (at least formally) separate corporate existences, and a question as to which entity ultimately felt the economic losses, the non-bank entities individually, or the bank that had ultimate control over the non-bank entities. By contrast, here, there is no question that Commerzbank ultimately felt its economic losses in Germany because Commerzbank's branches have no separate existence from Commerzbank. The accrual analysis is the same for the claims of Dresdner and Eurohypo (both of which are banks) that accrued prior to their assignment to Commerzbank. All of the claims at issue must be timely under German law.[3]

The parties have submitted dueling expert reports --- from Doctor Heinz-Peter Mansel on behalf of Commerzbank, and Doctor Mathias Rohe on behalf of the defendant, respectively --- regarding the application of German law to this case. Pursuant to Rule 44.1 of the Federal Rules of Civil Procedure, questions of foreign law are treated as questions of law, and the Court

---

[3] Notwithstanding the foregoing, in light of the disposition of this opinion, Commerzbank may renew its argument after discovery. Absent the showing of unusual circumstances required to establish a separate financial base, the challenged claims must be timely under German law. It is difficult to see what discovery Commerzbank needs to establish where *it* experienced the economic loss about which *it* is complaining.

"may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1; see also Seetransport Wiking Trader Schiffahrtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala, 29 F.3d 79, 81 (2d Cir. 1994); Carbotrade S.p.A. v. Bureau Veritas, No. 92 Civ. 1459, 1998 WL 397847, at *2 (S.D.N.Y. July 16, 1998). "Accordingly, foreign law should be argued and briefed like domestic law. As with domestic law, judges may rely on both their own research and the evidence submitted by the parties to determine foreign law." Sealord Marine Co. v. Am. Bureau of Shipping, 220 F. Supp. 2d 260, 271 (S.D.N.Y. 2002) (citation omitted); see also IKB Deutsche Industriebank, 2015 WL 1516631, at *3 n.1 (noting that courts "may reject the opinion of an expert on foreign law or give it whatever probative value the court believes it deserves" (citation omitted)).

Due to the proliferation of RMBS litigation in America involving claims that accrued in Germany, American courts have recently had the opportunity to interpret the German statute of limitations applicable to this case. As the Court of Appeals explained in IKB Deutsche Industriebank AG v. McGraw Hill Fin., Inc., 634 F. App'x 19 (2d Cir. 2015) (summary order):

> The parties agree that the relevant provision of German law is Section 195 of the German Civil Code, which has a three-year limitations period. That period

20

> begins to run at the end of the calendar year in which
> 1) the claim arose and 2) the plaintiff either has
> knowledge of the circumstances giving rise to the
> claim and the identity of the defendant, or would have
> had such knowledge but for gross negligence.
> Bürgerliches Gesetzbuch [BGB] [Civil Code], § 199. . .
> . [U]nder German law, a plaintiff has knowledge of the
> circumstances giving rise to the claim when she
> obtains knowledge of the facts necessary to commence
> an action in Germany with an "expectation of success"
> or "some prospect of success," though not without risk
> and even if the prospects of success are uncertain. .
> . . To satisfy this standard, a plaintiff need not
> know all the relevant details or have conclusive proof
> available; knowledge of the factual circumstances
> underlying the claim is sufficient.

Id. at 22. "[T]he standard requires that the plaintiff

possess sufficient information to 'be able to formulate a

consistent and coherent statement of the claim.'" Id. at 22 n.2;

see also In re Countrywide, 2014 WL 3529686, at *5 (cited

approvingly by IKB Deutsche Industriebank, 634 F. App'x at 22).

Although the Rohe and Mansel expert reports arrive at opposite

conclusions with respect to the timeliness of Commerzbank's

claims, the reports are largely consonant with the articulation

of German law by the Court of Appeals.

The defendant argues that Commerzbank's claims accrued, at

the latest, by 2011, and, thus, if by end-of-year 2011,

Commerzbank had knowledge of the circumstances giving rise to

its claims and the identity of the defendant, then its claims

must be time-barred (the defendant does not argue that

Commerzbank was grossly negligent in acquiring knowledge about

its claims). Under German law, Commerzbank must have had sufficient knowledge of each element of each of its claims with respect to each Trust for Section 195 to bar all of the claims that accrued in Germany. See, e.g., HSN Nordbank, 2015 WL 1307189, at *6; Phoenix Light SF Ltd. v. Ace Sec. Corp., 975 N.Y.S.2d 369 (N.Y. Sup. 2013) ("[T]he statute of limitations does not begin to run until plaintiff is on notice of every element of the claim, which, in the case of fraud, includes scienter."); see also Mansel Expert Report ¶ 35; Rohe Reply Expert Report ¶ 11.

