**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

COMMERZBANK AG,

              Plaintiff,

      v.

DEUTSCHE BANK NATIONAL TRUST
COMPANY and DEUTSCHE BANK TRUST
COMPANY AMERICAS,

              Defendants.

Case No. 15-cv-10031-JGK-DCF

Hon. John G. Koeltl

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Michael S. Kraut
Kevin J. Biron
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178
Tel:  +1.212.309.6000
Fax:  +1.212.309.6001

*Attorneys for Defendants Deutsche Bank*
*National Trust Company and Deutsche*
*Bank Trust Company Americas, as Trustees*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS AND RELEVANT BACKGROUND ............................................. 4

    A.    RMBS Transactions Generally ................................................ 4

    B.    Overview of the Governing Agreements ........................................ 5

            1.    Defendant's Limited Duties Under the Governing Agreements................ 5

                    a.    Defendant Had Limited Duties Relating to Mortgage/Collateral Files ............................................. 6

                    b.    Defendant Did Not Make, and Is Not Responsible For, R&Ws Concerning the Nature and Quality of Loans in the Trusts.................................. 6

                    c.    Defendant Has No Duty to Monitor or Supervise Servicers.......... 7

                    d.    Defendant's Post-EOD Duties ...................................... 8

            2.    Investors' Rights Under the Governing Agreements................................. 9

    C.    Commerzbank and its Holdings................................................ 9

    D.    Overview of Commerzbank's Claims................................................ 10

LEGAL STANDARD.................................................................................. 11

ARGUMENT ....................................................................................... 12

I.    COMMERZBANK LACKS STANDING TO ASSERT MANY OF ITS CLAIMS...... 12

    A.    Commerzbank Lacks Standing as to Certificates It Sold.................... 12

    B.    Commerzbank Lacks Standing as to Certificates It Never Held ......................... 14

II.    MOST OF COMMERZBANK'S CLAIMS ARE TIME-BARRED............................ 14

    A.    Applicable Filing Dates for Commerzbank's Claims.......................... 14

    B.    Most of Commerzbank's Claims Are Untimely Under German Law ................ 16

            1.    Germany's 3-year statute of limitations begins to run at the end of the year when the plaintiff either knew, or in the absence of gross negligence would have known, of the facts underlying its claims ......... 16

            1.    Germany's statute of limitations requires a plaintiff to investigate its potential claims .................................................. 18

            2.    Commerzbank has conceded that the factual circumstances underlying Defendant's alleged breaches were "apparent" before the German limitations cut-off................................... 19

            3.    The evidence confirms that Commerzbank knew, or was grossly negligent in failing to know, of the factual circumstances underlying Defendant's alleged breaches before the German limitations cut-off................................... 20

                    a.    Purported breaches arising from allegations of false R&Ws....... 20

## TABLE OF CONTENTS
### (continued)

Page

b.    Purported breaches arising from allegations of incomplete mortgage files, servicer robo-signing and other misconduct ....... 22

c.    Purported breaches arising from the Loss EODs and 2012 Downgrade EODs ...................................................................... 23

C.    Many of Commerzbank's Claims Are Also Untimely Under New York Law ............................................................................................... 25

1.    Claims that Defendant breached its post-EOD duties relating to the Loss EODs are time-barred under New York law .................................. 25

2.    Claims that Defendant breached its pre-EOD duties relating to certain alleged R&W breaches are time-barred under New York law ............................................................................................ 26

3.    Any claims that arose under the Palmer 3 Certificates before their transfer to Commerzbank are time-barred under New York law ........... 27

III.    COMMERZBANK'S CLAIMS THAT DEFENDANT BREACHED ITS DUTIES BY NOT PURSUING REPURCHASE CLAIMS AGAINST THE BANKRUPT WARRANTORS FAIL ...................................................... 27

IV.    COMMERZBANK'S CLAIMS THAT DEFENDANT BREACHED ITS DUTIES BY NOT PURSUING PREVIOUSLY SETTLED REPURCHASE CLAIMS FAIL ...................................................................................... 28

V.    COMMERZBANK'S CLAIMS THAT DEFENDANT BREACHED ITS DUTIES BY NOT PURSUING TIME-BARRED REPURCHASE CLAIMS FAIL ............................................................................................................ 28

VI.    COMMERZBANK'S TORT CLAIMS FAIL ................................................. 29

VII.    COMMERZBANK'S PRE-EOD CLAIMS FAIL ......................................... 30

A.    Defendant Had No Pre-EOD Duty to Investigate ................................. 30

B.    Defendant Did Not Breach a Pre-EOD Duty to Provide Notice of R&W Breaches or to Enforce Repurchase Obligations ................................. 31

1.    Defendant complied with any notice obligations it had.......................... 32

2.    Defendant complied with any enforcement obligations it had ............... 34

C.    In Any Event, Summary Judgment Should Be Granted on Commerzbank's Pre-EOD Claims Concerning R&Ws Because Defendant Believed in Good Faith That Its Practices Complied with the Governing Agreements ........ 36

VIII.    COMMERZBANK'S POST-EOD CLAIMS FAIL ....................................... 37

A.    Commerzbank Lacks Evidence That Defendant's Post-EOD Duties Were Triggered by Purported Servicer or Issuer Breaches ............................. 37

B.    Defendant Is Entitled to Summary Judgment on Commerzbank's Claims Relating to the Declared EODs ............................................................ 39

**TABLE OF CONTENTS**
**(continued)**

**Page**

CONCLUSION.................................................................................................................. 41

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<span style="font-size:smaller">ASES</span>

*Am. Fid. Assurance Co. v. Bank of N.Y. Mellon*,
  No. Civ-11-1284-D (W.D. Okla. Oct. 31, 2018), ECF No. 282 .................................................3

*Baldwin v. EMI Feist Catalog, Inc.*,
  805 F.3d 18 (2d Cir. 2015)........................................................................................................11

*Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*,
  757 F.2d 523 (2d Cir. 1985)......................................................................................................20

*BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank,
  N.A.*,
  No. 14 Civ 9371, 2017 WL 3610511 (S.D.N.Y. Aug. 21, 2017) ...........................................31

*BlackRock Balanced Capital Portfolio (FI) v. Deutsche Bank Nat'l Tr. Co.*,
  No. 14-CV-9367 (S.D.N.Y. Feb. 16, 2017), ECF No. 215......................................................27

*Blackrock Balanced Capital Portfolio (FI) v. U.S. Bank N.A.*,
  No. 652204/2015, 2018 WL 452001 (N.Y. Sup. Ct. N.Y. Cty. Jan. 17, 2018),
  *aff'd*, 165 A.D.3d 526 (1st Dep't 2018)...................................................................................29

*CFIP Master Fund, Ltd. v. Citibank, N.A.*,
  738 F. Supp. 2d 450 (S.D.N.Y. 2010)................................................................................34, 36

*CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*,
  735 F.3d 114 (2d Cir. 2013)......................................................................................................11

*Commerce Bank v. Bank of N.Y. Mellon*,
  35 N.Y.S.3d 63 (1st Dep't 2016) .........................................................................................31, 38

*Commerzbank AG London Branch v. UBS AG, et al.*,
  No. 654464/2013, 2015 WL 3857321 (N.Y. Sup. Ct. N.Y. Cty. June 17, 2015) .............10, 25

*Commerzbank AG v. Deutsche Bank Nat'l Tr. Co.*,
  234 F. Supp. 3d 462 (S.D.N.Y. 2017) (Koeltl, J.) ............................................................14, 16

*Cruden v. Bank of N.Y.*,
  957 F.2d 961 (2d Cir. 1992)......................................................................................................25

*Deutsche Bank Nat'l Tr. Co. v. Barclays Bank PLC*,
  66 N.Y.S.3d 472 (1st Dep't 2017), *appeal filed* ....................................................................28

**TABLE OF AUTHORITIES**
(continued)

Page

*Deutsche Bank Nat'l Tr. Co. v. Flagstar Capital Mkts. Corp.*,
No. 96, 2018 WL 4976777 (N.Y. Oct. 16, 2018) ...................................................28

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
837 F. Supp. 2d 162 (S.D.N.Y. 2011)...................................................................2

*Elliott Assocs. v. J. Henry Schroder Bank & Tr. Co.*,
838 F.2d 66 (2d Cir. 1988)...............................................................................2, 30

*Espinosa v. Delgado Travel Agency, Inc.*,
No. 05 Civ. 6917, 2006 WL 2792689 (S.D.N.Y. Sept. 27, 2006) ...........................15

*Fixed Income Shares: Series M v. Citibank N.A.*,
314 F. Supp. 3d 552 (S.D.N.Y. 2018), *appeal filed*.....................................3, 26, 27

*Goldman v. Barrett*,
733 F. App'x 568 (2d Cir. 2018) ..........................................................................15

*Gottlieb v. County of Orange*,
84 F.3d 511 (2d Cir. 1996).................................................................................40

*Hurley v. Tozzer, Ltd.*,
No. 15 Civ 2785, 2018 WL 1087946 (S.D.N.Y. Feb. 26, 2018) ............................13

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
12 N.Y.3d 132 (2009) ......................................................................................25

*IKB Deutsche Industriebank AG v. McGraw Hill Fin., Inc.*,
634 F. App'x 19 (2d Cir. 2015) ...........................................................................24

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig. (Silver Elms CDO v.
Bank of Am. Corp.)*,
No. 2:11-ML-02265-MRP, 2014 WL 3529686 (C.D. Cal. July 14, 2014) ............24

*Jaffer v. Hirji*,
887 F.3d 111 (2d Cir. 2018)................................................................................11

*Justinian Capital SPC v. WestLB AG*,
28 N.Y.3d 160 (2016) ......................................................................................14

*Meckel v. Cont'l Res. Co.*,
758 F.2d 811 (2d Cir. 1985)..............................................................................2, 30

*Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand,
LLP*,
322 F.3d 147 (2d Cir. 2003)................................................................................19

# TABLE OF AUTHORITIES
## (continued)

Page

*Okla. Police Pension & Ret. Sys. v. U.S. Bank N.A.*,
986 F. Supp. 2d 412 (S.D.N.Y. 2013) (Koeltl, J.) ...................................................12

*Page Mill Asset Mgmt. v. Credit Suisse First Bos. Corp.*,
No. 98 CIV 6907 MBM, 2000 WL 877004 (S.D.N.Y. June 30, 2000)..................................30

*Peak Partners, LP v. Republic Bank*,
191 F. App'x 118 (3d Cir. 2006) .......................................................................1, 2

*Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*,
No. 14-cv-10104, 2017 WL 3973951 (S.D.N.Y. Sept. 7, 2017) ......................2, 12, 32, 34, 38

*Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co.*,
172 F. Supp. 3d 700 (S.D.N.Y. 2016)........................................2, 11, 12, 26, 27, 31

*Policemen's Annuity & Benefit Fund of Chi. v. Bank of Am., N.A.*,
907 F. Supp. 2d 536 (S.D.N.Y. 2012)......................................................................40

*Racepoint Partners, LLC v. JPMorgan Chase Bank*,
No. 06-cv-2500, 2006 WL 3044416 (S.D.N.Y. Oct. 26, 2006)...............................................13

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
No. 14-CV-04394, 2018 WL 4682220 (S.D.N.Y. Sept. 28, 2018)............................31, 33, 39

