**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | x | |
| PHOENIX LIGHT SF DAC, BLUE HERON FUNDING V LTD., BLUE HERON FUNDING VI LTD., BLUE HERON FUNDING VII LTD., BLUE HERON FUNDING IX LTD., C-BASS CBO XIV LTD., C-BASS CBO XVII LTD., KLEROS PREFERRED FUNDING V PLC, SILVER ELMS CDO PLC and SILVER ELMS CDO II LIMITED, | : : : : : : : : : | No. 14-cv-10103-JGK |
| Plaintiffs, | : : | |
| -against- | : : | |
| DEUTSCHE BANK NATIONAL TRUST COMPANY and DEUTSCHE BANK TRUST COMPANY AMERICAS, | : : : : : | |
| Defendants. | : : | |
| COMMERZBANK AG, | : : : | |
| Plaintiff, | : : | |
| -against- | : : | |
| DEUTSCHE BANK NATIONAL TRUST COMPANY and DEUTSCHE BANK TRUST COMPANY AMERICAS, | : : : : | No. 15-cv-10031-JGK |
| Defendants. | : : | |
| | x | |

**PLAINTIFFS' RESPONSES TO DEFENDANTS'**
**RULE 56.1 COUNTER-STATEMENT OF UNDISPUTED FACTS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ v

INTRODUCTION ....................................................................................................... 1

PRELIMINARY STATEMENT ..................................................................................... 2

FACTUAL BACKGROUND ........................................................................................ 13

      A.    RMBS Securitization Process ............................................................13

      B.    The Role of the Trustee.....................................................................24

      C.    The Structure of the Governing Agreements ....................................114

      D.    Defendants .......................................................................................137

      E.    Plaintiffs' structure..........................................................................179

            1.    Phoenix Light..........................................................................179

            2.    Commerzbank ("CB") .............................................................235

I.    Legal Standard ............................................................................................. 255

II.    The Undisputed Material Facts Establish that EODs Occurred in 73 Trusts ................. 255

      A.    For 18 Trusts, EODs were triggered by exceeding numerical thresholds ..........261

      B.    For 7 Trusts, EODs occurred when Servicers were downgraded .......................444

      C.    For 8 Trusts, EODs were triggered by untimely compliance documents ...........519

      D.    In 73 Trusts, DB failed to declare EODs triggered by Servicer misconduct relating to REO properties and foreclosures ........................................................601

III.    DB Breached Its Prudent Person Obligations, Because DB's Contentions as to How It Satisfied those Duties Fail as a Matter of Law .................................................... 692

      A.    Merely sending notice of EODs cannot satisfy DB's post-EOD duties .............702

      B.    DB's contention that doing nothing besides providing notice of EOD was prudent fails as a matter of law ...........................................................................709

    C.     DB's "consultation with counsel" cannot justify its failure to act because DB waived the "advice of counsel" affirmative defense ....................................754

IV.    DB Knew that the Sellers Failed to Cure Mortgage File Exceptions for the Loans Identified in the Document Exception Reports Linked to Exhibit 583 ........................ 757

V.    DB Had Pre-EOD Duties to Enforce Repurchase of Loans that Breached R&Ws and that Lacked Required Mortgage File Documents .................................... 850

    A.     For 40 Trusts, DB had the pre-EOD duty to enforce the repurchase protocol for loans with R&W violations of which DB had knowledge..............850

    B.     DB cannot disclaim its pre-EOD duty to enforce repurchase remedies where DB was required, but failed, to notify the Depositor of R&W breaches...................................................................................................953

    C.     In 8 Trusts, DB had a pre-EOD duty to enforce repurchase where DB was required, but failed, to notify the Depositor of loans with Mortgage File defects ...................................................................................................956

    D.     For 3 Trusts on which DB's enforcement duty for loans with Mortgage File defects is established as a matter of law, Plaintiffs are also entitled to summary judgment that DB breached its duty....................................................991

VI.    For 21 Trusts, DB breached Its Contractual Duty to Monitor Servicers ..................... 1016

Part II: Additional Material Facts As To Which There Is No Genuine Dispute....................... 1091

BACKGROUND ................................................................................. 1091

    A.     RMBS Transactions Generally ........................................................1091

    B.     Overview of the Governing Agreements ...........................................1094

           i.      Defendant Has Limited Duties Under the Governing Agreements ...... 1094

           ii.     Servicers' Duties Under the Governing Agreements........................... 1106

           iii.    Investors' Rights Under the Governing Agreements........................... 1109

I.    THE EVIDENCE DOES NOT ESTABLISH DEFENDANT'S POST-EOD PRUDENT PERSON DUTY WAS TRIGGERED IN 73 OF THE 85 TRUSTS ........ 1118

    A.     Purported Servicing Breaches Relating to REO Properties  Did Not Trigger Defendant's Post-EOD Duties in 73 Trusts .........................................1118

|   | i. | Background ................................................................................ 1118 |

ii.    Under the 73 GAs, an EOD would Require the Relevant Servicer
or Master Servicer to Materially Breach its Contractual Duties and
then Fail to Cure After Knowledge/Notice .......................................... 1127

iii.   The Documents Cited by Plaintiffs Do Not Establish the Relevant
Servicers Materially Breached their Duties and Failed to Cure
After Knowledge/Notice ...................................................................... 1129

iv.    The Documents Cited by Plaintiffs Do Not Address All of the
Facts Necessary to Determine Whether an EOD Occurred under
the 73 GAs .......................................................................................... 1136

v.     The Documents Cited by Plaintiffs Do Not Establish a Material
Breach by any Servicer ....................................................................... 1137

B.   The Documents Cited by Plaintiffs Do Not Establish that Late Servicer
Compliance Documents Triggered Defendant's Post-EOD Duties in Eight
Trusts................................................................................................................1141

i.     Plaintiffs' Pleadings Do Not Assert a Claim Based on Alleged
EODs Triggered by Late Servicer Compliance Documents ................. 1141

ii.    Fremont Was Not the Servicer for FHLT 2006-1 at the Time of the
Alleged Late ASOC ............................................................................. 1142

iii.   The Documents Cited by Plaintiffs Do Not Establish any EODs
Resulting From Late ASOCs as to the Other Seven Trusts ................. 1143

iv.    Any EOD Potentially Resulting from Late ASOCs Was Cured........... 1159

II.   DEFENDANT DID NOT BREACH ANY POST-EOD PRUDENT PERSON
DUTY ........................................................................................................................ 1162

A.   There Is No Evidence That Defendant Was Supposedly Required to
Respond to EODs Differently.............................................................................1166

B.   With Respect to the Declared EODs, the Evidence Confirms Defendant's
Decision to Provide Notice and Await Investor Direction Was Prudent...........1169

C.   Assessing Prudence Is a Fact-Intensive Process................................................1176

D.   Defendant's Post-EOD Practices Did Not Consist of "Doing Nothing" and
Defendant Took Appropriate Steps ...................................................................1190

     E.      Defendant Had a Good Faith Belief It Complied with any Post-EOD Obligations ........................................................................................................1197

     F.      Defendant's Response to Alleged REO Servicing Matters and Late ASOCs was Reasonable and Prudent ................................................................1199

III.    DEFENDANT'S AGREEMENT TO "HOLD THE TRUST FUND AND EXERCISE THE RIGHTS REFERRED TO ABOVE FOR THE BENEFIT OF . . . CERTIFICATEHOLDERS" DOES NOT CREATE A PRE-EOD DUTY TO ENFORCE R&W REPURCHASE OBLIGATIONS ................................................... 1201

     A.      The GAs at Issue in this Action Are Not the Same As the Governing Agreement at Issue in *RPI v. DB* ......................................................................1202

     B.      The Evidence Does Not Support Plaintiffs' Proposed Interpretation ...............1207

IV.    THE DOCUMENTS CITED BY PLAINTIFFS DO NOT  SUPPORT ANY CONCLUSIONS ABOUT THE DEFENDANT'S  DUTIES WITH REGARD TO 16 GAS WHERE DEFENDANT IS  NOT OBLIGATED TO ENFORCE REPURCHASE OBLIGATIONS  ABSENT DIRECTION FROM THE DEPOSITOR........................................................................................................ 1211

V.     THE DOCUMENTS CITED BY PLAINTIFFS DO NOT SUPPORT A CONCLUSION THAT DEFENDANT BREACHED ANY DUTIES CONCERNING DOCUMENT EXCEPTIONS .......................................................... 1213

     A.      Document Exceptions and 2% Letters ...............................................................1213

     B.      The Document Exception Reports for the Trusts Were Delivered More than Six Years Ago .............................................................................................1222

     C.      The Evidence Does Not Establish that Any Purported Document Exception Was Material...................................................................................1223

     D.      The Evidence Establishes that Defendant Notified the Depositor of any Document Exceptions ........................................................................................1232

VI.    THE EVIDENCE DOES NOT ESTABLISH THAT DEFENDANT OWED OR BREACHED ANY DUTY TO MONITOR SERVICERS........................................... 1234

## TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*82-90 Broadway Realty Corp. v. New York Supermarket, Inc.*,

    62 N.Y.S.3d 186 (N.Y. App. Div. 2017) .................................................. 567, 1152, 1154, 1157

*ACE Sec. Corp. v. DB Structured Prod., Inc.*,

    25 N.Y.3d 581 (2015) ......................................................................................... 1113

*Anderson v. Liberty Lobby, Inc.*,

    477 U.S. 242 (1986)................................................................................................. 1

*Bank of N.Y. Mellon v. Commerzbank Capital Funding Trust II*,

    65 A.3d 539 (Del. 2013) ..................................................................................... 567

*Beyene v. Irving Tr. Co.*,

    762 F.2d 4 (2d Cir. 1985) ............................................................................... *passim*

*BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*,

    2017 WL 3610511 (S.D.N.Y. Aug. 21, 2017).............................................. 43, 1101

*Cameo-Parkway Records, Inc. v. Premier Albums, Inc.*,

    43 F.R.D. 400 (S.D.N.Y. 1967) ........................................................................... 297

*Commerzbank AG London Branch v. UBS AG*,

    No. 654464/2013 (N.Y. Sup. Ct. May 20, 2014).................................... 95, 1116, 1117

*Commerzbank AG v. U.S. Bank Nat'l Ass'n*,

    277 F. Supp. 3d 483 (S.D.N.Y. 2017)................................................................ 1005

*Curry v. States Marine Corp. of Del.*,

    16 F.R.D. 376 (S.D.N.Y. 1954) ........................................................................... 297

*DB v. Novation Companies f/k/a NovaStar Financial*,

   650693/2013 (N.Y. Sup. Ct.) ......................................................................... 55, 62, 72

*Deleon v. Putnam Valley Bd. of Educ.*,

   2006 WL 236744 (S.D.N.Y. Jan. 26, 2006) ............................................................. 1

*E & H Partners v. Broadway Nat'l Bank*,

   39 F. Supp. 2d 275 (S.D.N.Y. 1998)............................................................... *passim*

*In re: Gen. Motors LLC*,

   2015 WL 8578945 (S.D.N.Y. Dec. 9, 2015) ................................................... *passim*

*Lizarra v. Figueroa*,

   2014 WL 1224539 (S.D.N.Y. Mar. 21, 2014) ................................................. *passim*

*Mack v. United States*,

   814 F.2d 120 (2d Cir.1987)............................................................................... 1084

*Morgan Stanley & Co. v. Archer Daniels Midland Co.*,

   570 F. Supp. 1529 (S.D.N.Y. 1983)................................................................ *passim*

*In re Bankers Tr. Co.*,

   450 F.3d 121 (2d Cir. 2006)............................................................................ *passim*

*Patsy's Italian Rest., Inc. v. Banas*,

   508 F. Supp. 2d 194 (E.D.N.Y. 2007) ............................................................ *passim*

*Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*,

   262 F. Supp. 2d 251 (S.D.N.Y. 2003)............................................................. *passim*

*Phoenix Light SF Limited v. Deutsche Bank Nat'l Trust Co.*,

   172 F. Supp. 3d 700 (S.D.N.Y. Mar. 28, 2016) .............................................. *passim*

*Plaza Hotel Assocs. v. Wellington Assocs., Inc.*,

    285 N.Y.S.2d 941 (Sup. Ct. 1967) .................................................................... 1152, 1155, 1157

*Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*,

    2016 WL 439020 (S.D.N.Y. Feb. 3, 2016) ........................................................ *passim*

*Serdarevic v. Centex Homes, LLC*,

    2012 WL 4054161 (S.D.N.Y. Sept. 5, 2012) ........................................... 567, 1152, 1154, 1157

*Sharon Steel Corp. v. Chase Manhattan Bank, N.A.*,

    691 F.2d 1039 (2d Cir. 1982) .......................................................................... *passim*

*U.S. Bank, Nat'l Ass'n v. UBS Real Estate Sec. Inc.*,

    205 F. Supp. 3d 386 (S.D.N.Y. 2016) ................................................................. 1102

*Willey v. J.P. Morgan Chase, N.A.*,

    2009 WL 1938987 (S.D.N.Y. July 7, 2009). ........................................................ 30

**Statutes**

15 U.S.C. § 1601 ............................................................................................. 29

15 U.S.C.A. § 78o (West 2006) ......................................................................... 1034, 1048

**Rules**

Fed.R.Civ.P. 32(a)(1) ...................................................................................... *passim*

Fed.R.Civ.P. 56(c)(1)(A) .................................................................................. *passim*

Fed R. Evid. 1002 ............................................................................................ 676

Fed. R. Evid. 803(17) ....................................................................................... 18

Fed. R. Evid. 803(6) ......................................................................................... *passim*

Fed. R. Evid. 803(8) ......................................................................................... *passim*

Fed. R. Evid. 807 ............................................................................................. 18

# INTRODUCTION

In moving for summary judgment, Plaintiffs submitted a 372-page statement of 1,022 undisputed material facts in support of the motion ("Plaintiffs' Statement"), as required by Local Rule 56.1(a). Under that same rule, DB was required to respond to each statement and authorized to submit a "short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." DB took this as license to submit its own, separate, affirmative "statement of facts" with over 150 paragraphs of additional "facts," most of which are unsupported assertions and/or legal arguments DB could not fit in its opposing brief, or irrelevancies that are immaterial to DB's motion. Many are not even cited in DB's opposing brief. DB's CSUF, which seeks to introduce numerous new substantive arguments skirting the page limit for its Opposition, violates Rule 56.1, and the Court should disregard it.

The problems with DB's CSUF do not stop at its (remarkable) length. DB includes half-page discursive paragraphs mixing alleged facts and legal arguments or conclusions, such that it is nearly impossible to discern what fact (if any) DB even claims is undisputed. (*See*, *e.g.*, ¶¶ 1111, 1134, 1135, 1147, 1152, 1160.) DB also includes several duplicative paragraphs asserting the same facts multiple times. (*See*, *e.g.*, ¶¶ 1137, 1148, 1180, 1185.)

In sum, DB's CSUF concerns hundreds of purported additional facts that are immaterial to Plaintiffs' motion, many of which are neither "facts" nor "additional." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). It "ignore[s] both the letter and the spirit of the rule." *Deleon v. Putnam Valley Bd. of Educ.*, 2006 WL 236744, at *2 (S.D.N.Y. Jan. 26, 2006) (disregarding large numbers of paragraphs in a "counterstatement of

facts that [was] not keyed to defendant's statement, and that in many instances cite[d] to nothing whatsoever in the record").

Plaintiffs respond, paragraph by paragraph, to DB's CSUF, despite its global defects, and note on a paragraph-by-paragraph basis those instances where DB (a) improperly seeks to insert immaterial facts, (b) improperly seeks to assert additional legal argument in violation of the word limit for its Opposition brief, or (c) otherwise violates Rule 56.1. First, Plaintiffs demonstrate that DB has failed to controvert any of the undisputed facts in Plaintiffs' Rule 56.1 Statement. Then, Plaintiffs address each of DB's asserted "facts" in turn. To the extent Plaintiffs state below that a statement of material fact proffered by DB is disputed or undisputed, Plaintiffs do so for purposes of this Motion only. Plaintiffs preserve all potential evidentiary objections and do not hereby agree that any fact proffered by DB or evidence offered by it in support of a fact is either admissible or may properly be considered by the Court.

## PRELIMINARY STATEMENT[1]

1.      Deutsche Bank National Trust Company ("DBNTC") is the Trustee or Indenture Trustee for the following 42 Trusts in which PL acquired certificates: (1) AABST 2006-1; (2) AHM 2006-1; (3) AMSI 2006-R1; (4) ARSI 2006-M1; (5) ARSI 2006-M3; (6) ARSI 2006-W2; (7) ARSI 2006-W3; (8) FFML 2006-FF11; (9) FHLT 2005-1; (10) FHLT 2005-2; (11) FHLT 2006-1; (12) FHLT 2006-2; (13) FHLT 2006-3; (14) HASC 2006-HE1; (15) IMM 2005-7; (16) IMM 2005-8; (17) IXIS 2006-HE1; (18) IXIS 2006-HE2; (19) IXIS 2007-HE1; (20) MLMI 2007-MLN1; (21) MMLT 2005-2; (22) MSAC 2006-HE6; (23) MSAC 2006-NC2; (24) MSAC 2006-NC5; (25) MSAC 2006-WMC2; (26) MSAC 2007-HE1; (27) MSAC 2007-HE2; (28) MSAC 2007-HE5; (29) MSAC 2007-NC1; (30) MSAC 2007-NC4; (31) MSHEL 2006-3; (32) MSHEL 2007-1; (33) MSIX 2006-2; (34) NHEL 2006-5; (35) NHEL 2006-6; (36) SABR 2007-NC2; (37) SAST 2007-1; (38) SAST 2007-2; (39) SVHE 2005-3; (40) SVHE 2006-1; (41) SVHE 2006-EQ1; (42) SVHE 2006-NLC1. *See* Handlin Exs. 1-43 (PSAs/Indentures); Handlin Ex. 45.

---

[1]      Plaintiffs make a number of assertions in the headings of their 56.1 Statement.  As those are not factual assertions supported by evidence, Defendant is not responding to the assertions in the headings.

Defendant's Response:  Disputed.  The materials Plaintiffs cite in support of this paragraph provide insufficient support for their contention that "PL acquired Certificates" in any Trust.  Handlin Ex. 45 does not satisfy the requirements of Federal Rule of Evidence ("FRE") 1006 because it does not identify that the documents reviewed to create that summary were produced or disclosed in the litigation.



See Biron PL Ex. 28 (Chart: Certificate Plaintiffs Never Held).

. See Goff Ex. 6 (Chart: Certificates Acquired by CDO Plaintiffs After CDO Closing Dates).

Biron PL Ex. 87 (BH-5 Indenture) §§ 3.03(c), 3.03(f), 10.02(a), 10.02(b), 10.02(f); Biron PL Ex. 88 (BH-6 Amended and Restated Indenture) §§ 3.03(c), 3.03(f), 10.02(a), 10.02(b), 10.02(f); Biron PL Ex. 89 (BH-7 Amended and Restated Indenture) §§ 3.3(c), 3.3(f), 10.2(h); Biron PL

Ex. 90 (BH-9 Indenture) §§ 3.03(c), 3.03(f), 10.02(a), 10.02(b), 10.02(f); Biron PL Ex. 91 (C-Bass 14 Indenture) §§ 3.3, 10.2(i), 10.2(j); Biron PL Ex. 92 (C-Bass 17 Indenture) §§ 3.3, 10.2(i), 10.2(j); Biron PL Ex. 93 (SE Indenture) §§ 3.03(c), 3.04(h), 10.02(a), 10.02(b), 10.02(f), 10.02(h); Biron PL Ex. 94 (SE 2 Indenture) §§ 3.3(a), 3.3(b), 10.2(d), 10.3, 10.4; Biron PL Ex. 95 (Kleros Indenture) §§ 3.3(b), 10.2(a), 10.2(c), 10.2(i), 10.5(a), 10.5(c). Plaintiffs have no evidence that the requirements in the CDO Plaintiff indentures governing acquisition of securities were not followed.

Undisputed that DBNTC is the trustee for the 42 Trusts listed in ¶ 1.

**Plaintiffs' Reply: DB does not dispute the material fact that DBNTC is the Trustee for the 42 Trusts listed in ¶ 1. It should be deemed admitted.** *See* **Local Rule 56.1(c). DB instead argues that** ██████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████ **but this statement is incorrect. As explained in Plaintiffs' briefing,** ██████████████████████████████████████████████████ ████████████████████████████████████████████ **Pltfs.Opp. 7.**

2.      Deutsche Bank Trust Company Americas ("DBTCA") is the Indenture Trustee for the SAST 2006-3 Trust, in which PL also acquired certificates. *See* Handlin Ex. 44 (Indenture); Handlin Ex. 45. DBNTC and DBTCA will be collectively referred to as "DB".