"Limitations-based arguments in RMBS fraud actions have not generally been accepted at the motion to dismiss phase." HSN Nordbank, 2015 WL 1307189, at *6 (citation omitted) (collecting cases). "Prospective plaintiffs in such actions often 'have a difficult task in obtaining sufficient notice of the facts underlying their claims.'" Id. (citation omitted).

Based on the allegations, see Fargas, 986 F. Supp. 2d at 427, it cannot be concluded that Commerzbank had sufficient knowledge of each element of each of its claims with respect to each, or any, Trust by end-of-year 2011 such that it could have commenced this action with an expectation, or some prospect, of success. The Amended Complaint includes myriad allegations about the pre-2012 conduct of the Third-Party Entities, and *the defendant's* knowledge of that conduct, see, e.g., Am. Compl. ¶¶

61, 77, 129; however, those allegations cannot be equated with *Commerzbank*'s knowledge of that conduct. Indeed, Commerzbank's theory is that the defendant concealed the objectionable conduct from Commerzbank.

Similarly, the pre-2012 emergence of public information about the conduct of the Third-Party Entities, along with certain red flags about their conduct, see, e.g., Am. Compl. ¶¶ 114-15, does not mean that Commerzbank necessarily had enough information to connect the dots that it could bring any of its claims with an expectation, or some prospect, of success against the defendant. The defendant's suggestion that Commerzbank had the requisite knowledge of its claims based on pre-2012 litigation involving non-trustees fails for the same reason. See HSN Nordbank, 2015 WL 1307189, at *6 (finding "[e]ven assuming, *arguendo,* that German law requires a prospective plaintiff to monitor foreign news accounts and litigation, it does not follow that Plaintiffs were or should have been on notice of their fraud claims" against underwriters years earlier); Landesbank, 14 F. Supp. 3d at 503.

The defendant imputes knowledge to Commerzbank based on the allegation that, when Commerzbank sold a handful of its Certificates in November 2011, "it was apparent that [the defendant] had breached its duties and would not take steps to remedy its failures." Am. Compl. ¶ 163. But the allegation does

not make clear what Commerzbank knew at the time about the factual circumstances underlying its claims, including whether Commerzbank had sufficient information to formulate a consistent and coherent statement of any of its claims.

The defendant's motion to dismiss as untimely under German law the claims with respect to the Eurohypo Certificates, the Commerzbank Certificates, and the Palmer 3 Certificates is **denied without prejudice to renewal in a later motion or answer**.[4]

### B.

Forty-six of the Trusts are governed by PSAs. As Commerzbank concedes, its claims for violations of the TIA with respect to these forty-six Trusts are foreclosed by the decision of the Court of Appeals for the Second Circuit in Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of N.Y. Mellon, 775 F.3d 154, 163 (2d Cir. 2014). See also Phoenix Light, 172 F. Supp. 3d at 706 n.1, 721. Those TIA claims are **dismissed with prejudice**.

### C.

With respect to the forty-six Trusts governed by PSAs, Commerzbank has brought claims seeking money damages for violations of Sections 126 and 130-e of the Streit Act.

---

[4] The parties contest other issues of German law, which are unnecessary to resolve at this point because their resolution would not change the disposition of this motion.

**(i)**

Section 126 of the Streit Act provides that a trustee shall
not accept a trust under an indenture or mortgage unless it
contains certain enumerated provisions. N.Y. Real Prop. Law §
126. In Deutsche Bank I, this Court concluded that Section 126
"requires only that a trust indenture contain certain
provisions, such as the provision requiring a trustee to
exercise rights and powers prudently in the case of an event of
default," but that Section 126 "does not address compliance with
the provision that is required to be included in the indenture
agreement." Phoenix Light, 172 F. Supp. 3d at 723. The
plaintiffs' claims in that case were dismissed because the
plaintiffs had not alleged that the trust indentures failed to
include the provisions mandated by Section 126; rather, the
plaintiffs' claims were predicated on the failure to comply with
those terms, which could not state a cause of action under
Section 126. Id. Commerzbank's claims for violations of Section
126 here suffer from the same flaws, and are thus **dismissed with
prejudice**.