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
No. 14-CV-4394, 2016 WL 439020 (S.D.N.Y. Feb. 3, 2016)................................................33

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
No. 14-CV-4394, 2017 WL 1331288 (S.D.N.Y. Apr. 4, 2017) .............................................13

*Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*,
109 F. Supp. 3d 587, 603 (S.D.N.Y. 2015)................................................................33

*Royal Park Invs. SA/NV v. HSBC Bank USA N.A.*,
No. 14-CV-08175, 2017 WL 945099 (S.D.N.Y. Mar. 10, 2017) .....................................33, 40

*Royal Park Invs. SA/NV v. U.S. Bank N.A.*,
324 F. Supp. 3d 387 (S.D.N.Y. 2018)....................................................................12

*Simon v. City of N.Y.*,
893 F.3d 83 (2d Cir. 2018)..............................................................................11

*Simsbury-Avon Pres. Soc'y LLC v. Metacon Gun Club, Inc.*,
575 F.3d 199 (2d Cir. 2009)..............................................................................11

## TABLE OF AUTHORITIES
### (continued)

Page

*Triaxx Prime CDO 2006-1, Ltd. v. Bank of N.Y. Mellon*,
No. 16 Civ. 1597, 2018 WL 1417850 (S.D.N.Y. Mar. 8, 2018), *aff'd*, 741 F.
App'x 857 (2d Cir. 2018) .........................................................................................29

*V.S. v. Muhammad*,
595 F.3d 426 (2d Cir. 2010) ...................................................................................29

*VNB Realty, Inc. v. U.S. Bank, N.A.*,
No. 2:13-04743, 2014 WL 1628441 (D.N.J. Apr. 23, 2014)...................................31

*W. & S. Life Ins. Co. v. Bank of N.Y. Mellon*,
No. A1302490, 2017 WL 3392855 (Ohio C.P. Aug. 4, 2017) ..........................32, 33

*W. & S. Life Ins. Co. v. Bank of N.Y. Mellon*,
No. A1302490, 2017 WL 3392856 (Ohio C.P. Aug. 4, 2017), *appeal filed* ............2

*Yeager v. Fort Knox Sec. Prods.*,
672 F. App'x 826 (10th Cir. 2016) ..........................................................................14

*Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*,
84 N.Y.2d 309 (1994) .............................................................................................12

**STATUTES**

N.Y. Gen. Oblig. Law § 13-107 ....................................................................................12

N.Y. Gen. Oblig. Law § 13-107(1) ...............................................................................12

New York Judiciary Law § 489 .....................................................................................14

Trust Indenture Act of 1939 (15 U.S.C. §§ 77aaa–77bbbb)...............................11, 25, 37

**OTHER AUTHORITIES**

Fed. R. Civ. P. 44.1 .......................................................................................................18

N.Y. C.P.L.R. § 202 ......................................................................................................14

N.Y. C.P.L.R. § 213(2) ..................................................................................................25

N.Y. C.P.L.R. § 214(4) ..................................................................................................25

Deutsche Bank National Trust Company ("DBNTC") and Deutsche Bank Trust Company Americas ("DBTCA"), each as trustee (together in such trustee capacities, "Defendant") of residential mortgage-backed securitization ("RMBS") trusts at issue in this action (the "Trusts"), submit this memorandum of law in support of their motion for summary judgment.[1]

## PRELIMINARY STATEMENT

This action stems from the 2008 financial crisis. Having failed previously to recover the full amount of its alleged RMBS losses by suing the sponsors of the transactions, Commerzbank went looking for another deep pocket and decided to sue the RMBS trustees, asserting they had, and breached, a duty "to police the deal."[2]

But an RMBS trustee and an ordinary trustee (*e.g.*, trustee of a testamentary trust) are "different legal animal[s]." *Peak Partners, LP v. Republic Bank*, 191 F. App'x 118, 122 (3d Cir.

---

[1] The Court entered a schedule with bifurcated expert discovery and dispositive motion practice. *See* ECF No. 92. "Phase 1" includes expert discovery and dispositive motion practice concerning any issue other than loan-level re-underwriting and damages. "Phase 2," if necessary, will include expert discovery and dispositive motion practice concerning loan-level re-underwriting, damages, and any remaining issues. Defendant submits this memorandum of law in support of its Phase 1 dispositive motion.

Unless otherwise indicated, any emphasis in quotations is added, and any internal quotation marks, citations, footnotes, brackets, and ellipses are omitted. Unless otherwise specified, exhibits cited herein are attached to the Declaration of Kevin J. Biron submitted herewith (cited as "Ex. _"). Exhibits to the Declaration of Ronaldo Reyes submitted herewith are cited as "Reyes Ex. _". Defendant's Local Rule 56.1 Statement filed herewith is cited as "¶ _," and references to paragraphs include any subparts. The pertinent contract provisions are set forth herein and in the 56.1 statement. The relevant Governing Agreements are also being submitted herewith on a CD.

[2] *See* Second Amended Complaint ("SAC") ¶ 5 (ECF No. 89.)

2006).  Unlike ordinary trustees, the duties of an RMBS trustee "are <u>exclusively defined</u> by the terms of the" contracts that govern the Trusts.  *Elliott Assocs. v. J. Henry Schroder Bank & Tr. Co.*, 838 F.2d 66, 71 (2d Cir. 1988); *see Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 192 (S.D.N.Y. 2011).  Thus, an RMBS trustee "is not subject to the ordinary trustee's duty of undivided loyalty.  Unlike the ordinary trustee, who has historic common-law duties imposed beyond those in the trust agreement, an indenture trustee is more like a stakeholder whose duties and obligations are exclusively defined by the terms of the indenture agreement."  *Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 816 (2d Cir. 1985).  Defendant did not breach its limited duties under the governing agreements.

Courts, including this one, have consistently warned the investor-plaintiffs in these cases that "to prevail ultimately on the breach of contract claim, a plaintiff does have to demonstrate breach on a <u>loan-by-loan and trust-by-trust basis</u>."  *Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co.*, 172 F. Supp. 3d 700, 713 (S.D.N.Y. 2016) ("*Phoenix v. DB*") (quoting *Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154, 162 (2d Cir. 2014) ("*PABF v. BNYM*")).  In all four cases where the investor-plaintiffs' evidence has been tested, the courts entered judgment in favor of the trustees on all, or nearly all, of plaintiffs' claims because, *inter alia*, "the beliefs of the plaintiffs about the [contracts] are not supported by the actual language of the [contracts],"[3] and "Plaintiffs' lack of loan- or Trust-specific proof . . . is fatal to their claims."[4]  The same result is compelled here.

---

[3] *W. & S. Life Ins. Co. v. Bank of N.Y. Mellon*, No. A1302490, 2017 WL 3392856, at *1-2 (Ohio C.P. Aug. 4, 2017) (entering judgment for trustee on all claims after bench trial), *appeal filed*.

[4] *Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, No. 14-cv-10104, 2017 WL 3973951, at *8 (S.D.N.Y. Sept. 7, 2017) (Caproni, J.) ("*Phoenix v. BNYM*") (granting summary judgment for trustee on nearly all claims);

As detailed below, Defendant is entitled to summary judgment on all of Commerzbank's claims for the following reasons:

*First*, Commerzbank lacks standing to bring claims relating to RMBS certificates that it sold before starting this action or never held.

*Second*, most of Commerzbank's claims are time-barred under Germany's 3-year statute of limitations, New York's 6-year statute of limitations, or both.

*Third*, Commerzbank's claims that Defendant breached its duties by not taking action against sponsors and originators that were bankrupt fail because the bankruptcy stay precluded Defendant from taking any such actions.

*Fourth*, Commerzbank's claims that Defendant breached its duties by not asserting claims against certain sponsors and originators that are subject to prior investor-approved settlements fail because the settlements released all such claims.

*Fifth*, Commerzbank's claims that Defendant breached its duties by not pursuing time-barred claims against sponsors and originators fail as a matter of law.

*Sixth*, Commerzbank's tort claims fail as a matter of law because—as New York's First Department recently held—those claims are barred by the economic loss doctrine.

*Seventh*, the Court should grant summary judgment dismissing Commerzbank's claim that prior to a contractually-defined event of default ("EOD"), Defendant had, and breached, a duty to

---

*see also* Order at 13-15, *Am. Fid. Assurance Co. v. Bank of N.Y. Mellon*, No. Civ-11-1284-D (W.D. Okla. Oct. 31, 2018) ("*AFAC v. BNYM*"), ECF No. 282 (granting summary judgment for trustee on all claims); *Fixed Income Shares: Series M v. Citibank N.A.*, 314 F. Supp. 3d 552, 562 (S.D.N.Y. 2018) (Furman, J.) (granting summary judgment for trustee on all claims), *appeal filed*.

investigate whether loans in the Trusts breached the loan-level representations and warranties ("R&Ws") made by sponsors and originators. Defendant had no such duty.

*Eighth*, the Court should grant summary judgment dismissing Commerzbank's claims that Defendant breached its duties by failing to provide notice of loans with alleged R&W breaches identified in communications that Defendant received, and to pursue the repurchase of those loans absent investor direction. Commerzbank has no evidence Defendant breached any such duties.

*Ninth*, the Court should grant summary judgment dismissing Commerzbank's claim that Defendant breached its duties by not declaring EODs in every Trust due to alleged breaches by loan servicers. Commerzbank lacks sufficient evidence that Defendant had the requisite "written notice" or "actual knowledge" of any such EOD to trigger its post-EOD duties.

*Tenth*, the Court should grant summary judgment dismissing Commerzbank's claims that Defendant breached its post-EOD duty to act as "a prudent person" with respect to certain declared EODs, because Commerzbank lacks evidence that Defendant breached that duty.

## STATEMENT OF FACTS AND RELEVANT BACKGROUND

### A.    RMBS Transactions Generally

In an RMBS securitization, an entity that originated or acquired mortgage loans sells them into a trust created to receive interest and principal payments from borrowers. ¶ 1. The right to receive trust income is parceled into certificates and sold to investors, called certificateholders. *Id.* The entities that underwrite and make the mortgage loans are typically called "originators." *Id.* The entities that pool the mortgage loans are called "sellers" or "sponsors." *Id.* A "depositor" conveys the mortgage loans to an RMBS trust or trustee. *Id.* After the closing of the transaction creating the RMBS trust, "servicer(s)" enforce the loan terms and collect payments from borrowers. *Id.* The terms of the securitization trust as well as the rights and duties of the trustee, sponsor, depositor, originator(s), certificateholders and servicer(s) are set forth in the trust's

governing agreements (the governing agreements for the Trusts are referred to herein as the "Governing Agreements" or "GAs").[5]  ¶ 6.

B.   **Overview of the Governing Agreements**

1.   **Defendant's Limited Duties Under the Governing Agreements**

The GAs provide that unless Defendant has actual knowledge or, under some GAs, "written notice" that a contractually-defined EOD has occurred and is continuing, Defendant's duties are limited to those "specifically set forth in the Agreement with respect to the Trustee and no implied covenants or obligations shall be read into this Agreement."  ¶ 12.  Defendant has only limited administrative and ministerial duties under the GAs.  ¶ 13.  Importantly, Defendant has no duty under any GA to investigate any facts or matters absent direction and indemnity from a contractually specified percentage of investors.  ¶ 14.  The GAs further provide that Defendant may "rely upon and shall be protected in acting or refraining from acting upon [any] certificate, statement, instrument, opinion, report, notice, request, consent, order, appraisal, bond or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties . . . ."  ¶ 15.