Defendant's Response:  Disputed.  The materials Plaintiffs cite in support of this paragraph provide insufficient support for their contention that "PL acquired Certificates" in any Trust.  Handlin Ex. 45 does not satisfy the requirements of Federal Rule of Evidence ("FRE") 1006 because it does not identify that the documents reviewed to create that summary were produced or disclosed in the litigation.

Not all of the PL Plaintiffs "acquired certificates" in SAST 2006-3.  Kleros is the only PL Plaintiff asserting claims on a SAST 2006-3 Certificate.  *See PL/DB* Third

Amended Complaint ("*PL/DB* TAC"), Ex. B at Line 67, *PL/DB* Dkt. #189-2; *see generally CB/DB* Second Amended Complaint ("*CB/DB* SAC"), *CB/DB* Dkt.# 89.

Undisputed that DBTCA is the Indenture Trustee for SAST 2006-3.

**Plaintiffs' Reply: DB does not dispute the material fact that DBTCA is the Indenture Trustee for SAST 2006-3. It should be deemed admitted. *See* Local Rule 56.1(c). DB's purported evidence does not controvert the fact that PL also acquired Certificates in SAST 2006-3. *See* Handlin Exs. 50, 57.**

3.      On December 23, 2014, PL brought an action against DB concerning the above-referenced Certificates it acquired (the "PL Certificates"). The action will be referred to herein as "*Phoenix Light v. DB*". The PL Certificates in the 43 Trusts had an original face value in excess of $750 million. Handlin Exs. 46-74 (documents including Purchase Agreements, CDO Trustee Reports, Indentures, and Market Purchase Tickets evidencing PL's ownership of the PL Certificates).

Defendant's Response:  Disputed that all of the PL Plaintiffs brought an action against both DBNTC and DBTCA concerning all of the certificates referenced in ¶¶ 1 and 2 above.

BH-5, BH6, BH-7, C-Bass 14, C-Bass 17 were not plaintiffs in this action when the December 23, 2014 complaint was filed.  *Id.*  The December 23, 2014 complaint did not assert any claims as to the certificates listed on Goff Ex. 7 (Chart: Certificates As To Which The PL Plaintiffs Did Not Allege Any Claims Until Plaintiffs' First Amended Complaint).  The December 23, 2014 complaint did not assert any claims as to the Trusts listed on Goff Ex. 8 (Chart: Trusts As to Which the PL Plaintiffs Did Not Allege Any Claims Until Plaintiffs' First Amended Complaint).  The December 23, 2014 complaint also did not assert any claims against DBTCA.

█████████████████████████████████

████████████████████████████████████

■■■■■■   *See* Biron PL Ex. 28 (Chart: Certificate Plaintiffs Never Held).   ■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■ Handlin Ex. 64.

Further, Plaintiffs have failed to cite any material in this paragraph to support
their contention that any PL Plaintiff ever acquired or held any of the following
Certificates upon which the PL Plaintiffs purport to assert claims:  ■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■   *See PL/DB* TAC at Ex. B.

Plaintiffs have also failed to cite any material in this paragraph to support their
contention that any PL Plaintiff ever acquired or held a portion of the following
Certificates upon which the PL Plaintiffs purport to assert claims:  IMM 2005-7 A1 (PL
Plaintiffs purport to assert claims on $135mm (*see PL/DB* TAC at Ex. B) ■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ IMM 2005-8

1AM (PL Plaintiffs purport to assert claims on $32.01mm (*see PL/DB* TAC at Ex. B) ■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ (Handlin Ex. 58 at

PL_DB000039920).   ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■ .

Finally, Plaintiffs have not cited evidence in this paragraph that supports their
contention that the original face value of the PL Certificates was in excess of $750
million.

Undisputed that on December 23, 2014, Phoenix, in its own right and purportedly in the right of BH-9, C-Bass 14, C-Bass 17, Kleros, SE, and SE 2; BH-9; Kleros; SE; and SE 2, in their own right, brought an action against DBNTC.  *PL/DB* Complaint, *PL/DB* Dkt. #1.

Defendant restates its responses to ¶¶ 1 and 2 and incorporates them by reference.

**Plaintiff's Reply: DB's purported evidence does not controvert the material facts that PL brought an action against DB concerning the 43 PL Certificates and that the PL Certificates in the 43 Trusts had an original face value in excess of $750 million. Therefore, these facts should be deemed admitted. *See* Local Rule 56.1(c).**

**DB's assertion that** ███████████████████████████████████ ███████████████████████████████████████████████ ██████████████████████████████ **is incorrect. As explained in Plaintiffs' briefing,** █████████████████████████████████████████ ███████████████████████████████████████████ █████████████████████████████████████ **7; Fitzgerald Ex. 39.**

**DB's assertion that "Plaintiffs have failed to cite any material in this paragraph to support their contention that any PL Plaintiff ever acquired or held any of the following Certificates upon which the PL Plaintiffs purport to assert claims:** ████████████████ ██████████████████████████████████████████████ ████████████████████████████████████████████ **is incorrect.** ███████████████████████████████ ████████████████████████████████████████████████ █████████████████████████████████████████ **Handlin Ex. 73 at**



**PhoenixLight000001964.** ███████████████████████████

████████████████████████████████████████████ **Handlin Reply**

**Ex. 22 at PL_DB001115071.** ████████████████████████████

█████████████████████████████████. **Handlin Reply Ex.**

**20 at PL_DB001020612.** ████████████████████████████████

████████████████████████████████████. **Handlin Reply Ex. 19 at**

**PL_DB000674763. Finally,** ██████████████████████████

███████████████████████████████ **Handlin Reply Ex. 17**

**Handlin Reply Ex. 25.** ████████████████████████████████

████████████████████████████████████████████████████████

████████████. **Handlin Reply Ex. 25.** █████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████ **Handlin Ex. 72.** ███████████████████

███████████████████████████████████████████████████

**Handlin Reply Ex. 21 at PL_DB001115058.**

        DB's assertion that Plaintiffs lack evidence to support their contention that any PL

Plaintiff ever acquired or held a portion of IMM 2005-7 A1 and IMM 2005-8 1AM is also

incorrect. As explained in Plaintiffs' briefing, █████████████████████████

███████████████████████████ **Pltfs.Opp. 5-6, 8.** ██████████████

████████████████████████████████████████████████████

█████████████████████████ **Handlin Ex. 62.** ███████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████ **Handlin Reply Ex. 18 at PhoenixLight000002491.** ███

████████████████████████████████████████████ **.** *Id.* **at**

**PhoenixLight000002496.** ████████████████████████████████████████

████████████████████████████████████████████

    **Plaintiffs restate their replies to DBCSUF ¶¶ 1 and 2, and incorporate them by reference.**

    4.    DBNTC is the Trustee or Indenture Trustee for the following 48 Trusts in which CB acquired certificates: (1) ECR 2005-3; (2) FFML 2005-FF2; (3) FFML 2005-FFH3; (4) FFML 2006-FF8; (5) FFML 2006-FF9; (6) FFML 2006-FF11; (7) FFML 2006-FF13; (8) GSAA 2005-10; (9) GSAA 2006-15; (10) GSAA 2006-16; (11) GSAA 2006-17; (12) GSAA 2007-4; (13) GSAMP 2005-HE4; (14) GSAMP 2005-WMC1; (15) GSAMP 2005-WMC2; (16) GSAMP 2005-WMC3; (17) GSAMP 2006-FM3; (18) GSAMP 2006-S4; (19) HASC 2006-HE1; (20) HASC 2006-OPT4; (21) HASC 2007-HE1; (22) HASC 2007-OPT1; (23) HVMLT 2006-3; (24) HVMLT 2007-2; (25) IMM 2007-A; (26) IMSA 2006-3; (27) IMSA 2006-4; (28) IXIS 2005-HE3; (29) IXIS 2006-HE3; (30) MSAC 2005-HE7;(31) MSAC 2005-NC2; (32) MSAC 2006-HE5; (33) MSAC 2006-HE6; (34) MSAC 2006-HE7; (35) MSAC 2006-HE8; (36) MSAC 2006-NC3; (37) MSAC 2007-HE1; (38) MSAC 2007-HE2; (39) MSHEL 2005-4; (40) MSHEL 2007-2; (41) MSIX 2006-1; (42) MSIX 2006-2; (43) NHEL 2006-5; (44) NHEL 2007-2; (45) SVHE 2005-OPT3; (46) SVHE 2005-OPT4; (47) SVHE 2006-OPT5; (48) WAMU 2005-AR13. *See* Handlin Exs. 75-120 (PSAs/Indentures); Handlin Ex. 45.

    <u>Defendant's Response</u>:  Disputed.  The materials Plaintiffs cite in support of this paragraph provide insufficient support for their contention that "CB acquired Certificates" in any Trust.  Handlin Ex. 45 does not satisfy the requirements of FRE 1006 because it does not identify that the documents reviewed to create that summary were produced or disclosed in the litigation.

████████████████████████████████████████████

████████████████████████    *See* Biron CB Ex. 28 (Chart:  Certificates Commerzbank

Never Held).

Undisputed that DBNTC is the trustee for the 42 Trusts listed in ¶ 4.

**Plaintiffs' Reply: DB does not dispute the material fact that DBNTC is the trustee**

**for the 48 Trusts listed in ¶ 4. It should be deemed admitted.** *See* **Local Rule 56.1(c).**

**Further, DB's proffered evidence does not controvert the material fact that CB acquired**

**Certificates in the 48 Trusts listed in ¶ 4. Therefore, this material fact should be deemed**

**admitted.** *See* **Local Rule 56.1(c).**

5.     DBTCA is the Indenture Trustee for the following 2 Trusts in which CB acquired
certificates: (1) SAST 2005-2; (2) SAST 2006-3. *See* Handlin Exs. 44, 121 (Indentures); Handlin
Ex.45.

Defendant's Response:  Disputed.  The materials Plaintiffs cite in support of this

paragraph provide insufficient support for their contention that "CB acquired

Certificates" in any Trust.  Handlin Ex. 45 does not satisfy the requirements of FRE 1006

because it does not identify that the documents reviewed to create that summary were

produced or disclosed in the litigation.

Undisputed that DBTCA is the Indenture Trustee for SAST 2005-2 and SAST

2006-3.

**Plaintiffs' Reply: DB does not dispute the material fact that DBTCA is the**

**Indenture Trustee for SAST 2005-2 and SAST 2006-3. It should be deemed admitted.** *See*

**Local Rule 56.1(c). DB proffers no evidence to specifically controvert the material fact that**

**CB acquired certificates in SAST 2005-2 and SAST 2006-3. Therefore, this material fact**

**should be deemed admitted.** *See* **Local Rule 56.1(c).**

10

6.     On December 24, 2015, CB brought an action against DB concerning certificates referenced above in Paragraphs 4 and 5 (the "CB Certificates"). The action will be referred to herein as "*Commerzbank v. DB*". The CB Certificates in the 50 Trusts had an original face value of approximately $600 million. *See* Handlin Exs. 122-37, 139-45, 147-49, 151-61, 163-65, 167-68, 170-73, 175-77, 179-81, 183-89, 191-93, 195, 197, 199, 201, 202, 206, 207, 209-210, 212, 214-17, 219, 221-23, 225-27, 229-31, 233, 236-38, 240-46, 248-50, 252-54, 256-62, 264, 266, 268-69, 271-74, 276-84, 286-88, 290-92, 294-96, 298, 300-302, 304-306, 308-310, 312, 314, 316-19, 321-23, 325-27, 329, 331, 333-36, 338, 341-44, 246, 348, 350, 352, 354-55, 357-59, 360-74, 376, 562 (CB Certificates for all 50 trusts).

Defendant's Response:  Disputed.  Commerzbank's complaint, which was dated December 23, 2015, did not assert any claims against DBTCA.  *See generally CB/DB* Complaint, *CB/DB* Dkt. #1.

Plaintiffs have not submitted any evidentiary foundation concerning the documents cited in this paragraph.

Defendant restates its responses to ¶¶ 119, 120, 123, 125, 127, 130, and 131, and incorporates them by reference.

Undisputed that, on December 23, 2015, Commerzbank brought an action against DBNTC purporting to assert claims relating to 74 Certificates in 50 Trusts.  *See CB/DB* Complaint, *CB/DB* Dkt. #1; *CB/DB* Complaint at Ex. B, *CB/DB* Dkt. #1-2.  According to Exhibit B to Commerzbank's original complaint, the 74 Certificates had a combined "Purchase Amount" of $640 million.  *See id.*, column labeled "Purchase Amount." According to Commerzbank's interrogatory responses, the Certificates had an "Original Face Value" of approximately $590 million.  *See* Biron CB Ex. 22 at 5 – 10 and Exhibit A thereto, column labeled "Original Face Value" (Pltf's Supp. 1st Interr. R&O).

**Plaintiffs' Reply: DB's purported evidence does not controvert the material facts that "[o]n December 24, 2015, CB brought an action against DB concerning certificates referenced above in Paragraphs 4 and 5 (the "CB Certificates")" and "[t]he CB Certificates in the 50 Trusts had an original face value of approximately $600 million."**

11

**Therefore, these material facts should be admitted.** *See* **Local Rule 56.1(c). Plaintiffs restate their replies to DBCSUF ¶¶ 119, 120, 123, 125, 127, 130, and 131, and incorporate them by reference.**

7.      Because the FFML 2006-FF11, HASC 2006-HE1, MSAC 2006-HE6, MSAC 2007-HE1, MSIX 2006-2, NHEL 2006-5, NHEL 2007-2, and SAST 2006-3 Trusts are at issue in both actions, there are a total of 85 RMBS Trusts at issue across both actions.

Defendant's Response:  Disputed.  NHEL 2007-2 is not at issue in *PL/DB.  See PL/DB* TAC at Ex. B, *PL/DB* Dkt. #189-2.

Undisputed that there are a total of 85 trusts at issue across both actions.

Plaintiffs' list of Trusts at issue in both actions omits MSAC 2007-HE2.  *See id.* at lines 49-50; *CB/DB* SAC Ex. B at line 38, *CB/DB* Dkt. #89-2.

**Plaintiffs' Reply: DB does not dispute the material fact that there are 85 trusts across both actions. This material fact should be deemed admitted.** *See* **Local Rule 56.1(c). The NHEL 2007-2 Trust is at issue in** *CB/DB***, and the MSAC 2007-HE2 Trust is at issue in both actions.**

8.      Across both actions, 77 Trusts are governed by a PSA or similar agreement, and eight Trusts are governed by an indenture and related agreements. *See* Handlin Exs. 1-44; 75-121; Handlin Ex. 45.

Defendant's Response:  Disputed, to the extent this paragraph purports to state that the Trusts governed in part by PSAs are not also governed by other related agreements.

**Plaintiffs' Reply: Plaintiffs did not "state that the Trusts governed in part by PSAs are not also governed by other related agreements." Thus, DB does not dispute the material fact that 77 Trusts are governed by a PSA or similar agreement, and eights Trusts are governed by an indenture and related agreements. This material fact should be deemed admitted.** *See* **Local Rule 56.1(c).**

12

## FACTUAL BACKGROUND

### A.    RMBS Securitization Process

9.    RMBS are created by pooling large numbers of residential mortgage loans into a trust. *See*, *e.g.*, Handlin Ex. 377 (NHEL 2006-5 Prospectus Supplement) at S-2.

Defendant's Response:  Undisputed that pooling residential mortgage loans into a

trust is one element of residential mortgage backed securitization.

**Plaintiffs' Reply: DB does not dispute this material fact. It should be deemed**

**admitted. *See* Local Rule 56.1(c).**

10.    RMBS certificates and notes are securities that pay principal and interest based on the cash flows from the home loans held in the trusts. Handlin Ex. 378 (Reyes) 154:5-10

Defendant's Response:  To the extent this paragraph purports to state a legal

conclusion regarding whether particular RMBS certificates or notes constitute

"securities" in any specific context, no response is required.

Disputed to the extent this paragraph purports to state that cash flows from home

loans held in trusts are the only factor upon which RMBS principal and interest payments

are based.  That proposition is contrary to evidence in the record.  For example, principal

and interest payments on certain Certificates were guaranteed by a monoline insurance

company.  *See, e.g.*, Goff Ex. 137 (IMM 2007-A Offering Circular) at S-1; Handlin Ex.

102 (IMM 2007-A Indenture) at DBNTC_COMMERZBANK_00000070924, -932.

Other Certificates had the benefit of an interest rate swap agreement and/or similar

derivative agreements.  *See, e.g.*, Goff Ex. 138 (SVHE 2006-EQ1 Prospectus

Supplement) at S-1; Handlin Ex. 42 (SVHE 2006-EQ1 PSA) at Ex. Q.

Further, the deposition testimony Plaintiffs cite does not support this paragraph. The question posed was to ask a layman's understanding of a contractual provision and did not relate to the general structure of RMBS transactions.  Handlin Ex. 378 at 153:23 – 154:4 (R. Reyes Dep. (Jan. 18, 2018).[2]

**Plaintiffs' Reply: DB does not specifically controvert the material fact. The additional statements and additional evidence proffered by DB do not specifically controvert this material fact. Therefore, it should be deemed admitted. *See* Local Rule 56.1(c). DB's attempt to evade the material fact by mischaracterizing it as a legal conclusion is unavailing.**

11.    RMBS are created through a securitization process whereby mortgage loans are supposed to be originated in accordance with underwriting guidelines, which verify information such as a borrower's credit standing, income, assets, and repayment ability. *See*, *e.g.*, Handlin Ex. 377 (NHEL 2006-5 Prospectus Supplement) at S-74-S-78.

Defendant's Response:  To the extent this paragraph purports to state a legal conclusion that "mortgage loans are supposed to be originated in accordance with underwriting guidelines," no response is required.  To the extent a response is required, disputed.

Plaintiffs' purported characterization of RMBS in this paragraph is not supported by the material cited by Plaintiffs.  As an initial matter, every RMBS transaction is governed by unique contracts, and Plaintiffs' citation to an offering document for one Trust does not support any generalization about RMBS generally.  Further, for this

---

[2]    Plaintiffs distort cited deposition testimony by, at minimum, failing to include the questions that give rise to the answers and the appropriate page and line designations of those questions and answers to give the Court needed context for the cited testimony.

particular Trust, the Pro-Supp does not support that all mortgage loans were originated with the requisite underwriting guidelines, or that the underwriting guidelines include the verification of "borrower's credit standing, income, assets, and repayment ability." Handlin Ex. 377 (NHEL 2006-5 Prospectus Supplement) at S-74 – S-75 (*e.g.*, "Under the Stated Income program, an applicant may be qualified based on monthly income as stated in the loan application. Under the 'No Documentation' program, an applicant provides no information as it relates to their income. Under the 'No Income/No Asset' program, the applicant's income and assets are not verified, however the applicant's employment is verified.  . . .  On a case-by-case basis, exceptions to the underwriting guidelines are made where the sponsor believes compensating factors exist.  Compensating factors may consist of factors like length of time in residence, lowering of the borrower's monthly debt service payments, the loan-to-value ratio on the loan, as applicable, or other criteria that in the judgment of the loan underwriter warrant an exception.").

Moreover, Plaintiffs' purported characterization of RMBS in this paragraph is contrary to material in the record.  Mortgage loans are originated before they are securitized in an RMBS transaction.  *See* Biron PL Ex. 1 (Excerpts of HASC 2006-HE1 Prospectus Supplement) at S-2 ("On the closing date, the trust will acquire a pool of mortgage loans."); Reyes PL Decl. ¶ 3 ("An entity that originated or acquired mortgage loans sells pools *[sic]* them into trusts.").

**Plaintiffs' Reply: DB proffers no evidence to specifically controvert Plaintiffs' material fact. The additional statements and evidence proffered by DB are irrelevant. Plaintiffs never made an assertion as to "all mortgage loans" meeting the requisite underwriting guidelines. Further, DB's attempt to evade the material fact by**

15

mischaracterizing it as legal conclusion is unavailing. The material fact should be deemed

admitted. *See* Local Rule 56.1(c).

12.     Those loans are typically originated or acquired by a seller and sold to a depositor for inclusion in the securitization. *See, e.g.*, Handlin Ex. 377 (NHEL 2006-5 Prospectus Supplement) at S-21-S-23.

Defendant's Response:  Undisputed that loans securitized in RMBS transactions

were typically originated or acquired by a seller and sold to a depositor for inclusion in

the securitization.

**Plaintiffs' Reply: DB does not dispute this material fact. It should be deemed**

**admitted. *See* Local Rule 56.1(c).**

13.     The depositor then transfers the loans to a special purpose vehicle (an "SPV"), a trust or other business entity designed to hold the pool of mortgages for the benefit of those investing in the resulting securities. *See, e.g.*, Handlin Ex. 377 (NHEL 2006-5 Prospectus Supplement) at S-22.