**(ii)**

Section 130-e of the Streit Act --- a little-cited
provision in the case law --- provides that, "A trustee,
committee or any member thereof and a depository may be removed
by the court for cause shown upon the application of any person

25

aggrieved by the act or omission to act of such trustee,
committee, member or depository after such notice and
opportunity to be heard in his or its defense as the court shall
direct." Commerzbank does not seek the equitable relief
contemplated by Section 130-e, namely the removal of the
defendant as the trustee of the Trusts. Instead, Commerzbank
would bypass the available equitable relief provided by Section
130-e to seek money damages because Commerzbank has been
"aggrieved by the act or omission to act" of the defendant.
Commerzbank relies on the general principle that, under New York
law, "Where a plaintiff succeeds in proving his entitlement to
equitable relief, and the granting of such relief 'appears to be
impossible or impracticable, equity may award damages in lieu of
the desired equitable remedy.'" Lusker v. Tannen, 456 N.Y.S.2d
354, 358 (App. Div. 1982) (quoting Doyle v. Allstate Ins. Co.,
136 N.E.2d 484, 486 (N.Y. 1956)).

Commerzbank would stretch the limited rule that courts in
equity may fashion suitable relief, including by awarding
damages, to a plaintiff that has succeeded in proving its
entitlement to equitable relief, but without attempting to prove
its own entitlement to such relief. The argument puts the cart
before the horse. In effect, Commerzbank is trying to read a
broad statutory private right of action for money damages into
Section 130-e. But "[w]here the Legislature has not been

completely silent but has instead made express provision for
civil remedy, albeit a narrower remedy than the plaintiff might
wish, the courts should ordinarily not attempt to fashion a
different remedy, with broader coverage" than the one provided
by the Legislature. Cruz v. TD Bank, N.A., 855 F. Supp. 2d 157,
172-73 (S.D.N.Y. 2012) (quoting Sheehy v. Big Flats Cmty. Day,
Inc., 541 N.E.2d 18, 22 (N.Y. 1989)), aff'd, 742 F.3d 520 (2d
Cir. 2013). The exclusive remedy afforded to an aggrieved party
under Section 130-e is the removal of the trustee. Commerzbank
has not pleaded that it is entitled to such relief.

Moreover, Commerzbank has failed to establish that removal
would be "impossible or impractical." The defendant is currently
alleged to be the trustee of the Trusts, meaning that removal
plainly remains within the ambit of the Court's equitable power.
Commerzbank argues that such removal would be of "little
utility" because the defendant has already allegedly failed many
of its duties as a trustee. Pl.'s Op. Mem. at 22. However, that
does not mean that removal would be impossible or impractical,
or even undesirable for Commerzbank. Indeed, Commerzbank has
made clear that it is alleging that the defendant continues to
shirk its duties as trustee "to date." Am. Compl. ¶ 117; see
also Am. Compl. ¶¶ 89, 97, 107, 126. Rather, Commerzbank is
simply claiming that it is dissatisfied with the statutory
remedy and can use the purported ineffectiveness of that remedy

as a pretext for obtaining damages. But that would ignore the plain limit of the statute.

Accordingly, Commerzbank's claim under Section 130-e of the Streit Act is **dismissed with prejudice**.[5]

### D.

The defendant has moved to dismiss for want of standing[6] the breach of contract claims with respect to the ten Trusts governed by PSAs that contain "negating clauses."[7] See Biron Reply Decl., Ex. B. As an example, a typical negating clause in the PSAs provides that, "Nothing in this Agreement or in the Certificates, expressed or implied, shall give to any Person, other than the Certificateholders, the Hedge Counterparties and the parties hereto and their successors hereunder, any benefit or any legal or equitable right, remedy or claim under this Agreement." See, e.g., Biron Decl., Ex. 43 § 12.10; see also Biron Reply Decl., Ex. B. Commerzbank concedes that it does not hold the Certificates, and that the Depository Trust Company (the "DTC"), also known as Cede & Co., is the actual holder of the Certificates.

---

[5] It is unnecessary to reach the defendant's alternative arguments for dismissal of the Streit Act claims. See Phoenix Light, 172 F. Supp. 3d at 723 n.10.