---

[5] RMBS trusts often are created using either a pooling and servicing agreement ("PSA") or an indenture. There are 50 Trusts at issue here:  46 were created using a PSA or similar agreement (the "PSA Trusts") and four were created using an indenture (the "Indenture Trusts").  ¶¶ 2, 7-10.  Certificates are issued by PSA Trusts and notes are issued by Indenture Trusts.  For ease of reference, we refer to both as "certificates."  DBNTC is the trustee for 48 of the Trusts, and DBTCA is the trustee for the other Trusts. ¶¶ 3-4.  The PSAs, indentures and other relevant Governing Agreements for the Trusts are governed by New York law; except that the GAs for one Trust are governed by Delaware law.  ¶ 11.

Defendant also has broad exculpations under the GAs.   ¶ 16.   For example, the GAs generally provide that (i) "the Trustee shall not be liable with respect to any action taken, suffered, or omitted to be taken by it in good faith in accordance with the direction of the Holders of Certificates evidencing no less than [25%] of the Voting Rights of Certificates relating to the time, method, and place of conducting any proceeding for any remedy available to the Trustee, or exercising any trust or power conferred upon the Trustee under this Agreement;" and (ii) "the Trustee shall not be liable for any action taken, suffered or omitted by it in good faith and believed by it to be authorized or within the discretion or rights or powers conferred upon it by this Agreement."   *Id.*

a.   Defendant Had Limited Duties
Relating to Mortgage/Collateral Files

When each RMBS transaction closed, the depositor, sponsor or seller was obligated to deliver mortgage/collateral files relating to the loans in the Trust to Defendant or a custodian.[6] ¶ 17.   Within a specified time-period after closing, Defendant or a custodian was required to issue a final certification with an "exception report" listing, for each mortgage/collateral file, whether any document was missing or nonconforming.   ¶ 18.

b.   Defendant Did Not Make, and Is Not Responsible For, R&Ws
Concerning the Nature and Quality of Loans in the Trusts

RMBS sponsors and/or loan originators made certain R&Ws concerning the characteristics of the loans to be conveyed to the Trusts (in such capacity, a "Warrantor").   ¶ 19.   Defendant is entitled to rely on the R&Ws and has no obligation to investigate their accuracy or reliability.   ¶ 20. Defendant did <u>not</u> make any R&Ws concerning the loans.   ¶ 19.1.

---

[6] The mortgage/collateral file typically consists of the note, mortgage, title policy and assignments related to a particular loan.   ¶ 17.1.

Under the GAs, if Defendant or another enumerated party "discovers" (*i.e.*, first obtains actual knowledge of) – or, under some GAs, receives written notice of – an actual material loan-level R&W breach, it is required to notify other specified parties.  ¶¶ 77-78.  Under certain circumstances, the Warrantor has a duty to substitute, cure or repurchase loans with material R&W breaches.  ¶ 79.

### c.    Defendant Has No Duty to Monitor or Supervise Servicers

Servicers—not Defendant—maintain the day-to-day relationships with the borrowers on loans in the Trusts.  ¶ 1.7.  The servicers' duties include collecting payments on the loans, and, upon borrower default, enforcing the terms of the loan, which may include foreclosing on the real property securing the loan.  ¶ 21.  In some transactions, a "master servicer" was appointed to monitor the performance of other servicers.[7]  ¶ 22.

Defendant is entitled to rely on certifications and other information provided by the servicers. ¶ 27.  Defendant has no duty under any GA to supervise or monitor any servicer.  ¶ 23.  Nor did Defendant have the servicing expertise to do so.  ¶ 24.  When Defendant received the requisite direction from investors to investigate servicing practices, a consultant with servicing expertise was retained to conduct the investigation.  ¶ 25.  Similarly, Defendant did not have the servicing expertise necessary to determine whether any missing or nonconforming mortgage/collateral file documents were necessary to properly service the loans, and, thus, whether those missing or nonconforming documents were material.  ¶ 26.

---

[7] Except as expressly stated herein, the term "servicers" includes both servicers and master servicers.

d.      Defendant's Post-EOD Duties

An EOD is an explicitly defined event that can trigger Defendant's duty to "act as a prudent person . . . under the circumstances."   ¶ 28.[8]   Specifically, the GAs provide that if an EOD is continuing and Defendant has the contractually specified knowledge thereof (*e.g.*, "actual knowledge" or "written notice"), Defendant "shall exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in their exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs." ¶ 29.

For all 46 PSA Trusts and one of the four Indenture Trusts—subject to the terms and conditions of the GAs—EODs may arise from events such as:  (i) the servicer materially breaching its obligations under the PSA and not curing the breach after notice, (ii) the servicer's ratings being downgraded by the rating agencies, (iii) the servicer filing for bankruptcy, or (iv) under a few PSAs, losses or delinquencies on loans in the Trust exceeding a specified threshold.  ¶ 30.  For the other three Indenture Trusts—although EODs result from the same types of events as PSA Trusts (*e.g.*, uncured breach, bankruptcy)—those events concern the acts or omissions of the Delaware statutory trust, often called the "issuer," that issued the RMBS securities to investors, as opposed to the acts or omissions of the servicer of the underlying loans.  ¶ 31.

---

[8]  Some GAs define different types of "events" (*e.g.*, "Master Servicer Event of Default" and "Servicer Event of Default") that have different consequences.  ¶ 28.1.  For example, under many of those GAs, only a "Master Servicer Event of Default" can trigger Defendant's "prudent person" duty.  ¶ 28.2.  As used herein, "EOD" only refers to those events defined under each GA that can trigger Defendant's "prudent person" duty.

### 2.     Investors' Rights Under the Governing Agreements

The GAs provide that investors representing a contractually specified percentage of "Voting Rights" (often 25%) have certain rights, such as the right, depending on the Trust, to: (i) notify a servicer that it has materially breached its contractual obligations and demand cure, (ii) terminate a servicer following an EOD, (iii) direct Defendant to appoint a new servicer, (iv) direct Defendant to conduct an investigation, (v) initiate legal actions under the GA if, upon request, Defendant fails to do so, and (vi) remove the trustee and appoint a replacement. ¶ 32-37.

### C.     Commerzbank and its Holdings

Commerzbank is a German banking corporation based in Germany.   ¶ 39.  Commerzbank asserts claims against Defendant purportedly arising from losses on 74 interests (the "Certificates") in the Trusts.   Commerzbank held 72 Certificates at some point in time, and its acquisitions of those Certificates are summarized below:

- Barrington 2 Certificates:   Commerzbank acquired 20 of the Certificates (the "Barrington 2 Certificates") from the asset portfolio that Barrington II CDO Ltd. ("Barrington 2") had granted to an indenture trustee in 2007 as part of a securitization transaction.  Commerzbank acquired 10 of the Barrington 2 Certificates between May and August 2012, and the other 10 in 2015. ¶ 40.1.  The Barrington 2 Certificates are listed on Ex. 69.

- Palmer 3 Certificates:    In August 2008, Commerzbank acquired 20 of the Certificates (the "Palmer 3 Certificates") from the asset portfolio that Palmer Square 3 Limited ("Palmer 3") had granted to an indenture trustee in 2007 as part of a securitization transaction. ¶ 40.2.  The Palmer 3 Certificates are listed on Ex. 69.

- Commerzbank Certificates:  In November 2009, Commerzbank acquired 10 of the Certificates (the "Commerzbank Certificates") through its merger with Dresdner Bank AG

("Dresdner"), a German banking corporation.   Dresdner had acquired the Commerzbank Certificates between 2005 and 2008.  ¶ 40.3.  The Commerzbank Certificates are listed on Ex. 69.

- Eurohypo Certificates:  In May 2009, Commerzbank acquired 22 of the Certificates (the "Eurohypo Certificates") from initial investor Eurohypo AG (now known as Hypothekenbank Frankfurt AG) ("Eurohypo"), which is a German banking corporation wholly-owned by Commerzbank.  ¶ 40.4.  The Eurohypo Certificates are listed on Ex. 69.

Commerzbank also purports to assert claims relating to two Certificates that it never held. ¶ 45.  The aggregate original par amount of the 74 Certificates at issue is approximately $590 million.  ¶ 41.  Commerzbank sold over $250 million original par amount of those Certificates before it commenced this action.  ¶ 42.

**D.      Overview of Commerzbank's Claims**

By no later than the end of 2011, Commerzbank was aware of allegations that RMBS sponsors, depositors and originators had made false R&Ws and failed to deliver complete mortgage/collateral files, and that servicers were allegedly "robo-signing" missing foreclosure related documents and engaging in other alleged misconduct after borrower defaults.  *Infra* § II.B.5.  In December 2013, Commerzbank commenced a lawsuit against the depositors, sponsors, and underwriters for 51 of the 74 Certificates, based on allegations that, *inter alia*, the depositors/sponsors/originators had made false R&Ws.  *See Commerzbank AG London Branch v. UBS AG*, *et al.*, No. 654464/2013, 2015 WL 3857321, at *1 (N.Y. Sup. Ct. N.Y. Cty. June 17, 2015) ("*Commerzbank v. UBS*").  On June 17, 2015, the court dismissed those claims as untimely. *Id.*

On December 23, 2015, Commerzbank commenced this action.  Commerzbank alleges that (i) sponsors, depositors and originators made false R&Ws and failed to deliver complete mortgage/collateral files; and (ii) servicers breached their duties by failing to give notice of the

R&W breaches, failing to address incomplete loan files and instead "robo-signing" missing documents, and engaging in schemes to "cheat[] borrowers and the Covered Trusts after default [by borrowers on the underlying loans]." *See generally* SAC. Commerzbank asserts Defendant violated contractual, tort and, with respect to the four Indenture Trusts, Trust Indenture Act ("TIA") duties by failing to investigate, give notice of, and cause the responsible parties to remedy, these alleged breaches. SAC ¶¶ 172-216. As demonstrated below, Defendant is entitled to summary judgment on all of Commerzbank's claims.

## LEGAL STANDARD

"Summary judgment is appropriate if 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Simon v. City of N.Y.*, 893 F.3d 83, 91-92 (2d Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). "The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact." *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013). "A fact is material if it might affect the outcome of the suit under the governing law, and a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18, 25 (2d Cir. 2015). However, "where the burden of proof at trial would fall on the nonmoving party, the moving party can shift the initial burden by pointing to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018). "In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Simsbury-Avon Pres. Soc'y LLC v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009).

As courts, including this one, have consistently recognized, the Second Circuit has held that to prevail on claims against an RMBS trustee like those asserted here, a plaintiff must prove

the trustee's alleged misconduct "loan-by-loan and trust-by-trust." *E.g.*, *Phoenix v. DB*, 172 F. Supp. 3d at 713 (quoting *PABF v. BNYM*, 775 F.3d at 162). Thus, to survive summary judgment, "plaintiffs cannot rely on generalized proof;" rather "[p]laintiffs must prove that they have evidence to support their claims loan-by-loan and trust-by-trust." *Phoenix v. BNYM*, 2017 WL 3973951, at *8-9.