Defendant's Response:  To the extent this paragraph purports to state a legal

conclusion that the entity is "designed to hold the pool of mortgages for the benefit of

those investing in the resulting securities," no response is required.

Disputed.  The Plaintiffs purport to characterize the GAs for 85 Trusts.  The

materials Plaintiffs cite do not support any such characterization.  As an initial matter,

every RMBS transaction is governed by unique contracts, and Plaintiffs' citation to an

offering document for one Trust does not support any generalization about RMBS

generally.

Undisputed that loans securitized in RMBS transactions were typically transferred

by a depositor to a special purpose vehicle, which may take the form of a trust or other

business entity.

**Plaintiffs' Reply: DB does not dispute that loans in RMBS transactions were typically transferred by a depositor to a special purpose vehicle, a trust, or other business entity designed to hold the pool of mortgages for the benefit of those investing in the resulting securities. DB's issue with Plaintiffs' characterization of the document is immaterial as the document speaks for itself. Plaintiffs' material fact is deemed admitted by operation of law. *See* Local Rule 56.1(c). Further, DB's attempts to evade these material facts by mischaracterizing them as legal conclusions is unavailing.**

14.     The SPV, pursuant to a pooling and servicing agreement (among other deal documents), issues securities backed by the rights to payments on the mortgages and the sponsor or seller sells those securities to investors. *See, e.g.*, Handlin Ex. 377 (NHEL 2006-5 Prospectus Supplement) at S-90-91.

Defendant's Response:  To the extent this paragraph purports to state a legal conclusion regarding any security issuance or creation of a security interest "pursuant to a pooling and servicing agreement," no response is required.

Disputed.  Thirteen Trusts are not governed by pooling and servicing agreements. *See* Handlin Exs. 1, 2, 16, 17, 44, 75, 84-87, 99, 102 & 121.  Further, to the extent Plaintiffs purport to characterize the GAs, the materials Plaintiffs cite do not support any such characterization.  As an initial matter, every RMBS transaction is governed by unique contracts, and Plaintiffs' citation to an offering document for one Trust does not support any generalization about RMBS generally.

**Plaintiffs' Reply: DB proffers no evidence to specifically controvert the material fact. Therefore, it should be deemed admitted. *See* Local Rule 56.1(c). DB's assertion that "Thirteen Trusts are not governed by pooling and servicing agreements" is incorrect; Plaintiffs' specifically state "(among other deal documents)." DB's attempt to evade these material facts by mischaracterizing them as legal conclusions is unavailing.**

15.     Trusts are the most common form of SPV and are those at issue in this case. Handlin Ex. 379 at 555 (Gary B. Gorton and Nicholas S. Souleles, *Special Purpose Vehicles and Securitization*, THE RISKS OF FINANCIAL INSTITUTIONS (January 2007), http://www.nber.org/chapters/c9619).

Defendant's Response:  Disputed.  Plaintiffs support this statement with

inadmissible evidence.  The cited document is hearsay and an improper expert opinion

which was not the subject of Plaintiffs' expert disclosure.

**Plaintiffs Reply: DB does not specifically controvert the material fact with record**

**evidence. DB's hearsay objection is improper; the Special Purpose Vehicles and**

**Securitization, The Risks of Financial Institutions Chapter 12 by Gary B. Gorton and**

**Nicholas S. Souleles fall into the "commercial publication" exception to the rule against**

**hearsay statements as well as the "Residual Exception to Hearsay." The publication at**

**Handlin 379 is a "commercial publication" that is relied upon by those in structured**

**finance.** *See* **Federal Rule of Evidence ("FRE") 803(17). The document also meets the**

**requirements of FRE 807 because the statement "has equivalent circumstantial guarantees**

**of trustworthiness" and therefore is not hearsay.**

16.     Investors are entitled to distributions comprised of, among other things, the borrowers' payments of principal and interest on the mortgage loans. *See, e.g.*, Handlin Ex. 35 (NHEL 2006-5 PSA) at Article IV.

Defendant's Response:  To the extent this paragraph purports to state a legal

conclusion about investors' rights under a contract, no response is required.

Disputed.  To the extent Plaintiffs purport to characterize the GAs, the materials

Plaintiffs cite do not support Plaintiffs' characterization.  *See* Handlin Ex. 35 (NHEL

2006-5 PSA) Article IV.  Each Trust is governed by unique GAs, and Plaintiffs' citation

to a GA for one Trust does not support any generalization about other Trusts.  Each of the

GAs set forth with specificity the distributions, if any, to which investors are entitled, and

18

investors are entitled only to distributions as provided in the GAs for each Trust.  *See, e.g.*, Handlin Ex. 8 (FFML 2006-FF11 PSA) § 4.02; Handlin Ex. 35 (NHEL 2006-5 PSA) § 4.01.

**Plaintiffs' Reply: DB proffers no evidence to specifically controvert the material fact that investors are entitled to distributions comprised of, among other things, the borrowers' payment of principal and interest. Therefore this material fact should be deemed admitted. *See* Local Rule 56.1(c). To the extent DB alleges Plaintiffs' assertion addresses the specific distribution details of each Governing Agreement, DB is incorrect. Plaintiffs' general assertion is supported by an exemplar PSA. *See*, *e.g.*, Handlin Ex. 35 (NHEL 2006-5 PSA) at Article IV. DB's attempt to evade this material fact by mischaracterizing it as a legal conclusion is unavailing; the Governing Agreements speak for themselves.**

17.     The sponsor or seller makes certain representations and warranties in connection with selling the loans to the trust. *See, e.g.*, Handlin Ex. 377 (NHEL 2006-5 Prospectus Supplement) at S-22.

Defendant's Response:  To the extent this paragraph purports to state a legal conclusion, no response is required.

Disputed.  To the extent Plaintiffs purport to characterize the GAs, the materials Plaintiffs cite do not support Plaintiffs' characterization.  *See* Handlin Ex. 377 (NHEL 2006-5 Prospectus Supplement) at S-22.  Each Trust is governed by unique GAs, and Plaintiffs' citation to an offering document for a single Trust does not support any generalization about other Trusts.  For example, often it is the Originator (or Originator(s)) to deals that make representations and warranties in connection with selling loans to the Trusts.  *E.g.*, Handlin Ex. 34 (MSIX 2006-2 PSA) § 2.03(c) ("First NLC hereby makes the representations and warranties set forth in Schedule IV hereto to

the Depositor, the Servicers, IXIS and the Trustee as of the dates set forth in such

Schedule with respect to the First NLC-MSMC Mortgage Loans."); *id.* at Article I

(defining "Originators" as including, inter alia, the "Responsible Party," and defining

"Responsible Party" as "First NLC (solely with respect to the First NLC-MSMC

Mortgage Loans").

Undisputed that each Trust's GAs set out any representations and warranties

made by any parties as to characteristics of mortgage loans securitized in that Trust.  *See,*

*e.g.*, Handlin Ex. 8 (FFML 2006-FF11) § 2.03(b) ("FFFC, in its capacity as Mortgage

Loan Seller, makes the representations and warranties set forth in Schedule III and

Schedule IV hereto, to the Depositor, the Master Servicer, the Securities Administrator

and the Trustee as of the date specified therein."); *id.*, Schedules III & IV.

**Plaintiffs Reply**: **DB's proffered evidence does not specifically controvert the fact**
**that the sponsor or seller makes certain representations and warranties in connection with**
**selling the loans to the trust. Therefore, this material fact should be deemed admitted.** ***See***
**Local Rule 56.1(c). Plaintiffs agree that originators, in addition to sponsors and sellers,**
**make representations and warranties in connection with selling loans to the Trusts. To the**
**extent DB claims that Plaintiffs' assertion was specific to each individual Governing**
**Agreement, DB is mistaken. Plaintiffs' general assertion is supported by an exemplar**
**offering document.** ***See, e.g.***, **Handlin Ex. 377 (NHEL 2006-5 Prospectus Supplement) at S-**
**22.  Further, DB's attempt to evade this material fact by mischaracterizing it as a legal**
**conclusion is unavailing; the documents speak for themselves.**

18.     If the sponsor or seller breaches these representations and warranties or fails to
deliver complete mortgage files for the loans, the pooling and servicing agreement obligates the
seller to repurchase the affected loans. *See, e.g.*, Handlin Ex. 35 (NHEL 2006-5 PSA) § 2.03.

Defendant's Response:  To the extent this paragraph purports to state a legal conclusion that "the pooling and servicing agreement obligates the seller to repurchase the affected loans," no response is required.

Disputed.  To the extent Plaintiffs purport to characterize the GAs, the materials Plaintiffs cite do not support Plaintiffs' characterization.  *See* Handlin Ex. 35 (NHEL 2006-5 PSA) § 2.03.  Each Trust is governed by unique GAs, and Plaintiffs' citation to a GA for a single Trust does not support any generalization about other Trusts.

Moreover, Plaintiffs' purported characterization is not consistent with the terms of the GAs.  The protocols in each GA that may ultimately require a sponsor or seller to "repurchase" mortgage loans establish detailed conditions on each party's obligations.  For example, Section 2.03(e) of the MSIX 2006-2 PSA addresses certain obligations to provide notice of breaches of representations and warranties.  Handlin Ex. 34 (MSIX 2006-2 PSA) § 2.03(e).  The provision distinguishes between (i) any party's obligations to provide notice to a responsible party "[u]pon *discovery* by any of the parties hereto of a breach of a representation or warranty . . . *that materially and adversely affects the value of any Mortgage Loan or the interests of the Trustee or the Certificateholders therein,*" and (ii) Defendant's potential obligation to "*in turn notify*" a responsible party if Defendant "*receiv[es] written notice* of [any] breach of a representation and warranty."  *Id.* (emphasis added).  Other provisions in the MSIX 2006-2 GAs establish detailed conditions on a responsible party's obligations (if any) to actually repurchase mortgage loans.  *E.g., id.* §§ 2.03(g), 2.03(h), 2.03(i).  These provisions provide responsible parties opportunities to "cure [a] breach in all material respects" as well as to "substitute" mortgage loans under specified circumstances.  *Id.* §§

2.03(g), 2.03(h), 2.03(i).  Critically, they also limit cure, substitution, and repurchase obligations to circumstances where a breach of a representation or warranty "*materially and adversely affects* the value of any Mortgage Loan or the interest of the Trustee or the Certificateholders therein."  *Id.* §§ 2.03(g), 2.03(h), 2.03(i) (emphasis added).

Similarly, under the NHEL 2006-5 PSA, which Plaintiffs cite in this paragraph, repurchase may be required only if similar conditions are met, including (i), the breach "materially adversely affects the value of such Mortgage Loan or the interest therein of the Certificateholders," and (ii) the Sponsor fails to "deliver such missing document or cure such defect or breach in all material aspects" within 90 days of "discovery or receipt of written notice of any materially defective document in, or that a document is missing from, a Mortgage File."  Handlin Ex. 35 (NHEL 2006-5 PSA) § 2.03(a).  Further, the requirement to cure or repurchase is only triggered after a party "discover[s] or recei[ves]" written notice of the material defect or missing document and "the party making such discovery or receiving such notice" gives the Sponsor written notice of the material defect or missing document.  *Id.*

The other GAs contain similar requirements.  *See, e.g.*, Biron PL Ex. 55 & Biron CB Ex. 55 (Charts: Trusts for Which GAs Provide Defendant Must Provide Notice of R&W Breaches Upon Discovery or Receipt of Written Notice); Biron PL Ex. 54 & Biron CB Ex. 54 (Charts: Trusts for Which GAs Provide Defendant Must Provide Notice of R&W Breaches Only Upon Discovery).

**Plaintiffs' Reply: DB's statements and purported evidence do not controvert Plaintiffs' material fact. Therefore, this material fact should be deemed admitted. *See* Local Rule 56.1(c). DB's attempt to evade the material fact by mischaracterizing it as a**

22

**legal conclusion is unavailing; the document speaks for itself. Further, DB's assertions**

**concerning DB's repurchase obligations are contrary to the Governing Agreements. As**

**explained in Plaintiffs' briefing, DB was obligated, prior to an EOD, to enforce the**

**repurchase protocol for loans that breached R&Ws or lacked required Mortgage File**

**documents.** *See* **Pltfs.Mem. 44-54.**

19.     The pooling and servicing agreements typically provide that investors must hold a certain percentage of voting rights and provide written notice of default to the trustee in order to direct the trustee. *See, e.g.*, Handlin Ex. 35 (NHEL 2006-5 PSA) § 12.03.

Defendant's Response:  To the extent this paragraph purports to state a legal

conclusion regarding the investors' rights and duties under a contract, no response is

required.

Defendant does not dispute that the GAs generally require investors to hold

certificates representing a certain percentage of "voting rights" in order to direct

Defendant to take certain actions.  But, Plaintiffs' purported characterization of the GAs

in this paragraph is inaccurate, and is not supported by the material cited by Plaintiffs.

As an initial matter, each Trust is governed by unique GAs, and Plaintiffs'

citation to a GA for a single Trust does not support any generalization about other Trusts.

In addition, even within one GA, certificateholders' rights to direct Defendant (and any

conditions on those rights) depend on the action being directed.

For example, the GAs for 80 Trusts (including the GA cited by Plaintiffs in this

paragraph) provide that certificateholders representing a contractually specified

percentage of "Voting Rights" have the right to direct Defendant to conduct an

investigation, without any requirement that the certificateholders "provide written notice

of default."  Biron PL Ex. 51 & Biron CB Ex. 51 (Charts: Investors May Direct

Defendant To Conduct An Investigation).

The GAs for all Trusts also provide that certificateholders representing a contractually specified percentage of "Voting Rights" have the right to terminate, or direct another deal party to terminate, a servicer under specified circumstances. Biron PL Ex. 49 & Biron CB Ex. 49 (Charts: Investors May Terminate Servicers). Those specified circumstances generally require that a contractually defined event (for example, an "Event of Default") must have occurred and must not have been remedied. *Id.*

The provision cited by Plaintiffs in this paragraph does not concern certificateholders' rights to give directions. Rather that provision, and similar provisions in other GAs, provide that certificateholders representing a contractually specified percentage of voting rights have the right to initiate legal actions under the GAs if (i) certain conditions are satisfied (such as the certificateholders "provid[ing] written notice of default"), (ii) the certificateholders have requested that Defendant initiate legal action, and (iii) Defendant has failed to do so. Biron PL Ex. 52 & Biron CB Ex. 52 (Charts: Investors May Initiate Legal Action If Defendant Fails to Do So).

**Plaintiffs' Reply: DB's purported evidence does not controvert Plaintiffs' assertion that the pooling and servicing agreements typically provide that investors must hold a certain percentage of voting rights and provide written notice of default to the trustee in order to direct the trustee. Therefore, this material fact should be deemed admitted. *See* Local Rule 56.1(c). DB's attempt to evade this material fact by mischaracterizing it as a legal conclusion is unavailing; the cited document speaks for itself.**

### B.    The Role of the Trustee

20.    RMBS certificateholders' returns depend on the performance of the underlying mortgage loans. Handlin Ex. 377 (NHEL 2006-5 Prospectus Supplement) at S-16.

<u>Defendant's Response</u>:  Disputed.  The materials Plaintiffs cite do not support this paragraph.  *See* Handlin Ex. 377 (NHEL 2006-5 Prospectus Supplement) at S-16.  Each RMBS transaction is governed by unique contracts, and Plaintiffs' citation to an offering document for a single Trust does not support any generalization about other RMBS.

Indeed, even the sole document Plaintiffs cite in support of this paragraph reflects that RMBS certificateholders' returns depend on many factors.  *See id.* at S-12–S-21 (*e.g.*, "The yield to maturity on the certificates will also depend on the related certificate interest rate and the purchase price for such certificates," *id.* at S-17).  For example, principal and interest payments on certain Certificates were guaranteed by a monoline insurance company.  *See, e.g.*, Goff Ex. 137 (IMM 2007-A Offering Circular) at S-1; Handlin Ex. 102 (IMM 2007-A Indenture) at DBNTC_COMMERZBANK_00000070924, -932.  Other Certificates had the benefit of an interest rate swap agreement and/or similar derivative agreements.  *See, e.g.*, Goff Ex. 138 (SVHE 2006-EQ1 Prospectus Supplement) at S-1; Handlin Ex. 42 (SVHE 2006-EQ1 PSA) at Ex. Q.

**Plaintiffs' Reply: DB's purported evidence does not controvert the fact that RMBS certificateholders' returns depend on the performance of the underlying mortgage loans. The additional statements and evidence proffered by DB are consistent with Plaintiffs' material fact. Therefore, this material fact should be admitted. *See* Local Rule 56.1(c).**

21.     Plaintiffs and other Certificateholders could not confirm the creditworthiness of the borrowers or the sufficiency of the collateral, because they did not have access to loan documentation. *See* Handlin Ex. 380 (Collins) 91:19–21, Aug. 30, 2017, *Phoenix Light v. U.S. Bank*, No. 14-cv-10116 (S.D.N.Y. Mar. 22, 2016) ("Privacy laws don't allow you to get the loan files. We are an investor in a pool, not the servicer.").

<u>Defendant's Response</u>:  To the extent this paragraph purports to state a legal conclusion related to "privacy laws," no response is required.

Disputed.  Plaintiffs support this statement with inadmissible evidence.  The cited testimony is hearsay and lacks foundation.  Further, Plaintiffs cite only to vague deposition testimony about "privacy laws" by a fact witness, given in response to a question to which Plaintiffs lodged a form objection.  *See* Goff Ex. 35 at 91:19–21 (P. Collins Dep. (Aug. 30, 2017), PL/USB).  Moreover, ████████████████████████ ████████████████████████ *See* Goff Ex. 36 at 250:9–18, errata (CDO Pltfs 30(b)(6) Dep. (May 8, 2018)) ('████████████████████████ ████████████████████████████ Goff Ex. 35 at 8:4–19 (P. Collins Dep. (Aug. 30, 2017), PL/USB) (████████████████ ████████████████████

Moreover, the statements in this paragraph are contrary to overwhelming material in the record.  On certain occasions, RMBS investors requested loan origination and underwriting files to investigate potential breaches of representations and warranties and Defendant assisted those investors with their efforts to obtain those files.  *See* Biron CB Ex. 102 (Jan. 31, 2012 letter from investor group to Defendant); Goff Ex. 125 (MSAC 2007-HE5 notice and request for direction); *see also* Reyes Opp. Exs. 4 & 5 (████████ ████████████████████) at rows 40 (FFML 2006-FF11), 65 (FFML 2006-FF9), and 88 (MSAC 2007-NC4); Goff Ex. Handlin Ex. 387 at 95:15 – 96:9 (R. Reyes 30(b)(6) (Apr. 19, 2018); Reyes PL Decl. ¶ 36; Reyes CB Decl. ¶ 36.

████████████████████████████████ ████████████████████ (Goff Ex. 39 at 38:7 – 22 (I. Halpern Dep. (May 25, 2018)), ████████████████████████████████ ████████████████████████:



Goff Ex. 39 at 137:17-138:10 (I. Halpern Dep. (May 25, 2018)); *see also* Goff Ex. 75

(Mar. 22, 2007 email)



).

.[3]  Goff Ex. 40 at 82:5 – 83:3

(K. Smith Dep. (June 20, 2017), BR/DB).

---

[3]

Biron PL Ex. 101 (Phoenix Collateral Management Agreement); Biron PL Ex. 97 (Phoenix Trust

Agreement); Biron PL Ex. 150 at 74:10-74:14 (Phoenix 30(b)(6) Dep. (Sep. 22, 2016), PL/HSBC).

Biron CB Ex. 82 at PIMCO-

DB000888 – PIMCO-DB000907; *see* Biron CB Ex. 19 at PIMCO-DB000527; Biron CB Ex. 83 at

CB_DB02938573, -592; Goff Ex. 48 at 145:17 - 157:3 (V. Radhakishun Dep. (May 18, 2017), CB/WF).



*Id.* at 74:5 - 12.





*Id.* at 92:23 – 94:21.

**Plaintiffs' Reply:** DB's purported evidence and statements do not controvert the material fact that Plaintiffs and other Certificateholders could not confirm the creditworthiness of the borrowers or the sufficiency of the collateral, because they did not have access to loan documentation. Therefore, this material fact should be admitted. *See* Local Rule 56.1(c). DB's assertion that "[o]n certain occasions, RMBS investors requested loan origination and underwriting files to investigate potential breaches of representations and warranties and Defendant assisted those investors with their efforts to obtain those files" is immaterial and irrelevant to the fact, and also completely unsupported by the evidence cited by DB and the entire evidentiary record. Tellingly, despite asserting that "Defendant assisted those investors with their efforts to obtain those files," DB points only to letters and requests sent by investors, not any evidence of DB actually working to obtain the requested files. DB's attempt to evade the fact by mischaracterizing it as a legal conclusion is unavailing.