[6] The defendant has moved to dismiss these claims pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

[7] The defendant initially moved to dismiss the breach of contract claim with respect to Trust "IMM 2007-A" on the same basis, but has conceded that the operative PSA underlying that Trust does not in fact contain a negating clause.

Just as in this case, the plaintiffs in the Phoenix Light Action conceded that the DTC was the actual holder of the certificates at issue there. See Phoenix Light, 172 F. Supp. 3d at 711-12. In Deutsche Bank I, this Court found that, while the plaintiffs were beneficial owners of the certificates held by the DTC, they were not the registered holders, and thus that the PSAs with negating clauses deprived the plaintiffs of standing to pursue their breach of contract claims. See id. However, the plaintiffs were permitted to attempt to cure their lack of standing by obtaining authorization from the DTC to pursue those claims. See id. at 712.

Commerzbank stands in the same position as the plaintiffs in the Phoenix Light Action. Because of the negating clauses, Commerzbank, as a beneficial but not registered owner of the Certificates, lacks standing to bring its breach of contract claims for the ten Trusts at issue; however, Commerzbank may cure its lack of standing by obtaining authorization from the DTC, as Commerzbank represents it is currently seeking to do.

Commerzbank attempts to distinguish Deutsche Bank I by arguing that the DTC is acting as its agent and that Commerzbank thus has standing to sue on the Certificates as a principal. The argument is meritless because the plain language of the negating clause clearly "bar[s] enforcement [of the PSAs] by unnamed third-party beneficiaries," such as Commerzbank. Royal Park

Invs. SA/NV v. HSBC Bank USA, Nat'l Ass'n, 109 F. Supp. 3d 587, 607 (S.D.N.Y. 2015); see also India.Com, Inc. v. Dalal, 412 F.3d 315, 321 (2d Cir. 2005) ("Under New York law, the effectiveness of a negating clause to preclude third-party beneficiary status is well-established: '[w]here a provision exists in an agreement expressly negating an intent to permit enforcement by third parties, . . . that provision is decisive.'" (citations omitted)). As with the arguments against enforcement of the negating clauses advanced by the plaintiffs in Deutsche Bank I, Commerzbank's "interpretation of the [PSAs] . . . ignores the plain language of the PSA provisions that treats registered holders differently from beneficial owners and would render superfluous the provision of the PSA that provides a mechanism for beneficial owners to enforce the agreements." Phoenix Light, 172 F. Supp. 3d at 711.

Commerzbank's breach of contract claims with respect to the ten Trusts governed by PSAs with negating clauses are **dismissed without prejudice**, subject to Commerzbank curing its lack of standing.

## E.

The defendant has moved to dismiss the claims for breach of the implied covenant of good faith. As explained in Deutsche Bank I:

"New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002). A plaintiff can maintain a claim for breach of the implied covenant of good faith and fair dealing simultaneously with a breach of contract claim "only if the damages sought by the plaintiff for breach of the implied covenant are not intrinsically tied to the damages allegedly resulting from breach of contract." Page Mill Asset Mgmt. v. Credit Suisse First Bos. Corp., No. 98-cv-6907 (MBM), 2000 WL 335557, at *8 (S.D.N.Y. Mar. 30, 2000) (citation and internal quotation marks omitted).

Phoenix Light, 172 F. Supp. 3d at 721. The plaintiffs' claims for breach of the implied covenant of good faith were dismissed in Deutsche Bank I because they arose from the same set of facts as their claims for breach of contract. Id.

Commerzbank has presented no persuasive reasons to explain why Deutsche Bank I is distinguishable from this case. Commerzbank frames its claims for breach of the implied covenant as based upon the defendant's prevention or hindrance of the occurrence of certain contractual conditions precedent that could have allowed Commerzbank to mitigate its losses, but those claims are duplicative of Commerzbank's breach of contract claims. See id. at 715 & n.5; see also Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd., 157 F. Supp. 3d 352, 367, 369 (S.D.N.Y. 2016). Commerzbank's allegations for breach of the implied covenant depend entirely on the defendant's alleged breaches of its obligations as set forth in the PSAs and the Indentures. The

31

claims for breach of the implied covenant of good faith are **dismissed with prejudice**.

CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the defendant's motion to dismiss is **granted in part and denied in part.** The Clerk is directed to close Dkt. 31.

**SO ORDERED.**

Dated:    **New York, New York**
          **February 8, 2017**        _____/s/_____

                                    **John G. Koeltl**
                           **United States District Judge**