## ARGUMENT

## I.   COMMERZBANK LACKS STANDING TO ASSERT MANY OF ITS CLAIMS

### A.   Commerzbank Lacks Standing as to Certificates It Sold

Commerzbank sold 27 of the Certificates before it commenced this action (such Certificates, the "Sold Certificates"). ¶ 42. Commerzbank has no evidence that any buyer agreed that Commerzbank would retain litigation claims that may have arisen before the sale. ¶ 43. Thus, to survive summary judgment, Commerzbank must come forward with evidence showing that— notwithstanding the absence of an agreement with the buyers—Commerzbank retained litigation claims relating to the Sold Certificates. Commerzbank cannot do so.

"There is no uniform law controlling the assignment of the accompanying litigation rights when [RMBS] certificates are transferred." *Royal Park Invs. SA/NV v. U.S. Bank N.A.*, 324 F. Supp. 3d 387, 398 (S.D.N.Y. 2018). For example, under New York General Obligations Law § 13-107(1), unless the parties agree otherwise, any claims against a trustee that accrued while a seller held the certificates are automatically transferred to the buyer. *See Okla. Police Pension & Ret. Sys. v. U.S. Bank N.A.*, 986 F. Supp. 2d 412, 417-18 (S.D.N.Y. 2013) (Koeltl, J.) (granting summary judgment for trustee on claims brought by former holder based on N.Y. Gen. Oblig. Law § 13-107). When determining the jurisdiction whose law governs a sale, New York courts apply a "grouping of contacts" analysis to determine "which [jurisdiction] has 'the most significant relationship to the transaction and the parties.'" *Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*,

84 N.Y.2d 309, 317 (1994).  To perform the analysis, courts examine many factors, including: (i) the place of contracting; (ii) the place of negotiation; (iii) the place of performance; (iv) the location of the subject matter; and (v) the domicile or place of business of the contracting parties. *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-CV-4394, 2017 WL 1331288, at *7 n.8 (S.D.N.Y. Apr. 4, 2017).  Other than evidence of its own domicile, Commerzbank has no evidence concerning these factors.  ¶ 44.

Indeed, although this case is nearly three years old and fact discovery is complete, Commerzbank does not know who bought the Sold Certificates.  Commerzbank admits that it has no idea who the buyers were because it "lacks any information regarding whether the [broker dealers listed in its interrogatory responses] purchased the certifications [sic] for their own accounts or ultimately for a client."  ¶ 44.1; *cf. Royal Park Invs.*, 2017 WL 1331288, at *6 (describing how RMBS are "traded over-the-counter among entities located in … different countries through geographically dispersed broker-dealers located in various parts of the world").  Commerzbank did not seek any of this information in discovery.

Without at least evidence of who bought the Sold Certificates and where they were domiciled, Commerzbank cannot show what law governs those sales, let alone that they were governed by the laws of a jurisdiction pursuant to which litigation claims are not automatically transferred to the buyer.  *See Racepoint Partners, LLC v. JPMorgan Chase Bank*, No. 06-cv-2500, 2006 WL 3044416, at *4 (S.D.N.Y. Oct. 26, 2006) (dismissing action because allegations insufficient to show whether New York law governed transfers).  Thus, the Court should grant Defendant summary judgment on all claims relating to the Sold Certificates.  *See Hurley v. Tozzer, Ltd.*, No. 15 Civ 2785, 2018 WL 1087946, at *3 (S.D.N.Y. Feb. 26, 2018) (Daniels, J.) (granting defendant's motion for summary judgment because "[p]laintiff has not presented evidence . . .

sufficient to raise a triable issue of fact as to his standing . . . ."); *cf. Yeager v. Fort Knox Sec. Prods.*, 672 F. App'x 826, 831 (10th Cir. 2016) (granting defendant's motion for summary judgment and rejecting plaintiff's argument that its assignment was limited and it retained certain rights: "To prevent summary judgment, he must go beyond this bare assertion and cite actual evidence in the record supporting this statement. He fails to do so here . . . .").

### B.   Commerzbank Lacks Standing as to Certificates It Never Held

Commerzbank also lacks standing to assert claims relating to the two Certificates on Ex. 28 because it never held those Certificates.  ¶ 45.  To the extent Commerzbank claims it was assigned litigation claims relating to those Certificates, any such assignment is void because it was champertous under New York Judiciary Law § 489.  *See Justinian Capital SPC v. WestLB AG*, 28 N.Y.3d 160, 170-71 (2016).

## II.   MOST OF COMMERZBANK'S CLAIMS ARE TIME-BARRED

Under New York's borrowing statute, CPLR § 202, Commerzbank was required to file its claims "within the shorter of either: 1) the New York statute of limitations; or 2) the statute of limitations in the jurisdiction in which the claim accrued."  *Commerzbank AG v. Deutsche Bank Nat'l Tr. Co.*, 234 F. Supp. 3d 462, 467 (S.D.N.Y. 2017) (Koeltl, J.) ("*Commerzbank v. DB*"). Most of Commerzbank's claims are time-barred under one or both of those statutes of limitations.

### A.   Applicable Filing Dates for Commerzbank's Claims

Commerzbank has asserted various categories of claims, some in the original complaint on December 23, 2015, and some for the first time in the SAC on November 30, 2017.

In the original complaint and the First Amended Complaint ("FAC"), Commerzbank alleged that (i) based on widespread allegations of R&W breaches, Defendant had, and breached, duties to investigate whether there were R&W breaches in the Trusts and to declare EODs in every Trust, and (ii) based on widespread allegations that servicers were (a) failing to address incomplete

mortgage/collateral files and instead "robo-signing" missing loan documents to foreclose on mortgaged properties and (b) engaging in other misconduct, Defendant had, and breached, a duty to declare EODs in every Trust.  *See generally* FAC (ECF No. 22).

In the November 2017 SAC, Commerzbank added new claims based on new allegations that Defendant breached its post-EOD duties arising from the following EODs that Defendant had declared well before Commerzbank filed the original complaint.  SAC ¶¶ 125-28.  First, between 2008 and 2010, Defendant notified investors that EODs occurred in eight Trusts (affecting fourteen Certificates) because losses or delinquencies on loans in the Trusts had exceeded the contractually specified threshold (the "Loss EODs").  ¶ 58.  Second, in 2012, Defendant notified investors that EODs occurred in four Trusts (affecting four Certificates) because a rating agency downgraded the ratings of one of those Trusts' loan servicers, Ocwen Loan Servicing LLC (the "2012 Downgrade EODs").  ¶ 62.  In 2014, Defendant notified investors that a second set of EODs occurred in those four Trusts because Ocwen's ratings were downgraded by another rating agency (the "2014 Downgrade EODs" and, with the Loss EODs and the 2012 Downgrade EODs, the "Declared EODs").  ¶ 101.

These new claims concerning Declared EODs do <u>not</u> relate back to the earlier pleadings because neither the original complaint nor the FAC put Defendant on notice of any claims relating to the Declared EODs.  *See*, *e.g.*, *Espinosa v. Delgado Travel Agency, Inc.*, No. 05 Civ. 6917, 2006 WL 2792689, at *3 (S.D.N.Y. Sept. 27, 2006) (no relation back where amended pleading contains "new factual allegations" that "focus on events, dates, and people that were never mentioned in the original complaint."); *see also Goldman v. Barrett*, 733 F. App'x 568, 570 (2d Cir. 2018) (affirming dismissal, "[a]n amendment will not relate back if it sets forth a new set of operational facts; it can only make more specific what has already been alleged.").

### B.      Most of Commerzbank's Claims Are Untimely Under German Law

This Court has already held that Commerzbank's claims relating to the Commerzbank Certificates, the Eurohypo Certificates, the Palmer 3 Certificates (that accrued after their transfer to Commerzbank)[9] and the Barrington 2 Certificates (that accrued after their transfer to Commerzbank) accrued in Germany.  *See Commerzbank v. DB*, 234 F. Supp. 3d at 468-71 (holding all such claims "must be timely under German law").  As demonstrated below, with the exception of the newly added claims arising from the 2014 Downgrade EODs, all claims that accrued in Germany are time-barred under Germany's 3-year statute of limitations.

### 1.      Germany's 3-year statute of limitations begins to run at the end of the year when the plaintiff either knew, or in the absence of gross negligence would have known, of the facts underlying its claims

Under German law, Commerzbank's claims are governed by a 3-year limitations period, which "begins to run at the end of the calendar year in which 1) the claim arose and 2) the plaintiff either has knowledge of the circumstances giving rise to the claim and the identity of the defendant, or would have had such knowledge but for gross negligence."  *Id.* at 472 (quoting *IKB Deutsche Industriebank AG v. McGraw Hill Fin., Inc.*, 634 F. App'x 19, 22 (2d Cir. 2015)).  "[T]he standard requires that the plaintiff possess sufficient information to 'be able to formulate a consistent and coherent statement of the claim.'"  *Id.*  Thus, to trigger the running of the German statute of limitations, "a plaintiff need not know [(or be grossly negligent in failing to know)] all the relevant details or have conclusive proof available; knowledge of the factual circumstances underlying the claim [(or gross negligence in failing to have such knowledge)] is sufficient."  *Id.*

---

[9] Commerzbank's claims relating to Palmer 3 Certificates that accrued before their transfer to Commerzbank are time-barred under New York law.  *See infra* § II.C.3.

Here, Commerzbank's claims are time-barred under German law because it had (or was grossly negligent in failing to have) knowledge of the factual circumstances underlying (i) all claims asserted in the FAC and concerning the Loss EODs before January 1, 2012 (*i.e.*, beginning of the third calendar year before the original complaint was filed) and (ii) all claims concerning 2012 Downgrade EODs before January 1, 2014 (*i.e.*, beginning of the third calendar year before the SAC was filed).[10]

Commerzbank contends that Defendant's alleged breaches caused Commerzbank "hundreds of millions of dollars in losses."  SAC ¶ 15.  According to Commerzbank, the losses supposedly caused by Defendant's alleged breaches include losses due to the decline in market value of the Certificates, and all realized, and projected future, losses of principal and interest on the Certificates.  ¶ 49.  Commerzbank clearly knew of these losses well before January 1, 2012— indeed, by at least the end of 2011, Commerzbank knew that (i) ███████████████████ ██████████████████████████████████████; (ii) there were a significant amount of delinquent and defaulted mortgage loans in all Trusts; (iii) there were realized losses on most of the Certificates; and (iv) future losses were projected, including by the major rating agencies, on all the Certificates.  ¶ 50.

And Commerzbank's complaint, itself, demonstrates that Commerzbank could have "formulate[d] a consistent and coherent statement of [its] claim" before January 1, 2012 because virtually every allegation is based on news articles, lawsuits, and government investigations that were publicly available before January 1, 2012.  ¶¶ 56.21, 57.6 (setting forth relevant allegations).

---

[10] As Commerzbank first asserted claims concerning the Loss EODs in the SAC, the German limitations cut-off is also January 1, 2014, but the evidence shows that Commerzbank had the requisite knowledge to start the German limitations period running on those claims before January 1, 2012.

Indeed, in 2011, other investors commenced actions against RMBS trustees based on the same types of allegations made in this action (*i.e.*, based on widespread allegations, the trustee was supposedly required to take action).[11]  ¶ 65.  Moreover, *American Banker*, which Commerzbank recognizes as a "banking industry publication" (SAC ¶ 133), published articles about those lawsuits in 2011, examining the underlying litigation strategy, and explaining how RMBS investors could sue other RMBS trustees for similar supposed breaches.  ¶ 66.