Further, DB's objection regarding hearsay is incorrect. The deposition testimony meets the requirements of Rule 32(a) of the FRCP. The deposition was taken in a previous action and is "allowed by the Federal Rules of Evidence." The statement concerned a judicially-recognized fact that federal law prohibits investors from gaining access to loan files. *See* **15 U.S.C. § 1601;** *Willey v. J.P. Morgan Chase, N.A.*, **2009 WL 1938987, at \*1**

**(S.D.N.Y. July 7, 2009). Judicially-recognized facts do not require evidence to prove their truth.**

22.     The Trustee had the ability, in the event borrowers on loans underlying the Trusts were unable to satisfy their payment obligations, to vindicate Certificateholders' rights, by forcing the banks that originated or acquired the loans included in the Trusts (the "Sellers") to repurchase the defective loans or by causing the Servicers to foreclose on the properties as quickly and inexpensively as possible. *See*, *e.g.*, Handlin Ex. 35 (NHEL 2006-5 PSA) §§ 2.03, 3.01.

Defendant's Response:  To the extent this paragraph purports to state a legal

conclusion relating to the Trustee's rights and responsibilities under the GAs with respect

to breaches of representations and warranties and servicing activities, no response is

required.

Disputed.  To the extent Plaintiffs purport to characterize the GAs, the materials

Plaintiffs cite do not support Plaintiffs' characterization.  *See* Handlin Ex. 35 (NHEL

2006-5 PSA) §§ 2.03, 3.01.  Each GA is a unique contract, and Plaintiffs' citation to a

single GA does not support any generalization about other GAs.

This paragraph is vague and ambiguous, including for example because Plaintiffs

do not explain the phrase "defective loans."

Defendant does not dispute that certain Trusts' GAs provide Defendants certain

rights relating to breaches of R&Ws about mortgage loans and breaches by servicers.

*See, e.g.*, Handlin Ex. 23 (MSAC 2006-HE6 PSA) §§ 2.01, 2.02, 2.03, 7.01. But the GAs

are explicit that "[t]he rights of the Trustee to perform any discretionary act enumerated

in this Agreement shall not be construed as a duty."  *E.g.*, Handlin Ex. 44 (SAST 2006-3

Indenture) § 6.02(g); *see also* Biron PL Ex. 35 & Biron CB Ex. 35 (Charts: Defendant

Has Only the Duties Expressly Set Forth in the GAs).

Moreover, regardless of Defendant's rights under the GAs, the materials cited by Plaintiffs do not support Plaintiffs' propositions that any borrower's inability to pay was caused by a defect in the mortgage loan, or that Defendant had the *ability* to "forc[e] the banks that originated or acquired the loans included in the Trusts . . . to repurchase the defective loans." *See* Handlin Ex. 35 (NHEL 2006-5 PSA) at §§ 2.03, 3.01. And those propositions are contrary to overwhelming material in the record.

Rather, as set forth below, the record evidence demonstrates that the viability and benefit of any repurchase depends on numerous factors including the materiality of the "defect"; the solvency of the warrantor; the costs associated with identifying the "defect"; the willingness of the warrantor to repurchase the loan absent litigation; the costs and risks associated with any litigation; and many others.



Biron CB Ex. 90 at CB_HSBC000479509 – 10 (Feb. 16, 2007 email).



*Id.*; *see also* Biron CB Ex. 127 at 215:24 – 216:6 (J. Reid Dep. (Mar. 15, 2017), CB/WF)

Goff Ex. 41 at 179:17 – 180:11 (V. Radhakishun Dep. (Jan. 19, 2018)) ( ); Goff Ex. 42 at 148:9 – 149:7 (L. Medema Dep. (Jan. 11, 2018)) ( ).

Goff Ex. 37 at 58:4 – 7 (I. Halpern Dep. (Jul. 19, 2018), PL/USB).

*Id.* at 58:17 – 24; *see also* Goff Ex. 38 at 183:24 – 188:6 (C. Mace Dep. (Apr. 23, 2018)) (



Goff Ex. 38 145:7 – 13 (C. Mace Dep. (Apr. 23, 2018)), and

," *id.* at 58:4 – 10.

*Id.* at 72:10 – 75:19.

*Id.* at 72:24 – 73:9; *also id.* at 93:1 – 25

).

In 2011,

Goff Ex. 76 at PL_DB008134790 (October 19, 2011 email chain).

33



(*see* Goff Ex. 77 (Curriculum Vitae of David R. Gault)),

Goff Ex. 43 at 47:14 – 48:19 (D. Gault Dep. (June 8, 2018)).

(Goff Ex. 39 at 33:4 – 34:13 (I. Halpern Dep. (May 25, 2018)),



*Id.* at 233:14 – 234:12 (I. Halpern Dep. (May 25, 2018)).

Substantial expert evidence in the record also disputes Plaintiffs' contention that Defendant had the ability to "forc[e] the banks that originated or acquired the loans included in the Trusts . . . to repurchase the defective loans." *See* Goff Ex. 5 (Richard Report) at JR0015 – 16, ¶ 33 (*PL/DB*) & JR0035 – 36, ¶ 33 (*CB/DB*)

); Goff Ex. 31 at 549:9–550:9

); Goff Ex. 3 (Schwarcz Report) at SS0030, ¶ 4.11 (*PL/DB*) & SS0041, ¶ 4.11 (*CB/DB*)

; Goff Ex. 2 (Ryan Report) at LR0081 – 82, § VIII.B (*PL/DB*) & LR0342 – 43, § VIII.B (*CB/DB*)



*see* Goff Ex. 5 (Richard Rebuttal) at JR0053, ¶ 21 (*PL/DB*) & JR0071, ¶ 21 (*CB/DB*) ██████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████ Goff Ex. 2 (Ryan Report) at LR0027, Table 2 ████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████).

Further, to the extent the Defendant has an obligation to enforce the repurchase of loans with breaching R&Ws, that obligation is only triggered when the Defendant has actual knowledge of the breach.  *See, e.g.*, Handlin Ex. 31 (MSAC 2007-NC4 PSA) § 2.07 ("Upon discovery by any of the parties hereto of a breach of a representation or warranty made by the Sponsor pursuant to the Representations and Warranties Agreement, the party discovering such breach shall give prompt written notice thereof to the other parties to this Agreement and the Sponsor.  The Trustee shall pursue such legal remedies available to the Trustee with respect to such breach under the Representations and Warranties Agreement, as may be necessary or appropriate to enforce the rights of the Trust with respect thereto, in accordance with customary industry practices or if such asset were its own property."); Handlin Ex. 89 (GSAMP 2005-HE4 PSA) § 2.07 ("Upon discovery by any of the parties hereto of a breach of a representation or warranty made by EquiFirst pursuant to the EquiFirst Agreements, Fremont pursuant to the Fremont Agreements or the Purchaser pursuant to the Representations and Warranties Agreement, the party discovering such breach shall give prompt written notice thereof to the other

parties to this Agreement EquiFirst, Fremont or the Purchaser, as applicable. The Trustee shall take such action with respect to such breach under the EquiFirst Agreements, the Fremont Agreements or the Representations and Warranties Agreement, as applicable, as may be necessary or appropriate to enforce the rights of the Trust with respect thereto."); *Royal Park Invs. SA/NV v. HSBC Bank USA N.A.*, No. 14-CV-08175, 2017 WL 945099, at *6 (S.D.N.Y. Mar. 10, 2017) (Netburn, M.J.) ("The Court, however, reads 'discovery' as used in Section 2.03 to mean <u>actual knowledge</u>"); *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-CV-4394, 2016 WL 439020, at *6 (S.D.N.Y. Feb. 3, 2016) (Nathan, J.) ("Without <u>actual knowledge</u> of non-conforming loans, [Defendant] would have no obligation to require a Seller to substitute or repurchase the defective loan."); *Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*, 109 F. Supp. 3d 587, 603 (S.D.N.Y. 2015) (Scheindlin, J.) ("If, after discovery, plaintiffs cannot prove that HSBC had <u>actual knowledge</u> regarding the loans at issue here, HSBC may move for summary judgment."); *W&S v. BNYM II*, 2017 WL 3392855, at *9 ("discovery as used in [RMBS governing agreements] means <u>actual knowledge</u>"); *see also Royal Park Invs.*, 2018 WL 4682220, at *9 (Moses, M.J.) (recognizing that "discovery" in PSAs means "<u>actual knowledge</u>" and observing that "no such case has interpreted the term 'discovery,' as used in the PSAs, to mean either constructive knowledge or inquiry notice"). Plaintiffs have not cited in this paragraph any evidence that demonstrates Defendant had actual knowledge of any loan-by-loan breach.

The materials cited by Plaintiffs also do not support Plaintiffs' proposition that Defendant had the ability to "caus[e] the Servicers to foreclose on the properties as

quickly and inexpensively as possible." *See* Handlin Ex. 35 (NHEL 2006-5 PSA) at §§

2.03, 3.01.  And, this proposition is contrary to overwhelming material in the record.

For example, 

Biron CB Ex. 19 at PIMCO-DB000533 (October 2008 PIMCO Report); *see also* Biron

CB Ex. 83 at CB_DB02938595 (December 2008 PIMCO Report).



Biron CB Ex. 83 at CB_DB02938596; Biron CB Ex. 19 at PIMCO-DB000534 (same).



Biron CB Ex. 19 at PIMCO-DB000533; Biron CB Ex. 83 at CB_DB02938596 (same).





Biron CB Ex. at 83 CB_DB02938598 – 99; *see also* Biron CB Ex. 19 at PIMCO-

DB000536 (same).

Biron CB Ex. 83 at CB_DB02938599.

Biron CB Ex. 19 at PIMCO-DB000533; Biron CB Ex. 83 at CB_DB02938595 (same).

Biron CB Ex. 19 at PIMCO-DB000534; Biron CB Ex. 83 at CB_DB02938597 (same).



Goff Ex. 42 at 26:8 – 18, 75:25 – 78:2 (L. Medema Dep. (Jan. 11, 2018)); *see also id.* at

93:3 - 20 

).

Expert evidence in the record further contradicts Plaintiffs' position.  *See* Goff Ex.

1 (Bryar Report) at MB0021 – 24, ¶¶ 55–64 (*PL/DB*) & MB0141 – 45, ¶¶ 55–64

(*CB/DB*)

"); *id.* at MB0025 – 26, ¶ 67 (*PL/DB*) & MB0145 –

46, ¶ 67 (*CB/DB*) ("

").

**Plaintiffs' Reply: DB's statements and additional proffered evidence do not**

**specifically controvert this material fact. DB instead takes issue with Plaintiffs'**

**characterization of the Trustee's ability to vindicate Certificateholders' rights by enforcing**

**repurchases, arguing that the "viability and benefit of any repurchase depends on**

**numerous factors." DB's issue with Plaintiffs' characterization of the Trustee's ability to**

**vindicate Certificateholders' rights by enforcing repurchases is immaterial; the Governing**

**Agreements speak for themselves. Therefore, this material fact should be deemed admitted.**

***See* Local Rule 56.1(c). DB's attempt to evade the fact by mischaracterizing it as vague and**

**ambiguous and as a legal conclusion is unavailing. DB's reliance on its expert reports does**

**not create issues of fact because an expert may not provide a legal opinion regarding the**

**interpretation of contractual provisions, including the Trustee's and the Servicer's duties**

**under the Governing Agreements. Additionally, Plaintiffs' intend to move to preclude the**

**testimony of DB's experts at trial.**

DB's assertion that "the GAs are explicit that '[t]he rights of the Trustee to perform any discretionary act enumerated in this Agreement shall not be construed as a duty'" is a legal conclusion inappropriate for a Rule 56.1 Statement to which no response is required. But it is nonetheless incorrect. As explained in Plaintiffs' briefing, DB was *obligated*, prior to an EOD, to enforce the repurchase protocol for loans that breached R&Ws or lacked required Mortgage File documents. *See* Pltfs.Mem. 44-54. For 40 Trusts, DB had the pre-EOD duty to enforce the repurchase protocol for loans with R&W violations of which DB had knowledge. *Id.* 45-48. In 8 Trusts, DB had a pre-EOD duty to enforce repurchase where DB was required, but failed, to notify the Depositor of loans with Mortgage File defects. *Id.* 48-51. For 3 Trusts on which DB's enforcement duty for loans with Mortgage File defects is established as a matter of law, Plaintiffs are also entitled to summary judgment that DB breached its duty. *Id.* 51-54.

DB asserts that "Plaintiffs' propositions that any borrower's inability to pay was caused by a defect in the mortgage loan, or that Defendant had the ability to 'forc[e] the banks that originated or acquired the loans included in the Trusts . . . to repurchase the defective loans'….are contrary to overwhelming material in the record," but cites no such materials in support. Therefore, DB's assertion is entitled to no weight. It also is immaterial and irrelevant to Plaintiffs' material fact.

DB's assertion concerning "the viability and benefit of any repurchase" is immaterial and irrelevant to the material fact, as is the additional evidence proffered in relation to this assertion. Further, as explained in Plaintiffs' briefing, DB failed to pursue repurchase claims against solvent entities. *See* Pltfs.Opp. 22-23.

42

DB's assertion that "to the extent the Defendant has an obligation to enforce the repurchase of loans with breaching R&Ws, that obligation is only triggered when the Defendant has actual knowledge of the breach" is a legal conclusion inappropriate for a Rule 56.1 statement and therefore, no response is required. It is nonetheless incorrect. As explained in Plaintiffs' briefing, Judge Failla held that "the use of two different terms— "discovery" and "actual knowledge"— means the two "must be given different meanings." Pltfs.Opp. 43-49; *see also BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, 2017 WL 3610511 (S.D.N.Y. Aug. 21, 2017) (citations omitted). Judge Failla also held that a trustee cannot avoid its repurchase enforcement duty "by willfully blinding itself for the purpose of disclaiming knowledge" or where it has "'implied actual knowledge,' defined as '[k]nowledge of information that would lead a reasonable person to inquire further.'" *Id.*

23.    The Trustee had the ability to enforce, on Certificateholders' behalf, contractual promises made for their benefit that the loans were underwritten in conformance with appropriate underwriting guidelines, were properly documented, and were otherwise of a quality and creditworthiness consistent with the risk profile of the investment as it was marketed to the public. *See, e.g.*, Handlin Ex. 35 (NHEL 2006-5 PSA) § 2.03(a) ("if the Sponsor does not deliver such missing document or cure such defect or breach in all material respects during such period, the Custodian shall notify the Trustee and the Trustee shall enforce the Sponsor's obligation under the Purchase Agreement and cause the Sponsor to repurchase such Mortgage Loan from the Trust Fund").

Defendant's Response:  To the extent this paragraph purports to state a legal conclusion relating to Defendant's rights and responsibilities under the GAs with respect to breaches of representations and warranties, no responses is required.

Disputed.  To the extent Plaintiffs purport to characterize the GAs, the materials Plaintiffs cite do not support Plaintiffs' characterization.  *See* Handlin Ex. 35 (NHEL 2006-5 PSA) § 2.03(a).  Each Trust is governed by unique GAs, and Plaintiffs' citation to a GA for a single Trust does not support any generalization about other Trusts.

Moreover, Plaintiffs' contentions in this paragraph are contrary to overwhelming

material in the record.  *See* Goff Ex. 119 (███████████████████████

████████████████████████████████████████████████████████████████████

████████████████████); Goff Ex. 32 at 394:6-397:5 (M. Adelson Dep. (Oct. 3 – 4, 2018))

(████████████████████████████████████████████████████████████████████

████████████████████████████).  Defendant restates its response to ¶ 22 and

incorporates it by reference.

In addition to the evidence described in Defendant's response to ¶ 22, the expert

evidence makes clear ████████████████████████████████████████

████████████████████████████████████████████████████████████████.

Goff Ex. 5 (Richard Rebuttal) at JR0053, ¶ 21 (*PL/DB*) & JR0071, ¶ 21 (*CB/DB*)

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████); Goff Ex. 2 (Ryan Report) at LR0081 – 82, § VIII.B (*PL/DB*) & LR0342 –

43, § VIII.B (*CB/DB*) (████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████).

The materials cited do not support the contention that Defendant could enforce the

repurchase of loans with breaching representations and warranties to ensure conformity

"with the risk profile of the investment as it was marketed to the public."  Defendant had

no liability or responsibility for the manner in which the investment was "marketed to the public."  *See generally* Handlin Ex. 377 (NHEL 2006-5 Prospectus Supplement); Goff Ex. 3 (Schwarcz Report) at SS0028, ¶ 4.7 (*PL/DB*) & SS0138 – 39, ¶ 4.7 (*CB/DB*) ██

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████ ); *see also* Goff Ex. 5 (Richard Report) at JR0012,

¶ 22 (*PL/DB*) & JR0032, ¶ 22 (*CB/DB*) ████████████████████████

██████████████████████████████████████████████████████████

████████████ .

Whether Defendant "had the ability to enforce" contractual provisions is irrelevant to Plaintiffs' motion because an RMBS trustee only has those duties expressly set forth in the GAs.  Biron PL Ex. 35 & Biron CB Ex. 35 (Charts: Defendant Has Only the Duties Expressly Set Forth in the GAs).  Further, under the GAs for many Trusts, Defendant had no repurchase enforcement obligations.  *See, e.g.*, Biron PL Ex. 56 & Biron CB Ex. 56 (Charts: Trusts For Which Defendant Had No Duty to Enforce Any Repurchase Obligations).  Under others, Defendant had repurchase enforcement obligations only under circumstances that were not met.  *See* Biron PL Ex. 57 & Biron CB Ex. 57 (Charts: Trusts for which GAs Provide Defendant Has R&W Enforcement Duty Under Specified Conditions).

The expert evidence about the role of RMBS trustees and investor expectations is consistent with those provisions of the GAs.  Goff Ex. 3 (Schwarcz Report) at SS0016 – 17, ¶¶ 3.7 – 3.8 (*PL/DB*) & SS0126 – 28, ¶¶ 3.7 – 3.8 (*CB/DB*) ██████████████

████████████████████████████████████████████████████████



*id.* at SS0035, ¶ 4.20 (*PL/DB*) & SS0145 – 46, ¶ 4.20 (*CB/DB*)

(alteration original; internal citation omitted)); *See*

Goff Ex. 5 (Richard Report) at JR0014, ¶ 29 (*PL/DB*) & JR0034, ¶ 29 (*CB/DB*)

; Goff Ex. 5

(Richard Rebuttal) at JR0053, ¶ 21 (*PL/DB*) & JR0071, ¶ 21 (*CB/DB*)

**Plaintiffs' Reply: DB's statements and purported evidence do not controvert this material fact. Therefore, this material fact should be deemed admitted.** *See* **Local Rule 56.1(c). DB instead argues that "Defendant had no liability or responsibility for the manner in which the investment was 'marketed to the public.'" But that fact, which Plaintiffs dispute, is immaterial to Plaintiffs' Motion because Plaintiffs did not move for summary judgment on whether DB had liability or responsibility for the manner in which investments were marketed to the public. Rather, Plaintiffs Motion concerns, in relevant part, DB's breach of its duty to enforce repurchase obligations pre-EOD.** *See* **Pltfs.Mem. 44-54. DB's attempt to evade the fact by mischaracterizing it as a legal conclusion is unavailing. DB's reliance on its expert reports does not create issues of fact because an**

expert may not provide a legal opinion regarding the interpretation of contractual provisions, including the Trustee's duties under the Governing Agreements. Additionally, Plaintiffs intend to move to preclude the testimony of DB's experts at trial.

DB's assertion that "[w]hether Defendant 'had the ability to enforce' contractual provisions is irrelevant to Plaintiffs' motion because an RMBS trustee only has those duties expressly set forth in the GAs" is a legal conclusion inappropriate for a Rule 56.1 Statement to which no response is required. It nonetheless is incorrect. As explained in Plaintiffs' briefing, the prudent person standard resulting from every EOD, regardless of how that EOD was triggered, required DB to pursue repurchase remedies, without getting direction or indemnity from Certificateholders. *See* **Pltfs.Mem. 32-41.**

DB's assertions that "under the GAs for many Trusts, Defendant had no repurchase enforcement obligations" and "Defendant had repurchase enforcement obligations only under circumstances that were not met" are legal conclusion inappropriate for a Rule 56.1 Statement to which no response is required. DB nonetheless is incorrect. As explained in Plaintiffs' briefing, after an EOD, DB had to prudently pursue remedies, including the repurchase of loans that breached R&Ws or lacked required Mortgage File documents. *See* **Pltfs.Mem. 32-41.**

Plaintiffs restate their reply to DBCSUF ¶ 22 and incorporate it by reference.