Thus, because Commerzbank knew of its losses and could have formulated a coherent statement of claims against Defendant before 2012, the only remaining question is whether—by January 1, 2012—Commerzbank also knew (or was grossly negligent in failing to know) of the factual circumstances underlying the purported breaches that Commerzbank now alleges caused its losses.  As demonstrated below, the answer is clearly yes.

### 1. Germany's statute of limitations requires a plaintiff to investigate its potential claims

As set forth in the Affidavit of Prof. Dr. Mathias Rohe submitted herewith ("Rohe Aff."), Germany's statute of limitations imposes an affirmative duty on a plaintiff to investigate its potential claims.  *See* Rohe Aff. ¶¶ 39-42.[12]  This duty is triggered when (i) the plaintiff is presented with evidence, including circumstantial evidence, that suggests a potential claim; (ii) there is a readily available means of gaining further information regarding the claim; and (iii) the investigation would yield sufficient information to state the claim and could be conducted without disproportionate cost.  *Id.*  Once this duty has been triggered, the plaintiff must consult sources of

---

[11] The court granted the trustee summary judgment in one of those actions, two were voluntarily dismissed, and one is still pending in New York state court (although most claims have been dismissed).  ¶ 65.

[12] The Rohe affidavit addresses the German law relevant to this motion.  *See* Fed. R. Civ. P. 44.1

relevant information that are reasonably available to it.  *Id.*  Where the plaintiff is a sophisticated investor, German law imposes a heightened duty to investigate.  *Id.*  Similarly, as the value of the potential claims increases, so does the thoroughness of the investigation the plaintiff is obligated to perform.  *Id.*

Commerzbank is a sophisticated financial institution.  ¶¶ 51-53.  In 2011, it was the second-largest bank in Germany, and it had more than €661 billion in assets and approximately €747 million in profits.  *Id.*  Furthermore, this action seeks to hold Defendant responsible for "hundreds of millions dollars in losses."  SAC ¶ 15.  As set forth below—long before 2012— Commerzbank knew Defendant was not taking the actions Commerzbank now posits were required.  And, to the extent Commerzbank disingenuously contends otherwise, its claims are still untimely because it easily could have confirmed Defendant was not taking those actions by simply asking.  ¶¶ 54-55.

> **2.      Commerzbank has conceded that the factual circumstances underlying Defendant's alleged breaches were "apparent" before the German limitations cut-off**

Commerzbank sold 17 Certificates with a par amount of $151 million in November 2011. ¶ 42.1.  Commerzbank alleges that when those sales were made, it was "apparent" that Defendant's supposed breaches caused Commerzbank's related losses:

> [Defendant]'s breaches with respect to the Sold Certificates significantly reduced the sale price Commerzbank ultimately received when it divested itself of those certificates.  When the sales were made [in November 2011] it was apparent that [Defendant] had breached its duties and would not take steps to remedy its failures.

SAC ¶ 168.  This is a "judicial admission" by which Commerzbank is "bound throughout the course of the proceeding."  *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003).

As Commerzbank alleges that by November 2011 "it was apparent that [Defendant] had breached its duties and would not take steps to remedy its failures," Commerzbank undeniably knew, or was grossly negligent in failing to know, of the factual circumstances underlying Defendant's alleged breaches before 2012.  Accordingly, Commerzbank's judicial admissions, alone, provide a sufficient basis to hold that all Commerzbank's claims that accrued in Germany— or, at a minimum, its claims concerning the 17 Certificates sold in 2011—are time-barred.  *See Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985) (affirming summary judgment for defendant and finding "the district court properly disregarded [plaintiff's] affidavits seeking to controvert its own pleading").

> **3.    The evidence confirms that Commerzbank knew, or was grossly negligent in failing to know, of the factual circumstances underlying Defendant's alleged breaches before the German limitations cut-off**

Consistent with Commerzbank's dispositive judicial admission, the evidence and Commerzbank's own allegations conclusively establish that before 2012 (and 2014 for the 2012 Downgrade EODs), Commerzbank knew, or was grossly negligent in failing to know, of the factual circumstances underlying Defendant's purported breaches.  They fall into three categories.

> a.    Purported breaches arising from allegations of false R&Ws

Commerzbank alleges that "[b]eginning in 2009 or 2010, facts began to emerge publicly demonstrating that Sponsors and Originators had violated [R&Ws] provided in connection with the Covered Trusts. . . [h]aving caught wind of the problem, [Defendant] had statutory and common law duties requiring them to 'nose to the source' [(*i.e.*, investigate)]" and put back any defective loans.  SAC ¶¶ 78-79, 91-97, Ex. F.  Similarly, Commerzbank alleges that the high rate of defaults on loans in the Trusts and the rating downgrades on the Certificates triggered an obligation on Defendant to "carefully investigate[] these issues . . . and take[] action to address these issues."  *Id.* ¶¶ 89-90.  Commerzbank also asserts that, in light of the allegations of

widespread R&W breaches, Defendant was required to declare EODs in every Trust. *Id.* ¶¶ 78, 89-99, 114, 120-24.

The record is clear that, long before 2012, Commerzbank was aware of the allegations of widespread R&W breaches, the defaults in the Trusts and the rating downgrades on the Certificates. ¶¶ 50, 56.[13] The record is equally clear that, before 2012, Commerzbank knew that— absent direction from the contractually specified percentage of investors—Defendant was neither investigating R&W breaches nor pursuing repurchase actions against Warrantors. ¶ 56.



¶ 56.17.

[14] ¶ 56.19. This would have been unnecessary if Commerzbank believed that Defendant had been investigating on its own. And every month investors, including Commerzbank, received remittance reports, which disclosed that virtually no loans had been repurchased by Warrantors. ¶ 56.20. Finally, to the extent Commerzbank disingenuously claims it did not know that—absent investor direction— Defendant was neither investigating whether loans breached R&Ws nor pursuing repurchase

---

[13] The SAC also references abundant pre-2012 government reports, lawsuits and news articles regarding allegations of widespread R&W breaches. ¶ 56.21. In addition, the defaults were reported in the monthly remittance reports sent to investors and the rating agencies publicly announced the downgrades. ¶ 50.

[14] ██████████████████████████████████████████████████████████

██████████ ¶¶ 56.19.2-56.19.4.

actions, Commerzbank could have confirmed that was the case by simply asking Defendant. ¶¶ 56.22-56.23.

Commerzbank also clearly knew that Defendant had not declared any EODs relating to alleged R&W breaches, because neither Defendant nor any other deal party ever notified investors that any such EOD had occurred.  ¶¶ 56.24-56.25.  Thus, the evidence shows that before 2012, Commerzbank knew, or was grossly negligent in not knowing, of the factual circumstances underlying Defendant's purported breaches relating to alleged R&W breaches.

> b.  Purported breaches arising from allegations of incomplete
> mortgage files, servicer robo-signing and other misconduct

Commerzbank contends that—due to widespread allegations that servicers (i) "failed to . . . cause the repurchase or substitution of loans with incomplete documentation" and instead "fabricated the documents necessary to foreclose" (*i.e.*, "robo-signing") and (ii) were "cheat[ing]" borrowers and the Trusts after borrower defaults, including by not adequately maintaining REO properties—Defendant was required to declare EODs.  SAC ¶¶ 101-13, 120-24, 129-138, Exs. G-H.  In an attempt to support its claims, Commerzbank cites to three memoranda that Defendant sent to servicers of RMBS trusts, including the Trusts, in August 2007, July 2008 and October 2010 regarding the allegations of robo-signing, inadequate REO property maintenance and/or other post-borrower default servicer conduct.  *Id.* ¶¶ 135-37.  The record is clear that Commerzbank was aware of these allegations well before 2012.  ¶ 57.  This is not surprising because on October 25, 2010, Defendant sent a notice to investors in RMBS trusts, including the Trusts, advising them of the servicing allegations and attaching the three memoranda to servicers that Commerzbank relies upon in its complaint.  ¶ 57.5.  Defendant also posted that notice, with all attachments, on its investor reporting website where it has been available for review by investors ever since.  ¶ 57.5.4.  The October 25, 2010 notice expressly informed investors that if

they wanted Defendant to take any action concerning the servicing allegations (*e.g.*, investigate), they should direct Defendant to do so in accordance with the GAs. ¶ 57.5.3.[15]

And Commerzbank clearly knew that Defendant had not declared any EODs relating to the alleged servicing misconduct, because neither Defendant nor any other deal party ever notified investors that any such EOD had occurred.  ¶ 57.9.  Accordingly, the evidence shows that before 2012, Commerzbank knew, or was grossly negligent in not knowing, of the factual circumstances underlying Defendant's purported breaches relating to allegations of incomplete mortgage loan files, servicer robo-signing and other post-borrower default misconduct.

       c.     <u>Purported breaches arising from the Loss EODs and 2012<br>Downgrade EODs</u>

Following the occurrence of each Declared EOD, Defendant informed investors that they could direct Defendant to take further action with respect to the EOD. ¶¶ 58, 62, 101. Commerzbank never requested that Defendant take any further action with respect to those EODs. ¶ 106.  However, Commerzbank now alleges those decisions breached Defendant's post-EOD "prudent person" duty.  Specifically, Commerzbank now contends that, as a result of each Declared EOD and without any investor approval, Defendant purportedly had, and breached, a duty to expend significant Trust funds to (i) investigate each servicer and then "provide notice of and take steps to remedy the Master Servicers' and Servicers' failure to adhere to prudent servicing standards" and (ii) investigate all defaulted loans in the Trust to "determine[] whether a responsible party was required to repurchase such loans" and, with respect to any defective loan uncovered by

---

[15] According to Commerzbank, allegations concerning robo-signing and the other purported servicing issues were also publicly disclosed before 2012 in "high profile government investigations, lawsuits and press coverage." SAC ¶¶ 101-113, 133, Ex. G-H; *see also* ¶ 57.6.

the investigation, "provide notice and enforce the repurchase obligations of the Sponsors and Originators."  SAC ¶¶ 125-28, 179-80, 189-90.

Defendant notified investors of the Loss EODs between August 2008 and September 2010. ¶ 58.[16]  The EOD notices, themselves, indicated that Defendant was not taking further action absent investor direction.  *Id.*  Even putting that aside, the record is clear—as set forth above—that Commerzbank knew, or was grossly negligent in not knowing, that after the Loss EODs Defendant was not investigating alleged R&W breaches or servicing conduct absent direction from the contractually specified percentage of investors.  Again, if Commerzbank was unsure, it could have simply asked Defendant.  ¶¶ 60-61.  Thus, there can be no reasonable dispute that before 2012, Commerzbank knew, or was grossly negligent in not knowing, that as a result of the Loss EODs, Defendant was not taking the actions Commerzbank now asserts were required.  For the same reasons, before 2014, Commerzbank knew, or was grossly negligent in not knowing, that Defendant did not take those actions after the 2012 Downgrade EODs.[17]

Accordingly—with the exception of claims concerning the 2014 Downgrade EODs—all of Commerzbank's claims relating to the Commerzbank Certificates, Eurohypo Certificates, Palmer 3 Certificates and Barrington 2 Certificates (after transfer to Commerzbank) are time-barred.  *See*, *e.g.*, *IKB*, 634 F. App'x at 22 (affirming dismissal of claims as untimely under German law); *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig. (Silver Elms CDO v. Bank of Am. Corp.)*, No. 2:11-ML-02265-MRP, 2014 WL 3529686, at *5 (C.D. Cal. July 14, 2014) (dismissing claims as untimely under German law); Rohe Aff. ¶¶ 33-38, 48.