24.     The Governing Agreements all require that the Trustee, or Custodian on the Trustee's behalf, receive and maintain a complete set of the documents, typically defined as the "Mortgage File," that are necessary to establish good title to each mortgage loan. *See*, *e.g.*, Handlin Ex. 35 (NHEL 2006-5 PSA) § 2.02(a) ("The Custodian, on behalf of the Trustee, acknowledges receipt of, subject to the review described below and any exceptions it notes pursuant to the procedures described below, the documents (or certified copies thereof) referred to in Section 2.01 hereof and declares that it holds and will continue to hold those documents and any amendments, replacements or supplements thereto and all other assets of the Trust Fund in trust for the use and benefit of all present and future Certificateholders."). *See also Phoenix Light v. DB*, ECF No. 189-3 at 8-11; *Commerzbank v. DB*, ECF No. 89-3 at 5-7.

Defendant's Response:  To the extent this paragraph purports to state a legal conclusion with respect to contractual duties under the GAs or the necessity of any documents to the establishment of "good title to each mortgage loan," no response is required.  Further, Plaintiffs' reference to "good title to each mortgage loan" is ambiguous. To the extent Plaintiffs are referring to the title holder of record of the property, that is a matter of public record.  To the extent Plaintiffs are referring to the ability to enforce a mortgage loan, that is a legal conclusion, and no response is required.

Disputed.  Plaintiffs' citation to allegations in their own complaints does not constitute support by material that would be admissible in evidence.

To the extent Plaintiffs purport to characterize the GAs, the materials Plaintiffs cite do not support Plaintiffs' characterization.  *See* Handlin Ex. 35 (NHEL 2006-5 PSA) § 2.02(a).  Each Trust's GAs set out each deal party's obligations, if any, with respect to the mortgage loan files.  *See, e.g.*, Handlin Ex. 8 (FFML 2006-FF11 PSA) § 2.02.  The materials cited by Plaintiffs do not support the contention that the Custodian is obligated to receive a "complete set" of documents in the Mortgage File.  In addition, Plaintiffs have not cited any evidence that "all" GAs require the Custodian to receive these documents.  Citing one PSA provision does not provide proof regarding all the GAs for the Trusts.

**Plaintiffs' Reply: DB proffers no evidence to specifically controvert this material fact. Therefore, this material fact should be deemed admitted. *See* Local Rule 56.1(c).  The record is clear that the Governing Agreements for each of the Trusts require that the Trustee, or Custodian on the Trustee's behalf, receive and maintain a complete set of the documents, typically defined as the "Mortgage File," that are necessary to establish good**

title to each mortgage loan. *See* Fitzgerald Ex. 17 (AABST 2006-1 TSA) § 2.1; Handlin Ex. 3 (AMSI 2006-R1 PSA) § 2.01; Handlin Ex. 4 (ARSI 2006-M1 PSA) § 2.01; Handlin Ex. 5 (ARSI 2006-M3)  § 2.01; Handlin Ex. 6 (ARSI 2006-W2 PSA) § 2.01; Handlin Ex. 7 (ARSI 2006-W3 PSA) § 2.01; Handlin Ex. 8 (FFML 2006-FF11 PSA) § 2.01; Handlin Ex. 9 (FHLT 2005-1 PSA) § 2.01; Handlin Ex. 10 (FHLT 2005-2 PSA) § 2.01; Handlin Ex. 11 (FHLT 2006-1 PSA) § 2.01;  Handlin Ex. 12 (FHLT 2006-2 PSA) § 2.01; Handlin Ex. 13 (FHLT 2006-3 PSA) § 2.01; Handlin Ex. 14 (HASC 2006-HE1 PSA) § 2.01; Handlin Ex. 18 (IXIS 2006-HE1 PSA) § 2.01; Handlin Ex. 19 (IXIS 2006-HE2 PSA) § 2.01; Handlin Ex. 20 (IXIS 2007-HE1 PSA) § 2.01; Handlin Ex. 21 (MLMI 2007-MLN1 PSA) § 2.01; Handlin Ex. 22 (MMLT 2005-2 PSA) § 2.01; Handlin Ex. 23 (MSAC 2006-HE6 PSA) § 2.01; Handlin Ex. 24 (MSAC 2006-NC2 PSA) § 2.01; Handlin Ex. 25 (MSAC 2006-NC5 PSA) § 2.01; Handlin Ex. 26 (MSAC 2006-WMC2 PSA) § 2.01; Handlin Ex. 27 (MSAC 2007-HE1 PSA) § 2.01; Handlin Ex. 28 (MSAC 2007-HE2 PSA) § 2.01; Handlin Ex. 29 (MSAC 2007-HE5 PSA) § 2.01; Handlin Ex. 30 (MSAC 2007-NC1 PSA) § 2.01; Handlin Ex. 31 (MSAC 2007-NC4 PSA) § 2.01; Handlin Ex. 32 (MSHEL 2006-3 PSA) § 2.01; Handlin Ex. 33 (MSHEL 2007-1 PSA) § 2.01; Handlin Ex. 34 (MSIX 2006-2 PSA) § 2.01; Handlin Ex. 35 (NHEL 2006-5 PSA) § 2.01; Handlin Ex. 36 (NHEL 2006-6 PSA) § 2.01; Handlin Ex. 37 (SABR 2007-NC2 PSA) § 2.01; Handlin Ex. 38 (SAST 2007-1 PSA) § 2.1; Handlin Ex. 39 (SAST 2007-2 PSA) § 2.1; Handlin Ex. 40 (SVHE 2005-3 PSA) § 2.01; Handlin Ex. 41 (SVHE 2006-1 PSA) § 2.01; Handlin Ex. 42 (SVHE 2006-EQ1 PSA) § 2.01; Handlin Ex. 43 (SVHE 2006-NLC1 PSA)§ 2.01; Handlin Ex. 78 (FFML 2005-FF2 PSA) § 2.01; Handlin Ex. 79 (FFML 2005-FFH3 PSA) § 2.01; Handlin Ex. 80 (FFML 2006-FF8 PSA) § 2.01; Handlin Ex. 81 (FFML 2006-FF9 PSA) § 2.01; Handlin Ex. 82 (FFML 2006-FF13 PSA) § 2.01; Handlin Ex. 83

(GSAA 2005-10 PSA) § 2.01; Handlin Ex. 84 (GSAA 2006-15 MSTA) § 2.01; Handlin Ex. 85 (GSAA 2006-16 MSTA) § 2.01; Handlin Ex. 86 (GSAA 2006-17 MSTA) § 2.01; Handlin Ex. 87 (GSAA 2007-4 MSTA) § 2.01 Handlin Ex. 89 (GSAMP 2005-HE4 PSA) § 2.01; Handlin Ex. 90 (GSAMP 2005-WMC1 PSA) § 2.01; Handlin Ex. 91 (GSAMP 2005-WMC2 PSA) § 2.01; Handlin Ex. 92 (GSAMP 2005-WMC3 PSA) § 2.01; Handlin Ex. 93 (GSAMP 2006-FM3 PSA) § 2.01; Handlin Ex. 94 (GSAMP 2006-S4 PSA) § 2.01; Handlin Ex. 95 (HASC 2006-OPT4 PSA) § 2.01; Handlin Ex. 96 (HASC 2007-HE1 PSA) § 2.01; Handlin Ex. 98 (HSAC 2007-OPT1 PSA) § 2.01; Handlin Ex. 99 (HVMLT 2006-3 PSA) § 2.01; Handlin Ex. 100 (HVMLT 2007-2 PSA) § 2.01; Handlin Ex. 103 (IMSA 2006-3 PSA) § 2.01; Handlin Ex. 104 (IMSA 2006-4 PSA) § 2.01; Handlin Ex. 105 (IXIS 2005-HE3 PSA) § 2.01; Handlin Ex. 106 (IXIS 2006-HE3 PSA) § 2.01; Handlin Ex. 107 (MSAC 2005-HE7 PSA) § 2.01; Handlin Ex. 108 (MSAC 2005-NC2 PSA) § 2.01; Handlin Ex. 109 (MSAC 2006-HE5 PSA ) § 2.01; Handlin Ex. 110 (MSAC 2006-HE7 PSA) § 2.01; Handlin Ex. 111 (MSAC 2006-HE8 PSA) § 2.01; Handlin Ex. 112 (MSAC 2006-NC3 PSA) § 2.01; Handlin Ex. 113 (MSHEL 2005-4 PSA) § 2.01; Handlin Ex. 114 (MSHEL 2007-2 PSA) § 2.01; Handlin Ex. 115 (MSIX 2006-1 PSA) § 2.01; Handlin Ex. 116 (NHEL 2007-2 PSA) § 2.01; Handlin Ex. 117 (SVHE 2005-OPT3 PSA) § 2.01; Handlin Ex. 118 (SVHE 2005-OPT4 PSA) § 2.01; Handlin Ex. 119 (SVHE 2006-OPT5 PSA) § 2.01; Handlin Ex. 120 (WAMU 2005-AR13 PSA) § 2.05; Handlin Reply Ex. 23 (AHM 2006-1 MLPA) § 2.1; Fitzgerald Ex. 261 (IMM 2005-7 MLPA) § 2.1; Fitzgerald Ex. 262 (IMM 2005-8 MLPA) § 2.1; Lucht Ex. 72 (SAST 2006-3 SSA) § 2.1; Handlin Ex. 75 (ECR 2005-3 Indenture) § 3.01; Handlin Reply Ex. 24 (IMM 2007-A MLPA) § 2.1; Kane Ex. 370 (SAST 2005-2 SSA) § 2.1. Further, DB's

50

**attempts to evade the material facts by mischaracterizing them as a legal conclusion is**

**unavailing; the Governing Agreements speak for themselves.**

25.     Having complete Mortgage Files is essential to establish an ownership interest in the mortgage loans and protect certificateholders' interests against the risk that homeowners might cease making mortgage payments; good chain of title ensures that properties can be foreclosed upon, with investors paid from the proceeds. Timothy Avakian, a Trust Administrator in Deutsche Bank's Trust Administration Group ("TAG"), testified as follows:



Handlin Ex. 383 (Avakian) 116:1-9

Defendant's Response:  To the extent this paragraph purports to state a legal

conclusion with respect to "establish[ing] an ownership in the mortgage loans and

protect[ing] certificateholders' interests against the risk that homeowners might cease

making mortgage payments" or "ensur[ing] that properties can be foreclosed upon, with

investors paid from the proceeds," no response is required.  Further, Plaintiffs' reference

to "good title to each mortgage loan" is ambiguous. To the extent Plaintiffs are referring

to the title holder of record of the property, that is a matter of public record.  To the

extent Plaintiffs are referring to the ability to enforce a mortgage loan, that is a legal

conclusion, and no response is required.

Disputed.  Plaintiffs' first statement in this paragraph—"Having complete

Mortgage Files is essential to establish an ownership interest in the mortgage loans and

protect certificateholders' interests against the risk that homeowners might cease making

mortgage payments; good chain of title ensures that properties can be foreclosed upon,

with investors paid from the proceeds."—is false, not supported by the deposition testimony cited by Plaintiffs, and contrary to overwhelming material in the record.

The completeness of the mortgage loan file is irrelevant if the loan performs. Goff Ex. 3 (Schwarcz Report) at SS0047, ¶ 5.16 (*PL/DB*) & SS0159 – 60, ¶ 5.16 (*CB/DB*) ██████████████████████████████████████

████████████████████████████████████████████████████

██████████████████); *id.* at SS0062 – 63, ¶ 5.40 (*PL/DB*) & SS0175, ¶ 5.40 (*CB/DB*)

████████████████████████████████████████████████

████████████████████████); Goff Ex. 1 (Bryar Report) at MB0050, ¶ 121 (*PL/DB*) & MB0170, ¶ 121 (*CB/DB*) ████████████████████████

████████████████████████████████████████

████████████████████████

The requirements to foreclose, including the documents if any required, are governed by state law, and vary depending, amongst other factors, on whether foreclosures in the state are judicial or non-judicial in nature.  Goff Ex. 1 (Bryar Report) at MB0018, ¶ 44 (*PL/DB*) & MB0138, ¶ 44 (*CB/DB*).  In judicial states, servicers may need the note and the mortgage; such documents may not even be required in a non-judicial foreclosure.  *Id.* at MB0055, ¶ 131 (*PL/DB*) & MB0176, ¶ 131 (*CB/DB*) ██

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████;
*id.* at MB0059, ¶ 136 (*PL/DB*) & MB0180, ¶ 136 (*CB/DB*) ████████████████

████████████████████████████████

In the event a document is required for a foreclosure but missing, it is generally not difficult for the servicer to obtain the missing documents (such as obtaining a copy of the recorded mortgage from the local county recording office) or using a substitute (such as a lost note affidavit).  *Id.* at MB0057 – 58 , ¶ 133 (*PL/DB*) & MB0178 – 79, ¶ 133 (*CB/DB*) ██████████████████████████████████████████████

██████████████████████████████████████████████████████████;

*id.* at MB0058, ¶ 134 (*PL/DB*) & MB0179, ¶ 134 (*CB/DB*) ('██████████████

██████████████████████████████████████████████████████████;

*id.* at MB0058 – 59, ¶ 135 (*PL/DB*) & MB0179 – 180, ¶ 135 (*CB/DB*) ████████████

██████████████████████████████████████████████████

████████████████████████ Goff Ex. 3 (Schwarcz Report) at SS0047, ¶ 5.16

(*PL/DB*) & SS0159 – 60, ¶ 5.16 (*CB/DB*) ██████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████); Goff Ex. 33 at 221:6–222:3 (I. Beckles Dep. (Jul. 26,

2018)) ██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████

Disputed to the extent this paragraph purports to characterize the quoted language in any manner other than as a portion of the witness's testimony on December 5, 2017. The deposition testimony cited by Plaintiffs does not support Plaintiffs' contention. ██████

██████████████████████████ (Goff Ex. 44 at 22:10 – 24:18 (T. Avakian Dep. (May 16,

2017), BR/DB) ███████████████████████████████████████

█████████ (*id.* at 38:22 – 39:1 █████████████████████████

████████████████████████████████████████████ (Handlin Ex.

383 at 205:6 – 207:13).  Other witnesses have provided testimony that conflicts with the

testimony cited by Plaintiffs.  *See* Handlin Ex. 378 at 152:2 – 16 (R. Reyes Dep. (Jan. 18,

2018)); Goff Ex. 45 at 35:15 – 36:1 (R. Reyes Dep. (Apr. 27, 2017), RP/DB) ████████

██████████████████████████████████████████████████

████████████████████████████; *see also* Handlin Ex. 396 at

94:4 – 11 (C. Corcoran Dep. (Mar. 21, 2018)).  The cited testimony also does not support

the contention that a complete mortgage file is necessary to protect certificateholders'

interests against the risk that homeowners might cease making mortgage payments.

Handlin Ex. 383 at 115:20 – 116:1 (T. Avakian Dep. (Dec. 5, 2017)).

   The cited testimony is irrelevant to Plaintiffs' motion because they are not entitled

to pursue any claims based upon incomplete or nonconforming mortgage files.  *PL/DB*

Dkt. #70 at 15 ("Claims for document delivery failures are barred by the statute of

limitations."); *CB/DB* Dkt. #88, ¶ 35 ("Commerzbank's claims do not include claims

against Deutsche Bank for breaching its document delivery-related duties.").

**Plaintiffs' Reply: DB's purported evidence does not controvert these material facts.**

**DB's issue with Plaintiffs' characterization of the deposition testimony is immaterial to the**

**material facts; the testimony speaks for itself. Therefore, the material facts should be**

**deemed admitted.** *See* **Local Rule 56.1(c). Further, DB's attempt to evade the material facts**

**by mischaracterizing them as legal conclusions is unavailing.**

DB argues that it is not essential that all Mortgage File documents are received. This is a legal conclusion inappropriate for a Rule 56.1 Statement to which no response is required. It is nonetheless incorrect. DB itself has admitted that ensuring that "[f]or each Mortgage Loan, the related Mortgage File contains a true, accurate and correct copy of each of the documents and instruments required to be included therein" is "material to the value of the mortgage loans and interests of the Certificateholders and the Trustee" because it relates to "criteria and characteristics that directly impact the quality and value of the Mortgage Loans." Lucht Ex. 158 (Amended Complaint, *DB v. Novation Companies f/k/a NovaStar Financial*, Case No. 650693/2013 (N.Y. Sup. Ct.)) ¶¶ 28-29.

DB asserts that "[t]he completeness of the mortgage loan file is irrelevant if the loan performs," but this is not inconsistent with Plaintiffs' material fact; when the loan does not perform, possession of all Mortgage File documents becomes all the more important. DB's reliance on its expert reports do not create an issue of fact because an expert may not provide a legal opinion regarding the interpretation and meaning of contractual provisions, including the Servicer's duties under the Governing Agreements. Moreover, DB's proffered expert evidence concerning foreclosures is irrelevant to the material fact. Further, whether servicers can remedy missing documents, the fact remains that evidence to establish an ownership interest in the mortgage loans and good chain of title is necessary to protect certificateholders' interests against the risk that homeowners might cease making mortgage payments. None of the purported evidence proffered by DB, expert or otherwise, controverts this fact. Additionally, Plaintiffs' intend to move to preclude the testimony of DB's expert at trial.

**DB's argument that Plaintiffs are not entitled to pursue any claims based upon incomplete or nonconforming mortgage files is a legal conclusion inappropriate for a Rule 56.1 statement, and therefore no response is required. It is nonetheless incorrect and immaterial to Plaintiffs' Motion because Plaintiffs did not move for summary judgment on the issue of document delivery failures. As explained in Plaintiffs' briefing, Plaintiffs are not suing DB for breaching duties to review Mortgage Files upon receipt, and generate the required initial and final certifications. Plaintiffs are suing DB for breaching its duty, pre-EOD for certain Trusts and post-EOD for all, to enforce repurchase of loans with defective Mortgage Files. The Court's prior order did not dismiss, and Plaintiffs never relinquished, this separately pled claim.** *See* **Pltfs.Opp. 55-59.**

26.     To foreclose, the mortgage holder needs certain documents to establish title to the property. David Co, DB's business head of MBS and its number two executive, testified as follows:

Handlin Ex. 384 (Co) 72:10-14.

Defendant's Response:  To the extent this paragraph purports to state a legal conclusion with respect to the necessity of "certain documents to establish title" and pursue a foreclosure action, no response is required.

Disputed.  Plaintiffs' first statement in this paragraph—"To foreclose, the mortgage holder needs certain documents to establish title to the property."—is false, not supported by the deposition testimony cited by Plaintiffs, and contrary to overwhelming material in the record.  Plaintiffs mistake the concept of "title to the property," which is generally a question of public record, and the requirements to foreclose, which vary by state.

Moreover, Plaintiffs' cited document does not support Plaintiffs' propositions that David Co is Defendant's "number two executive."

The testimony Plaintiffs cite, in which the witness answered ███████████ ████████████ does not support Plaintiffs' contention that the aforementioned documents are *required* to effectuate foreclosure.

Further, Defendant does not have the experience or expertise of a servicer.  Reyes PL Decl. ¶¶ 12 – 14; Reyes CB Decl. ¶¶ 12 – 14.

The requirements to foreclose, including the documents if any required, are governed by state law, and vary depending, amongst other factors, on whether foreclosures in the state are judicial or non-judicial in nature.  Goff Ex. 1 (Bryar Report) at MB0018, ¶ 44 (*PL/DB*) & MB0138, ¶ 44 (*CB/DB*).  In judicial states, servicers may need the note and the mortgage; such documents may not even be required in a non-judicial foreclosure.  *Id.* at MB0055, ¶ 131 (*PL/DB*) & MB0176, ¶ 131 (*CB/DB*) ███

████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████████

*id.* at MB0059, ¶ 136 (*PL/DB*) & MB0180, 136 (*CB/DB*) ███████████████

█████████████████████████████████████████████

In the event a document is required for a foreclosure but missing, it is generally not difficult for the servicer to obtain the missing documents (such as obtaining a copy of the recorded mortgage from the local county recording office) or using a substitute (such as a lost note affidavit).  *Id.* at MB0057 – 58 , ¶ 133 (*PL/DB*) & MB0178 – 79, ¶ 133 (*CB/DB*) ████████████████████████████████████████████████████



*id.* at MB0058, ¶ 134 (*PL/DB*) & MB0179, ¶ 134 (*CB/DB*) ("

");

*id.* at MB0058 – 59, ¶ 135 (*PL/DB*) & MB0179 – 180, ¶ 135 (*CB/DB*)

; Goff Ex. 3 (Schwarcz Report) at SS0047, ¶ 5.16 (*PL/DB*) & SS0159 – 60, ¶ 5.16 (*CB/DB*)

); Goff Ex. 33 at 221:6–222:3 (I. Beckles Dep. (Jul. 26, 2018)) (

Goff Ex. 46 at 186:15 – 187:11 (J. Campbell Dep. (June 8, 2017), RP/DB) (

).