---

[16] Seven of the eight Loss EODs occurred with respect to Eurohypo or Palmer 3 Certificates (after their transfer to Commerzbank) (¶ 58.10) and, thus, Commerzbank's related claims accrued in Germany.

[17] All Downgrade EODs occurred while the relevant Certificates were held by Commerzbank.  ¶ 62.3.

This is not the first time Commerzbank has filed untimely claims relating to the Certificates.  In December 2013, Commerzbank commenced a fraud action against, *inter alia*, the depositors, sponsors, and underwriters for 51 of the 74 Certificates.  *See Commerzbank v. UBS*, 2015 WL 3857321.  In that action, as here, Commerzbank's claims were based on allegations that the sponsors and originators made "misrepresentations or omissions regarding the quality or characteristics of the mortgage loans underlying the securitizations [(*i.e.*, made false R&Ws concerning loans in the Trusts)]."   *Id.* at *1.   On June 17, 2015, the court dismissed Commerzbank's claims as time-barred because the court found that Commerzbank's "duty of inquiry was unquestionably triggered long prior to December 2011." *Id.* at *2-3.  As shown above, the same result is compelled here.

### C.   Many of Commerzbank's Claims Are Also Untimely Under New York Law

Even if Commerzbank's claims were timely under German law, many would be time-barred under New York's six-year statute of limitations, which begins to run on the date of alleged breach.[18]

### 1.   Claims that Defendant breached its post-EOD duties relating to the Loss EODs are time-barred under New York law

Commerzbank's claims relating to the Loss EODs, which were first asserted in the SAC, are untimely under New York law because they accrued before November 30, 2011 (*i.e.*, more than 6 years before the SAC).  Commerzbank contends Defendant breached its prudent person

---

[18] New York's statutes of limitations for Commerzbank's claims are: (i) six years for breach of contract (N.Y. C.P.L.R. § 213(2)) and violation of the TIA (*Cruden v. Bank of N.Y.*, 957 F.2d 961, 967 (2d Cir. 1992)); and (ii) three years for breach of fiduciary duty (*IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132 (2009)) and negligence (N.Y. C.P.L.R. § 214(4))).

duty arising from the Loss EODs by deciding to seek investor direction before taking further action with respect to those EODs. Defendant notified investors of the Loss EODs between August 2008 and September 2010, and its decision to seek investor direction as to each Loss EOD was reflected in those notices. ¶ 58. Accordingly, as Defendant's alleged breaches relating to the Loss EODs occurred before November 2011, Commerzbank's claims based on those purported breaches are time-barred under New York law. *See Phoenix v. DB*, 172 F. Supp. 3d at 708 (dismissing claims as time-barred).[19]

### 2. Claims that Defendant breached its pre-EOD duties relating to certain alleged R&W breaches are time-barred under New York law

On occasion, Defendant received letters from other parties identifying specific loans in a Trust that allegedly breached one or more R&Ws (the "Alleged R&W Loans"). ¶ 67. Commerzbank contends that Defendant breached its contractual duties following its receipt of those letters. Those claims are meritless. *See infra* § VII. And many are also time-barred under both German law (*see supra* § II.B) and, as set forth below, New York law.

Defendant received notice of the Alleged R&W Loans on Reyes Ex. I before December 23, 2009 (*i.e.*, 6 years before the original complaint). ¶ 68. Accordingly, any claim that Defendant breached its pre-EOD contractual duties to give notice of those Alleged R&W Loans or take enforcement action with respect thereto is time-barred under New York law. *See Fixed Income*, 314 F. Supp. 3d at 558 ("Plaintiffs' claims would be time barred if [the trustee] acquired knowledge of the alleged [R&W] breaches . . . six years before they filed their Complaint").

---

[19] Even if Commerzbank's claims relating to the eight Loss EODs did relate back to the original complaint, claims relating to five of those EODs would still be time-barred under New York law because those six EODs occurred more than six years before Commerzbank filed this action. ¶¶ 58.3-58.7.

**3.      Any claims that arose under the Palmer 3 Certificates before their transfer to Commerzbank are time-barred under New York law**

The Palmer 3 Certificates were transferred to Commerzbank before December 23, 2009 (*i.e.*, more than 6 years before the original complaint).  ¶ 69.  Accordingly, any claims that accrued while those Certificates were in the Palmer 3 asset portfolio are time-barred under New York law.

**III.   COMMERZBANK'S CLAIMS THAT DEFENDANT BREACHED ITS DUTIES BY NOT PURSUING REPURCHASE CLAIMS AGAINST THE BANKRUPT WARRANTORS FAIL**

RMBS trustees cannot be liable for failing to enforce R&W claims if the Warrantor filed for bankruptcy more than six years before plaintiff sued, because (i) any claims premised on trustee discovery of R&W breaches *before a bankruptcy bar date* would be time-barred under New York's 6-year contract statute of limitations, and (ii) the trustee would have been precluded from pursuing R&W breaches it discovered *after a bankruptcy bar date*, making it impossible to prove breach, causation, or damages for the trustee's failure to act.  *See Fixed Income*, 314 F. Supp. 3d at 557–58; Order at 15, *BlackRock Balanced Capital Portfolio (FI) v. Deutsche Bank Nat'l Tr. Co.*, No. 14-CV-9367 (S.D.N.Y. Feb. 16, 2017), ECF No. 215; *Phoenix v. DB*, 172 F. Supp. at 707-08.  Here, each of the seventeen Warrantors on Ex. 31 filed for bankruptcy more than six years before this case was filed on December 23, 2015 (¶ 70), and therefore claims that Defendant failed to enforce R&W breaches against those Warrantors fail.

Moreover, Commerzbank cannot escape these limitations by challenging Defendant's handling of R&W claims asserted in the bankruptcies.  Claims challenging the sufficiency of proofs of claim that Defendant filed before the 2007-2009 bankruptcy bar dates (*see* Ex. 31) would be time-barred, and claims challenging Defendant's decisions to settle those bankruptcy claims necessarily would be based upon speculative evidence, and would be insulated from challenge because approved by a bankruptcy court.  *See Fixed Income*, 314 F. Supp. at 559-60.

## IV.  COMMERZBANK'S CLAIMS THAT DEFENDANT BREACHED ITS DUTIES BY NOT PURSUING PREVIOUSLY SETTLED REPURCHASE CLAIMS FAIL

The three Trusts on Ex. 64 contain loans originated by Fremont Investment & Loan ("Fremont").  ¶ 71.  All claims that Defendant breached its duties by not pursuing repurchase claims against Fremont fail as a matter of law because on July 17, 2008, Defendant and Fremont entered into a settlement agreement pursuant to which Defendant released any such claims.  ¶ 72. That settlement was approved by investors holding more than 66 2/3% of the voting rights in those Trusts, and the GAs for those Trusts state that Defendant shall not be liable for any action taken or omitted by it in good faith at the direction of investors holding 25% or more of the voting rights. *Id.*  In addition, any claim concerning the settlement is time-barred under New York law because it occurred in 2008, more than 6 years before the original complaint.  Thus, summary judgment should be granted on Commerzbank's claims that Defendant breached its duties by not pursuing claims against Fremont.

## V.  COMMERZBANK'S CLAIMS THAT DEFENDANT BREACHED ITS DUTIES BY NOT PURSUING TIME-BARRED REPURCHASE CLAIMS FAIL

It is well settled that claims by an RMBS trustee against warrantors relating to R&W breaches accrue on the closing date of the RMBS transaction.  *See Deutsche Bank Nat'l Tr. Co. v. Flagstar Capital Mkts. Corp.*, No. 96, 2018 WL 4976777, at *3, *7-8 (N.Y. Oct. 16, 2018).  New York's First Department has held that, under New York's borrowing statute, claims asserted by DBNTC, as RMBS trustee, against a warrantor must be timely under California's 4-year statute of limitations.[20]  *See Deutsche Bank Nat'l Tr. Co. v. Barclays Bank PLC*, 66 N.Y.S.3d 472, 474 (1st Dep't 2017), *appeal filed*.  Accordingly, any claims that DBNTC breached its duties by not pursuing repurchase claims after the fourth anniversary of a Trust's closing date fail.

---

[20] DBNTC administers RMBS trusts, including the Trusts, from California.  ¶ 73.

In particular, any claims that DBNTC breached its duties by not pursuing repurchase claims with respect to the Alleged R&W Loans on Reyes Ex. J fail because DBNTC received notice of those alleged R&W breaches more than 4 years after the relevant Trust closing date.   ¶ 74. Similarly, Commerzbank's claim that after the Declared EOD on Ex. 32, DBNTC breached its post-EOD duties by not pursuing repurchase claims as to loans in the relevant Trust fails because that EOD occurred more than 4 years after the Trust's closing date.  ¶ 76.  Finally, even if New York's 6-year (as opposed to California's 4-year) statute of limitations were applicable to DBNTC's claims against Warrantors, Commerzbank's claims that DBNTC breached its duties by not pursuing repurchase claims with respect to the Alleged R&W Loans on Reyes Ex. K would still fail because DBNTC received the notices more than 6 years after the relevant Trust closing dates.  ¶ 75.

## VI.   COMMERZBANK'S TORT CLAIMS FAIL

Recent dispositive authority confirms that Commerzbank's tort claims fail as a matter of law.  In October 2018, New York's First Department issued a controlling decision on New York law, affirming the lower court's holding that the economic loss doctrine bars fiduciary duty and conflict of interest claims against an RMBS trustee like those asserted here because the damages sought arise from the trustee's contractual obligations.  *See Blackrock Balanced Capital Portfolio (FI) v. U.S. Bank N.A.*, No. 652204/2015, 2018 WL 452001, at *5 (N.Y. Sup. Ct. N.Y. Cty. Jan. 17, 2018), *aff'd*, 165 A.D.3d 526, 528 (1st Dep't 2018); *see also V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010) (federal courts are "bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion.").  Similarly, the Second Circuit recently affirmed a decision by Judge Buchwald ruling that fiduciary duty claims against an RMBS trustee like those asserted here "are barred by the economic loss doctrine."  *Triaxx Prime CDO 2006-1, Ltd. v. Bank of N.Y.*

*Mellon*, No. 16 Civ. 1597, 2018 WL 1417850, at *7 (S.D.N.Y. Mar. 8, 2018), *aff'd*, 741 F. App'x 857 (2d Cir. 2018).  Thus, Defendant is entitled to summary judgment dismissing Commerzbank's tort claims.

Even if those claims were not barred by the economic loss doctrine, they would still fail because Commerzbank lacks sufficient evidence to support them.  *See infra* § VIII; *see also Page Mill Asset Mgmt. v. Credit Suisse First Bos. Corp.*, No. 98 CIV 6907 MBM, 2000 WL 877004, at *2 (S.D.N.Y. June 30, 2000) (granting summary judgment for trustee, "the existence of a conflict of interest cannot be inferred solely from a relationship between an issuer and an indenture trustee that is mutually beneficial and increasingly lucrative").