**Plaintiffs' Reply**: DB's statements and purported evidence does not controvert the material fact. Therefore, it should be deemed admitted. *See* Local Rule 56.1(c). DB's issue with Plaintiffs' characterization of the quoted deposition testimony is immaterial; the testimony speaks for itself. DB instead argues that it "does not have the experience or expertise of a servicer," that the requirements to foreclose are governed by specified law, and it is generally not difficult for servicers to obtain missing foreclosure documents. However, DB fails to show how these arguments bear any relevance to Plaintiffs' material

**fact. The record is clear that David Co is a senior executive at DB. Handlin Ex. 384 (Co)**

**29:6-23;** *see also* **Plaintiffs' response to DBCSUF ¶ 576. Further, DB's attempt to evade the**

**fact by mischaracterizing it as a legal conclusion is unavailing.**

27.    Further, David Co testified as follows:



Handlin Ex. 384 (Co) 73:8-25.

Defendant's Response:  To the extent this paragraph purports to state a legal

conclusion, no response is required.

Undisputed that Handlin Ex. 384 contains the quoted language.

Further, Defendant does not have the experience or expertise of a servicer.  Reyes

PL Decl. ¶ 12; Reyes CB Decl. ¶ 12.

**Plaintiffs' Reply**: **DB does not dispute the material facts. They should be deemed**

**admitted.** *See* **Local Rule 56.1(c). DB's assertion that it does not have the experience or**

**expertise of a servicer is irrelevant and immaterial to Plaintiffs' material facts. DB's**

**attempt to evade the material facts by mischaracterizing them as legal conclusions is**

**unavailing.**

28.    For this protection to be meaningful, two things are essential. First, a party to the
Governing Agreement needs to verify that all Mortgage File documents are received. The
Trustee (and/or the Custodian on its behalf) performs that role. Timothy Avakian testified as
follows:



Handlin Ex. 383 (Avakian) 120:8-14.

<u>Defendant's Response</u>:  To the extent this paragraph purports to state a legal

conclusion regarding contractual obligations under the GAs, no response is required.

Disputed to the extent this paragraph purports to characterize the quoted language

in any manner other than as a portion of the witness's testimony on December 5, 2017.

The deposition testimony cited by Plaintiffs lacks foundation and does not support

Plaintiffs' contention. ████████████████████ (Goff Ex. 44 at 22:10 – 24:18

(T. Avakian Dep. (May 16, 2017), BR/DB) ████████████████████

████████████████ (*id.* at 38:22 – 39:1 (████████████████

████████████████████████

████████████ Handlin Ex. 383 at 205:6 – 207:13).  Other witnesses have provided

testimony that conflicts with the testimony cited by Plaintiffs.  *See* Handlin Ex. 378 at

152:2 – 16 (R. Reyes Dep. (Jan. 18, 2018)); Goff Ex. 45 at 35:15 – 36:1 (R. Reyes Dep.

(Apr. 27, 2017), RP/DB) ████████████████████████

████████████████████████

████████);  *see also* Handlin Ex. 396 at 94:4 – 11 (C. Corcoran Dep. (Mar. 21, 2018)).

Plaintiffs' contention that it is "essential. . . that all Mortgage File documents are

received" is further contradicted by the expert evidence in the record.  Goff Ex. 1 (Bryar

Report) at MB0055, ¶ 131 (*PL/DB*) & MB0176, ¶ 131 (*CB/DB*) ("████████████

████████████████████████████



); *id.* at MB0059, ¶ 136 (*PL/DB*) & MB0180, ¶ 136 (*CB/DB*) ████████████ Goff Ex. 33 at 221:6–222:3 (I. Beckles Dep. (Jul. 26, 2018)) ██████████ Goff Ex. 32 at 369:2–10 (M. Adelson Dep. (Oct. 3–4, 2018)) ████████

The testimony cited by Plaintiffs does not support their contention that "[f]or this protection to be meaningful, two things are essential."  In fact, Plaintiffs' contention is also at odds with the GAs, which require that the documents received are reviewed and any exceptions are listed on an exception report.  *See, e.g.*, Handlin Ex. 35 (NHEL 2006-5 PSA) § 2.03(d) ("The Custodian shall acknowledge for such Eligible Substitute Mortgage Loan or Loans and, within ten Business Days thereafter, shall review such documents as specified in Section 2.02 and deliver to the Servicer and the Trustee, with respect to such Eligible Substitute Mortgage Loan or Loans, a certification substantially in the form attached hereto as Exhibit F-1, with any applicable exceptions noted thereon.").

The cited testimony is irrelevant to Plaintiffs' motion because they are not entitled to pursue any claims based upon incomplete or nonconforming mortgage files.  *PL/DB* Dkt. #70 at 15 ("Claims for document delivery failures are barred by the statute of

limitations."); *CB/DB* Dkt. #88, ¶ 35 ("Commerzbank's claims do not include claims

against Deutsche Bank for breaching its document delivery-related duties.").

**Plaintiffs' Reply: DB's statements and purported evidence do not controvert the material fact. DB's issue with Plaintiffs' characterization of the testimony is immaterial as the testimony speaks for itself. DB's objection that the quoted testimony lacks foundation is incorrect. Mr. Avakian had personal knowledge of the alleged fact, rendering the excerpted testimony admissible.  Therefore, the material facts should be deemed admitted. *See* Local Rule 56.1(c). Further, DB's attempt to evade the material facts by mischaracterizing them as legal conclusions is unavailing.**

**DB argues that it is not essential that all Mortgage File documents are received. This is a legal conclusion inappropriate for a Rule 56.1 Statement to which no response is required. It is nonetheless incorrect. DB itself has admitted that ensuring that "[f]or each Mortgage Loan, the related Mortgage File contains a true, accurate and correct copy of each of the documents and instruments required to be included therein" is "material to the value of the mortgage loans and interests of the Certificateholders and the Trustee" because it relates to "criteria and characteristics that directly impact the quality and value of the Mortgage Loans." Lucht Ex. 158 (Amended Complaint, *DB v. Novation Companies f/k/a NovaStar Financial*, Case No. 650693/2013 (N.Y. Sup. Ct.)) ¶¶ 28-29. DB's reliance on its expert report does not create an issue of fact because an expert may not provide a legal opinion regarding the interpretation and meaning of contractual provisions. Moreover, DB's proffered expert evidence concerning foreclosures is irrelevant and immaterial to the material fact. Additionally, Plaintiffs' intend to move to preclude the testimony of DB's expert at trial.**

**DB's argument that "Plaintiffs' contention is also at odds with the GAs, which require that the documents received are reviewed and any exceptions are listed on an exception report" is clearly erroneous; that the Governing Agreements require the Trustee (or Custodian, on its behalf) to review documents received and generate document exception reports is consistent with the material fact.**

**DB's argument that Plaintiffs are not entitled to pursue any claims based upon incomplete or nonconforming mortgage files is a legal conclusion inappropriate for a Rule 56.1 Statement, and therefore no response is required. It is nonetheless incorrect and immaterial to Plaintiffs' Motion because Plaintiffs did not move for summary judgment on the issue of document delivery failures. As explained in Plaintiffs' briefing, Plaintiffs are not suing DB for breaching duties to review Mortgage Files upon receipt, and generate the required initial and final certifications. Plaintiffs are suing DB for breaching its duty, pre-EOD for certain Trusts and post-EOD for all, to enforce repurchase of loans with defective Mortgage Files. The Court's prior order did not dismiss, and Plaintiffs never relinquished, this separately pled claim. *See* Pltfs.Opp. 55-59.**

29.     Second, if required Mortgage File documents are missing or defective, a party needs to ensure that the defects are cured, or, if not, that the affected loans are substituted or repurchased by the Seller. Each Governing Agreement spells out its own repurchase protocol. The repurchase protocols are not dependent upon the occurrence of an Event of Default. *See infra* ¶¶ 887-911; *see also infra* ¶¶ 47-49.

Defendant's Response:  To the extent this paragraph purports to state a legal conclusion regarding the obligations for "missing or defective" documents pursuant to the GAs, no response is required.

Disputed.  To the extent Plaintiffs purport to characterize the GAs, the materials Plaintiffs cite do not support Plaintiffs' characterization.  *See* Handlin Ex. 35 (NHEL 2006-5 PSA) § 2.03(a).  Plaintiffs have failed to proffer sufficient evidence to

demonstrate that all of the GAs impose this obligation.  Plaintiffs also omit significant elements of the obligation, including, but not limited to, the fact that the "missing or defective" document must be material.  Defendant restates its response to ¶ 18 and incorporates it by reference.

Indeed, Plaintiffs' first statement in this paragraph—"if required Mortgage File documents are missing or defective, a party needs to ensure that the defects are cured, or, if not, that the affected loans are substituted or repurchased by the Seller."—is contrary to the evidence Plaintiffs cite in this paragraph.  *See infra* ¶¶ 47 – 49, 887 – 911; *see also, e.g.*, Goff Ex. 45 at 35:15 – 36:1 (R. Reyes Dep. (Apr. 27, 2017), RP/DB) ("███████████

███████████████████████████████████████████

██████████████████████████); Goff Ex. 46 at 105:8 – 106:25 (J. Campbell Dep. (June 8, 2017), RP/DB).

For example, the GA Plaintiffs cite in ¶¶ 47–49 specifies that repurchase may be required only if the Sponsor fails to "deliver such missing document or cure such defect or breach in all material aspects" within 90 days of "discovery or receipt of written notice of any materially defective document in, or that a document is missing from, a Mortgage File."  Handlin Ex. 35 (NHEL 2006-5 PSA) § 2.03(a) (emphasis added).  Further, the requirement to cure or repurchase is only triggered after a party "discover[s] or recei[ves]" written notice of the material defect or missing document and "the party making such discovery or receiving such notice" gives the Sponsor written notice of the material defect or missing document.  *Id.*

The evidence cited in the other paragraphs Plaintiffs reference here is irrelevant to Plaintiffs' motion because they are not entitled to pursue any claims based upon

incomplete or nonconforming mortgage files. *PL/DB* Dkt. #70 at 15 ("Claims for document delivery failures are barred by the statute of limitations."); *CB/DB* Dkt. #88, ¶ 35 ("Commerzbank's claims do not include claims against Deutsche Bank for breaching its document delivery-related duties.").

**Plaintiffs' Reply: DB does not specifically controvert the material facts. DB's issue with Plaintiffs' characterization of the repurchase protocols is immaterial; the referenced Governing Agreements speak for themselves. *See infra* ¶¶ 887-911. Therefore, these material facts should be deemed admitted. *See* Local Rule 56.1(c).**

**DB's assertion that "the 'missing or defective' document must be material" is a legal conclusion inappropriate for a Rule 56.1 Statement to which no response is required. It is nonetheless incorrect. As explained in Plaintiffs' briefing, not all Trusts limit repurchase of defective documents to those that are material, and no Trust places a materiality requirement on the repurchase of missing documents. *See* Pltfs.Mem. 48-54; Pltfs.Reply 33-34.**

**DB's assertion that "the requirement to cure or repurchase is only triggered after a party 'discover[s] or recei[ves]' written notice of the material defect or missing document and 'the party making such discovery or receiving such notice' gives the Sponsor written notice of the material defect or missing document" is a legal conclusion inappropriate for a Rule 56.1 Statement to which no response is required. It is nonetheless incorrect. As explained in Plaintiffs' briefing, ample evidence in the record demonstrates that DB discovered, was willfully blind to, had implied actual knowledge, or had actual knowledge of the asserted breaches, triggering its repurchase enforcement obligations. *See* Pltfs.Opp. 38-67.**

**DB's argument that Plaintiffs are not entitled to pursue any claims based upon incomplete or nonconforming mortgage files is a legal conclusion inappropriate for a Rule 56.1 Statement, and therefore no response is required. It is nonetheless incorrect and immaterial to Plaintiffs' Motion because Plaintiffs did not move for summary judgment on the issue of document delivery failures. As explained in Plaintiffs' briefing, Plaintiffs are not suing DB for breaching duties to review Mortgage Files upon receipt, and generate the required initial and final certifications. Plaintiffs are suing DB for breaching its duty, pre-EOD for certain Trusts and post-EOD for all, to enforce repurchase of loans with defective Mortgage Files. The Court's prior order did not dismiss, and Plaintiffs never relinquished, this separately pled claim.** *See* **Pltfs.Opp. 55-59.**

**Plaintiffs restate their reply to DBCSUF ¶ 18 and incorporates it by reference.**

30.     The Sellers made representations and warranties ("R&Ws") concerning the loans' quality and the Sellers' underwriting process, and agreed to repurchase loans that did not comply with R&Ws or have complete documentation. *See, e.g.,* Handlin Ex. 377 at S-22 (NHEL 2006-5 Prospectus Supplement) ("The sponsor will make various representations and warranties regarding the mortgage loans under the purchase agreement and will have repurchase or substitution obligations if those representations or warranties are breached and such breach has a material adverse impact on the value of the mortgage loan or the certificateholders' interest therein.").

Defendant's Response:  To the extent this paragraph purports to state a legal conclusion regarding the Sellers' contractual obligations under the GAs, no response is required.

Disputed.  The material cited by Plaintiffs' does not support their contention.  To the extent Plaintiffs purport to characterize the GAs, the materials Plaintiffs cite do not support Plaintiffs' characterization.  *See* Handlin Ex. 377, at S-22.  Plaintiffs have failed to proffer sufficient evidence to demonstrate that all of the GAs impose this obligation. The Seller is not always the party to make representations and warranties concerning the

loans' qualities or effectuate repurchase of loans that did not comply with R&Ws or have complete documentation.

The overwhelming record evidence is clear that the Sellers did not categorically agree "to repurchase loans that did not comply with R&Ws or have complete documentation." Rather, each GA contains certain representations and warranties concerning the characteristics of the loans, the breach of which may give rise to repurchase obligations by the Seller, Servicer, Originator, or other Responsible Party upon their gaining the requisite knowledge of the breach. *See, e.g.*, Biron PL Ex. 1 at S-62 – S-66 (Excerpts of HASC 2006-HE1 Prospectus Supplement); Biron PL Ex. 3 § 2.03(d), (k) (Excerpts of FFML 2006-FF11 PSA).

With respect to "complete documentation," even if the Seller, Servicer, Originator, or other Responsible Party has the contractually-specified knowledge of a missing or defective mortgage loan document, the defect must be material or materially impair the value of the Mortgage Loan before any repurchase obligation can be triggered. *See, e.g.*, Handlin Ex. 8 (FFML 2006-FF11 PSA) §§ 2.01 ("[I]n the event that the Mortgage Loan Seller does not cure such failure within 30 days of discovery or receipt of written notification of such failure from the Depositor, the related Mortgage Loan shall, upon the request of the Depositor, be repurchased by the Mortgage Loan Seller."), 2.03(d) ("Within 30 days of the earlier of either discovery by or notice to the Mortgage Loan Seller that any Mortgage Loan does not conform to the requirements as determined in the Custodian's review of the related Custodial File or within 60 days of the earlier of either discovery by or notice to the Mortgage Loan Seller of any breach of a representation or warranty referred to in Section 2.03(b) that *materially and adversely*

67

*affects* the value of any Mortgage Loan or the interest of the Trustee or the

Certificateholders therein, the Mortgage Loan Seller shall use its best efforts to cause to

be remedied a material defect in a document constituting part of a Mortgage File or

promptly to cure such breach *in all material respects* and, if such defect or breach cannot

be remedied, the Mortgage Loan Seller shall, at the Depositor's option as specified in

writing and provided to the Mortgage Loan Seller and the Trustee, (i) if such 30- or 60-

day period, as applicable, expires prior to the second anniversary of the Closing Date,

remove such Mortgage Loan (a 'Deleted Mortgage Loan') from the Trust Fund and

substitute in its place a Substitute Mortgage Loan, in the manner and subject to the

conditions set forth in this Section 2.03; or (ii) repurchase such Mortgage Loan at the

Repurchase Price, provided, however, that any such substitution pursuant to clause (i)

above shall not be effected prior to the delivery to the Custodian of a Request for Release

substantially in the form of Exhibit J, and the delivery of the Mortgage File to the

Custodian for any such Substitute Mortgage Loan. . . ."); Handlin Ex. 38 (SAST 2007-1

PSA) § 3(d) ("If at any time [the Purchaser] or the Trustee (or its Custodian) discovers or

receives notice that any Mortgage Loan Document is missing or defective *in any material*

*respect* with respect to any Mortgage Loan, [the Seller] shall correct or cure any such

omission or defect or, if such omission or defect *materially impairs* the value of the

Mortgage Loan, repurchase the defective Mortgage Loan or substitute for such defective

Mortgage Loan a Substitute Mortgage Loan in accordance with and if permitted by the

terms of Section 7 hereof."); Handlin Ex. 95 (HASC 2006-OPT 4 PSA) § 2.03(d)

("Within 30 days of the earlier of either discovery by or notice to the Originator that any

Mortgage Loan does not conform to the requirements as determined in the Custodian's

review of the related Custodial File or within 60 days of the earlier of either discovery by

or notice to the Originator of any breach of a representation or warranty referred to in

Section 2.03(b) that *materially and adversely affects* the value of any Mortgage Loan or

the interest of the Trustee or the Certificateholders therein, the Originator shall use its

best efforts to cause to be remedied a material defect in a document constituting part of a

Mortgage File or promptly to cure such breach *in all material respects* and, if such defect

or breach cannot be remedied, the Originator shall, at the Depositor's option as specified

in writing and provided to the Originator and the Trustee, (i) if such 30- or 60-day period,

as applicable, expires prior to the second anniversary of the Closing Date, remove such

Mortgage Loan (a 'Deleted Mortgage Loan') from the Trust Fund and substitute in its

place a Substitute Mortgage Loan, in the manner and subject to the conditions set forth in

this Section 2.03; or (ii) repurchase such Mortgage Loan at the Repurchase Price;

provided, however, that any such substitution pursuant to clause (i) above shall not be

effected prior to the delivery to the Custodian of a Request for Release substantially in

the form of Exhibit J, and the delivery of the Mortgage File to the Custodian for any such

Substitute Mortgage Loan. . . ."); *see also* Handlin Ex. 116 (NHEL 2007-2 PSA) § 3.01

("Upon discovery by the Sponsor or upon notice from the Depositor, the Trustee, or the

Custodian, as applicable, of a breach of any representation or warranty in subsection (a)

of this Section which *materially and adversely affects* the interests of the

Certificateholders the Sponsor shall, within 45 days of its discovery or its receipt of

notice of such breach, either (i) cure such breach *in all material respects* or (ii) to the

extent that such breach is with respect to a Mortgage Loan or a Related Document, either

(A) repurchase such Mortgage Loan from the Trustee at the Repurchase Price, or (B)

69

substitute one or more Eligible Substitute Mortgage Loans for such Mortgage Loan, in each case in the manner and subject to the conditions and limitations set forth below.").

Plaintiffs statement is also overbroad because it omits several conditions that need to exist for the Seller to have the obligation to repurchase, including, but not limited to, the materiality of the missing or defective documents.  For example, Plaintiffs' statement in this paragraph is not even consistent with the language they quoted in support of this paragraph.  Among other failures, Plaintiffs' statement in this paragraph fails to take into account the phrases "*or substitution obligations*" and "*if . . . such breach has a material adverse impact on the value of the mortgage loan or the certificateholders' interest therein*," which are included in the quotation in Plaintiffs' citation.

Each Trust's GAs set out any representations and warranties made by any parties as to characteristics of mortgage loans securitized in that Trust and the obligations any party may have with respect to breaches of representations and warranties or incomplete mortgage files.  *See, e.g.*, Handlin Ex. 8 (FFML 2006-FF11) § 2.03(b) ("FFFC, in its capacity as Mortgage Loan Seller, makes the representations and warranties set forth in Schedule III and Schedule IV hereto, to the Depositor, the Master Servicer, the Securities Administrator and the Trustee as of the date specified therein."); *id.* at Schedules III & IV; *id.* § 2.03 (d); Goff Ex. 135 (FFML 2006-FF11 MLPA) § 4.

Undisputed that the NHEL 2006-5 Prospectus Supplement contains the quoted language.

**Plaintiffs' Reply: DB does not specifically controvert the material fact. Therefore, this material fact should be deemed admitted. *See* Local Rule 56.1(c). DB proffers additional PSA provisions but fails to explain how these additional PSA provisions negate**

affects the material fact. Further, DB's attempt to evade the material facts by mischaracterizing them as legal conclusions is unavailing; the cited document speaks for itself.