## VII.   COMMERZBANK'S PRE-EOD CLAIMS FAIL[21]

### A.   Defendant Had No Pre-EOD Duty to Investigate

Commerzbank incorrectly contends that Defendant breached a pre-EOD contractual duty to investigate whether loans in the Trusts breached loan-level R&Ws when, according to Commerzbank, "facts began to emerge that demonstrated that the Sponsors and Originators regularly included loans in securitizations that [breached R&Ws]."  SAC ¶¶ 100, 110, 115-17. Before an EOD, the duties of an RMBS trustee are strictly limited to those explicitly found in the agreements governing the trust.  ¶ 12; *see also Elliott*, 838 F.2d at 70-71; *Meckel*, 758 F.2d at 816.

---

[21] Commerzbank has not pleaded, and is expressly not asserting, any claims against Defendant for breaching any pre-EOD "document delivery-related duties," which includes any claims relating to R&Ws by sponsors/originators concerning the delivery of complete mortgage loan files. SAC ¶¶ 35, 101-08.  In any event, such claims would fail for at least two independently sufficient reasons:  they are time-barred and Commerzbank lacks supporting evidence.  *See Phoenix v. DB*, 172 F. Supp. 3d at 709 ("Claims for document delivery failures are barred by the statute of limitations.").

And none of the GAs require Defendant to investigate anything absent direction and indemnity from a specified percentage of investors.  ¶ 14.

Here, Commerzbank has no evidence that Defendant received any such direction and indemnity requiring Defendant to investigate whether loans in a Trust contained R&W breaches. Defendant did receive the requisite direction and indemnity to institute repurchase litigation relating to the Trusts listed on Reyes Ex. N, and Defendant initiated those repurchase actions.  ¶ 87. Accordingly, summary judgment should be granted dismissing Commerzbank's claim that Defendant breached a pre-EOD duty to investigate.  *See Commerce Bank v. Bank of N.Y. Mellon*, 35 N.Y.S.3d 63, 65 (1st Dep't 2016) ("[T]he trustee of an RMBS . . . trust does not have a duty to 'nose to the source'").[22]

### B.  Defendant Did Not Breach a Pre-EOD Duty to Provide Notice of R&W Breaches or to Enforce Repurchase Obligations

Commerzbank alleges Defendant breached pre-EOD contractual duties to provide notice of loan-level R&W breaches and to enforce the Warrantors' repurchase obligations.  SAC ¶ 188. For the Trusts on Ex. 54 (the "Discovery-Only Trusts"), Defendant and other enumerated parties

---

[22] *See also BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, N.A.*, No. 14 Civ 9371, 2017 WL 3610511, at *7 (S.D.N.Y. Aug. 21, 2017) ("[B]ecause Defendant cannot be required to investigate under the parties' contracts, Defendant cannot be held liable for breach on the basis of constructive knowledge.") (Failla, J.); *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-CV-04394, 2018 WL 4682220, at *13 (S.D.N.Y. Sept. 28, 2018) ("all of the PSAs assure the Trustee that prior to an EOD it is not required to 'make any investigation' into the R&Ws unless it is formally requested to do so by one or more Certificate-holders") (Moses, M.J.); *VNB Realty, Inc. v. U.S. Bank, N.A.*, No. 2:13-04743, 2014 WL 1628441, at *6 n.3 (D.N.J. Apr. 23, 2014) (RMBS trustee has no duty to "nose to the source").

had a duty to provide notice of a loan-specific R&W breach to contractually specified parties only upon "discovery" of that breach. ¶ 77. For the Trusts on Ex. 55 (the "Discovery/Notice Trusts"), Defendant and other enumerated parties had a duty to provide notice upon either "discovery" or "receipt of written notice" of a loan-level R&W breach. ¶ 78. Accordingly, to survive summary judgment on its pre-EOD contract claims relating to R&Ws, Commerzbank must come forward with loan-specific evidence that Defendant discovered (or, for the Discovery/Notice Trusts, discovered or received written notice of) a material, loan-level R&W breach and failed to comply with its resultant contractual obligations. *See Phoenix v. BNYM*, 2017 WL 3973951, at *7-9 (granting summary judgment on pre-EOD claims and recognizing that "Plaintiffs' lack of loan- or Trust-specific proof relative to [trustee's] knowledge of any breach is fatal to their claims"); *W. & S. Life Ins. Co. v. Bank of N.Y. Mellon*, No. A1302490, 2017 WL 3392855, at *11 (Ohio C.P. Aug. 4, 2017) ("*W&S v. BNYM II*") ("poor loan performance . . . and other publicly available information do not provide a basis for 'discovery' of a loan-specific breach"). Commerzbank cannot do so.

Commerzbank is likely to argue that the "breach notices" that the Defendant received were "written notice" of R&W breaches. Not so. The breach notices received by Defendant contained allegations of breaches of R&Ws, and Defendant did not conduct any independent evaluation of whether such R&Ws were breached, nor was it required to do so.

### 1. Defendant complied with any notice obligations it had

For all Discovery-Only Trusts, Defendant is entitled to summary judgment on Commerzbank's claims that Defendant breached pre-EOD contractual duties to provide notice of R&W breaches because Commerzbank has no loan-specific evidence that Defendant "discovered" (*i.e.*, first obtained actual knowledge of) an R&W breach in any Trust. ¶ 80. *See, e.g.*, *Royal Park Invs. SA/NV v. HSBC Bank USA N.A.*, No. 14-CV-08175, 2017 WL 945099, at *6 (S.D.N.Y. Mar.

10, 2017) (Netburn, M.J.) ("The Court, however, reads 'discovery' as used in Section 2.03 to mean actual knowledge"); *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-CV-4394, 2016 WL 439020, at *6 (S.D.N.Y. Feb. 3, 2016) (Nathan, J.) ("Without actual knowledge of non-conforming loans, [Defendant] would have no obligation to require a Seller to substitute or repurchase the defective loan."); *Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*, 109 F. Supp. 3d 587, 603 (S.D.N.Y. 2015) (Scheindlin, J.) ("If, after discovery, plaintiffs cannot prove that HSBC had actual knowledge regarding the loans at issue here, HSBC may move for summary judgment."); *W&S v. BNYM II*, 2017 WL 3392855, at *9 ("discovery as used in [RMBS governing agreements] means actual knowledge"); *see also Royal Park Invs.*, 2018 WL 4682220, at *9 (Moses, M.J.) (recognizing that "discovery" in PSAs means "actual knowledge" and observing that "no such case has interpreted the term 'discovery,' as used in the PSAs, to mean either constructive knowledge or inquiry notice").

With respect to the Discovery-Only Trusts on Reyes Ex. L, Commerzbank may contend that Defendant's receipt of letters from other parties alleging loan-specific R&W breaches constituted "discovery" by Defendant of breaches. But those letters only show, at most, that Defendant "discovered" allegations made by another party; they do not show that Defendant had actual knowledge of an R&W breach. In any event, even if Commerzbank were correct that receipt of letters alleging R&W breaches constituted "discovery," Defendant would still be entitled to summary judgment because, in such instances, Defendant notified the relevant parties. ¶ 81. The evidence shows that when Defendant received a letter identifying one or more loans in a Trust that allegedly breached R&Ws (*i.e.*, the Alleged R&W Loans), Defendant notified the parties specified under the relevant GA—regardless of whether the Alleged R&W Loans were in a Discovery-Only

or a Discovery/Notice Trust.[23]  *Id.*  Accordingly, Commerzbank's claim that Defendant breached a pre-EOD contractual duty to provide notice of R&W breaches fails.  *See Phoenix v. BNYM*, 2017 WL 3973951, at *9 (granting summary judgment on pre-EOD claims).

### 2.    Defendant complied with any enforcement obligations it had

As a threshold matter, with respect to the Trusts on Reyes Ex. G, Commerzbank's claims that Defendant breached a pre-EOD contractual duty to enforce the Warrantors' repurchase obligations fail for the same reason as Commerzbank's pre-EOD notice claims relating to those Trusts:  Commerzbank has no loan-specific evidence that Defendant ever "discovered" or received written notice of, or even received a letter alleging, any R&W breach in those Trusts. ¶ 82.  Any claim that Defendant breached a pre-EOD duty to enforce repurchase obligations relating to Alleged R&W Loans fares no better.

Under the GAs for the Trusts on Ex 56, Defendant had no duty to enforce any repurchase obligations. ¶ 83.  Under the GAs for the Trusts on Ex. 57, Defendant had an enforcement duty only if certain conditions occurred (*e.g.*, "if the Trustee has received written notice from the Depositor directing the Trustee to pursue such remedies"), and there is no evidence these conditions were met. ¶ 84-85.  Accordingly, the Court should grant Defendant summary judgment on Commerzbank's pre-EOD R&W enforcement claims concerning the Trusts on Exs. 56 and 57. *See CFIP Master Fund, Ltd. v. Citibank, N.A.*, 738 F. Supp. 2d 450, 471-75 (S.D.N.Y. 2010) (granting summary judgment for trustee).

---

[23] With respect to Bankrupt Warrantors, there were instances when the bankruptcy/insolvency proceeding precluded Defendant from providing notice of alleged R&W breaches. *See infra* III; ¶ 81.3

Any remaining pre-EOD R&W enforcement claims relating to Alleged R&W Loans fail for other reasons:[24]

- The Alleged R&W Loans on Reyes Ex. U were either repurchased or paid in full. ¶ 86.

- For the Alleged R&W Loans on Reyes Ex. V, Commerzbank has no claim because by the time Defendant received notice of the alleged R&W breaches, Commerzbank no longer owned any Certificates issued by the Trust holding those loans. ¶ 91.

- For the Alleged R&W Loans on Reyes Ex. N, Defendant commenced repurchase lawsuits against the Warrantors after receiving the requisite direction from investors. ¶ 87.

- For the Alleged R&W Loans on Reyes Ex. T, after the Warrantor did not repurchase those loans, the parties that made the R&W breach allegations, which held sufficient certificates to direct Defendant, directed Defendant to enter into a tolling agreement with the relevant Warrantors. Defendant did so, and the statute of limitations on those potential claims remains tolled. ¶ 88. The GAs provide that "the Trustee shall not be liable with respect to any action taken, suffered, or omitted to be taken by it in good faith in accordance with the direction of the Holders of Certificates evidencing not less than [25.00%] of the Voting Rights of Certificates relating to the time, method and place of conducting any proceeding for any remedy

---

[24] For the sake of completeness, the Alleged R&W Loans identified in each category below include loans in the Trusts with respect to which Defendant had no duty to enforce repurchase obligations.

available to the Trustee, or exercising any trust or power conferred upon the Trustee." *Id.*

As set forth above, Defendant's receipt of letters from other parties alleging loan-specific R&W breaches did not provide Defendant actual knowledge that the alleged breaches in fact occurred. Absent direction and indemnity from a contractually specified percentage of investors, Defendant did not – and was not obligated to – (i) examine or re-underwrite Alleged R&W Loans to evaluate whether R&Ws were breached or (ii) institute repurchase litigation. ¶¶ 89-90.