DB's assertions that "the 'missing or defective' document must be material" and that there are "several conditions that need to exist for the Seller to have the obligation to repurchase, including, but not limited to, the materiality of the missing or defective documents" are legal conclusions inappropriate for a Rule 56.1 Statement to which no response is required. DB nonetheless is incorrect. As explained in Plaintiffs' briefing, not all Trusts limit repurchase of defective documents to those that are material, and no Trust places a materiality requirement on the repurchase of missing documents. *See* Pltfs.Mem. 48-54; Pltfs.Reply 33-34.

DB's assertions that "[w]ith respect to "complete documentation," even if the Seller, Servicer, Originator, or other Responsible Party has the contractually-specified knowledge of a missing or defective mortgage loan document, the defect must be material or materially impair the value of the Mortgage Loan before any repurchase obligation can be triggered" is a legal conclusion inappropriate for a Rule 56.1 Statement to which no response is required. DB nonetheless is incorrect. As explained in Plaintiffs' briefing, DB's characterization of the conditions necessary to trigger repurchase obligations are incorrect. Pltfs.Opp. 38-67.

Further, with regard to the materiality of missing Mortgage Loan File documents, DB has asserted that ensuring that "[f]or each Mortgage Loan, the related Mortgage File contains a true, accurate and correct copy of each of the documents and instruments required to be included therein" is "material to the value of the mortgage loans and

**interests of the Certificateholders and the Trustee" because it relates to "criteria and characteristics that directly impact the quality and value of the Mortgage Loans." Lucht Ex. 158 (Amended Complaint, *DB v. Novation Companies f/k/a NovaStar Financial*, Case No. 650693/2013 (N.Y. Sup. Ct.)) ¶¶ 28-29.**

31.     Further, Certificateholders received assurance that loans would be prudently serviced by Servicers which includes foreclosing on properties as quickly and inexpensively as possibly. *See, e.g.*, Handlin Ex. 35 (NHEL 2006-5 PSA) § 3.01(a) ("The Servicer shall supervise, or take such actions as are necessary to ensure, the servicing and administration of the Mortgage Loans and any REO Property in accordance with all applicable requirements of the Servicing Criteria, with this Agreement and with its normal servicing practices, which generally shall conform to the standards of an institution prudently servicing mortgage loans for its own account and shall have full authority to do anything it reasonably deems appropriate or desirable in connection with such servicing and administration.").

Defendant's Response:  To the extent this paragraph purports to state a legal conclusion regarding obligations under the GAs, no response is required.

Disputed.  Plaintiffs' statement in this paragraph is false, not supported by the material cited by Plaintiffs, and contrary to overwhelming material in the record.  As an initial matter, each Trust is governed by unique GAs, and Plaintiffs' citation to the GA for one Trust does not support any generalization about other Trusts.

Indeed, Plaintiffs' statement in this paragraph is not even consistent with the language they quoted in support of this paragraph.  Among other failures, the material cited by Plaintiffs does not provide any support for their proposition that prudently servicing mortgage loans requires "foreclosing on properties as quickly and inexpensively as possibly."

Moreover, that proposition is contrary to overwhelming evidence in the record.

███████████████████████████████████████████████████

███████████████████████████████████████████████████



Biron CB Ex. 19 (October 2008 PIMCO Report) at PIMCO-DB000537;



*Id.* at PIMCO-DB000533-34;



*Id.* at PIMCO-DB000537.





Goff Ex. 40 at 195:22-196:11 (K. Smith Dep. (June 20, 2017), BR/DB).

<u>Q. And the PSAs which govern the trusts give servicers latitude</u>



Goff Ex. 47 at 211:10-213:18 (K. Smith Dep. (Dec. 15, 2016), BR/HSBC).

Plaintiffs position in this paragraph is also refuted by expert evidence in the

record.  Goff Ex. 1 (Bryar Report) at MB0025 – 26, ¶ 67 (*PL/DB*) & MB0145 – 46, ¶ 67

(*CB/DB*) ███████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████

In addition, the statements made in the GAs were made to parties to the

transaction, not to Plaintiffs or Certificateholders.

**Plaintiffs' Reply: DB's purported evidence does not controvert Plaintiffs' material**

**fact. Therefore, it should be deemed admitted.** *See* **Local Rule 56.1(c). The additional**

**statements and purported evidence proffered by DB is immaterial to the material fact. The additional purported evidence is actually consistent with Plaintiffs' material fact that Certificateholders received assurance that loans would be prudently serviced by Servicers.** *See, e.g.*, **Biron Ex. 19 at PIMCO-DB000537** ████████████████████████

████████████████████████████████████████ *Id.* **at PIMCO-**

**DB000533-34** ████████████████████████████████████

██████████████**). Further, DB's attempt to mischaracterize the fact as a legal conclusion is unavailing. DB's reliance on its expert report does not create an issue of fact because an expert may not provide a legal opinion regarding the servicer's duties under the Governing Agreements. Additionally, Plaintiffs intend to move to preclude the testimony of DB's expert at trial.**

32.  In 62 of the Trusts, at least two deal parties (usually the Depositor and Seller) were affiliated with one another. *See Phoenix Light v. DB* ECF No. 189-1; *Commerzbank v. DB* ECF No. 89-1. *See also* Handlin Exs. 1-7; 16-17; 21; 24-36; 44; 38-39; 75; 78; 82-87; 89-94; 99-100; 102-104; 107-121 (PSAs/Trust Agreements for (1) AABST 2006-1; (2) AHM 2006-1; (3) AMSI 2006-R1; (4) ARSI 2006-M1; (5) ARSI 2006-M3; (6) ARSI 2006-W2; (7) ARSI 2006-W3; (8) IMM 2005-7; (9) IMM 2005-8; (10) MLMI 2007-MLN1; (11) MSAC 2006-HE6; (12) MSAC 2006-NC2; (13) MSAC 2006-NC5; (14) MSAC 2006-WMC2; (15) MSAC 2007-HE1; (16) MSAC 2007-HE2; (17) MSAC 2007-HE5; (18) MSAC 2007-NC1; (19) MSAC 2007-NC4; (20) MSHEL 2006-3; (21) MSHEL 2007-1; (22) MSIX 2006-2; (23) NHEL 2006-5; (24) NHEL 2006-6; (25) SAST 2006-3 (26) SAST 2007-1; (27) SAST 2007-2; (28) ECR 2005-3; (29) FFML 2005-FF2; (30) FFML 2006-FF13; (31) FFML 2006-FF11; (32) GSAA 2005-10; (33) GSAA 2006-15; (34) GSAA 2006-16; (35) GSAA 2006-17; (36) GSAA 2007-4; (37) GSAMP 2005-HE4; (38) GSAMP 2005-WMC1; (39) GSAMP 2005-WMC2; (40) GSAMP 2005-WMC3; (41) GSAMP 2006-FM3; (42) GSAMP 2006-S4; (43) HVMLT 2006-3; (44) HVMLT 2007-2; (45) IMM 2007-A; (46) IMSA 2006-3; (47) IMSA 2006-4; (48) MSAC 2005-HE7; (49) MSAC 2005-NC2; (50) MSAC 2006-HE5; (51) MSAC 2006-HE7; (52) MSAC 2006-HE8; (53) MSAC 2006-NC3; (54) MSHEL 2005-4; (55) MSHEL 2007-2; (56) MSIX 2006-1; (57) NHEL 2007-2; (58) SAST 2005-2; (59) SVHE 2005-OPT3; (60) SVHE 2005-OPT4; (61) SVHE 2006-OPT5; (62) WAMU 2005-AR13).

Defendant's Response:  To the extent this paragraph purports to state a legal conclusion with respect to the legal affiliation of separate entities, no response is required.

Disputed.  Plaintiffs' statement in this paragraph is not supported by Plaintiffs' evidence.  Plaintiffs' citation to allegations in their own complaints does not constitute support by material that would be admissible in evidence.  Moreover, none of the materials Plaintiffs cite in this paragraph provide any evidentiary support for Plaintiffs' contention that "[i]n 62 of the Trusts, at least two deal parties (usually the Depositor and Seller) were affiliated with one another."  *See PL/DB* TAC Ex. A, *PL/DB* Dkt. #189-1; *CB/DB* SAC Ex. A, *CB/DB* Dkt. # 89-1; Handlin Exs. 1 – 7, 16 – 17, 21, 24 – 36, 44, 38 – 39, 75, 78, 82 – 87, 89 – 94, 99 – 100, 102 – 104 & 107 – 121.  The fact that entities in a contract have similar names is not admissible evidence establishing that they are affiliates.  Their affiliation must be demonstrated by other means.

**Plaintiffs' Reply: DB proffers no evidence to specifically controvert the material fact that in 62 of the Trusts, at least two deal parties (usually the Depositor and Seller) were affiliated with one another. Therefore, this material fact should be deemed admitted.** ***See Local Rule 56.1(c). Further, DB's attempt to mischaracterize the fact as a legal conclusion is unavailing.***

33.     Further, in 25 of the Trusts, three or more deal parties to the Governing Agreements, including the Sponsor/Seller, Originator, and Servicer, were affiliated with one another, leaving DB as the only independent party to protect Certificateholders' interests and ensure that Sellers honored their obligations. *See Phoenix Light v. DB*, ECF No. 189 ¶¶ 113, 149; *Commerzbank v. DB*, ECF No. 89 ¶¶ 93, 129. *See also* Handlin Exs. 1-8; 35-36; 38-39; 44; 75; 102-104; 116-119; 121 (PSAs/Indentures for (1) ECR 2005-3; (2) IMM 2007-A; (3) IMSA 2006-3; (4) IMSA 2006-4: (5) NHEL 2006-5; (6) NHEL 2007-2; (7) SAST 2005-2; (8) SAST 2006-3; (9) SVHE 2005-OPT3; (10) SVHE 2005-OPT4; (11) SVHE 2006-OPT5; (12) WAMU 2005-AR13; (13) AABST 2006-1; (14) AHM 2006-1; (15) AMSI 2006-R1; (16) ARSI 2006-M1; (17) ARSI 2006-M3; (18) ARSI 2006-W2; (19) ARSI 2006-W3; (20) FFML 2006-FF11; (21) IMM 2005-7; (22) IMM 2005-8; (23) NHEL 2006-6; (24) SAST 2007-1; (25) SAST 2007-2).

Defendant's Response:  To the extent this paragraph purports to state a legal conclusion with respect to the legal affiliation of separate entities and with respect to Defendant's contractual obligations under the GAs, no response is required.

Disputed.  Plaintiffs' citation to allegations in their own complaints does not constitute support by material that would be admissible in evidence.  Moreover, none of the materials Plaintiffs cite in this paragraph provide any evidentiary support for Plaintiffs' contention that "in 25 of the Trusts, three or more deal parties to the Governing Agreements, including the Sponsor/Seller, Originator, and Servicer, were affiliated with one another."  *See PL/DB* TAC ¶¶ 113, 149, *PL/DB* Dkt. #189; *CB/DB* SAC ¶¶ 93, 129, *CB/DB* Dkt. #89; Handlin Exs. 1 – 8, 35 – 36, 38 – 39, 44, 75, 102 – 104, 116 – 119 & 121.  The fact that entities in a contract have similar names is not admissible evidence establishing that they are affiliates.  Their affiliation must be demonstrated by other means.

Likewise, none of the materials Plaintiffs cite in this paragraph provide any evidentiary support for Plaintiffs' contention that Defendant was "the only independent party to protect Certificateholders' interests and ensure that Sellers honored their obligations."  *See* Handlin Exs. 1 – 8, 35 – 36, 38 – 39, 44, 75, 102 – 104, 116 – 119, 121. To the contrary, the record evidence is clear that investors do not rely on the Defendant to "protect Certificateholders' interests and ensure that Sellers honored their obligations." *See, e.g.,* Biron CB Ex. 102 (Group of investors, including Commerzbank, requesting Defendant look into a servicer); Goff Ex. 120 (Notice to certificateholders updating them on lawsuit against Plaza Home Mortgage brought by FHFA); *Commerzbank AG London Branch v. UBS AG*, No. 654464/2013, 2015 WL 3857321, at *1 (N.Y. Sup. Ct. N.Y. Cty.

77

June 17, 2015) ("*Commerzbank v. UBS*") (Commerzbank commenced a lawsuit against
the depositors, sponsors, and underwriters for 51 of the 74 Certificates, based on
allegations that, inter alia, the depositors/sponsors/originators had made false R&Ws).

Indeed, investors have a mechanism under the GAs to direct the Trustee to take
certain actions. ██████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████ Goff Ex. 48 at 139:5 – 25, 140:12 – 141:14,
144:12 – 145:5, 184:10 – 187:24 (V. Radhakishun Dep. (May 18, 2017), CB/WF); Biron
CB Ex. 123 at 270:23 – 271:23, 282:6 – 18 (V. Radhakishun Dep. (Apr. 27, 2018),
CB/HSBC); Biron CB Ex. 121 at 266:23 – 268:2, 307:10 – 25 (Commerzbank 30(b)(6)
Dep. (June 7, 2017), CB/WF); Biron CB Ex. 120 at 54:2 – 13, 58:8 – 11, 67:20-69:4,
72:20 – 73:13 (Commerzbank 30(b)(6) Dep. (Mar. 9, 2018)); Biron CB Ex. 102 at
DBNTC_COMMERZBANK_000000876758 – 766 (Jan. 31, 2012 letter from Gibbs &
Bruns).

Plaintiffs' contentions in this paragraph are further refuted by the expert evidence
in the record:

████████████████████████████████████████████████
██████████████████████████████████



Goff Ex. 3 (Schwarcz Report) at SS0017, ¶ 3.8 (*PL/DB*) & SS0127 – 28, ¶ 3.8 (*CB/DB*).



*Id.* at SS0014, ¶ 3.2 (*PL/DB*) & SS0125, ¶ 3.2 (*CB/DB*).



*Id.* at SS0023 – 25, ¶ 3.14 (*PL/DB*) & SS0134 – 36, ¶ 3.14 (*CB/DB*).



Goff Ex. 31 at 492:2–14 (J. Richard Dep. Oct. 4, 2018); *see also id.* at 473:4 – 474:3,

491:2 – 496:4; Goff Ex. 41 at 152:18 – 154:3 (V. Radhakishun Dep. (Jan. 19, 2018));

Goff Ex. 49 at 140:10 – 141:20 (Phoenix 30(b)(6) Dep. (May 31, 2018)); Goff Ex. 50 at

62:22 – 63:9 (A. Murata Dep. (June 28, 2017), BR/DB).

**Plaintiffs' Reply:** DB proffers no evidence to specifically controvert the material fact

that in 25 of the Trusts, three or more deal parties to the Governing Agreements, including

the Sponsor/Seller, Originator, and Servicer, were affiliated with one another, leaving DB

as the only independent party to protect Certificateholders' interests and ensure that

Sellers honored their obligations. Therefore, this material fact should be deemed admitted.

*See* Local Rule 56.1(c). The evidence proffered by DB

79

██████████████████████████ **is relevant only insofar as it provides evidence of DB's failure to protect Certificateholders' interests. DB's reliance on its expert report does not create an issue of fact because an expert may not provide a legal opinion regarding the trustee's duties under the Governing Agreements. Additionally, Plaintiffs intend to move to preclude the testimony of DB's expert at trial. The additional purported evidence and statements proffered by DB are irrelevant to the material fact. Further, DB's attempt to mischaracterize the fact as a legal conclusion is unavailing.**

34.     Plaintiffs, like other Certificateholders, are not parties to the Governing Agreements, and played no role in negotiating them. Handlin Exs. 1-44; 78-121.

Defendant's Response:  Disputed to the extent this paragraph purports to state that no Certificateholders are parties to any Governing Agreement or played any role in negotiating any Governing Agreement.  The evidence cited by Plaintiffs does not support that contention, and that contention is contrary to evidence in the record.  *See, e.g.*, Biron CB Ex. 1 (Excerpts of HASC 2006-HE1 Prospectus Supp) at 1 (noting that Countrywide Securities Corporation was one of the underwriters); *id.* at S2 ("Approximately 40.68% and 58.74% of the Mortgage Loans were originated or acquired by Countrywide Home Loans, Inc. and WMC Mortgage Corp., respectively, while approximately 0.58% of the Mortgage Loans were originated or acquired by various other originators.").

**Plaintiffs' Reply: DB proffers no evidence to specifically controvert Plaintiffs' material fact. Therefore, it should be deemed admitted. *See* Local Rule 56.1(c). Further, the purported evidence proffered by DB does not support its contentions under DB's own reasoning: "The fact that entities in a contract have similar names is not admissible evidence establishing that they are affiliates. Their affiliation must be demonstrated by other means." ¶¶ DBCSUF 32, 33. Thus, these contentions are entitled to no weight.**

35.     Certificateholders are third-party beneficiaries to the Governing Agreements, and the Governing Agreements emphasize that the Trustee is to act "for the benefit of," and/or "on behalf of," Certificateholders. *See*, *e.g*., Handlin Ex. 35 (NHEL 2006-5 PSA) § 2.01 ("The Depositor, concurrently with the execution and delivery hereof, does hereby transfer, assign, set over and otherwise convey in trust to the Trustee without recourse for the benefit of the Certificateholders all the right, title and interest of the Depositor, including any security interest therein for the benefit of the Depositor, in and to (i) each Mortgage Loan identified on the Mortgage Loan Schedule . . . ."); Handlin Ex. 35 (NHEL 2006-5 PSA) § 2.03(b) ("It is understood and agreed that the obligation of the Sponsor to cure or to repurchase (or to substitute for) any Mortgage Loan as to which a document is missing, a material defect in a constituent document exists or as to which such a breach has occurred and is continuing shall constitute the sole remedy against the Sponsor respecting such omission, defect or breach available to the Trustee on behalf of the Certificateholders.").

Defendant's Response:  To the extent this paragraph purports to state a legal

conclusion regarding the status of the Certificateholders and/or the obligations and

responsibilities of Defendant as set forth in the GAs, no response is required.

Disputed.  Plaintiffs' purported characterization of the GAs in this paragraph is

not supported by the material cited by Plaintiffs.  As an initial matter, each Trust is

governed by unique GAs, and Plaintiffs' citation to a GA for one Trust does not support

any generalization about other Trusts.  Indeed, the two quotations Plaintiffs cite in

support of this paragraph do not support Plaintiffs' contention that the GAs "emphasize

that the Trustee is to act 'for the benefit of,' and/or 'on behalf of,' Certificateholders."

*See* Handlin Ex. 35 (NHEL 2006-5 PSA) §§ 2.01, 2.03(b).

The GAs for the Trusts describe an investor-driven process whereby Plaintiffs can

direct Defendant to act, provided they fulfill the necessary conditions set forth in the

GAs.  *E.g.*, Handlin Ex. 23 (MSAC 2006-HE6 PSA) §§ 8.02(b), 10.08; Handlin Ex. 8

(FFML 2006-FF11 PSA) § 8.01 ("The Trustee, before the occurrence of a Master

Servicer Event of Default and after the curing of all Master Servicer Events of Default

that may have occurred, shall undertake to perform such duties and only such duties as

are specifically set forth in this Agreement. . . . Unless an Event of Default known to the

Trustee has occurred and is continuing: (a) the duties and obligations of the Trustee shall be determined solely by the express provisions of this Agreement, the Trustee shall not be liable except for the performance of the duties and obligations specifically set forth in this Agreement, no implied covenants or obligations shall be read into this Agreement against the Trustee, and the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon any certificates or opinions furnished to the Trustee and conforming to the requirements of this Agreement which it believes in good faith to be genuine and to have been duly executed by the proper authorities respecting any matters arising hereunder; (b) the Trustee shall not be liable for an error of judgment made in good faith by a Responsible Officer or Responsible Officers of the Trustee, unless it is finally proven that the Trustee was negligent in ascertaining the pertinent facts; and (c) the Trustee shall not be liable with respect to any action taken, suffered, or omitted to be taken by it in good faith in accordance with the direction of the Holders of Certificates evidencing not less than 25.00% of the Voting Rights of Certificates relating to the time, method, and place of conducting any proceeding for any remedy available to the Trustee, or exercising any trust or power conferred upon the Trustee under this Agreement."); *see* Biron PL Ex. 35 & Biron CB Ex. 35 (Charts: Defendant Has Only the Duties Expressly Set Forth in the GAs); Biron PL Ex. 36 & Biron CB Ex. 36 (Charts: No GA Provides That Defendant Has a Duty to Investigate Any Facts or Matters Absent Direction and Indemnity from a Contractually Specified Percentage of Investors); Biron PL Ex. 45 & Biron CB Ex. 45 (Charts: If an EOD is Continuing and Defendant has the Contractually Specified Knowledge Thereof, Defendant Has a Duty to Act as a Prudent Person Under the

Circumstances); *see also* Biron CB Ex. 136 at 211:10 – 15 (B. Jetter Dep. (Jan. 23, 2018))



In addition, the evidence in the record reflects that the interests of investors in different tranches (or even different investors in the same tranche) are not always aligned:



Biron CB Ex. 134 at 89:20-90:16 (R. Boelstler Dep. (June 12, 2017), CB/HSBC); *see also* Goff Ex. 51 at 52:15 – 54:5, 56:20 – 58:12 (R. Boelstler Dep. (Feb. 24, 2017), CB/WF); Goff Ex. 41 at 149:2 – 151:12 (V. Radhakishun Dep. (Jan. 19, 2018)); Biron CB Ex. 121 at 273:24 – 275:13 (Commerzbank 30(b)(6) Dep. (June 7, 2017), CB/WF); Goff Ex. 52 at 278:15 – 279:8 (P. Collins Dep. (Mar. 1, 2017), PL/HSBC); Goff Ex. 35 at 97:4 – 98:16 (P. Collins Dep. (Aug. 30, 2017), PL/USB); Goff Ex. 53 at 295:16 – 297:8

(T. Mark Dep. (Aug. 24, 2017)); Goff Ex. 54 at 49:10 – 50:15 (C. Kennedy Dep. (Feb.