### C. <u>In Any Event, Summary Judgment Should Be Granted on Commerzbank's Pre-EOD Claims Concerning R&Ws Because Defendant Believed in Good Faith That Its Practices Complied with the Governing Agreements</u>

The GAs provide that "the Trustee shall not be liable for any action taken, suffered or omitted by it in good faith and believed by it to be authorized or within its discretion or rights or power conferred upon it by this Agreement." ¶ 92. Here, it is undisputed that Defendant believed in good faith: (i) it had no duty to investigate whether loans in RMBS trusts breached R&Ws absent direction and indemnity, and (ii) it had no duty to commence repurchase litigation absent direction and indemnity permitting it to rely on unconfirmed allegations of an R&W breach. ¶¶ 93-95. Given the pertinent contract language and the numerous decisions holding that Defendant's interpretation is correct, it is apparent that Defendant's belief at the time was reasonable and in good faith. *See infra* VII.A-B. Indeed, Commerzbank's own actions and statements show that it agreed with Defendant's interpretation. *E.g.*, ¶¶ 56.15-56.19. Accordingly, Defendant's good faith belief independently requires summary judgment dismissing Commerzbank's pre-EOD R&W claims. *See CFIP*, 738 F. Supp. 2d at 473.

-36-

## VIII.   **COMMERZBANK'S POST-EOD CLAIMS FAIL**

### A.   **Commerzbank Lacks Evidence That Defendant's Post-EOD Duties Were Triggered by Purported Servicer or Issuer Breaches**

Commerzbank contends Defendant breached its duties for every Trust by not declaring EODs purportedly resulting from alleged breaches by servicers or issuers and thereafter acting as a "prudent person."[25]  SAC ¶¶ 101-13, 120-24, 129-38.  These claims fail because Commerzbank lacks adequate admissible, loan- or Trust-specific evidence that Defendant had "written notice" or "actual knowledge" of any such purported EOD, as necessary to trigger Defendant's post-EOD duties.

With respect to the PSA Trusts and one Indenture Trust, the PSAs generally define an EOD, insofar as relevant here, as having three elements: (i) material breach by a contractually specified servicer of its contractual duties;[26] (ii) written notice requesting that the material breach be cured or, under some GAs, a "Servicing Officer" of the servicer acquires actual knowledge of the material breach; and (iii) the material breach is not cured within a specified number of days after such notice or knowledge.  ¶ 96.[27]  Under the GAs for the other three Indenture Trusts, an

---

[25] Commerzbank alleges that Defendant breached a contractual duty, and, with respect to the Indenture Trusts, TIA § 315(b), by not giving notice of certain purported EODs.  Commerzbank further alleges that Defendant breached contractual and tort duties and, with respect to the Indenture Trusts, TIA § 315(c), by supposedly failing to act as a "prudent person . . . under the circumstances" after purported EODs.

[26] For example, many GAs specify that the material breach must be on the part of the master servicer, not the servicer, to trigger an EOD.  ¶ 96.3.

[27] For example, the PSA for HASC 2006-HE1 provides that an EOD occurs upon a "failure by the Master Servicer to duly observe or perform, in any material respect, any other covenants, obligations or agreements of the Master Servicer as set forth in this Agreement which failure continues unremedied for a period of 30

uncured breach by the issuer (*i.e.*, the statutory trust that issued the securities to investors), as opposed to a servicer, triggers the EOD.  ¶ 97.  The GAs provide that Defendant's post-EOD duties arise, depending on the Trust, <u>only if</u> a "Responsible Officer" of Defendant has "actual knowledge" that the EOD has occurred and/or if Defendant receives "written notice" thereof.  ¶ 99.

As set forth above, Commerzbank alleges that EODs occurred in every Trust because (i) the servicer of each PSA Trust breached its contractual duties by supposedly failing to give notice of R&W breaches, "robo-signing" instead of taking steps to remedy incomplete loan files and "cheat[ing] borrowers and the [Trusts] after default [by borrowers];" and (ii) the issuer of each Indenture Trust breached its duties by "fail[ing] to protect the trust estate" after supposedly learning that loans in those Trusts had materially incomplete loan files and breached R&Ws.

Commerzbank's claims that Defendant had, and breached, post-EOD duties supposedly arising from the alleged servicer or issuer breaches fail because Commerzbank lacks sufficient admissible, loan- or Trust-specific evidence showing (i) that an EOD occurred because a contractually specified servicer or issuer engaged in the alleged misconduct with respect to loans in any Trust,[28] <u>and</u> (ii) that Defendant had "actual knowledge" or "written notice" of any such EOD, as required to trigger its post-EOD duties.  ¶ 98.  *See Phoenix v. BNYM*, 2017 WL 3973951, at \*16-17 ("Because there is no evidence that [the trustee] received written notice or had actual knowledge of any Event of Default relative to these . . . trusts, [the trustee] was not subject to a prudent person duty," and its "motion relative to these [t]rusts is GRANTED."); *Commerce Bank*,

---

days after the date on which written notice of such failure, requiring the same be remedied, shall have been given to the Master Servicer by the Trustee or to the Master Servicer by the holders of Certificates evidencing 25.00% of the Voting Rights."  ¶ 96.1.

[28] Commerzbank has not deposed a single current/former employee of any servicer or issuer.

35 N.Y.S.3d at 64-65 (dismissing post-EOD claims against RMBS trustee where court determined written notice received by trustee "was not a notice of Event of Default; rather, it was a notice of events that, with time, might ripen into Events of Default").

**B.**     **Defendant Is Entitled to Summary Judgment on Commerzbank's Claims Relating to the Declared EODs**

As set forth above, Commerzbank amended its complaint in November 2017 to allege that Defendant supposedly breached its post-EOD prudent person duties arising from the Declared EODs.  Commerzbank also incorrectly alleged for the first time in the SAC that the occurrence of other specified events, which are identified on Ex. 33. (the "Alleged Trigger Events"), purportedly triggered Defendant's post-EOD prudent person duty in certain Trusts.  SAC ¶¶ 125-28.  All these recently contrived claims fail as a matter of law.

First, the Alleged Trigger Events did not trigger Defendant's prudent person duties.  Under the GAs for the relevant Trusts, only a contractually defined "Master Servicer Event of Default" triggers Defendant's prudent person duty, and the Alleged Trigger Events do not fall within that definition.  ¶ 102; *see also Royal Park Invs.*, 2018 WL 4682220, at *14 n.33 (recognizing that "most of the PSAs require the Trustee to exercise its prudent-person rights and powers only when it has actual knowledge of a 'Master Servicer' EOD").  As Defendant cannot breach duties that never arose, Commerzbank's post-EOD claims relating to the non-EOD events on Ex. 33 fail.

Second, two Downgrade EODs occurred after Commerzbank sold its holdings in the relevant Trust.  ¶ 103.  As Commerzbank has no claim for alleged breaches occurring after it sold its holdings, its post-EOD claims relating to those EODs fail.

Third, Commerzbank's claims relating to the Loss EODs and the 2012 Downgrade EODs are time-barred.  *See supra* § II.

Fourth, Commerzbank's post-EOD fiduciary duty claim is barred by the economic loss doctrine. *See supra* § VI.

Fifth, with respect to Commerzbank's claims that Defendant breached its "prudent person" duty arising from the Declared EODs, Defendant is also entitled to summary judgment because Commerzbank has no evidence that Defendant breached those duties.

As set forth above, Commerzbank's newfound theory is that, as a result of the Declared EODs and without any investor approval, Defendant was required to expend significant trust funds to (i) investigate whether there was a basis to put back any defaulted loan to a Warrantor and enforce the Warrantor's related repurchase obligations, and (ii) investigate whether the servicers were complying with their duties and take steps to remedy any breaches. But courts have been unwilling to find that an RMBS trustee had a post-EOD duty to conduct expensive investigations absent evidence that other trustees have "taken similar action in similar circumstances." *Policemen's Annuity & Benefit Fund of Chi. v. Bank of Am., N.A.*, 907 F. Supp. 2d 536, 555 (S.D.N.Y. 2012) (dismissing claim that after an EOD, "the Trustee should (or would) have taken it upon itself to force the Seller to repurchase any defective or deficient Mortgage Loans [because] [t]hat is simply too distant a leap for this Court to make without plausible allegations that other MBS trusts' trustees have taken similar action in similar circumstances (bolstering the actions a 'prudent person' would have taken)"); *Royal Park Invs.*, 2017 WL 945099, at *9 (finding "[t]he argument that [post-EOD, the trustee] should have performed an extensive sampling review of the loans at issue [unavailing absent evidence other trustees did so]").

Here, Commerzbank has no evidence that any indenture/securitization trustee has taken the type of actions proposed by Commerzbank under similar circumstances, let alone that any RMBS trustee has taken the actions proposed by Commerzbank under similar circumstances. ¶ 105.

-40-

Indeed—based on Commerzbank's allegations in its lawsuits against other RMBS trustees—it appears no RMBS trustee has done so. *Id.* Accordingly, the Court should grant Defendant summary judgment on these claims. *See, e.g., Gottlieb v. County of Orange*, 84 F.3d 511, 519 (2d Cir. 1996).[29]

## CONCLUSION

For the foregoing reasons, the Court should grant Defendant summary judgment dismissing all of Commerzbank's claims.

Dated: New York, New York
      December 7, 2018

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS, LLP

By: _____

    Michael S. Kraut (mkraut@morganlewis.com)
    Kevin J. Biron (kbiron@morganlewis.com)
101 Park Avenue
New York, New York 10178
Tel: +1.212.309.6000
Fax: +1.212.309.6001

*Attorneys for Defendants Deutsche Bank National Trust Company and Deutsche Bank Trust Company Americas, as Trustee*

---

[29] Defendant expects that Commerzbank may attempt to support its post-EOD claims with opinions offered by its purported experts, Mark Adelson and Ingrid Beckles. Defendant reserves the right to move to exclude those opinions because they are inadmissible.

## CERTIFICATION OF COMPLIANCE

Pursuant to Judge Koeltl's Individual Practice Rule 2.D., I, Kevin J. Biron, hereby certify that this Memorandum of Law in Support of Defendant's Motion for Summary Judgment consists of 12,423 words, which does not exceed the word limit in Individual Practice Rule 2.D. as modified by Magistrate Judge Freeman's Order dated October 11, 2018 (ECF 151), and otherwise complies with Judge Koeltl's Individual Practice formatting rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed this 7th day of December 2018, at New York, New York.


Kevin J. Biron

## CERTIFICATE OF SERVICE

I, Kevin J. Biron, certify that on December 7, 2018, I caused the following documents to be filed with the Clerk of the Court in redacted form and to be served on all counsel of record by secure file transfer: (i) Notice of Defendants' Motion for Summary Judgement; (ii) Memorandum of Law in Support of Defendants' Motion for Summary Judgement; (iii) Statement of Undisputed Material Facts Pursuant to Rule 56.1 of the Local Civil Rules for the Southern District of New York; (iii) the Declaration of Ronaldo Reyes, dated December 6, 2018, and the exhibits thereto; (iv) the Declaration of David Co, dated December 7, 2018; (v) the affidavit of Mathias Rohe, dated December 4, 2018, and the exhibits thereto; (vi) the Declaration of Kevin J. Biron, dated December 7, 2018, and the exhibits thereto, including the Declaration of Edmond Esses and list attached thereto.

By: _____
Kevin J. Biron