17, 2017), PL/WF); Goff Ex. 43 at 83:11 – 84:2 (D. Gault Dep. (June 8, 2018)); Goff Ex.

50 at 36:3 – 38:17 (A. Murata Dep. (June 28, 2017), BR/DB); Goff Ex. 42 at 38:22 –

39:14, 60:12 – 62:25 (L. Medema Dep. (Jan. 11, 2018)); Goff Ex. 55 at 322:19 – 327:6

(L. Medema Dep. (Jan. 25, 2017), BR/WF); Goff Ex. 56 at 322:18 – 325:15 (L. Medema

Dep. (Mar. 17, 2017), BR/HSBC).

      Other evidence concerning disagreement among investors confirms that investors

did not always want Defendant to act. ██████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ Biron PL Ex. 113 (Notice

and Request for Direction) at DBNTC Phoenix Light 00002721208 – 210. █████████

██████████████████████████████████████ Biron PL Ex. 136 (Notice of Results

Regarding Request for Direction). ████████████████████████████████████████

███████████████████████████████████████. *Id.* ██████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████.[4]  Goff Ex. 57 at 122:2 – 17, 198:11 – 199:16, 214:21 – 215:14 (E.

---

[4] ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

Goff Ex. 48 at 139:5 – 25, 140:12 – 141:14, 144:12 – 145:5, 184:10 – 187:24 (V. Radhakishun Dep. (May

18, 2017), CB/WF); Biron CB Ex. 123 at 270:23 – 271:23, 282:6 – 18 (V. Radhakishun Dep. (Apr. 27,

Balz Dep. (Dec. 7, 2017)); Biron PL Ex. 130 at PEL_DB_00030766 – 767 (PEL

September 2009 Email); Biron CB Ex. 19 at PIMCO-DB000527 (PEL email attaching

October 2008 PIMCO Report on Dresdner Portfolio); Biron CB Ex. 95 at

CB_WFB003206450 – 55 (Sep. 27, 2010 email forwarding news article); Goff Ex. 48 at

139:5 – 25, 140:12 – 141:14, 144:12 – 145:5, 184:10 – 187:24 (V. Radhakishun Dep.

(May 18, 2017), CB/WF); Biron CB Ex. 123 at 270:23 – 271:23, 282:6 – 18 (V.

Radhakishun Dep. (Apr. 27, 2018), CB/HSBC); Biron CB Ex. 121 at 307:10 – 25

(Commerzbank 30(b)(6) Dep. (June 7, 2017), CB/WF); Biron CB Ex. 120 at 54:2 – 13,

58:8 – 11 (Commerzbank 30(b)(6) Dep. (Mar. 9, 2018)).



Goff Ex. 5 (Richard Report) at JR0014, ¶ 28 (*PL/DB*) & JR0034, ¶ 28 (*CB/DB*).



---

2018), CB/HSBC); Biron CB Ex. 121 at 266:23 – 268:2, 307:10 – 25 (Commerzbank 30(b)(6) Dep. (June

7, 2017), CB/WF); Biron CB Ex. 120 at 54:2 – 13, 58:8 – 11, 67:20 – 69:4, 72:20 – 73:13 (Commerzbank

30(b)(6) Dep. (Mar. 9, 2018)); Biron CB Ex. 102 at DBNTC_COMMERZBANK_000000876758 – 766

(Jan. 31, 2012 letter from Gibbs & Bruns).

Goff Ex. 5 (Richard Rebuttal) at JR0054, ¶ 24 (*PL/DB*) & JR0072, ¶ 24 (*CB/DB*).



Goff Ex. 3 (Schwarcz Report) at SS0014 – 15, ¶ 3.3 – 3.4 (*PL/DB*) & SS0125 – 26, ¶ 3.3 – 3.4 (*CB/DB*) (footnote omitted).



*Id.* at SS0016 – 17, ¶ 3.7 (*PL/DB*) & SS0126 – 27, ¶ 3.7 (*CB/DB*).

**Plaintiffs' Reply: DB does not specifically controvert the fact that Certificateholders are third-party beneficiaries to the Governing Agreements, and the Governing Agreements emphasize that the Trustee is to act "for the benefit of," and/or "on behalf of," Certificateholders. Therefore, the material fact should be deemed admitted. *See* Local Rule 56.1(c). DB instead cites PSA provisions that state DB's duties and rights after the occurrence of EOD. However, DB does not explain how those provisions in any way relate to the fact that the Governing Agreements provide that the Trustee is to act on behalf of or for the benefit of Certificateholders. DB also cites deposition testimony and purported expert evidence** ▓▓▓▓▓▓▓▓▓▓▓ **but that, too, is immaterial and irrelevant to the material fact. DB's reliance on its expert reports does not create an issue of fact because an expert may not provide a legal opinion regarding the interpretation and**

**meaning of contractual provisions. Additionally, Plaintiffs' intend to move to preclude the testimony of DB's expert at trial. Further, DB's attempt to evade these facts by mischaracterizing them as legal conclusions is unavailing; the cited documents speak for themselves.**

36.     Certificateholders are not permitted to sue Sellers directly; the Governing Agreements require Certificateholders to rely on the Trustee to vindicate their rights. *See*, *e.g.*, Handlin Ex. 35 (NHEL 2006-5 PSA) § 2.03(b) ("It is understood and agreed that the obligation of the Sponsor to cure or to repurchase (or to substitute for) any Mortgage Loan as to which a document is missing, a material defect in a constituent document exists or as to which such a breach has occurred and is continuing shall constitute the sole remedy against the Sponsor respecting such omission, defect or breach available to the Trustee on behalf of the Certificateholders.").

Defendant's Response:  To the extent this paragraph purports to state a legal conclusion regarding Certificateholder's rights under the GAs and/or Defendant's obligations under the GAs, no response is required.

Disputed.  Plaintiffs' purported characterization of the GAs in this paragraph is not supported by the material cited by Plaintiffs.  As an initial matter, each Trust is governed by unique GAs, and Plaintiffs' citation to a GA for one Trust does not support any generalization about other Trusts.  Indeed, even the quotation Plaintiffs cite in support of this paragraph does not support Plaintiffs' contention.

In fact, the GAs for all Trusts provide that certificateholders representing a contractually specified percentage of "Voting Rights" have the right to initiate legal actions under the GAs if, upon request, Defendant fails to do so – including the GA Plaintiffs cite in this paragraph:

No Certificateholder shall have any right by virtue of any provision of this Agreement to institute any suit, action or proceeding in equity or at law upon or under or with respect to this Agreement, unless such Holder previously shall have given to the Trustee a written notice of default and of the continuance thereof, as hereinbefore provided, and unless also the Holders of Certificates

> entitled to at least 25% of the Voting Rights shall have made
> written request upon the Trustee to institute such action, suit or
> proceeding in its own name as Trustee hereunder and shall have
> offered to the Trustee such indemnity as it may reasonably require
> against the costs, expenses and liabilities to be incurred therein or
> thereby, and the Trustee for 15 days after its receipt of such notice,
> request and offer of indemnity, shall have neglected or refused to
> institute any such action, suit or proceeding. . . .

Handlin Ex. 35 (NHEL 2006-5 PSA) § 12.03; Biron CB Ex. 52 & Biron PL Ex. 52

(Charts: Investors May Initiate Legal Action If Defendant Fails to Do So).

    The GAs provide that investors representing a contractually specified percentage

of "Voting Rights" (often 25%) have other control rights, as well, such as the right,

depending on the Trust, to: (i) notify a servicer that it has materially breached its

contractual obligations and demand cure, (ii) terminate a servicer following an EOD, (iii)

direct Defendant to appoint a new servicer, (iv) direct Defendant to conduct an

investigation, and (v) remove the trustee and appoint a replacement.  Biron PL Ex. 48 &

Biron CB Ex. 48 (Charts: Investors May Notify Parties of Breaches and Demand Cure);

Biron PL Ex. 49 & Biron CB Ex. 49 (Charts: Investors May Terminate Servicers); Biron

PL Ex. 50 & Biron CB Ex. 50 (Charts: Investors May Direct Appointment of New

Servicers); Biron PL Ex. 51 & Biron CB Ex. 51 (Charts: Investors May Direct Defendant

to Conduct an Investigation); Biron PL Ex. 53 & Biron CB Ex. 53 (Charts: Investors May

Remove Defendant).

    The record is clear that ██████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████

        ████████████████████████████████████████████████

████████████



Biron CB Ex. 136 at 211:10 – 15 (B. Jetter Dep. (Jan. 23, 2018)).



Goff Ex. 79 at PEL_DB_00517058 (Aug. 19, 2009 email) (emphasis added).



Goff Ex. 41 at 177:11 – 20 (V. Radhakishun Dep. (Jan. 19, 2018)).



Goff Ex. 49 at 140:10-141:20 (Phoenix 30(b)(6) Dep. (May 31, 2018)).



Goff Ex. 58 at 57:2-57:20 (E. Balz Dep. (Nov. 16, 2017), PL/USB).



*Id.* at 118:6–14.



Goff Ex. 48 at 140:12 – 141:14 (V. Radhakishun Dep. (May 18, 2017), CB/WF).



Biron CB Ex. 19 at PIMCO-DB00000527 (October 2008 PIMCO Report); Biron CB Ex.

83 at CB_DB02938592 (December 2008 PIMCO Report).





Goff Ex. 41 at 177:11 – 20 (V. Radhakishun Dep. (Jan. 19, 2018)).

In 2012 and 2013, EAA caused Phoenix and other Plaintiffs to independently commence legal actions against the sponsors, originators, and underwriters for hundreds of RMBS trusts, including 33 of the Trusts (relating to 46 of the Certificates), seeking to "vindicate their rights" rather than relying on or waiting for the respective Trustee to bring lawsuits on their behalf.  *See Phoenix Light SF Ltd. v. Ace Sec. Corp.*, No. 12-650422 (N.Y. Sup. Ct.); *Phoenix Light SF Ltd. v. J.P. Morgan Sec. LLC*, No. 12-651755 (N.Y. Sup. Ct.); *Phoenix Light SF Ltd. v. Goldman Sachs Grp.*, No. 13-652356 (N.Y. Sup. Ct.); *Phoenix Light SF Ltd. v.JP Morgan Chase & Co.*, No. 13-652921 (N.Y. Sup. Ct.); *Phoenix Light SF Ltd. v. Morgan Stanley*, No. 13-652986 (N.Y. Sup. Ct.); *Phoenix Light SF Ltd. v. Royal Bank of Scotland Grp.*, No. 13-653060 (N.Y. Sup. Ct.); *Phoenix Light SF Ltd. v. Credit Suisse AG*, No. 13-653123 (N.Y. Sup. Ct.); *Phoenix Light SF Ltd. v. Merrill Lynch Co.*, No. 13-653235 (N.Y. Sup. Ct.); Biron PL Ex. 75 (Chart: Overlapping Certificates with Prior Litigation); Goff Ex. 49 at 60:2 – 65:25 (Phoenix 30(b)(6) Dep. (May 31, 2018)).

Similarly, Commerzbank commenced a lawsuit in December 2013 against the depositors, sponsors, and underwriters for 51 of the 74 Certificates, based on allegations that the depositors/sponsors/originators had made false R&Ws, among other things.  *See Commerzbank v. UBS*, 2015 WL 3857321, at *1; *see also* Goff Ex. 120 (Notice to certificateholders updating them on lawsuit against Plaza Home Mortgage brought by FHFA).

91

Defendant only has limited administrative and ministerial duties under the GAs, which may include: (i) maintaining a certificate registrar; (ii) maintaining specified trust accounts; (iii) distributing funds collected from servicers to certificate holders; and (iv) distributing information to certificate holders based on servicer data.  Reyes PL Decl. ¶ 6; Reyes CB Decl. ¶ 6.

No GA provides that Defendant has a duty to investigate any facts or matters absent direction and indemnity from a contractually specified percentage of investors. Biron PL Ex. 36 & Biron CB Ex. 36 (Charts: No GA Provides That Defendant Has a Duty to Investigate Any Facts or Matters Absent Direction and Indemnity from a Contractually Specified Percentage of Investors).  The GAs for all the Trusts further provide in substance that Defendant may rely upon and shall be protected in acting or refraining from acting upon any certificate, statement, instrument, opinion, report, notice, request, consent, order, appraisal, bond or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties.  Biron PL Ex. 37 & Biron CB Ex. 37 (Charts: Defendant May Rely On Any Statement, Opinion or Document It Believes to Be Genuine); Biron PL Ex. 38 & Biron CB Ex. 38 (Charts: Defendant Is Not Responsible for the Accuracy or Content of Any Certificate, Statement, or Other Instrument Furnished to It).

For example, the HASC 2006-HE1 PSA provides:

the Trustee may rely upon and shall be protected in acting or refraining from acting upon any resolution, Officer's Certificate, certificate of auditors or any other certificate, statement, instrument, opinion, report, notice, request, consent, order, appraisal, bond or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties and the Trustee shall have no responsibility to ascertain

92

> or confirm the genuineness of any signature of any such party or
> parties.

Biron PL Ex. 2 § 8.02(a) (HASC 2006-HE1 PSA).

Defendant also has broad exculpations under the GAs.  The GAs for all the Trusts

provide that Defendant shall not be liable with respect to actions taken, suffered, or

omitted to be taken by it in good faith at the direction of holders of a specified percentage

of certificates, relating to Defendant's powers under the GAs.  Biron PL Ex. 39 & Biron

CB Ex. 39 (Charts: Defendant Is Not Liable for Following Direction from Specified

Percentage of Holders in Good Faith).  For example, the HASC 2006-HE1 PSA provides:

> [T]he Trustee shall not be liable with respect to any action taken,
> suffered, or omitted to be taken by it in good faith in accordance
> with the direction of the Holders of Certificates evidencing not less
> than 25.00% of the Voting Rights of Certificates relating to the
> time, method, and place of conducting any proceeding for any
> remedy available to the Trustee, or exercising any trust or power
> conferred upon the Trustee under this Agreement.

Biron PL Ex. 2 § 8.01(c) (HASC 2006-HE1 PSA).

The GAs for all the Trusts provide Defendant shall not be liable with respect to

any action taken, suffered or omitted by it in good faith that it believes to be authorized or

within its discretion under the GA.  Biron PL Ex. 40 & Biron CB Ex. 40 (Charts:

Defendant Is Not Liable for Any Action or Omission It Takes in Good Faith).  For

example, the HASC 2006-HE1 PSA provides:

> the Trustee shall not be liable for any action taken, suffered or
> omitted by it in good faith and believed by it to be authorized or
> within the discretion or rights or powers conferred upon it by this
> Agreement.

Biron PL Ex. 2 (HASC 2006-HE1 PSA)§ 8.02(c).

Expert evidence concerning the role of RMBS trustees and investor expectations

is consistent with the other evidence described in this response:

93



Goff Ex. 3 (Schwarcz Report) at SS0020 – 23, ¶ 3.13 (*PL/DB*) & SS0131 – 34, ¶ 3.13

(*CB/DB*).



*Id.* at SS0030, ¶ 4.11 (*PL/DB*) & SS0141, ¶ 4.11 (*CB/DB*).



Goff Ex. 5 (Richard Rebuttal) at JR0053 – 54, ¶ 21 – 22 (*PL/DB*) & JR0071 – 72, ¶ 21 –

22 (*CB/DB*).



Goff Ex. 31 at 473:9 – 473:12 (J. Richard Dep. (Oct. 4, 2018)).





*Id.* at 492:2 – 494:8.

**Plaintiffs' Reply:** DB's purported evidence does not controvert the material fact. DB's issue with Plaintiffs' characterization of the contractual provisions of the Governing Agreements is immaterial; the documents speak for themselves. Therefore, Plaintiffs' material fact is deemed admitted by operation of law. *See* Local Rule 56.1(c). DB's attempt to evade this fact by mischaracterizing it as a legal conclusion is unavailing; the cited document speaks for itself.

DB's assertion that "[n]o GA provides that Defendant has a duty to investigate any facts or matters absent direction and indemnity from a contractually specified percentage of investors" is a legal conclusion inappropriate for a Rule 56.1 Statement to which no response is required. It is also incorrect. As explained in Plaintiffs' briefing, based on facts DB knew, for many Trusts, it was required to "investigate" without direction and indemnity. *See* Pltfs.Opp. 40-42.

DB's proffered evidence concerning prior lawsuits by investors against Sellers is immaterial and irrelevant to the material fact because those actions involve suits in which Plaintiffs sued Sellers directly for common law securities fraud in connection with the securitization process and certificates that each defendant marketed and sold to Plaintiffs. *See, e.g., Commerzbank AG London Branch v. UBS AG*, No. 654464/2013, Dkt. #28 (N.Y. Sup. Ct. May 20, 2014) at 1-6. The additional purported evidence proffered by DB fails to

**demonstrate that Certificateholders had the ability to directly sue the Sellers to enforce**

**repurchase obligations and otherwise is immaterial and irrelevant to the material fact.**

37.     Under the Governing Agreements, Certificateholders are unable to direct the Trustee to take action unless they control 25% or more of the voting rights in a Trust. *See, e.g.*, Handlin Ex. 35 (NHEL 2006-5 PSA) § 12.03 ("No Certificateholder shall have any right by virtue of any provision of this Agreement to institute any suit, action or proceeding in equity or at law upon or under or with respect to this Agreement, unless such Holder previously shall have given to the Trustee a written notice of default and of the continuance thereof, as hereinbefore provided, and unless also the Holders of Certificates entitled to at least 25% of the Voting Rights shall have made written request upon the Trustee to institute such action, suit or proceeding in its own name as Trustee hereunder . . . .").

Defendant's Response:  To the extent this paragraph purports to state a legal

conclusion regarding rights and duties under any contract, no response is required.

Defendant does not dispute that the GAs generally require investors to hold

certificates representing a certain percentage of "voting rights" in order to direct

Defendant to take certain actions.  But, Plaintiffs' purported characterization of the GAs

in this paragraph is not supported by the material cited by Plaintiffs.

As an initial matter, each Trust is governed by unique GAs, and Plaintiffs'

citation to a GA for a single Trust does not support any generalization about other Trusts.

In addition, even within one GA, certificateholders' rights to direct Defendant (and the

conditions on those rights) depend on the action being directed.

For example, the GAs for 80 Trusts (including the GA cited by Plaintiffs in this

paragraph) provide that certificateholders representing a contractually specified

percentage of "Voting Rights" have the right to direct Defendant to conduct an

investigation, without any requirement that the certificateholders "provide written notice

of default."  Biron PL Ex. 51 & Biron CB Ex. 51 (Charts: Investors May Direct

Defendant To Conduct An Investigation).

The GAs for all Trusts also provide that certificateholders representing a contractually specified percentage of "Voting Rights" have the right to terminate, or direct another deal party to terminate, a servicer under specified circumstances.  Biron PL Ex. 49 & Biron CB Ex. 49 (Charts: Investors May Terminate Servicers).  Those specified circumstances generally require that a contractually defined event (for example, an "Event of Default") must have occurred and must not have been remedied.  *Id.*

The provision cited by Plaintiffs in this paragraph does not concern certificateholders' rights to give directions.  Rather that provision, and similar provisions in other GAs, provide that certificateholders representing a contractually specified percentage of voting rights have the right to initiate legal actions under the GAs if (i) certain conditions are satisfied (such as the certificateholders "provid[ing] written notice of default"), (ii) the certificateholders have requested that Defendant initiate legal action, and (iii) Defendant has failed to do so.  Biron PL Ex. 52 & Biron CB Ex. 52 (Charts: Investors May Initiate Legal Action If Defendant Fails to Do So).