**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

COMMERZBANK AG,

                 Plaintiff,

      v.

DEUTSCHE BANK NATIONAL TRUST
COMPANY and DEUTSCHE BANK TRUST
COMPANY AMERICAS,

                 Defendants.

Case No. 15-cv-10031-JGK-DCF

Hon. John G. Koeltl


**DEFENDANTS' REVISED REPLY AND**
**RESPONSE TO PLAINTIFF'S COUNTERSTATEMENT OF**
**UNDISPUTED MATERIAL FACTS PURSUANT TO RULE 56.1 OF**
**THE LOCAL CIVIL RULES FOR THE SOUTHERN DISTRICT OF NEW YORK**

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ iv

GENERAL OBJECTIONS AND RESERVATION OF RIGHTS ............................ vi

NOTE REGARDING REVISIONS TO REDUCE VOLUME OF SUMMARY
    JUDGMENT SUBMISSIONS.......................................................................... ix

**PART I:  DEFENDANT'S REPLY TO COMMERZBANK'S RESPONSES TO
DEFENDANT'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT (ECF NO. 191)** .......... 1

PRELIMINARY STATEMENT ........................................................................... 1

I.     OVERVIEW OF THE TRUSTS' GOVERNING AGREEMENTS ................................. 6

     A.     Defendant's Limited Duties Under the Governing Agreements............................ 7

          ii.     Defendant Had Limited Duties Relating to Mortgage Custody Files...... 14

          iii.     Defendant Does Not Make, and Is Not Responsible For, R&Ws
                Concerning the Nature and Quality of Loans in the Trusts ................... 15

          iv.     Defendant Has No Duty to Monitor or Supervise Servicers.................... 17

          v.     Defendant's Post-EOD Duties ................................................................ 30

     B.     Investor's Rights Under the Governing Agreements........................................... 33

II.    COMMERZBANK AND THE CERTIFICATES ............................................................. 37

III.    THE EVIDENCE ESTABLISHES THAT MOST OF COMMERZBANK'S
     CLAIMS ARE UNTIMELY UNDER GERMAN LAW ................................................. 49

     A.     Commerzbank knew of the alleged losses on the Certificates well before
          January 1, 2012, the German statute of limitations cut-off................................. 49

     B.     Commerzbank knew of the factual circumstances underlying Defendant's
          purported breaches before January 1, 2012, the German statute of
          limitations cut-off............................................................................................. 75

          i.     Commerzbank is a sophisticated financial institution ............................ 75

          ii.     Before January 1, 2012, Commerzbank knew (i) of allegations of
                widespread R&W breaches and (ii) that, absent direction from the
                contractually specified percentage of investors, Defendant was
                neither investigating whether loans breached R&Ws nor pursuing
                repurchase claims against warrantors, and (iii) that Defendant had
                not declared EODs relating to R&W breaches ........................................ 79

          iii.     Before January 1, 2012, Commerzbank knew (i) of allegations of
                incomplete mortgage custody files, servicer robo-signing and other
                alleged post-default servicing misconduct and (ii) that Defendant
                had not declared EODs relating to those allegations ........................... 144

iv.    Before January 1, 2012, Commerzbank knew that after Defendant declared EODs in certain Trusts in 2009 and 2010, it was not investigating (i) whether loans in those Trusts could be put back to Warrantors or (ii) whether servicers for those Trusts were breaching their obligations ................................................................ 164

v.    Before January 1, 2014 (i.e., German limitations cut off for claims first asserted in the SAC), Commerzbank knew that after Defendant declared EODs in certain Trusts in 2012, it did not investigate (i) whether loans in those Trusts could be put back to Warrantors or (ii) whether servicers for those Trusts were breaching their obligations ................................................................ 174

vi.    In 2011, investors sued RMBS trustees based on the same types of allegations made in this action ............................................................ 178

IV.    THE EVIDENCE ESTABLISHES MANY OF COMMERZBANK'S CLAIMS ARE UNTIMELY UNDER NEW YORK LAW ............................................. 182

A.    Commerzbank's claims that Defendant breached its pre-EOD duties relating to certain alleged R&W breaches are time-barred under New York law ................................................................................................................ 182

B.    Any claims that arose under the Palmer 3 Certificates before their transfer to Commerzbank are time-barred under New York law .................................. 185

V.    DEFENDANT DID NOT BREACH ITS DUTIES BY NOT PURSUING REPURCHASE CLAIMS AGAINST BANKRUPT WARRANTORS ...................... 185

VI.    PRIOR TO THIS LAWSUIT, DEFENDANT SETTLED AND RELEASED REPURCHASE CLAIMS AGAINST FREMONT INVESTMENT & LOAN ............ 186

VII.    DEFENDANT COULD NOT PURSUE UNTIMELY REPURCHASE CLAIMS ...... 188

VIII.    DEFENDANT COMPLIED WITH ITS PRE-EOD DUTIES ...................................... 192

A.    Defendant complied with any R&W notice obligations it had .......................... 192

i.    The GAs require that, in order for Defendant to have any pre-EOD duty to provide notice of an R&W breach or to enforce repurchase obligations, Defendant must have discovered (or, for certain trusts, discovered or received written notice of) a loan-level R&W breach ..... 192

ii.    For all Discovery-Only Trusts, there is no loan-specific evidence that Defendant "discovered" any R&W breaches ................................. 193

iii.    When Defendant received letters from other parties alleging loan-specific R&W breaches, Defendant satisfied any obligation it had to provide notice of the alleged R&W breaches .................................... 197

B.    Defendant complied with any R&W enforcement obligations it had ............... 200

i.    Under the GAs for 21 Trusts, Defendant had no duty to enforce any repurchase obligations ................................................................ 201

ii.    Under the GAs for 18 Trusts, Defendant only had an enforcement duty under certain specified conditions, and there is no evidence those conditions were satisfied ............................................................ 201

iii.   To the extent Defendant had any duties to enforce repurchase obligations, it performed those duties .................................................... 203

C.    Commerzbank no longer owned certain certificates by the time Defendant received notice of alleged R&W breaches regarding loans in those Trusts ...... 210

D.    Defendant believed in good faith that its practices complied with the GAs...... 211

IX.   COMMERZBANK HAS NO EVIDENCE THAT DEFENDANT'S POST-EOD DUTIES WERE TRIGGERED BY PURPORTED SERVICER OR ISSUER BREACHES ............................................................................................... 218

A.    Commerzbank lacks loan- or trust-specific evidence that an EOD occurred in any Trust as the result of a servicer or issuer breach ..................................... 218

B.    In any event, Commerzbank has no loan- or Trust-specific evidence that Defendant had "written notice" or "actual knowledge" of an EOD resulting from servicer or issuer breaches ......................................... 220

X.    COMMERZBANK LACKS EVIDENCE THAT DEFENDANT BREACHED ITS POST-EOD DUTIES ARISING FROM DECLARED EODS.............................. 221

PART II:  DEFENDANT'S REPLY TO COMMERZBANK'S COUNTER-STATEMENT OF UNDISPUTED FACTS IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 191-1)……..……………....295

## INTRODUCTION

Pursuant to Rule 56.1 of the Local Rules of the Southern District of New York, Defendants Deutsche Bank National Trust Company ("DBNTC") and Deutsche Bank Trust Company Americas ("DBTCA"), each as trustee of residential mortgage-backed securitization ("RMBS") trusts at issue in this action (the "Trusts"), submit the following reply and response to Plaintiff's corrected counterstatement of material facts.

DBNTC and DBTCA are referred to herein, collectively, in their capacities as trustees for the Trusts, as "Defendant." The RMBS securities at issue in this litigation are referred to herein as the "Certificates."[1] The governing agreements for the Trusts are referred to herein as the "Governing Agreements" or "GAs." The relevant Governing Agreements are being submitted to the Court on a CD.

The GAs define different types of "events" (*e.g.*, "Master Servicer Event of Default" and "Servicer Event of Default") that have different consequences. Each Trust's GAs provide in substance that if particular events are continuing *and* Defendant has the contractually specified knowledge thereof (*e.g.*, "actual knowledge" or "written notice"), Defendant "shall exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in their exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs." As used herein, "EOD" only refers to those events defined under each GA that can trigger Defendant's "prudent person" duty.

---

[1]   **Defendant's Note:** Generally, certificates are issued by RMBS trusts governed by pooling and servicing agreements ("PSAs") and notes or bonds are issued by RMBS trusts governed by indentures. For ease of reference, we refer to all as "certificates."

The Revised Declaration of Kevin J. Biron, dated July 19, 2019, filed herewith, is cited as "Biron Decl. ¶ _" or "Biron CB-Decl. ¶ _" and exhibits attached thereto are cited as "Ex." or "Biron CB-Ex. _." The Declaration of Ronaldo Reyes, dated December 6, 2018, Dkt. #164, is cited as "Reyes Decl. ¶ _" or "Reyes CB-Decl. ¶ _," and exhibits attached thereto are cited as "Reyes Ex. _" or "Reyes CB-Ex. _." The Declaration of Ronaldo Reyes, dated January 24, 2019, Dkt. #176, is cited as "Reyes Opp. Decl. ¶ _," and exhibits attached thereto are cited as "Reyes Opp. Ex. _." The Declaration of David Co, dated December 7, 2018, Dkt. #165, is cited as "Co Decl. ¶ _" or "Co CB-Decl. ¶ _." The Declaration of David Co, dated January 23, 2019, Dkt. #177, is cited as "Co Opp. Decl. ¶ _," and exhibits attached thereto are cited as "Co Opp. Ex. _." Exhibits to the Declaration of Jay S. Handlin in Support of Plaintiffs' Joint Motion for Partial Summary Judgment (originally Dkt. #168, as revised in connection herewith if applicable) are cited as "Handlin Ex. _." The Revised Declaration of Bryan P. Goff, dated July 19, 2019, filed herewith, is cited as "Goff Decl. ¶ _," and exhibits attached thereto are cited as "Goff Ex. _." Exhibits attached to the Revised Reply Declaration of Bryan P. Goff, dated July 19, 2019, filed herewith, are cited as "Goff R-Ex. _." Exhibits to the Corrected Declaration of Ryan A. Kane In Support of Plaintiff's Opposition to Defendants' Motion For Summary Judgment (originally Dkt. #192, as revised in connection herewith if applicable) are cited as "Kane Ex. _." Exhibits to the Corrected Declaration of Christopher J. Lucht In Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment (originally Dkt. #193, as revised in connection herewith if applicable) are cited as "Lucht Ex. _." Additional defined terms and abbreviations used herein are set forth on Goff R-Ex. A. For the avoidance of doubt, any citation to an exhibit to a declaration incorporates by reference the declaration statements pertaining to that exhibit.

v

Plaintiff Commerzbank AG ("Plaintiff" or "Commerzbank") filed its counterstatement of material facts (referred to herein as "CB-CSUF") in two parts, each part containing numbered paragraphs beginning at 1: Part One, ECF No. 191, contains Commerzbank's responses to Defendant's statement of undisputed facts in support of its motion for summary judgment; Part Two, ECF No. 191-1 (cited herein as "CB-PSUF"), contains Commerzbank's purported statements of additional material facts.  Defendant's reply to Part One, ECF No. 191, is cited herein as "CB-RSUF."  Defendant's reply to Part Two, ECF No. 191-1, is cited herein as "CB-PSUF-Reply."

Defendant recognizes that the record in this case is voluminous, but notes that is primarily a consequence of Plaintiff's decision to bring as a single case what in reality are 50 different cases.  As the parties' arguments and evidence on summary judgment demonstrate, the 50 Trusts involve different governing agreements and different material facts.  Plaintiff's Opposition papers, however, have made the record in this case far more voluminous and unwieldy than it needs to be.  Plaintiff submits exhibits that duplicate Defendant's exhibits *compare* Biron CB-Ex. 102, *with* Lucht Ex. 93, in addition to exhibits that duplicate their own exhibits, *compare* Lucht Ex. 17, *with* Handlin Ex. 98.  Plaintiff submits many exhibits that they never cite.  *E.g.*, Kane Ex. 470 (Chart: Rights Referred to Above) and Lucht Ex. 148 (█████ ████████████████████████████████████).  Contrary to the Local Rules and the Federal Rules of Civil Procedure, moreover, Plaintiff uses its CB-CSUF to make legal arguments found nowhere in their memorandum of law.  These defects, and several others, are briefly summarized in the following sections.

## GENERAL OBJECTIONS AND RESERVATION OF RIGHTS

Defendant objects to Plaintiff's CB-CSUF to the extent that it does not comply with Local Rule 56.1(d), which requires that "each statement of fact" set forth by an opponent "must

be followed by citation to evidence which would be admissible." Defendant objects to Plaintiff's CB-CSUF to the extent that it does not indicate what evidence is relied upon by Plaintiff to support each proffered statement of fact. Defendant further objects to Plaintiff's CB-CSUF because none of the purported factual disputes establishes the presence of a genuine issue of material fact that precludes the Court from granting Defendant's Motion. The supposed factual disputes instead consist of:

- Assertions that contradict the record, or misquote and mischaracterize documents and testimony in an attempt to create a factual dispute that does not exist. *E.g.*, CB-PSUF ¶¶ 110, 113, 180, 543, 681, 719, 904, 1221, 1439 – 1440, 1462, 1471, 1492.

- Manufactured disputes raising points that are non-responsive to the material fact stated in Defendant's paragraph.

- Allegations and arguments immaterial to Defendant's Motion, including numerous additional facts relating to claims on which Defendant did not move for summary judgment. *E.g.*, CB-PSUF ¶¶ 337, 1192, 1195 – 1197, 1200, 1574.

- Improper legal arguments, because Plaintiff uses its CB-PSUF as an annex to their memorandum of law, making numerous legal arguments that appear nowhere in their memorandum of law. *E.g.*, CB-PSUF ¶¶ 1433, 1443 – 1444.

- Conclusory assertions that are not supported by citations to admissible evidence as is required by Local Rule 56.1(d). *E.g.*, CB-PSUF ¶¶ 36, 263, 264, 280, 290, 508, 548, 607, 759, 890. Many of the purported facts that Plaintiff proffers rely on inadmissible evidence or on no evidence at all, in violation of Fed. R. Civ. P. 56(c)(1)(A).

- Prolix responses to Defendant's statements of fact spanning multiple pages and additional statements of facts riddled with compound assertions, *e.g.*, CB-PSUF ¶ 1469, 1472 –

1473, that fail to comply with Rule 56.1's direction that each statement be "short and concise."

With respect to any and all purported facts reflecting, discussing, or embodying conduct on the part of DBNTC of DBTCA, Defendant notes that any such conduct was done by DBNTC or DBTCA solely in its capacity as Trustee for the RMBS trusts in these actions.

In its responses to Plaintiff's CB-PSUF, Defendant has responded to each and every numbered paragraph, or part thereof, as being "undisputed" or "disputed."  Any portion of any paragraph identified by Plaintiff which is not specifically deemed to be "undisputed" should be considered to have been deemed "disputed" by Defendant.  To the extent Defendant states below that any statement of purported material fact proffered by Plaintiff is disputed or undisputed, Defendant does so for purposes of this motion only.

Finally, this reply counterstatement should be read in conjunction with Defendant's objections to the evidence submitted by Plaintiff in connection with its joint opposition to Defendant's motion for summary judgment.[2]

---

[2]     **Defendant's Note:** Defendant expressly reserves the ability to raise and seek a ruling from the Court on any objection made or available during the depositions of Defendant's witnesses, including, but not limited to, objections to documentary evidence presented.  Further, Defendant reserves the right to assert additional objections regarding the evidence cited by Plaintiff's in its joint opposition to Defendant's motion for summary judgment that may be available at trial.

## NOTE REGARDING REVISIONS TO REDUCE VOLUME OF SUMMARY JUDGMENT SUBMISSIONS

In accordance with the parties' joint proposal so-ordered by the Court on June 24, 2019 (PL ECF No. 346; CB ECF No. 229), the parties have submitted this revised version of their respective Local Rule 56.1 statements, counterstatements, and replies to reduce the volume of the parties' summary judgment submissions before the Court. As contemplated in the June 24, 2019 Order, the parties revised (among other things) certain statements, responses, and replies in their Local Rule 56.1 submissions "to replace statements about the provisions of the agreements at issue with references to either summary exhibits concerning the agreements or the relevant provisions of the agreements themselves." Similarly, the parties replaced statements characterizing the contents of deposition transcripts or other materials with simple references to the exhibits that the citing party says support certain propositions in its brief. The parties intend such references to be considered by the Court as citations to the material cited, and not statements of purported fact. For this reason, a "response" to such a paragraph in the Local Rule 56.1 submissions that does not rebut the corresponding proposition in the party's brief for which the paragraph is cited (including a "reserved" response or a response referencing additional material) is not an admission that the corresponding proposition in the party's brief is supported by the cited material. Each party also removed certain paragraphs from its Local Rule 56.1 submissions (including responses and replies thereto) that concern facts such party believes ultimately are not material to the Court's resolution of its motion, and marked those paragraphs as "reserved." In certain cases, the non-moving party disputed the removed paragraphs. For this reason, the "reserved" paragraphs are not an admission by the other party that the corresponding proposition in the citing party's brief is accurate or supported by any material that would be

admissible. The parties respectfully refer the Court to their memoranda of law for their legal arguments.

## PART I:

## DEFENDANT'S REPLY TO COMMERZBANK'S RESPONSES TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT (ECF NO. 191)

### PRELIMINARY STATEMENT

1.   An RMBS transaction involves pooling together residential mortgage loans and selling to investors interests in the cash flows from the pool of loans.

   *1.   Plaintiff's Response:  This paragraph cites no record evidence and, thus, no response is required.*

   **1.   Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 1, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).  This paragraph is supported and continued in subparagraphs 1.1 – 1.7 below and the record evidence cited therein, which follows this numbered paragraph in accordance with Local Rule 56.1(d).**

   1.1.     In an RMBS transaction, after "originators" make mortgage loans to borrowers, those loans are conveyed to a "sponsor," which bundles the loans into a pool. *See* Reyes Decl. ¶ 3; Biron CB-Ex. 1 at S-1 – S-3, S-32, S-60 (Excerpts of HASC 2006-HE1 Prospectus Supplement).

   *1.1.   Plaintiff's Response:  Undisputed that this paragraph accurately describes some common characteristics of many RMBS transactions at a high level.*

   **1.1.   Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 1.1, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

1

1.2.    The sponsor then conveys the loan pool to a "depositor."  *See* Reyes Decl. ¶ 3; Biron CB-Ex. 1 at S-1 – S-3, S-32, S-60 (Excerpts of HASC 2006-HE1 Prospectus Supplement).

    *1.2.*    *Plaintiff's Response:  Undisputed that this paragraph accurately describes some common characteristics of many RMBS transactions at a high level.*

    **1.2.    <u>Defendant's Reply</u>:  Plaintiff's response does not specifically controvert ¶ 1.2, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

1.3.    The depositor then conveys the loan pool to the trust in exchange for securities ("certificates"), which entitle their holders to a share of payments received on the loan pool.  *See* Reyes Decl. ¶ 3; Biron CB-Ex. 1 at S-1 – S-8, S-32, S-60 (Excerpts of HASC 2006-HE1 Prospectus Supplement).

    *1.3*    *Plaintiff's Response:  Undisputed that this paragraph accurately describes some common characteristics of many RMBS transactions at a high level.*

    **1.3.    <u>Defendant's Reply</u>:  Plaintiff's response does not specifically controvert ¶ 1.3, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

1.4.    The sponsors and/or originators make certain representations and warranties ("R&Ws") concerning the nature and quality of the loans that the depositor conveys to the trusts.  Biron CB-Ex. 1 at S-62 – S-66 (Excerpts of HASC 2006-HE1 Prospectus Supplement).

    *1.4.*    *Plaintiff's Response:  Undisputed that this paragraph accurately describes some common characteristics of many RMBS transactions at a high level.*

**1.4.** **Defendant's Reply:  Plaintiff's response does not specifically
controvert ¶ 1.4, and so this material fact should be deemed admitted.  *See* Local
Rule 56.1(c).**

1.5.     The depositor (or an underwriter) sells the certificates to investors.  *Id.* at S-67
– S-74.

*1.5.     Plaintiff's Response:  Undisputed that this paragraph accurately describes
some common characteristics of many RMBS transactions at a high level.*

**1.5.** **Defendant's Reply:  Plaintiff's response does not specifically
controvert ¶ 1.5, and so this material fact should be deemed admitted.  *See* Local
Rule 56.1(c).**

1.6.     Interests in the certificates can then be freely traded in the market from one
investor to another.  *Id.* at S-31.

*1.6.     Plaintiff's Response:  Disputed to the extent that this paragraph suggests
that RMBS certificates can always be "freely traded." During the financial crisis,
investors could not freely trade certificates because no liquid market existed for their
sale.  No security can be traded "freely" without a willing buyer and willing seller.
Further, investors may have trading restrictions that prevent them from selling under
certain circumstances.  See Handlin Ex. 102 (IMM 2007-A Indenture) § 3.09(a) ("So
long as any Bonds are Outstanding, the Issuer shall not:  (i) except as expressly
permitted by this Indenture, sell, transfer, exchange or otherwise dispose of the Trust
Estate, unless directed to do so by the Indenture Trustee acting at the written
direction of the Bond Insurer or with the prior written consent of the Bond Insurer the
Holders of a Majority of the aggregate Bond Principal Balances of the Bonds.").*

**1.6.   Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 1.6, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

**Plaintiff's argument, in the second and third sentences of this response, that all trades require a "willing buyer and willing seller" is irrelevant to whether interests can be freely traded among investors and unsupported by any evidence.**

**Plaintiff's response that "investors may have trading restrictions that prevent them from selling under certain circumstances" is unsupported by the evidence cited.  First, the IMM 2007-A Indenture contains no § 3.09(a).  *See* Handlin Ex. 102.  Moreover, to the extent Plaintiff intended to cite § 3.09, that section concerns the <u>Issuer's</u> duties and obligations with respect to the <u>Trust Estate</u> under the Indenture and does not relate to whether <u>investors</u> can freely trade <u>RMBS certificates</u>.  Accordingly, Plaintiff has failed to establish any genuine issue to be tried.  *See* Local Rule 56.1(d).**

1.7.   "Servicers" maintain the day-to-day relationships with borrowers on the loans in the trust, collect loan payments and enforce the terms of the loan documents.  Reyes Decl. ¶ 3; Biron CB-Ex. 1 at S-91, S-105 – S-111 (Excerpts of HASC 2006-HE1 Prospectus Supplement).

*1.7.   <u>Plaintiff's Response</u>:  Disputed to the extent this paragraph suggests that "servicers" complied with the duties described in this paragraph as a general matter. As set forth in Sections L.D.i.–vi. of Plaintiff's counterstatement, they often did not. CBCSUF ¶¶ 1552-1755.  <u>See also</u> Handlin Ex. 561.*

**1.7.**   **Defendant's Reply:**  Plaintiff's response does not specifically controvert ¶ 1.7, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).

Plaintiff's response regarding whether "'servicers' complied with the duties described in this paragraph" is irrelevant to the material fact that Servicers were assigned those duties and is unsupported by Plaintiff's cited evidence.

Plaintiff's citation to over 200 paragraphs of its CB-PSUF does not specifically controvert ¶ 1.7.  Defendant restates CB-PSUF-Reply ¶¶ 1552 – 1755 and incorporates them by reference.

Plaintiff's citation to Handlin Ex. 561 also does not provide evidence that servicers did not comply with certain duties.  That document is a memorandum to ███████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████████████ ██████████████████████████████ The memorandum merely recited ████████████████████████████████████████ █████████████████████████████████████████ ███████████████████

2.   [RESERVED]

3.   [RESERVED]

4.   [RESERVED]

5.   [RESERVED]³

## I.   OVERVIEW OF THE TRUSTS' GOVERNING AGREEMENTS

6.   Defendant refers the Court to Biron CB-Ex. 25 (Chart:  PSA Trusts); Biron CB-Ex. 26

(Chart:  Indenture Trusts); *infra* ¶¶ 12-38.

*6.   Plaintiff's Response:  [RESERVED]*

**6.   Defendant's Reply:  [RESERVED]**

7.   Defendant refers the Court to Biron CB-Ex. 25 (Chart:  PSA Trusts).

*7.   Plaintiff's Response:  [RESERVED]*

**7.   Defendant's Reply:  [RESERVED]**

8.   Defendant refers the Court to Biron CB-Ex. 25 (Chart:  PSA Trusts).

*8.   Plaintiff's Response:  [RESERVED]*

**8.   Defendant's Reply:  [RESERVED]**

9.   Defendant refers the Court to Biron CB-Ex. 25 (Chart:  PSA Trusts).

*9.   Plaintiff's Response:  [RESERVED]*

**9.   Defendant's Reply:  [RESERVED]**

10.  Defendant refers the Court to Biron CB-Ex. 26 (Chart:  Indenture Trusts).

*10. Plaintiff's Response:  [RESERVED]*

**10. Defendant's Reply:  [RESERVED]**

---

³   **Defendant's Note:** Certificates are issued by PSA Trusts and notes are issued by

Indenture Trusts.  For the ease of reference, we refer to both as certificates.

11. Defendant refers the Court to Biron CB-Ex. 34 (Chart:  GA Governing Law).

*11. Plaintiff's Response:  Plaintiff refers the Court to Kane Ex. 361.*

**11. Defendant's Reply:  [RESERVED]**


### A.   Defendant's Limited Duties Under the Governing Agreements

12. Defendant refers the Court to Biron CB-Ex. 35 (Chart:  Defendant Has Only the Duties Expressly Set Forth in the GAs); Biron CB-Ex. 45 (Chart:  If an EOD is Continuing and Defendant has the Contractually Specified Knowledge Thereof, Defendant Has a Duty to Act as a Prudent Person Under the Circumstances).[4]

*12. Plaintiff's Response:  Plaintiff refers the Court to, e.g., Handlin Ex. 109 (MSAC 2006-HE5 PSA) § 8.01 ("Unless an Event of Default known to the Trustee has occurred and is continuing: (a) the duties and obligations of the Trustee shall be determined solely by the express provisions of this Agreement…") and ("No provision of this Agreement shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act or its own willful misconduct."); id at § 8.02 ("Except as otherwise provided in Section 8.01"); Kane Ex. 362.*

**12. Defendant's Reply:  [RESERVED]**

---

[4]     **Defendant's Note:** Some GAs define different types of "events" (*e.g.*, "Master Servicer Event of Default" and "Servicer Event of Default") that have different consequences.  As used herein, "EOD" only refers to those events defined under each GA that, as discussed in the "Memorandum of Law in Support of Defendants' Motion for Summary Judgment," Dkt. #162, at 8, can trigger Defendant's "prudent person" duty.

13. Defendant only has limited administrative and ministerial duties under the GAs, which may include:  (i) maintaining a certificate registrar; (ii) maintaining specified trust accounts; (iii) distributing funds collected from servicers to certificate holders; and (iv) distributing information to certificate holders based on servicer data.  Reyes Decl. ¶ 6.

13. *Plaintiff's Response*:  Disputed.  This paragraph states a legal conclusion which is impermissible for a Rule 56.1 statement and no response is required.  ███████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████ *Handlin Ex. 393 (Vaughan) at 34:3-8 (*████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████*).*

**13. Defendant's Reply:   Plaintiff's response does not specifically controvert ¶ 13, and so this material fact should be deemed admitted.   *See* Local Rule 56.1(c).**

**Defendant does not dispute that the GAs provide in substance that if an EOD is continuing and Defendant has the contractually specified knowledge thereof (e.g., "actual knowledge" or "written notice"), Defendant "shall exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in their exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs."   *See* ¶ 29, *infra*.   Plaintiff's response does not controvert that the duties of Defendant specifically set forth in the GAs are administrative and ministerial.**

████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████



14. Defendant refers the Court to Biron CB-Ex. 36 (Chart:  No GA Provides That Defendant Has a Duty to Investigate Any Facts or Matters Absent Direction and Indemnity from a Contractually Specified Percentage of Investors).

*14. Plaintiff's Response:  Plaintiff refers the Court to Kane Ex. 363 ("Notice Duties" chart including 46 Trusts that require DB to provide notice upon discovery); Kane Ex. 364 ("Negligence" chart providing PSA language requiring DB to perform its duties without negligence).  Plaintiff further refers the Court to, e.g., Handlin Ex. 109 (MSAC 2006-HE5 PSA) § 7.01(b) (using the term "actual knowledge"), § 8.01 ("No provision of this Agreement shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act or its own willful misconduct.").*

**14. Defendant's Reply:  Defendant refers the Court to "Discover" & "Knowledge," Merriam-Webster.com (accessed February 28, 2019, https://www.merriam-webster.com/dictionary/discover, https://www.merriam-**

webster.com/dictionary/knowledge) ("knowledge" means "the fact or condition of being aware of something," and "discover" means "to obtain sight or knowledge for the first time").

15. Defendant refers the Court to Biron CB-Ex. 37 (Chart:  Defendant May Rely On Any Statement, Opinion or Document It Believes to Be Genuine); Biron CB-Ex. 38 (Chart: Defendant Is Not Responsible for the Accuracy or Content of Any Certificate, Statement, or Other Instrument Furnished to It).

*15. Plaintiff's Response:  Plaintiff refers the Court to, e.g., Handlin Ex. 109 (MSAC 2006-HE5 PSA) §8.01(a) ("Unless an Event of Default known to the Trustee has occurred and is continuing . . . the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon any certificates or opinions furnished to the Trustee and conforming on their face to the requirements of this Agreement which it believed in good faith to be genuine . . . ."); § 8.01 ("No provision of this Agreement shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act or its own willful misconduct . . . .").*

**15. Defendant's Reply:  Defendant refers the Court to Handlin Ex. 109 (MSAC 2006-HE5 PSA) § 8.02(a) ("Except as otherwise provided in Section 8.01: (a) the Trustee and the Custodians may request and rely upon and shall be protected in acting or refraining from acting upon any resolution, Officer's Certificate, certificate of auditors *or any other certificate, statement, instrument, opinion, report, notice, request, consent, order, appraisal, bond or other paper or document believed by it to be genuine* and to have been signed or presented by the proper party or parties and neither the**

**Trustee nor the Custodians shall have responsibility to ascertain or confirm the genuineness of any signature of any such party or parties.") (emphasis added).**

15.1.   Defendant refers the Court to, *e.g.*, Biron CB-Ex. 2 § 8.02(a) (HASC 2006-HE1 PSA).

    *15.1.   Plaintiff's Response:  [RESERVED]*

    **15.1.   Defendant's Reply:  [RESERVED]**

16. [SEE SUBPARAGRAPHS BELOW]

16.1.   Defendant refers the Court to Biron CB-Ex. 39 (Chart:  Defendant Is Not Liable for Following Direction from Specified Percentage of Holders in Good Faith).

    *16.1.   Plaintiff's Response:  Plaintiff refers the Court to, e.g., Kane Ex. 364 ("Negligence" chart providing PSA language requiring DB to perform its duties without negligence); Handlin Ex. 109 (MSAC 2006-HE5 PSA) §8.01(b) ("shall not be liable for an error of judgment made in good faith . . . unless it is finally proven that the Trustee was negligent in ascertaining the pertinent facts..."); § 8.01, ("No provision of this Agreement shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act or its own willful misconduct . . . .").*

    **16.1.   Defendant's Reply:  Defendant refers the Court to Handlin Ex. 109 (MSAC 2006-HE5 PSA) § 8.01(c) ("Unless an Event of Default known to the Trustee has occurred and is continuing: . . . The Trustee shall not be liable with respect to any action taken, suffered, or omitted to be taken by it in good faith in accordance with the direction of the Holders of Certificates evidencing not less**

**than 25% of the Voting Rights of Certificates relating to the time, method, and place of conducting any proceeding for any remedy available to the Trustee, or exercising any trust or power conferred upon the Trustee under this Agreement.”); Lucht Ex. 93 (J**████████████**) (**███████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

████████████████ **(ellipses in original)).**

16.1.1. Defendant refers the Court to, *e.g.*, Biron CB-Ex. 2 § 8.01(c) (HASC 2006-HE1 PSA).

      *16.1.1.  Plaintiff's Response:  [RESERVED]*

      **16.1.1.  Defendant's Reply:  [RESERVED]**

16.2.   Defendant refers the Court to Biron CB-Ex. 40 (Chart:  Defendant Is Not Liable for Any Action or Omission It Takes in Good Faith).

*16.2.  Plaintiff's Response:  Plaintiff refers the Court to, e.g., Kane Ex. 364 ("Negligence" chart providing PSA language requiring DB to perform its duties without negligence); Handlin Ex. 109 (MSAC 2006-HE5 PSA) § 8.01(b) ("shall not be liable for an error of judgment made in good faith by . . . the Trustee, unless it is finally proven that the Trustee was negligent in ascertaining the pertinent facts…"); § 8.01 ("No provision of this Agreement shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act or its own willful misconduct . . . .").*

13

**16.2.**   **Defendant's Reply:**  **Defendant refers the Court to Handlin Ex. 109 (MSAC 2006-HE5 PSA) § 8.02(c) ("Except as otherwise provided in Section 8.01: . . . [N]either the Trustee nor the Custodians shall be liable for any action taken, suffered or omitted by it in good faith and believed by it to be authorized or within the discretion or rights or powers conferred upon it by this Agreement.").**

16.2.1. Defendant refers the Court to, *e.g.*, Biron CB-Ex. 2 § 8.02(c) (HASC 2006-HE1 PSA).

**16.2.1.**   *Plaintiff's Response:*  *Plaintiff refers the Court to Handlin Ex. 14 (HASC 2006-HE1 PSA) §§ 8.01, 8.01(b), 8.02(c).*

**16.2.1.**   **Defendant's Reply:**  **[RESERVED]**

**ii.**   ***Defendant Had Limited Duties Relating to Mortgage Custody Files***

17. Defendant refers the Court to Biron CB-Ex. 41 (Chart:  The Depositor, Sponsor, or Seller Was Obligated to Deliver Mortgage Custody files at Closing).

17. *Plaintiff's Response:*  *Plaintiff refers the Court to, e.g., Handlin Ex. 106 (IXIS 2006-HE3 PSA) § 2.02 ("The Custodian…declares that it holds and will hold such documents and the other documents delivered to it pursuant to Section 2.01, and that it holds or will hold such other assets as are included in the Trust Fund, on behalf of the Trustee…"); Handlin Ex. 105 (IXIS 2005-HE3 PSA) §2.02; Handlin Ex. 35 (NHEL 2006-5 PSA) § 2.02; Handlin Ex. 116 (NHEL 2007-2 PSA) § 2.02.*

**17. Defendant's Reply:  Defendant refers the Court to, *e.g.*, Handlin Ex. 14 (HASC 2006-HE1 PSA) §§ 2.02, 9.01(a), 11.03(a).**

14

17.1.    Defendant refers the Court to, *e.g.*, Biron CB-Ex. 3, § 2.01(b) (Excerpts of FFML 2006-FF11 PSA).

*17.1.    Plaintiff's Response:  [RESERVED]*

**17.1.    Defendant's Reply:  [RESERVED]**

18. Defendant refers the Court to Biron CB-Ex. 42 (Chart:  Within a Specified Time-Period, Defendant or a Custodian Was Required to Issue a Final Certification).

*18. Plaintiff's Response:  [RESERVED]*

**18. Defendant's Reply:  [RESERVED]**

      ***iii.    Defendant Does Not Make, and Is Not Responsible For, R&Ws Concerning the Nature and Quality of Loans in the Trusts***

19. RMBS sponsors and/or loan originators (in such capacity, "Warrantors") made certain R&Ws concerning the characteristics of the loans to be conveyed to the Trusts.  *See, e.g.*, Biron CB-Ex. 1 at S-62 – S-66 (Excerpts of HASC 2006-HE1 Prospectus Supplement).

*19. Plaintiff's Response:  Undisputed.*

**19. Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 19, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

19.1.    Defendant did not make any R&Ws concerning the loans in the Trusts.  *See, e.g.*, *id.*

*19.1.    Plaintiff's Response:  Undisputed.*

**19.1.    Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 19.1, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

20. Defendant refers the Court to Biron CB-Ex. 37 (Chart:  Defendant May Rely On Any Statement, Opinion or Document It Believes to Be Genuine); Biron CB-Ex. 36 (Chart:  No GA Provides That Defendant Has a Duty to Investigate Any Facts or Matters Absent Direction and Indemnity from a Contractually Specified Percentage of Investors); Biron CB-Ex. 35 (Chart: Defendant Has Only the Duties Expressly Set Forth in the GAs); Biron CB-Ex. 38 (Chart: Defendant Is Not Responsible for the Accuracy or Content of Any Certificate, Statement, or Other Instrument Furnished to It).

20. *Plaintiff's Response:  Plaintiff refers the Court to, e.g., Kane Ex. 363 ("Notice Duties" chart including 46 Trusts that require DB to provide notice upon discovery); Kane Ex. 364 ("Negligence" chart providing PSA language requiring DB to perform its duties without negligence); Handlin Ex. 114 (MSHEL 2007-2 PSA) §§ 2.02 ("the Trustee shall, for the benefit of the Holders of the Certificates, ascertain that all documents identified in the Document Certification and Exception Report, . . . to the effect that, as to each applicable Mortgage Loan listed in the Mortgage Loan Schedule…(i) all documents identified in the Document Certification and Exception Report and required to be reviewed by it are in its possession; (ii) such documents have been reviewed by it and appear regular on their face and relate to such Mortgage Loan…"), 2.03(h) ("In the event any Mortgage Loan does not conform to the requirements as determined in the Trustee's review of the related Custodial File, the Trustee shall notify the applicable Originator, the applicable Servicer and the Depositor by delivery of the certification of the Trustee required by Section 2.02 to such parties, which shall be a request that such Originator correct or cure such defect as required . . ."); Kane Ex. 365 ("Examination of Mortgage Files" chart).  Plaintiff further refers the*

16

*Court to, e.g., Handlin Ex. 109 (MSAC 2006-HE5 PSA) § 7.01(b) (using the term "actual knowledge").*

**20. <u>Defendant's Reply</u>:  Defendant refers the Court to "Discover" & "Knowledge," Merriam-Webster.com (accessed February 28, 2019, https://www.merriam-webster.com/dictionary/discover, https://www.merriam-webster.com/dictionary/knowledge) ("knowledge" means "the fact or condition of being aware of something," and "discover" means "to obtain sight or knowledge for the first time"); Dkt. #89, ¶ 35 ("Commerzbank's claims do not include claims against Deutsche Bank for breaching its document delivery-related duties."); Handlin Ex. 114 (MSHEL 2007-2 PSA) § 2.02 ("The Trustee shall not be responsible to verify the validity, sufficiency or genuineness of any document in any Custodial File.").  Defendant further refers the Court to, *e.g.*, Kane Ex. 363 at row 4; Handlin Ex. 8 (FFML 2006-FF11 PSA) § 2.03(d) ("In the event that the Trustee <u>receives notice of a breach</u> by the Mortgage loan Seller of any of the representations and warranties described in the immediately preceding sentence, the Trustee shall give notice of such breach to the Mortgage Loan Seller and request the Mortgage Loan Seller to substitute such Mortgage loan or to repurchase such Mortgage Loan at the Repurchase Price within sixty (60) days of the receipt of such notice.") (emphasis added).**

> ### iv.   *Defendant Has No Duty to Monitor or Supervise Servicers*

21. The servicers' duties include collecting payments on the loans, and, upon borrower default, enforcing the terms of the loan, which may include foreclosing on the real property securing the loan.  Reyes Decl. ¶ 13; Ex. 43 (Chart:  Servicer Duties).

*21.     Plaintiff's Response:  Undisputed that this paragraph states some, but not all of, the duties of the servicer under the Governing Agreements.*

**21. Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 21, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

22. Defendant refers the Court to Biron CB-Ex. 44 (Chart:  Under the GAs for 21 Trusts, a Master Servicer Monitors the Servicers).[5]

*22.     Plaintiff's Response:  [RESERVED]*

**22. Defendant's Reply:  [RESERVED]**

23. Defendant refers the Court to Biron CB-Ex. 35 (Chart:  Defendant Has Only the Duties Expressly Set Forth in the GAs); Biron CB-Ex. 2 (HASC 2006-HE1 PSA).

*23. Plaintiff's Response:  Plaintiff refers the Court to, e.g., Handlin Ex. 109 (MSAC 2006-HE5 PSA) § 8.01 ("shall exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in their exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs"). Plaintiff further refers the Court to Kane Ex. 366 ("1122(d)(1)(i) Chart").*

**23. Defendant's Reply:  Defendant refers the Court to ¶ 29, *infra*; 17 C.F.R. § 229.1122(d)(1)(i) (Reg AB requires a statement of compliance only as to policies and procedures "instituted to *monitor performance*, or other triggers and events of default *in accordance with the transaction agreements*." ) (emphasis added).**

---

[5]     **Defendant's Note:** Except as expressly stated herein, the term "servicers" includes both servicers and master servicers.

24. Defendant did not have the expertise to monitor or supervise servicers.  Reyes Decl. ¶ 12.

 *24. Plaintiff's Response:*  Disputed.  ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████  *See, e.g.,* Handlin Ex. 568.

Furthermore, DB held itself out as a good and capable Trustee.  For example, DB

represented in the Prospectus Supplement for MSAC 2006-HE6 that it "has previously been

appointed to the role of trustee for numerous mortgage-backed transactions in which

residential mortgages comprised the asset pool and has significant experience in this area."

Lucht Ex. 185 (MSAC 2006-HE6 Prospectus Supplement) at S-57-S-58.  The Prospectus

Supplement for MSAC 2006-HE6 also provides that DB "may, and at the direction of the

majority of voting rights in the certificates, is required to, remove a servicer upon the

occurrence and continuation beyond the applicable cure period of an event described in

clauses (a), (b), (c), (d), (e), (f) and (g) below."  *Id.* at S-90.  Because DB was experienced in

RMBS transactions, and had the ability to remove a servicer "upon the occurrence and

continuation" of an event of default, DB had the ability to monitor the servicers.

**24. Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 24**

**because it is unsupported by the cited evidence, and so this material fact should be**

**deemed admitted.**  *See* **Local Rule 56.1(c).**

**First, Handlin Ex. 568** ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

19



**Handlin Ex. 568.**

*See id.*

**Second, the statements Plaintiff cites from the prospectus supplement state that Defendant has "significant experience" as a trustee for RMBS transactions. They do not show Defendant had the expertise to monitor or supervise servicers.**

25. In cases where Defendant received the requisite direction from investors to investigate servicing practices, a consultant with servicing expertise was retained to conduct the investigation. Reyes Decl. ¶ 15.

25. *Plaintiff's Response:  Disputed.*

*Lucht Ex. 93 at DBNTC PHOENIX LIGHT 00001833182; Lucht Ex. 94 at DBNTC PHOENIX LIGHT 00002709972.  This paragraph is further disputed to the extent it suggests that the Governing Agreements require a direction before the Trustee was obligated to investigate servicer practices.  All of the PSAs state that the Trustee is obligated to exercise rights and remedies after an Event of Default without regard for whether or not a direction was issued.  Handlin Ex. 390.*

**25. Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 25, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

**The documents Plaintiff cites do not support its contention that Defendant "was directed to perform an investigation on multiple occasions and failed to do so."  Lucht Ex. 93 is**



(*see* **Lucht Ex. 93 at DBNTC PHOENIX LIGHT 00001833184),**

*See ¶¶ 56.19.2-56.19.4, infra.*

**Lucht Ex. 94**

**Moreover, Lucht Ex. 94**

████████████████████████████████████████████████████████

█████████████████████████

**Finally, Plaintiff does not cite any evidence to support its "further" dispute of Defendant's ¶ 25 "to the extent it suggests that the Governing Agreements require a direction before the Trustee was obligated to investigate servicer practices."  Defendant does not dispute that the GAs provide in substance that if an EOD is continuing and Defendant has the contractually specified knowledge thereof (e.g., "actual knowledge" or "written notice"), Defendant "shall exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in their exercise as a prudent person would exercise or use *under the circumstances* in the conduct of such person's own affairs."  *See* ¶ 29, *infra*.  Plaintiff cites no evidence that Defendant's post-EOD prudent person duty, to the extent it had one, obligated Defendant to investigate servicer practices.  And Plaintiff cites nothing at all concerning Defendant's duties pre-EOD.**

26. Defendant did not have the servicing expertise necessary to determine which documents in a mortgage custody file were necessary to properly service the loans and, thus, whether any missing or nonconforming documents were material.  Reyes Decl. ¶ 14.

> *26. Plaintiff's Response:  Disputed.  The documents in the mortgage file are necessary to prove title and* ████████████████████████. *Handlin Ex. 384 (Co) at 19:25-220:17*
> *(*██████████████████████████████
> ████████████████████████████████
> ████████████████████████████████
> ████████████████████████████████



*); id. at*

*72:10-73:6 (*

*). If the*

*Trustee did not know that, that in of itself constitutes negligence. Further disputed that the*

*PSAs require an assessment of materiality. 27 PSAs provide that the seller is required to*

*repurchase any loan if there is a "missing or defective document" without any reference to*

*materiality. Kane Ex. 368. 10 PSAs provide that the seller is required to repurchase a loan*

*with a "missing or materially defective document," which limits any materiality inquiry to*

*the defective documents. Id. To the extent any PSAs require an assessment of whether a*

*missing or materially defective document has a material and adverse effect on the interests of*

*certificateholders or the value of the loan, this standard is met when a conforming document*

*required to be delivered under Section 2.01 of the GAs is not delivered because those*

23

*documents are necessary to prove ownership of the mortgage loans and protect title.  Beckles Decl. ¶ 12.*

**26. <u>Defendant's Reply</u>:  Plaintiff's response does not specifically controvert ¶ 26, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c); Local Rule 56.1(d).**

**The testimony of Mr. Co that Plaintiff cites supports Defendant's statement in this paragraph.  Plaintiff's quote reflects that Mr. Co testified** ██████████████████

████████████████████████████████████████████████

█████████████████████ ***See* Handlin Ex. 384 at 19:25 – 20:17 (D. Co Dep. (Jan. 25, 2018)).[6]**

**Plaintiff's statement, "[t]he documents in the mortgage file are necessary to prove title," mistakes the concept of "title to the property," which is generally a question of public record, and the requirements to foreclose, which vary by state.**



**Goff Ex. 1 (Bryar Report) at MB0138, ¶ 44.** ████████████████████████████ ████████████████████████████████████████ ***Id.* at MB0176, ¶ 131 (**███████████████████████████ ████████████████████████████████████████

---

[6]      **Defendant's Note:**  Plaintiff cited Mr. Co's testimony as extending through page 220.  In fact, the cited excerpt ends on page 20.



); *id.* at MB0180, ¶ 136 (

).

*Id.* at MB0178 – 79, ¶ 133 ("

); *id.* at MB0179, ¶ 134 (

); *id.* at MB0179 – 180, ¶ 135 (

); **Goff Ex. 3 (Schwarcz Report) at SS0159 – 60, ¶ 5.16**

(

);

**Goff Ex. 33 at 221:6 – 222:3 (I. Beckles Dep. (Jul. 26, 2018)) (testifying that**

); **Goff Ex. 46 at 186:15 – 187:11 (J. Campbell Dep. (June 8, 2017), RP/DB) (noting that**

).

To the extent Plaintiff claims that it is negligent for an RMBS trustee to not know which mortgage documents, if any, are required to foreclose in a particular state, Plaintiff has not introduced any evidence of the standard of care, and Plaintiff's own purported servicing expert, Ingrid Beckles, ███████████████████████████ ████████████  *See* **Lucht Ex. 251 at 175:20–176:19 (I. Beckles Dep. (Jul. 26, 2018));** *see also id.* **at 149:6–11.**

Plaintiff's contention that certain PSAs do not "require an assessment of materiality," is irrelevant to ¶ 26.  It is also incorrect and unsupported by the GAs.

Citing Kane Ex. 368, Plaintiff argues that "27 PSAs provide that the seller is required to repurchase any loan if there is a 'missing or defective document' without any reference to materiality" and "10 PSAs provide that the seller is required to repurchase a loan with a 'missing or materially defective document,' which limits any materiality inquiry to the defective documents."  Plaintiff's contention is irrelevant to this action generally because Plaintiff has abandoned, and therefore is not entitled to pursue, any claims based upon incomplete or nonconforming mortgage files.  Dkt. #89, ¶ 35 ("Commerzbank's claims do not include claims against Deutsche Bank for breaching its document delivery-related duties.").

Moreover, no GAs require a seller to "repurchase any loan if there is a 'missing or defective document.'"  Rather, the GAs set out a protocol where, under many circumstances, a seller, originator, sponsor, or other responsible party may cure defects or substitute loans, rather than being required to repurchase loans.  For example, section 2.03(d) of the FFML 2006-FF11 PSA provides:

> Within 30 days of the earlier of either discovery by or notice to the
> Mortgage Loan Seller that any Mortgage Loan does not conform

> to the requirements as determined in the Custodian's review of the related Custodial File or within 60 days of the earlier of either discovery by or notice to the Mortgage Loan Seller of any breach of a representation or warranty referred to in Section 2.03(b) that materially and adversely affects the value of any Mortgage Loan or the interest of the Trustee or the Certificateholders therein, *the Mortgage Loan Seller shall use its best efforts to cause to be remedied a material defect in a document constituting part of a Mortgage File or promptly to cure such breach in all material respects and, if such defect or breach cannot be remedied, the Mortgage Loan Seller shall, at the Depositor's option* as specified in writing and provided to the Mortgage Loan Seller and the Trustee, (i) if such 30- or 60-day period, as applicable, expires prior to the second anniversary of the Closing Date, *remove such Mortgage Loan (a "Deleted Mortgage Loan") from the Trust Fund and substitute in its place a Substitute Mortgage Loan*, in the manner and subject to the conditions set forth in this Section 2.03; or (ii) *repurchase such Mortgage Loan* at the Repurchase Price … .

Handlin Ex. 8 (FFML 2006-FF11 PSA) § 2.03(d) (emphasis added); *see also* Kane Ex. 368, Line 5, FFML 2006-FF11 (same).

The aspects of Plaintiff's statements concerning "materiality" are also contradicted by the terms of the GAs.

For example, Plaintiff argues that FFML 2006-FF11 is a Trust for which "the seller is required to repurchase any loan if there is a 'missing or defective document' without any reference to materiality." Yet as demonstrated in the language quoted above, the PSA only requires the Mortgage Loan Seller to "use its best efforts to cause to be remedied a *material defect* in a document … and, if *such defect* cannot be remedied," either substitute or repurchase the mortgage loan. Handlin Ex. 8 (FFML 2006-FF11 PSA) § 2.03(d) (emphasis added); Kane Ex. 368, Line 5, FFML 2006-FF11 (same).

As another example, Plaintiff argues that FFML 2006-FF8 is a Trust for which "the seller is required to repurchase a loan with a 'missing or materially defective

27

document,' which limits any materiality inquiry to the defective documents."  Yet

section 2.03(a) of the FFML 2006-FF8 PSA provides:

> Upon discovery or receipt of written notice of any *materially defective document in, or that a document is missing from, a Mortgage File* or of the breach by the Seller of any representation, warranty or covenant under the Mortgage Loan Purchase Agreement, as applicable, *in respect of any Mortgage Loan which materially adversely affects the value of such Mortgage Loan* or the interest therein of the Certificateholders, the Trustee (or the Custodian on its behalf) shall promptly notify the NIMS Insurer and the Servicer of such defect, missing document or breach and the Servicer shall request that the Seller deliver such missing document or that the Seller cure such defect or breach within 90 days from the date the Seller was notified of such missing document, defect or breach, and *if the Seller does not deliver such missing document or cure such defect or breach in all material respects* during such period, the Servicer shall use commercially reasonable efforts to attempt to enforce the Seller's obligation under the Mortgage Loan Purchase Agreement and notify the Seller of its obligation to repurchase such Mortgage Loan from the Trust Fund at the Purchase Price on or prior to the Determination Date following the expiration of such 90 day period (subject to Section 2.03(e)) … .

Handlin Ex. 80 (FFML 2006-FF8 PSA) § 2.03(a) (emphasis added); see also Kane Ex.

368 Line 3 (same).  In the clause relating to notice, the phrase "which materially

adversely affects the value of such Mortgage Loan" modifies the phrase "materially

defective document in, or that a document is missing from, a Mortgage File."  Likewise,

in the clause relating to repurchase, the phrase "in all material respects" modifies the

phrase "deliver such missing documents or cure such defect or breach."  Thus, any

repurchase obligation includes a materiality element as to missing documents, defective

documents, and R&W breaches.

Next, Plaintiff's argument – "To the extent any PSAs require an assessment of

whether a missing or materially defective document has a material and adverse effect

on the interests of certificateholders or the value of the loan, this standard is met when

**a conforming document required to be delivered under Section 2.01 of the GAs is not delivered because those documents are necessary to prove ownership of the mortgage loans and protect title" – is irrelevant, improper legal argument, and unsupported by the cited evidence.  The only evidence Plaintiff cites in support of this contention is a paragraph in the declaration of Ingrid Beckles, which explains that** ███████

███████████████████████████████████████████████

███████████████ **Beckles Decl. ¶ 12 does not purport to state any information relevant to Defendant's statement.**

**Moreover, for the reasons described in the evidentiary objections, filed herewith, Beckles Decl. ¶ 12 is an untimely expert report and Table 1, to which Beckles Decl. ¶ 12 refers, lacks foundation with respect to her** ███████████████████

███████████████ **Accordingly, Plaintiff's citation to the Beckles Declaration should be struck.**

**Plaintiff's remaining statements in this response are legal argument to which no response is required, unsupported by evidence which would be admissible.**

27. Defendant refers the Court to Biron CB-Ex. 37 (Chart:  Defendant May Rely On Any Statement, Opinion or Document It Believes to Be Genuine); Biron CB-Ex. 36 (Chart:  No GA Provides That Defendant Has a Duty to Investigate Any Facts or Matters Absent Direction and Indemnity from a Contractually Specified Percentage of Investors); Biron CB-Ex. 35 (Chart:  Defendant Has Only the Duties Expressly Set Forth in the GAs); Biron CB-Ex. 38 (Chart:  Defendant Is Not Responsible for the Accuracy or Content of Any Certificate, Statement, or Other Instrument Furnished to It).

27. _Plaintiff's Response_:  Plaintiff refers the Court to, e.g., Kane Ex. 367 ("Examine Documents" chart); Handlin Ex. 109 (MSAC 2006-HE5 PSA) § 8.01(a) ("Unless an Event of Default known to the Trustee has occurred and is continuing. . . . the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon any certificates or opinions furnished to the Trustee and conforming on their face to the requirements of this Agreement which it believed in good faith to be genuine and to have been duly executed by the proper authorities respecting any matters arising hereunder.") and ("No provision of this Agreement shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act or its own willful misconduct."), 8.02 ("Except as otherwise provided in Section 8.01"); Kane Ex. 362.

27. **Defendant's Reply:  Defendant refers the Court to Handlin Ex. 109 (MSAC 2006-HE5 PSA) § 8.02 ("Except as otherwise provided in Section 8.01: (a) the Trustee and the Custodians may request and rely upon and shall be protected in acting or refraining from acting upon any resolution, Officer's Certificate, certificate of auditors _or any other certificate, statement, instrument, opinion, report, notice, request, consent, order, appraisal, bond or other paper or document believed by it to be genuine_ and to have been signed or presented by the proper party or parties and neither the Trustee nor the Custodians shall have responsibility to ascertain or confirm the genuineness of any signature of any such party or parties … .") (emphasis added).**

### v.    _Defendant's Post-EOD Duties_

28. Defendant refers the Court to Biron CB-Ex. 45 (Chart:  If an EOD is Continuing and Defendant has the Contractually Specified Knowledge Thereof, Defendant Has a Duty to Act as a Prudent Person Under the Circumstances).

*28. Plaintiff's Response:  Plaintiff refers the Court to, e.g., Handlin Ex. 109 (MSAC*

*2006-HE5 PSA) § 8.01 ("In case an Event of Default has occurred and remains uncured, the*

*Trustee shall exercise such of the rights and powers vested in it by this Agreement, and use*

*the same degree of care and skill in their exercise as a prudent person would exercise or use*

*under the circumstances in the conduct of such person's own affairs."); Handlin Ex. 390*

*("Prudent Person Duties Tracking Chart").*

**28. Defendant's Reply:  [RESERVED]**

28.1.    Defendant refers the Court to, *e.g.*, Biron CB-Ex. 3 §§ 9.06 ("Master Servicer

Event of Default"), 7.01 ("Event of Default") (Excerpts of FFML 2006-FF11 PSA).

*28.1.   Plaintiff's Response:  [RESERVED]*

**28.1.   Defendant's Reply:  [RESERVED]**

28.2.    Defendant refers the Court to Biron CB-Ex. 45 (Chart:  If an EOD is

Continuing and Defendant has the Contractually Specified Knowledge Thereof,

Defendant Has a Duty to Act as a Prudent Person Under the Circumstances).[7]

*28.2.   Plaintiff's Response:  Plaintiff refers the Court to, e.g., Handlin Ex. 111*

*(MSAC 2006-HE8 PSA) § 8.01 ("The Trustee, before the occurrence of a Master*

*Servicer Event of Default and after the curing of all Master Servicer Events of*

*Default that may have occurred, shall undertake to perform such duties and only such*

*duties as are specifically set forth in this Agreement.  In case a Master Servicer Event*

*of Default has occurred and remains uncured, the Trustee shall exercise such of the*

---

[7]      **Defendant's Note:** As used herein, "EOD" only refers to those events defined under each

GA that can trigger Defendant's "prudent person" duty.

*rights and powers vested in it by this Agreement, and use the same degree of care and skill in their exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs.").*

**28.2.   Defendant's Reply:  [RESERVED]**

29. Defendant refers the Court to Biron CB-Ex. 45 (Chart:  If an EOD is Continuing and Defendant has the Contractually Specified Knowledge Thereof, Defendant Has a Duty to Act as a Prudent Person Under the Circumstances).

*29. Plaintiff's Response:  Plaintiff refers the Court to Handlin Ex. 390 ("Prudent Person Duties Tracking Chart").*

**29. Defendant's Response:  [RESERVED]**

30. [SEE SUBPARAGRAPHS BELOW]

30.1.    Defendant refers the Court to, *e.g.*, Biron CB-Ex. 4 § 7.01(b) (Excerpts of MSAC 2006-HE6 PSA); Biron CB-Ex. 46 (Chart:  EODs Triggered By Servicer Breach).

*30.1.   Plaintiff's Response:  Plaintiff refers the Court to Handlin Ex. 770. Plaintiff further refers the Court to, e.g., Handlin Ex. 109 (MSAC 2006-HE5 PSA) § 7.01(b).*

**30.1.   Defendant's Reply:  [RESERVED]**

30.2.    Defendant refers the Court to, *e.g.*, Biron CB-Ex. 4 § 7.01(g) (Excerpts of MSAC 2006-HE6 PSA).

*30.2.   Plaintiff's Response:  [RESERVED]*

**30.2.   Defendant's Reply:  [RESERVED]**

30.3.    Defendant refers the Court to, *e.g.*, Biron CB-Ex. 4 § 7.01(c)-(e) (Excerpts of MSAC 2006-HE6 PSA).

30.3.   *Plaintiff's Response:  [RESERVED]*

**30.3.   Defendant's Reply:  [RESERVED]**

30.4.    Defendant refers the Court to, *e.g.*, Biron CB-Ex. 5 § 7.01(a)(v) – (vii) (Excerpts of NHEL 2006-5 PSA).

30.4. *Plaintiff's Response:  [RESERVED]*

**30.4.   Defendant's Reply:  [RESERVED]**

31. Defendant refers the Court to Biron CB-Ex. 67 at Appendix A, Definition of "Event of Default" (Excerpts of IMM 2007-A Indenture); Biron CB-Ex. 47 (Chart:  EODs Triggered By Issuer Breach).

*31. Plaintiff's Response:  Plaintiff refers the Court to, e.g., Handlin Ex. 102 (IMM 2007-A Indenture) §§ 3.06(a)(iii) (the Issuer covenants to "cause the Issuer Entity or Master Servicer to enforce any of the rights to the Mortgage Loans"), 3.09(iv) (the Issuer covenants not to "waive or impair, or fail to assert the rights under, the Mortgage Loans, or impair or cause to be impaired the Issuer's interest in the Mortgage Loans, the Mortgage Loan Purchase Agreement or in any Basic Document, if such action would materially and adversely affect the interests of the Bondholders or the Bond Insurer").*

**31. Defendant's Reply:  [RESERVED]**

**B.   Investor's Rights Under the Governing Agreements**

32. Defendant refers the Court to Biron CB-Ex. 48 (Chart:  Investors May Notify Parties of Breaches and Demand Cure).

*32. Plaintiff's Response:  Plaintiff refers the Court to, e.g., Handlin Ex. 109 (MSAC 2006-HE5 PSA) § 7.01(b); Handlin Ex. 770.*

**32. Defendant's Reply:  [RESERVED]**

33. Defendant refers the Court to Biron CB-Ex. 49 (Chart:  Investors May Terminate Servicers).

*33. Plaintiff's Response:  Plaintiff refers the Court to, e.g., Handlin Ex. 109 (MSAC 2006-HE5 PSA) § 7.01 ("If an Event of Default described in clauses (a) through (g) of this Section 7.01 shall occur…so long as such Event of Default shall not have been remedied…at the direction of a majority of the Voting Rights, the Trustee shall, by notice in writing to the applicable Servicer…terminate all of the rights and obligations of such Servicer under this Agreement…").*

**33. Defendant's Reply:  Defendant refers the Court to, *e.g.*, Handlin Ex. 103 (IMSA 2006-3 PSA) § 7.01 ("If an Event of Default described in clauses (i) - (v) of this Section shall occur, then, and in each and every such case, so long as such Event of Default shall not have been remedied, the Trustee, the Certificate Insurer (unless an Insurer Default has occurred and is continuing) or *the Holders of Certificates entitled to at least 51% of the Voting Rights*, by notice in writing to the Master Servicer and the Swap Provider (and to the Trustee if given by such Holders of Certificates), with a copy to the Rating Agencies, *may terminate all of the rights and obligations (but not the liabilities) of the Master Servicer under this Agreement* and in and to the Trust Fund, other than its rights as a Certificateholder hereunder … .") (emphasis added); Biron CB-Ex. 49-C.**

34. Defendant refers the Court to Biron CB-Ex. 50 (Chart:  Investors May Direct Appointment of New Servicers).

*34. Plaintiff's Response*:  Plaintiff refers the Court, e.g., to Handlin Ex. 109 (MSAC

*2006-HE5 PSA) § 7.02 ("Notwithstanding the foregoing, if the Trustee has become the*

*successor to such Servicer in accordance with Section 7.01, (a) the Trustee shall have a*

*period not to exceed 90 days to complete the transfer of servicing and all data and to correct*

*or manipulate such servicing data as may be required by the Trustee to correct any errors or*

*insufficiencies in the servicing data or otherwise enable the Trustee or other successor*

*Servicer to service the Mortgage Loans in accordance with Accepted Servicing Practices and*

*(b) the Trustee may, if it shall be unwilling to so act, or shall, if it is prohibited by applicable*

*law from making P&I Advances and Servicing Advances pursuant to Section 4.01, if it is*

*otherwise unable to so act or at the written request of Certificateholders entitled to at least a*

*majority of the Voting Rights, appoint, or petition a court of competent jurisdiction to*

*appoint, any established mortgage loan servicing institution the appointment of which does*

*not adversely affect the then current rating of the Certificates by each Rating Agency, as the*

*successor to such servicer hereunder in the assumption of all or any part of the*

*responsibilities, duties or liabilities of such servicer hereunder. . . .").*

**34. Defendant's Reply:  [RESERVED]**

35. Defendant refers the Court to Biron CB-Ex. 51 (Chart:  Investors May Direct Defendant

to Conduct an Investigation).

*35. Plaintiff's Response*:  Plaintiff refers the Court to, e.g., Handlin Ex. 109 (MSAC

*2006-HE5 PSA) § 8.02(d).*

**35. Defendant's Reply:  [RESERVED]**

36. Defendant refers the Court to Biron CB-Ex. 52 (Chart:  Investors May Initiate Legal

Action If Defendant Fails to Do So).

*36.  Plaintiff refers the Court to, e.g., Handlin Ex. 109 (MSAC 2006-HE5 PSA) § 10.08 (requiring Certificateholders evidencing a requisite percentage of the "Voting Rights" to "have given to the Trustee a written notice of an Event of Default and of the continuance thereof" and to "have made written request to the Trustee to institute such action, suit or proceeding in its own name as Trustee hereunder and shall have offered to the Trustee such reasonable indemnity as it may require against the costs, expenses, and liabilities to be incurred therein or thereby,. . . .").*

**36. <u>Defendant's Reply</u>:  Defendant refers the Court to Handlin Ex. 109 (MSAC 2006-HE5 PSA) § 10.08 ("No Certificateholder shall have any right by virtue or by availing itself of any provisions of this Agreement to institute any suit, action or proceeding in equity or at law upon or under or with respect to this Agreement, unless <u>*such Holder*</u> previously shall have given to the Trustee a written notice of an Event of Default and of the continuance thereof, as herein provided, and unless the Holders of Certificates evidencing not less than 25% of the Voting Rights evidenced by the Certificates shall also have made written request to the Trustee to institute such action, suit or proceeding in its own name as Trustee hereunder and shall have offered to the Trustee such reasonable indemnity as it may require against the costs, expenses, and liabilities to be incurred therein or thereby, and the Trustee, for 60 days after its receipt of such notice, request and offer of indemnity shall have neglected or refused to institute any such action, suit or proceeding … .") (emphasis added).**

37. Defendant refers the Court to Biron CB-Ex. 53 (Chart:  Investors May Remove Defendant).

*37. Plaintiff's Response: Plaintiff refers the Court to, e.g., Handlin Ex. 109 (MSAC 2006-HE5 PSA) § 8.07 ("The Holders of Certificates entitled to at least a majority of the Voting Rights may at any time remove the Trustee and appoint a successor trustee by written instrument or instruments, in triplicate, signed by such Holders or their attorneys-in-fact duly authorized, one complete set of which shall be delivered by the successor Trustee to each Servicer, one complete set to the Trustee so removed and one complete set to the successor so appointed. The successor trustee shall notify each Rating Agency of any removal of the Trustee.").*

**37. <u>Defendant's Reply</u>:  [RESERVED]**

38. [RESERVED]

## II.   **COMMERZBANK AND THE CERTIFICATES**

39. Commerzbank is a banking entity organized under the laws of Germany.  Second Amended Complaint ("SAC") ¶ 16.

*39. <u>Plaintiff's Response</u>:  Undisputed.*

**39. <u>Defendant's Reply</u>:  Plaintiff's response does not specifically controvert ¶ 39, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

40. Commerzbank claims it acquired 72 of the Certificates.  Biron CB-Ex. 22 at 5-7 and Exhibit A thereto (Pltf's Supp. 1st Interr. R&O).

*40. <u>Plaintiff's Response</u>:  Disputed to the extent this paragraph suggests Commerzbank does not claim it acquired either the certificates or legal claims in connection with all 74 Certificates.  See <u>Commerzbank AG v. Deutsche Bank Nat'l Trust Co.</u>, Case No. 15-cv-10031 (S.D.N.Y. Dec. 1, 2017), ECF 89 at Ex. B ¶ 3 (Second Amended Complaint).*

37

**40. Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 40, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c). Defendant restates ¶ 45 and its reply thereto and incorporates them by reference.**

40.1.   Barrington 2 Certificates:  Commerzbank acquired 20 Certificates (the "Barrington 2 Certificates") from the Barrington II CDO Ltd. ("Barrington 2") asset portfolio.  Biron CB-Ex. 69 (Chart:  Assignors of Certificates to Commerzbank); Biron CB-Ex. 22 at 5-7 and Exhibit A thereto (Pltf's Supp. 1st Interr. R&O).

*40.1.   Plaintiff's Response:  Undisputed.*

**40.1.   Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 40.1, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

40.1.1. Commerzbank acquired 10 of the Barrington 2 Certificates between May and August 2012.  *Id.*

*40.1.1.   Plaintiff's Response:  Undisputed.*

**40.1.1   Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 40.1.1, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

40.1.2. Commerzbank acquired the remaining 10 Barrington 2 Certificates in 2015.  Biron CB-Ex. 70 at CB_DB01821304-11; Biron CB-Ex. 22 at 5-7 and Exhibit A thereto (Pltf's Supp. 1st Interr. R&O).

40.1.2.   *Plaintiff's Response*:  *Undisputed, except to clarify that*

*Commerzbank acquired legal claims concerning the 10 Barrington 2*

*Certificates before 2015.  See Handlin Ex. 673, Exhibit A.*

**40.1.2.   Defendant's Reply:  Plaintiff's response does not**

**specifically controvert ¶ 40.1.2, and so this material fact should be**

**deemed admitted.  *See* Local Rule 56.1(c).**

**To the extent Plaintiff's response purports to state a legal**

**conclusion regarding the effect of the exhibit cited by Plaintiff, no**

**reply is required.**

40.2.   Palmer 3 Certificates:  In August 2008, Commerzbank acquired 20

Certificates (the "Palmer 3 Certificates") from the Palmer Square 3 Limited ("Palmer 3")

asset portfolio.  Biron CB-Ex. 69 (Chart:  Assignors of Certificates to Commerzbank);

Biron CB-Ex. 22 at 5-7 and Exhibit A thereto (Pltf's Supp. 1st Interr. R&O).

40.2.   *Plaintiff's Response*:  *Undisputed, except to clarify that Dresdner*

*acquired 20 Certificates from Palmer 3, which were subsequently held by*

*Commerzbank after its 2009 merger with Dresdner Bank AG.*

**40.2.   Defendant's Reply:  Plaintiff's response does not specifically**

**controvert ¶ 40.2, is unsupported by any evidence, and is contradicted by**

**Plaintiff's interrogatory responses.  *See* Biron CB-Ex. 22.  This material fact**

**should therefore be deemed admitted.  *See* Local Rule 56.1(c).  In any event,**

**both Dresdner and Commerzbank are German banks.  ¶ 39, *supra*; ¶ 40.3.1,**

***infra*.**

40.3.    Commerzbank Certificates:  Commerzbank acquired 10 Certificates (the "Commerzbank Certificates") through its 2009 merger with Dresdner Bank AG ("Dresdner").  Biron CB-Ex. 69 (Chart:  Assignors of Certificates to Commerzbank); SAC ¶ 16; Biron CB-Ex. 22 at 5-7 and Exhibit A thereto (Pltf's Supp. 1st Interr. R&O); Biron CB-Ex. 75 at p. 5 (Excerpts from 2008 Commerzbank Annual Report).

*40.3.    Plaintiff's Response:  Disputed.  Commerzbank acquired 30 Certificates through its 2009 merger with Dresdner as the 20 certificates referenced in Paragraph 40.2 were held by Dresdner at the time of the merger.*

**40.3.    Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 40.3, is unsupported by any evidence, and is contradicted by Plaintiff's interrogatory responses.  *See* Biron CB-Ex. 22.  This material fact should therefore be deemed admitted.  *See* Local Rule 56.1(c).  In any event, both Dresdner and Commerzbank are German banks.  ¶ 39, *supra*; ¶ 40.3.1, *infra*.**

40.3.1. Dresdner was a German public limited company organized under the laws of Germany.  Biron CB-Ex. 76 at 8 (Excerpts from 2008 Dresdner Annual Report).

*40.3.1.  Plaintiff's Response:  Undisputed.*

**40.3.1    Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 40.3.1, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

40.3.2. Dresdner had acquired the Commerzbank Certificates between 2005 – 2008.  Biron CB-Ex. 22 at 5-10 and Exhibit A thereto (Pltf's Supp. 1st Interr. R&O).

> *40.3.2.   Plaintiff's Response:  Undisputed.*

> **40.3.2   Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 40.3.2, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

40.4.   Eurohypo Certificates:  In May 2009, Commerzbank acquired 22 Certificates (the "Eurohypo Certificates") from initial investor Eurohypo AG (now known as Hypothekenbank Frankfurt AG) ("Eurohypo").  Biron CB-Ex. 69 (Chart:  Assignors of Certificates to Commerzbank); Biron CB-Ex. 22 at 5-10 and Exhibit A thereto (Pltf's Supp. 1st Interr. R&O).

> *40.4.   Plaintiff's Response:  Disputed.  Commerzbank acquired 22 Certificates from Eurohypo AG in November, 2009.  See Biron Ex. 22; Handlin Exs. 123, 125, 129, 131, 153, 155, 187, 189, 191, 193, 195, 197, 199, 266, 278, 314, 342, 344, 346, 348, 350, 352 (November, 2009 trade tickets).*

> **40.4.   Defendant's Reply:  Defendant agrees that the evidence in the record (including the material cited by Defendant in this paragraph) reflects Commerzbank acquired 22 Certificates from Eurohypo AG in November 2009 (not May 2009), and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

40.4.1. Eurohypo is a wholly owned subsidiary of Commerzbank and is a corporate entity organized under the laws of Germany.  SAC ¶ 17; Biron CB-Ex. 71 at 11 – 12 (2001 Eurohypo Annual Report).

*40.4.1.  Plaintiff's Response:  Undisputed.*

**40.4.1.  Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 40.4.1, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

40.4.2. [RESERVED]

40.4.3. Eurohypo acquired the Eurohypo Certificates from 2005 – 2006. Biron CB-Ex. 22 at 5-10 and Exhibit A thereto (Pltf's Supp. 1st Interr. R&O).

*40.4.3.  Plaintiff's Response:  Undisputed.*

**40.4.3.  Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 40.4.3, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

41. The aggregate original par amount of the 74 Certificates at issue is approximately $590 million.  Biron CB-Ex. 22 at 5-7 and Exhibit A thereto (Pltf's Supp. 1st Interr. R&O).

*41. Plaintiff's Response:  Undisputed.*

**41. Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 41, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

42. Before Commerzbank commenced this lawsuit, it sold 27 Certificates (the "Sold Certificates") with an original par value of over $250 million.  Biron CB-Ex. 22 at 7-8 and Exhibit A thereto (Pltf's Supp. 1st Interr. R&O); Biron CB-Ex. 27 (Chart:  Sold Certificates).

*42. Plaintiff's Response:  Undisputed.*

**42. Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 42, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

42.1.    Commerzbank sold 17 of the Sold Certificates with an original par value of over $151 million in November 2011.  Biron CB-Ex. 27 (Chart:  Sold Certificates); *see* Biron CB-Ex. 22 at 7-8 and Exhibit A thereto (Pltf's Supp. 1st Interr. R&O).

*42.1.   Plaintiff's Response:  Undisputed.*

**42.1.   Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 42.1, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

43. Commerzbank has no evidence that any buyer agreed that Commerzbank would retain litigation claims that may have arisen before the sale.

*43. Plaintiff's Response:  Disputed.  The sale tickets do not state the buyers would receive legal claims which demonstrates the transactions did not also include the transfer of legal claims, and therefore Commerzbank would retain all legal claims.  Handlin Exs. 122, 124, 128, 130, 134, 142, 152, 154, 158, 186, 188, 192, 201, 207, 214, 243, 259, 268, 271, 277, 281, 316, 333, 341, 343, 354, 357 (CB trade tickets).*

**43. Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 43, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

**To the extent this paragraph purports to state a legal conclusion regarding the legal effect of the cited trade tickets, no reply is required.**

44. With respect to each sale of a Sold Certificates—other than evidence of its own domicile—Commerzbank has no evidence concerning (i) the place of sale; (ii) the place of negotiation; (iii) the place of performance; (iv) the location of the subject matter; and (v) the domicile or place of business of the contracting parties.  Biron CB-Ex. 22 at 7-8 and Exhibit A thereto (Pltf's Supp. 1st Interr. R&O).

*44. Plaintiff's Response:  Disputed.* 

*Handlin Exs. 122, 124, 128, 130, 134, 142, 152, 154, 158, 186, 188, 192, 201, 207, 214, 243, 259, 268, 271, 277, 281, 316, 333, 341, 343, 354, 357*

*Handlin Ex. 668 (CB 30(b)(6)) 141:13-141:22.*

*Id.* at 147:22-148:5.

████████████████████████████████

*Id.* at 210:23-211:2.

**44. <u>Defendant's Reply</u>:  Plaintiff's response does not specifically controvert ¶ 44 because it is unsupported by the cited evidence, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c); Local Rule 56.1(d).**

**First,** ██████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ██████████████████████████████████ ██████████████████████████████ ████████████████████████ ████████████████████████████ ██████████████████████████████████ ██████████████████████  ████████████████████████ ██████████████████████████████ ██████████████████████████████ ████████████████████████████ **Biron CB-Ex. 22 at 7.** ████████████████████████████████ ██████████████████████████

████████████████ **Biron CB-Ex. 22, Ex. A thereto at 14.**

**Third,** ██████████████████████████████ ████████████████████████████████████ ██████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████

**Biron CB-Ex. 22, Ex. A thereto at 14.**  ██████████████████████████

███████████████████████████████████████

██████████████████████████  *Id.*  **Thus, Commerzbank failed to establish who bought the Sold Certificates.  As Commerzbank itself argues, "because RMBS certificates trade on the open market by financial intermediaries, broker involvement should not determine the sales' locations."  Opp. at 5;** *see* **CB-PSUF-Reply ¶ 1305.**

███████████████████████████████████████████

████████████████████████

44.1.    Commerzbank identified the broker-dealer that it claims purchased each Certificate, but "lacks any information regarding whether the banks purchased the certifications *[sic]* for their own account or ultimately for a client."  *Id.* at 13.

44.1.    *Plaintiff's Response:  Disputed.  Commerzbank identified the counterparty for each sold Certificate.  Morever, it is irrelevant if the purchaser entered a subsequent sale transaction.  Handlin Exs. 122, 124, 128, 130, 134, 142, 152, 154, 158, 186, 188, 192, 201, 207, 214, 243, 259, 268, 271, 277, 281, 316, 333, 341, 343, 354, 357 (CB trade tickets).*

**44.1.    Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 44.1, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

**Plaintiff's contention regarding the relevance of the identity of the purchaser (as opposed to the broker with whom Plaintiff dealt) is incorrect because that fact is necessary to the analysis of what law controls the sale.  *See* ¶ 44 above.**

45. In addition to Commerzbank's claims relating to the 72 Certificates that it allegedly held at some point, Commerzbank also asserts claims relating to the 2 Certificates listed on Ex. 28, which Commerzbank never held.  Biron CB-Ex. 28 (Chart:  Certificates Commerzbank Never Held); Biron CB-Ex. 22 at 5-7 and Exhibit A thereto (Pltf's Supp. 1st Interr. R&O).

*45. Plaintiff's Response:  Disputed.  Dresdner, which merged with Commerzbank, was the initial purchaser of and held the FFML 2005-FF2 M2 and GSAMP 2005-HE4 M2 Certificates.  Additionally, Commerzbank was assigned all legal claims in connection with the FFML 2005-FF2 M2 and GSAMP 2005-HE4 M2 Certificates.  Handlin Ex. 673 at CB_DB02745516; Handlin Exs. 126-27; 184- 85 (purchase and transfer Certificates for FFML 2005-FF2 M2 and GSAMP 2005-HE4 M2).  Undisputed to the extent that Commerzbank asserts claims to all 74 Certificates.*

**45. <u>Defendant's Reply</u>:  Plaintiff's response does not specifically controvert ¶ 45, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).  That Dresdner allegedly held these two Certificates prior to merging with Commerzbank is irrelevant because the evidence reflects Dresdner sold those Certificates before that merger.  *See* Biron CB-Ex. 22 at 5- 7 and Exhibit A thereto (Pltf's Supp. 1st Interr. R&O); Handlin Exs. 126-27; 184- 85.  Thus, Handlin Exs. 126, 127, 184 and 185 are irrelevant to ¶ 45.**

**Handlin Ex. 673 also does not controvert ¶ 45.  Handlin Ex. 673 is █████████**
███████████████████████████

██████████████████████████████████████████████████

████████████████████████████   **The Certificates listed on Biron CB-Ex. 28 were sold out of the Barrington II CDO securitization in 2012, and Commerzbank neither knows to whom they were sold or has any other information regarding those sales.  Biron CB-Ex. 22 at 5 – 7 and Exhibit A thereto.  With respect to those sales from the Barrington II CDO securitization, Commerzbank has no evidence concerning (i) the place of sale; (ii) the place of negotiation; (iii) the place of performance; (iv) the location of the subject matter; and (v) the domicile or place of business of the contracting parties.  *See* Biron CB-Ex. 22 at 7-8 and Exhibit A thereto (Pltf's Supp. 1st Interr. R&O).  Commerzbank has identified no evidence establishing** ███████████████

█████████████████████████████████████████████████

████████████████████████████   *See* **Handlin Ex. 673.**

46. In December 2013, Commerzbank commenced a lawsuit against the depositors, sponsors, and underwriters for 51 of the 74 Certificates at issue, based on, *inter alia*, allegations that the sponsors/originators had made false R&Ws.  Ex. 78 at ¶ 9 and Exhibit 1 thereto (Complaint, *Commerzbank AG London Branch v. UBS AG*, No. 654464/2013, Dkt.#28 (N.Y. Sup. Ct. May 20, 2014)).

46. *Plaintiff's Response*:  Disputed.  The lawsuit involved claims concerning fraudulent statements by the sellers of the Certificates in connection with the sales of the Certificates, and Commerzbank refers to the Complaint for its entire contents.

**46. Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 46, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).  Further, Plaintiff mischaracterizes its own complaint.  For example, the action named multiple**

48

**defendants, including certain depositors, sponsors, and underwriters.  Biron Ex. 78 ¶¶**

**14 – 16.**

47. On June 17, 2015, the court dismissed those claims as untimely.  Ex. 79 at *1-3

(*Commerzbank AG London Branch v. UBS AG*, No. 654464/2013, 2015 WL 3857321 (N.Y. Sup.

Ct. June 17, 2015)).

*47. Plaintiff's Response:  Undisputed.*

**47. Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 47,**

**and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

48. In December 2015 Commerzbank sued Defendant in this action, and other RMBS

trustees.  Compl. (ECF No. 1); Compl., *Commerzbank AG v. HSBC Bank USA, Nat'l Ass'n*, 15-

cv-10032-LGS-SN ("CZB/HSBC"), Dkt.# 7 (S.D.N.Y. Dec. 28, 2015); Compl., *Commerzbank*

*AG v. Wells Fargo Bank*, N.A., 15-cv-10033-KPF-SN ("CZB/WF"), Dkt.#1 (S.D.N.Y. Dec. 24,

2015); Compl., *Commerzbank AG v. U.S. Bank Nat'l Ass'n, et al.*, 16-cv-04569-WHP

("CZB/USB"), Dkt.#1 (S.D.N.Y. Dec. 28, 2015); Compl., *Commerzbank AG v. The Bank of New*

*York Mellon, et al.*, 15-cv-10029-GBD ("CZB/BNYM"), Dkt.# 1 (S.D.N.Y. Dec. 23, 2015).

*48. Plaintiff's Response:  Undisputed.*

**48. Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 48,**

**and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

## III.    THE EVIDENCE ESTABLISHES THAT MOST OF COMMERZBANK'S CLAIMS ARE UNTIMELY UNDER GERMAN LAW

### A.  Commerzbank knew of the alleged losses on the Certificates well before January 1, 2012, the German statute of limitations cut-off

49. According to Commerzbank, the losses supposedly caused by Defendant's alleged breaches include the decline in market value of the Certificates, and all realized, and projected future, losses of principal and interest on the Certificates.  Biron CB-Ex. 23 (Pltf's 2d Supp. Interrog. Resp. No. 20).

*49.      Plaintiff's Response:  Disputed to the extent that this paragraph suggests that Commerzbank losses as stated in Plaintiff's Interrogatory Responses solely consists of the decline in market value of the Certificates, and all realized, and projected future, losses of principal and interest on the Certificates.  Commerzbank further refers to its complete Interrogatory Response concerning its theories of damages.  See Biron CB-Ex. 23 (Pltf's 2d Supp. Interrog. Resp. No. 20).*

**49. <u>Defendant's Reply</u>:  Plaintiff's response does not specifically controvert ¶ 49, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

50. Commerzbank knew of these losses before January 1, 2012.

*50. <u>Plaintiff's Response</u>:  Disputed.  Commerzbank did not know that Defendant breached any duties before January 1, 2012, or that it had been damaged by DB in any of the ways set forth in Interrogatory Response No. 20.*

**50. <u>Defendant's Reply</u>:  Plaintiff's response does not specifically controvert ¶ 50, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

**Plaintiff's response that this material fact is "[d]isputed" is general and unsupported by a citation to any evidence.  This paragraph is supported and continued in subparagraphs 50.1 – 50.4.5 below and the record evidence cited therein, which follow this numbered paragraph in accordance with Local Rule 56.1(d).**

50.1.   Before January 1, 2012, Commerzbank knew that the market value of all the Certificates had declined significantly, in many cases to $0.

*50.1.*   *Plaintiff's Response:  Disputed.  Commerzbank marked each Certificate on a daily basis while it held the Certificate and was aware of its marks, and disputes DB's characterization which employs vague and ambiguous terms.*

**50.1.   Defendant's Response:  Plaintiff's response does not specifically controvert ¶ 50.1, and so material fact should be deemed admitted.  *See* Local Rule 56.1(c).  Plaintiff's response that this material fact is "[d]isputed" is general and unsupported by any evidence.**

50.1.1. Commerzbank's Portfolio Restructuring Unit prepared valuations of RMBS to mark Commerzbank's books and satisfy regulatory requirements. Biron CB-Ex. 120 at 20:2 – 23:11, 31:13 – 33:4 (CZB 30(b)(6) Dep. (Mar. 9, 2018)); Biron CB-Ex. 142 at 25:8 – 19, 41:4 – 46:4 (P. Taylor Dep. (Dec. 14, 2017)); Biron CB-Ex. 81 at CB_DB03086758 – 70 (Jan. 23, 2008 Dresdner Memorandum); Biron CB-Ex. 80 at CB_DB02679603 – CB_DB02679616 (Apr. 28, 2008 Dresdner Memorandum).

*50.1.1.*   *Plaintiff's Response:  Disputed to the extent that this paragraph suggests the cited testimony of Peter Taylor reflects Commerzbank's marking of its US RMBS portfolio.  See Biron Ex. 142 at 25:8 – 14 (P. Taylor Dep. (Dec. 14, 2017) (stating that he "did not do valuations" for the PRU).  Undisputed that Commerzbank marked US RMBS certificates in compliance with applicable requirements.*

**50.1.1.  Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 50.1.1, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

50.1.2. In addition to RMBS valuations prepared by the Portfolio Restructuring Unit, Commerzbank's Independent Price Verification group separately valued the same assets and reconciled them with the valuations determined by the Portfolio Restructuring Unit.  Biron CB-Ex. 142 at 25:8 – 19, 41:4 – 46:4 (P. Taylor Dep. (Dec. 14, 2017)).

> *50.1.2.  Plaintiff's Response:  Disputed to the extent this paragraph suggests that Independent Price Verification ("IPV") "reconciled" its valuation with the Front Office's marks.  IPV had the final say as to its valuations.  See Biron Ex. 142 at 41:4 – 46:4 (P. Taylor Dep. (Dec. 14, 2017)) (differentiating between the IPV valuation process and the front office process and clarifying a lack of reconciliation).*

**50.1.2.  Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 50.1.2, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

50.1.3. Commerzbank also obtained valuations from third parties.  Biron CB-Ex. 120 at 20:2 – 23:11, 31:13 – 33:4 (CZB 30(b)(6) Dep. (Mar. 9, 2018)); Biron CB-Ex. 81 at CB_DB03086758 – 70 (Jan. 23, 2008 Dresdner Memorandum); Biron CB-Ex. 19 at PIMCO-DB00000522 – 887 (October 2008 PIMCO Report); Ex 83 at CB_DB02938573 – 9175 (Dec. 2008 PIMCO Report).

50.1.3.   *Plaintiff's Response*:  *Undisputed that at certain times, Commerzbank obtained valuations of certain Certificates from third parties.*

**50.1.3.   Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 50.1.3, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

50.1.4. Commerzbank marked the value of 36 of the Certificates as "fully written off," or $0, before January 1, 2012.  Biron CB-Ex. 84 (Commerzbank Valuations Chart Supplementation to Rule 30(b)(6) Testimony); *see also* Biron CB-Ex. 73 at p. 127 – 128 (2007 Commerzbank Annual Report).

50.1.4.   *Plaintiff's Response*:  *Disputed.  The cited evidence shows that Commerzbank marked the value of only 34 of the Certificates as "fully written off," or $0, before January 1, 2012.  Biron Ex. 84 (Commerzbank Valuations Chart Supplementation to Rule 30(b)(6) Testimony).*

**50.1.4.   Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 50.1.4 because it is unsupported by the cited evidence, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).  Biron CB-Ex. 84 (Commerzbank Valuations Chart Supplementation to Rule 30(b)(6) Testimony), which is a chart Plaintiff prepared to supplement its Rule 30(b)(6) testimony states that 34 Certificates were "Fully Written Off" before January 1, 2012. This chart also shows that, as of June 2011 and October 2011,**

**Commerzbank marked the value of the two additional Certificates identified by ISINs US80556AAJ60 and US32028PAH82 at $0.**

50.1.5. Commerzbank marked the value of the remaining Certificates at significant discounts to par before January 1, 2012.  Biron CB-Ex. 84 (Commerzbank Valuations Chart Supplementation to Rule 30(b)(6) Testimony); *see also* Biron CB-Ex. 73 at p. 127 – 128 (2007 Commerzbank Annual Report).

*50.1.5.  <u>Plaintiff's Response</u>:  Disputed.  The phrase "significant discounts to par" is vague and ambiguous.  Commerzbank marked the value of the remaining Certificates before January 1, 2012 in the amounts noted in the cited evidence.  Biron Ex. 84 (Commerzbank Valuations Chart Supplementation to Rule 30(b)(6) Testimony); <u>see also</u> Biron Ex. 73 at p. 127 – 128 (2007 Commerzbank Annual Report).*

**50.1.5.  <u>Defendant's Reply</u>:  Plaintiff's response does not specifically controvert ¶ 50.1.5, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

50.2.    Before January 1, 2012, Commerzbank knew there were a significant amount of delinquent and defaulted mortgage loans in every Trust and most of the Certificates had suffered realized losses.

*50.2. <u>Plaintiff's Response</u>:  Disputed to the extent that this paragraph suggests that before January 1, 2012, Commerzbank knew there were a "significant amount of delinquent and defaulted mortgage loans in every Trust and most of the Certificates had suffered realized losses."  Undisputed that Commerzbank had knowledge of information reported in monthly remittance reports for the Trusts.*

54

**50.2.   Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 50.2, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).  This paragraph is supported and continued in subparagraphs 50.2.1 – 50.2.9 below and the record evidence cited therein, which follows this numbered paragraph in accordance with Local Rule 56.1(d).  Plaintiff's purported "dispute" is general and unsupported by any evidence.**

50.2.1. Every month remittance reports for each Trust were posted on an investor reporting website.  Biron CB-Ex. 58 (Chart:  Defaults Reported in Remittance Reports as of December 2010 and December 2011); Biron CB-Ex. 59 (Chart:  Realized Losses Reported in Remittance Reports as of December 2010 and December 2011); Biron CB-Ex. 60 (Chart:  Repurchases Reported in Remittance Reports as of December 2010 and December 2011); *see, e.g.*, Biron CB-Ex. 8 (MSAC 2006-HE6 Remittance Report, Dec. 27, 2010).

> *50.2.1.   Plaintiff's Response:  Disputed to the extent this paragraph suggests that Commerzbank has knowledge that every month remittance reports for each Trust were posted on investor reporting websites.  Undisputed that Commerzbank generally had access to monthly remittance reports for the Trusts.*

**50.2.1.   Defendant's Reply:  Plaintiff's response does not specifically contradict ¶ 50.2.1, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

**Plaintiff's purported "dispute" regarding Commerzbank's knowledge is irrelevant and unsupported by any evidence.  Moreover,**

it is contradicted by Commerzbank's Rule 30(b)(6) testimony and testimony from Sharon Bryant, an RMBS specialist formerly employed by Commerzbank.  Biron CB-Ex. 120 at 52:23 – 53:10 (CZB 30(b)(6) Dep. (Mar. 9, 2018)) (█████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████████

██████); Kane Ex. 459 at 180:3 – 25 (S. Bryant Dep. (June 15, 2018)) (████████████████████████████████████████ ███████████████████████████████████ ██████████████████████████████████████ ████████████████████████████████████████ █████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████ █████████████████████████████████████████ █████████████████████████████████████████ ████████████████████████████████████████████ █████████████████████████████████████ ████████████████████████████████████).

50.2.1.1.   For the Trusts in which Defendant was the party responsible for making the monthly remittance reports available to investors under the relevant GAs, Defendant distributed remittance reports to investors each month by posting a copy of each remittance report to the Defendant-maintained website where investors may access statements relating to the Trusts.  Reyes Decl. ¶ 7.  Since they were posted, those documents have been (and continue to be) available on the Defendant-maintained website for investors to review.  *See id*; Deutsche Bank Investor Reporting Website, https://tss.sfs.db.com/investpublic/ (last visited December 6, 2018).

> 50.2.1.1.   *Plaintiff's Response*:  *Disputed to the extent this paragraph suggests that Commerzbank has knowledge regarding Defendants' practice for posting monthly remittance reports on its website and who may access that website.  Undisputed that Commerzbank generally had access to monthly remittance reports for the Trusts.*

50.2.1.1.   **Defendant's Reply:  Plaintiff's response does not specifically contradict ¶ 50.2.1.1, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).  Plaintiff's purported "dispute" regarding Commerzbank's knowledge is irrelevant to this paragraph and unsupported by any evidence.**

50.2.1.2.   For the Trusts in which other parties were responsible for making the monthly remittance reports available to investors under the

relevant GAs, those parties did so using a similar procedure, including

posting the reports on a website accessible to investors.  *See* Wells Fargo's

CTSLink, https://www.ctslink.com/ (last visited December 6, 2018); BNY

Mellon Corporate Trust Investor Reporting,

https://gctinvestorreporting.bnymellon.com/ (last visited December 6,

2018); Citi Investor Reporting for Structured Finance,

https://sf.citidirect.com/ (last visited December 6, 2018).  Since their

posting, those reports have been (and continue to be) available for investor

review on those websites.  *See id.*

> 50.2.1.2.   *Plaintiff's Response:  Disputed to the extent this*
> *paragraph suggests that Commerzbank has knowledge of other*
> *parties' practices for posting monthly remittance reports on their*
> *websites and who may access those websites.  Undisputed that*
> *Commerzbank generally had access to monthly remittance reports*
> *for the Trusts.*

> **50.2.1.2.   Defendant's Reply:  Plaintiff's response does not**
> **specifically contradict ¶ 50.2.1.2, and so this material fact**
> **should be deemed admitted.  *See* Local Rule 56.1(c).  Plaintiff's**
> **purported "dispute" regarding Commerzbank's knowledge is**
> **irrelevant to this paragraph and unsupported by any evidence.**

50.2.2. Commerzbank regularly reviewed the information in remittance

reports for RMBS in its portfolio.  Biron CB-Ex. 136 at 40:25 – 43:8, 54:9 – 55:5

(B. Jetter Dep. (Jan. 23, 2018)); Biron CB-Ex. 125 at 238:17 - 239:25 (V. Radhakishun Dep. (Sep. 28, 2018), CZB/BNYM).

*50.2.2.  Plaintiff's Response:  Undisputed.*

**50.2.2.  Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 50.2.2, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

50.2.3. Each remittance report catalogs the percentage of loans in the relevant Trust that are delinquent or in default.  *E.g.*, Biron CB-Ex. 8 at 12 (MSAC 2006-HE6 Remittance Report, Dec. 27, 2010); *see also* Biron CB-Ex. 134 at 61:5 – 15 (R. Boelstler Dep. (June 12, 2017), CZB/HSBC).

*50.2.3.  Plaintiff's Response:  Undisputed.*

**50.2.3.  Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 50.2.3, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

50.2.4. The number of delinquent and defaulted loans set forth in the December 2010 and the December 2011 remittance reports for each Trust is set forth on Ex. 58 (Chart:  Defaults Reported in Remittance Reports as of December 2010 and December 2011).

*50.2.4.  Plaintiff's Response:  Undisputed.*

**50.2.4.  Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 50.2.4, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

50.2.5. Each remittance report discloses the realized loss in principal of each tranche of certificates issued by the relevant Trust.  *E.g.*, Biron CB-Ex. 8 at 4 (MSAC 2006-HE6 Remittance Report, Dec. 27, 2010).

> 50.2.5.  *Plaintiff's Response:  Undisputed.*

> **50.2.5.  <u>Defendant's Reply</u>:  Plaintiff's response does not specifically controvert ¶ 50.2.5, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

50.2.6. The December 2010 and the December 2011 remittance reports for the Trusts showed that most of the Certificates had suffered realized losses, with some of their principal balances having been written down to zero.  Biron CB-Ex. 59 (Chart:  Realized Losses Reported in Remittance Reports as of December 2010 and December 2011).

> 50.2.6.  *Plaintiff's Response:  Undisputed that (i) the December 2010 monthly remittance reports indicated that 38 Certificates experienced realized losses; (ii) the December 2011 monthly remittance reports indicated that 40 Certificates experienced realized losses; and (iii) certain Certificates were written down to zero in either December 2010 or December 2011.*

> **50.2.6.  <u>Defendant's Reply</u>:  Plaintiff's response does not specifically controvert ¶ 50.2.6, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

50.2.7. In April 2008, a Commerzbank RMBS specialist estimated that one in three loans to which Eurohypo had exposure would default.  Biron CB-Ex. 131 at 311:8 – 25 (S. Bryant Dep. (Feb. 15, 2017), CZB/WF).

    *50.2.7.  Plaintiff's Response:  Disputed.  The cited email discusses data on 16 bonds, only four of which are certificates in this action. Further,* ███████████████████████████████

███████████████████████████████████

████████████████████ *Biron Ex. 131 at 312:8 – 25 (S. Bryant Dep. (Feb. 15, 2017), CZB/WF).*

    **50.2.7.  Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 50.2.7, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

50.2.8. By 2011, Commerzbank RMBS specialists understood that there was a ████████████████████████████ in Commerzbank's RMBS exposure. Biron CB-Ex. 134 at 107:24 – 108:17 (R. Boelstler Dep. (June 12, 2017), CZB/HSBC); Biron CB-Ex. 85 at CB_HSBC001056324 (May 5, 2011 email).

    *50.2.8.  Plaintiff's Response:  Disputed to the extent this paragraph suggests that, by 2011, Commerzbank RMBS specialists understood that there was a* ████████████████████████ *in Commerzbank's RMBS exposure.  Biron Ex. 134 at 107:24 – 108:12-17 (R. Boelstler Dep. (June 12, 2017), CZB/HSBC).  Undisputed* ████████

██████████████████████████████████████

██████████████████████████████████████



*Id.*

**50.2.8.  Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 50.2.8, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c); Local Rule 56.1(d).**

**Plaintiff's purported "dispute" is not supported by the material Plaintiff cited.  Robert Boelstler testified,** **Biron CB-Ex. 134 at 108:14 – 17 (R. Boelstler Dep. (June. 12, 2017), CZB/HSBC).  And Plaintiff concedes Mr. Rosenkranz, another Commerzbank employee,** **Biron CB-Ex. 85 at CB_HSBC001056324 (May 5, 2011 email).**

50.2.9. Commerzbank previously alleged in a lawsuit against different deal parties regarding 51 of the Certificates that Commerzbank's "catastrophic" losses due to "defective mortgages, . . . bad [R&Ws] and phony 'investment grade' support" began in 2008, and rose through January 2010.  Biron CB-Ex. 78 at ¶¶ 54 – 55, 179 – 182 and Exhibit 4 thereto (Compl., *Commerzbank AG London Branch v. UBS AG*, No. 654464/2013, Dkt.#28 (N.Y. Sup. Ct. May 20, 2014)).

50.2.9. _Plaintiff's Response_:  Disputed to the extent this paragraph suggests that Commerzbank knew the causes of the losses noted in their complaint against UBS AG prior to January 1, 2012.  The complaint against UBS states:  "It was not until 2012, however, that Plaintiff discovered some reasonable means of determining whether evidence of this "waiver" scheme had anything to do with the losses at issue in this case."  Biron Ex. 78 at ¶ 5 (Compl., _Commerzbank AG London Branch v. UBS AG_, No. 654464/2013, Dkt.#28 (N.Y. Sup. Ct. May 20, 2014)); _see also id._ at ¶ 8 ("In retrospect, it is now (as of May 20, 2014) clear that when the Investors' mortgage bonds started to incur losses in 2008, those losses were not the result of some mysterious market forces."); ¶ 172 ("No amount of due diligence or reasonable investigation could have uncovered the LIBOR or waiver schemes at issue in this case, and the Investors were more than reasonable in this regard.").  Undisputed that Commerzbank's May 20, 2014 complaint alleges "catastrophic results" due to "defective mortgages, masked by bad data, bad [R&Ws] and phony 'investment grade' support." _Id._ at ¶¶ 54 – 55, 179 – 182.

**50.2.9.  Defendant's Reply:  Plaintiff's response does not specifically controvert the fact that Commerzbank previously alleged in a lawsuit against different deal parties regarding 51 of the Certificates that Commerzbank's "catastrophic" losses due to "defective mortgages, . . . bad [R&Ws] and phony 'investment grade'**

support" began in 2008, and rose through January 2010, and so this

material fact should be deemed admitted.  *See* Local Rule 56.1(c).

Plaintiff's purported "dispute" regarding when Commerzbank

knew the cause of losses is irrelevant to this paragraph.  And

Commerzbank alleged in Biron CB Ex. 78 that:

> Clayton [Holdings LLC] provided reports
> summarizing defective mortgage to its clients 'at
> the end of each day,' [and] it also summarized
> those daily reports in a confidential document
> that the government released *in October 2010*.
> That document shows that only 54% of the
> nearly one million mortgages that it sampled
> satisfied originators' underwriting guidelines.

Biron CB-Ex. 78 ¶ 117 (emphasis added).

In any event, the court in Plaintiff's prior action rejected its

assertion that "it was unable to discover fraud with respect to the

particular certificates at issue until it performed its own forensic loan

level analysis in 2012" because "[a]s plaintiff acknowledges, however

… forensic loan level analysis was available in 2010 and 2011."  *See*

*Commerzbank AG London Branch v. UBS AG*, No. 654464/2013, 2015

WL 3857321, at *3 (Sup. Ct. N.Y. Cty. June 17, 2015).

50.3.   Before January 1, 2012, Commerzbank knew that the ratings agencies – Fitch,

Moody's, and S&P – had downgraded the ratings of all the Certificates.

*50.3.   Plaintiff's Response:  Undisputed to the extent that Commerzbank*

*generally was aware of any rating downgrades on the Certificates.*

**50.3.   Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 50.3. this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

50.3.1. Before January 1, 2012, the rating agencies had downgraded the ratings of all the Certificates, many to junk status.  Biron CB-Ex. 61 (Chart: Rating Agency Downgrades on the Certificates).

> *50.3.1.  Plaintiff's Response:  Disputed.  The term "junk status" is vague and ambiguous.  Undisputed that Commerzbank generally was aware of any rating downgrades on the Certificates.*

> **50.3.1.   Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 50.3.1, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).  Further, the term "junk status" is not vague or ambiguous.  *See* SAC ¶ 89 ("Now, many [Certificates] are 'junk' bonds that do not qualify for any investment grade rating.").**

50.3.2. Commerzbank had access to the ratings on their RMBS holdings through Bloomberg.  Biron CB-Ex. 136 at 55:6 – 17 (B. Jetter Dep. (Jan. 23, 2018)).

> *50.3.2.  Plaintiff's Response:  Undisputed.*

> **50.3.2.   Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 50.3.2., and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

50.3.3. 

*50.3.3.* *Plaintiff's Response:* *Undisputed.*

**50.3.3.** **Defendant's Reply:** **Plaintiff' response does not specifically controvert ¶ 50.3.3, and so this material fact should be deemed admitted.** ***See*** **Local Rule 56.1(c).**

50.4.   By 2007, Commerzbank began to take measures to analyze its RMBS exposure and to attempt to limit its risk:

*50.4.* *Plaintiff's Response:* *This paragraph cites no record evidence and, thus, no response is required.  To the extent a response is required, disputed.*

**50.4.** **Defendant's Reply:** **Plaintiff's response does not specifically controvert ¶ 50.4, and so this material fact should be deemed admitted.** ***See*** **Local Rule 56.1(c).  This paragraph is supported and continued in subparagraphs 50.4.1 – 50.4.5 below and the record evidence cited therein, which follows this numbered paragraph in accordance with Local Rule 56.1(d).**

50.4.1.   ███████████████████████████████

███████████████████████████████████

████████████████████████████████████

███████████████████████████████

*50.4.1.   Plaintiff's Response:  Disputed to the extent this paragraph
suggests that Commerzbank stopped purchasing RMBS by 2007.* ██
████████████████████████████████████
███████████████████████ *Biron Ex. 73 at p. 98 (2007
Commerzbank Annual Report); see also Biron Ex. 87
(CB_WFB001106298) (Mar. 22, 2007 email) (stating that* ██████████
█████████████████████████████████ *);
Biron Ex. 140 at 126:24 – 127:14 (A. Holsten Dep. (Mar. 17, 2017),
CZB/WF).*

**50.4.1.  Defendant's Reply:  Plaintiff's response does not
specifically controvert ¶ 50.4.1, and so this material fact should be
deemed admitted.  *See* Local Rule 56.1(c).**

50.4.2.   ███████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████

*50.4.2.  Plaintiff's Response:  Disputed.  The cited evidence states that
non-agency RMBS purchases by Eurohypo continued in 2007.  Biron Ex.
127 at 70:15 – 22 (J. Reid Dep. (Mar. 15, 2017), CZB/WF) ("* ██████████



) *Further disputed to the extent this paragraph suggests that Eurohypo AG stopped purchasing U.S. non-agency RMBS at the direction of Commerzbank due to its heightened credit risk.  The cited testimony states*

"  *Id.* at 71:16-72:18; 83:19-84:2.

**50.4.2.  <u>Defendant's Reply</u>:  Plaintiff's response does not specifically controvert ¶ 50.4.2, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).  Plaintiff's responses – which concern (1) when exactly Eurohypo stopped purchasing non-agency RMBS, and (2) the ultimate reason why Eurohypo did so – are each irrelevant to whether Commerzbank directed Eurohypo in 2007 to stop purchasing U.S. non-agency RMBS due to its heightened credit risk.**

50.4.3.

███████████████████████████████████

████████████████████████████████

██████████████████████████████████

█████

50.4.3.  *Plaintiff's Response*:  *Disputed to the extent that this paragraph suggests that these units were limited to management and analysis of RMBS to the exclusion of other ABS.  See Biron Ex. 140 at 26:11 – 25, 35:6-15 (A. Holsten Dep. (Mar. 17, 2017), CZB/WF)* ████

██████████████████████████████████

███████████████████████████████

██████████████████████████████████; *see also Biron CB-Ex. 139 at 42:13-17,  (A. Holsten Dep. (June 8, 2017), CZB/HSBC)* (██████████████████████████████████

██████████████████████).

**50.4.3.  Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 50.4.3, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).** ████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

███████████████████

50.4.4.  

*50.4.4.  Plaintiff's Response: Disputed to the extent that this*

*paragraph suggests that* ███████████████████████

██████████████████████████████████

█████████████████████████████████████

████████████████████████████████████

███████████████████████████████

████████████

**50.4.4.  Defendant's Reply:  Plaintiff's response does not**

**specifically controvert ¶ 50.4.4 because it is unsupported by the cited**

**evidence, and so this material fact should be deemed admitted.  *See***

**Local Rule 56.1(c).**

**As Andreas Holsten—formerly the head of the ABS Intensive**

**Care Unit—testified,** ███████████████████████

██████████████████████████████████

███████████████████████████████████

████████████████  **Biron CB-Ex. 139 at 62:11 – 62:17 (A.**

**Holsten Dep. (Mar. 17, 2017), CZB/WF).  Mr. Holsten also testified,**

███████████████████████

███████████████

█████████

**Biron CB-Ex. 140 at 77:24 – 78:3 (A. Holsten Dep. (June 8, 2017),**

**CZB/HSBC).  And Brett Jetter, one of Commerzbank's RMBS**

**specialists, testified,** ██████████████████████

███████████████████████████████████

████████████████  **Biron CB-Ex. 138 at 133:5 – 9 (B.**

**Jetter Dep. (Apr. 20, 2017), CZB/HSBC).  Plaintiff cites no record**

**evidence to controvert any of this testimony.  *See* Local Rule 56.1(d).**

50.4.5. The PRU was "responsible to actively wind down all exposures

internally categorized as Structured Credit, Credit Flow and Exotic Credit and

which are not deemed strategic," including "so called toxic assets," which

Commerzbank summarized in April 2010 as "███████████████

██████████████████████████████████

███████████████████████████████████

████████████████████████████████

████████████████████████████"  Biron CB-Ex. 86

at CB_DB01600973 (Rows 517, 541-42) (████████████████

██████); *see also* Biron CB-Ex. 127 at 160:10 – 163:23, 392:23 – 393:10 (█

█████████████████████████); Biron CB-Ex. 131 at 65:22 – 67:19 (█

████████████████████).

    50.4.5.  <u>*Plaintiff's Response*</u>:  *Disputed to the extent this paragraph suggests that the purpose of the PRU was to "actively wind down all exposures internally categorized as Structured Credit, and Exotic Credit which are not deemed strategic," including "so called toxic assets." The purpose of the PRU was to "*███████████████████████

██████████████████████████████

████████████████████████*" Kane Ex. 449 (CB HSBC000957218) at CB_HSBC000957224.  Further disputed to the extent this paragraph suggests that Commerzbank* ██████████████████████████ *<u>See</u> Kane Ex. 450 (V. Radhakishun, CZB v. HSBC) at 97:6-25 (testifying that* ████████ ████████████████████*); <u>see also</u> Kane Ex. 451 (V. Radhakishun, CB v. WF) at 80:14-82:6 (testifying that* ████████

███████████████████████████

████████*); Kane Ex. 453 (B. Jetter, CZB v. WF) at 194:21-195:4 (testifying that* ███████████████████████

████████*); Kane Ex. 455 (I. Smith, CZB v. WF) at 39:23-41:18 (testifying that* ██████████████████████

████*).* ████████████████████████

██████████████████████

**50.4.5.  Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 50.4.5, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

**Plaintiff's proffer of an additional purpose of the PRU does not create a genuine material issue of fact because it does not contradict the fact that in April 2010, Commerzbank was working on a spreadsheet in which it was written on row 517:**



**Biron CB-Ex. 86 at CB_DB01600973 (row 517) (Apr. 8, 2010 email attaching spreadsheet).[8]  Further, Plaintiff misquotes Kane Ex. 449 by eliding two separate purposes.  In fact, Kane Ex. 449 states:**



---

[8]      **Defendant's Note:**  Plaintiff complains that Biron CB. Ex. 86 does not contain a spreadsheet, but that is incorrect.  *See* Biron CB-Ex. 86.



**Kane Ex. 449 (Oct. 27, 2009 presentation) at CB_HSBC000957224.**

**The purposes stated in Biron CB-Ex. 86 and Kane Ex. 449 are not**

**inconsistent, and to the extent any distinction exists, it is immaterial.**

**Plaintiff's response regarding whether "Commerzbank**

**categorized 'US Subprime RMBS' as a 'toxic' asset" is irrelevant, is**

**unsupported by Plaintiff's cited evidence, and does not controvert ¶**

**50.4.5.  The April 2010 spreadsheet referenced in ¶ 50.4.5 and this**

**reply states:**



### *i.     Commerzbank is a sophisticated financial institution*

51. By 2011, Commerzbank was Germany's second largest bank.  Biron CB-Ex. 77 at 71 (2011 Commerzbank Annual Report).

*51. Plaintiff's Response:  Undisputed.*

**51. Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 51, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

52. In 2011, Commerzbank had more than EUR 661 billion in assets (Ex. 77 at 204 (2011 Commerzbank Annual Report)) and approximately EUR 747 million in profits.  *Id.* at 202.

*52. Plaintiff's Response:  Undisputed.*

**52. Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 52, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

53. As of December 31, 2011, Commerzbank's Portfolio Recovery Unit managed approximately EUR 23.5 billion of distressed asset-backed securities (*e.g.* the Certificates). Biron CB-Ex. 77 at 172, 204 (2011 Commerzbank Annual Report).

*53.    Plaintiff's Response:  Disputed to the extent that this Paragraph suggests the asset-backed securities in Commerzbank's Portfolio Recovery Unit were all "distressed." The cited evidence states that the assets in the Portfolio Restructuring Unit "*█████████*

███████████████████████████████████████

███████████████████████████████████████

████████████████  Biron Ex. 77 at 172 (2011 Commerzbank Annual Report).*

**53. Defendant's Reply:  Plaintiff's response does not specifically controvert the material fact that as of December 31, 2011, Commerzbank's Portfolio Recovery Unit managed approximately EUR 23.5 billion of asset-backed securities (*e.g.* the Certificates), and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

54. There is no evidence that Commerzbank informed Defendant that it should (much less, was required to) investigate or take the other actions Commerzbank now alleges were required.

*54. Plaintiff's Response:  Disputed.  Commerzbank, along with other investors, informed Defendants that they should investigate or take other actions with respect to certain of the Covered Trusts.* ████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

*See* Lucht Ex. 93 (

).

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

████████████████████████

**54. Defendant's Reply:  Lucht Ex. 93, which is duplicative of Biron CB-Ex. 102,** ███

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████ **For a complete discussion of Lucht Ex. 93, Defendant refers the Court to ¶ 61, *infra*.**

The last two paragraphs of Plaintiff's response are irrelevant to whether there is any evidence that Commerzbank informed Defendant that, as Commerzbank now alleges, Defendant should (much less, was required to) investigate or take the other action absent investor direction.

55. There is no evidence that Commerzbank asked Defendant whether it was investigating or taking the other actions Commerzbank now alleges were required.

*55.   Plaintiff's Response: Disputed.* ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

78



<u>*See*</u> *Lucht Ex. 93 (*███████████████████████*) at*

*DBNTC PHOENIX LIGHT 00001833183.*

**55. <u>Defendant's Reply</u>:  Plaintiff's response does not specifically controvert ¶ 55,**

**and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).  Nowhere**

**in Lucht Ex. 93** ██████████████████████████████

████████████████████████████████████████

████████████████████████████████████████ ***See***

***generally* Lucht Ex. 93.** ████████████████████████████

████████████████████ ***Id.***  **For a complete discussion of Lucht Ex. 93, Defendant**

**refers the Court to ¶ 61, *infra*.**

> ii.   *Before January 1, 2012, Commerzbank knew (i) of allegations of*
>        *widespread R&W breaches and (ii) that, absent direction from the*
>        *contractually specified percentage of investors, Defendant was neither*
>        *investigating whether loans breached R&Ws nor pursuing repurchase*
>        *claims against warrantors, and (iii) that Defendant had not declared*
>        *EODs relating to R&W breaches*

56. Before January 1, 2012, Commerzbank knew (i) of the allegations that RMBS warrantors

had disregarded their underwriting guidelines and made false R&Ws, (ii) that, absent direction

from the contractually specified percentage of investors, Defendant was neither investigating

whether loans breached R&Ws nor pursuing repurchase claims against warrantors, and (iii) that

Defendant had not declared EODs relating to R&W breaches.

*56. Plaintiff's Response:  This paragraph cites no record evidence and thus, no response is required.  To the extent a response is required, disputed.*

**56. Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 56, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).  This paragraph is supported and continued in subparagraphs 56.1 – 56.25 below and the record evidence cited therein, which follows this numbered paragraph in accordance with Local Rule 56.1(d).**

56.1.    Long before January 1, 2012, Commerzbank was aware of allegations of widespread R&W breaches.  *E.g.*, Biron CB-Ex. 121 at 304:16 – 305:11 (CZB 30(b)(6) Dep. (June 7, 2017), CZB/WF); Biron CB-Ex. 122 at 83:3 – 84:5 (V. Radhakishun Dep. (Jan. 19, 2018)); Biron CB-Ex. 131 at 277:10 – 280:4, 304:6 – 307:12 (S. Bryant Dep. (Feb. 15, 2017), CZB/WF).

*56.1.    Plaintiff's Response:  Disputed.  Commerzbank was not aware of any R&W breaches in the Covered Trusts, and Commerzbank had no way of determining if R&W breaches affected the loans in the Covered Trusts.  See Kane Ex. 456 at 198:15-20 (R. Boelstler Dep. (Jun. 12, 2017), (CZB/HSBC) (*████████████**

*████████████████████████████*

*████████████); see also Kane Ex. 457 at 238:14-239:18 (S. Bryant Dep. (Jun. 13, 2017), CZB/HSBC) (testifying that ████████████*

*████████████████████████████*

*████████████████████████████*

*████████████); Id. at 251:19-24*

*(testifying that ████████████████████*

███████████████████████████████████████████); *Kane Ex. 460*

*at 175:10-176:4 (J. Reid Dep. (Mar. 22, 2018), CZB/DB) (testifying* ██████

███████████████████████████████████████████); *Id. at*

*182:17-183:10 (testifying that* ████████████████████

████████████████████████████████████████████████████████

████████).

56.1.   **Defendant's Reply:  Plaintiff's response does not specifically**

**controvert ¶ 56.1, and so this material fact should be admitted.  Local Rule**

**56.1(c).**

**The testimony Plaintiff cites** ███████████████████████

████████████████ **is irrelevant to whether Commerzbank was aware of**

**allegations of widespread R&W breaches long before January 1, 2012.  *See* Kane**

**Ex. 456 at 198:15 – 20 (R. Boelstler Dep. (June 12, 2017), CZB/HSBC); Kane**

**457 at 238:14 – 20.**

**In testimony cited by Plaintiff in this response, Mr. Reid testified about** █



**See Biron CB-Ex. 90 at CB_HSBC000479510.**





**Biron CB-Ex. 131 at 277:10 – 280:4 (S. Bryant Dep. (Feb. 15, 2017), CZB/WF).**

**In the testimony cited by Defendant, Ms. Bryant also testified regarding** 



*Id.* **at 304:6 – 307:12.**

**Moreover, in its prior lawsuit against other RMBS deal parties, Commerzbank alleged that "in <u>2010</u>, appalling evidence surfaced indicating that the defendants in this case [(including sponsors and originators of the Trusts)] and others were engaged in a common, systemic and fraudulent scheme [to include defective loans in RMBS trusts (including the Trusts)] . . . Evidence [from Clayton]… <u>revealed these facts in 2010</u>.").  Biron CB-Ex. 78 ¶ 4;** *see also id.* **¶¶ 112-124.**

56.2.    In 2006, Commerzbank RMBS specialists believed, based on discussions with Moody's, that there was a "systemic problem with Freemont *[sic]* originations."  Biron CB-Ex. 89 at CB_DB02448102 (Nov. 20, 2006 email).

*56.2.    <u>Plaintiff's Response</u>:  Disputed to the extent this paragraph suggests that, in 2006, Commerzbank RMBS specialists believed that there was a "systemic problem with Freemont <u>[sic]</u> originations," or that there were problems in*

*Commerzbank trusts containing Fremont loans.  Biron Ex. 89 at CB_DB02448102*
*(Nov. 20, 2006 email).  The cited evidence suggests only that Moody's stated there*
"█████████████████████████████████████████" <u>*Id.*</u>  *Further, the*
*cited evidence is a correspondence between employees of Eurohypo AG, and does not*
*include any employees of Commerzbank.*  <u>*Id.*</u>

**56.2**   <u>**Defendant's Reply**</u>**:  Plaintiff's response does not specifically**
**controvert the fact that in 2006 Eurohypo RMBS specialists knew that** ██████
██████████████████████████████████████
████████  **and so this material fact should be deemed admitted.  Local Rule**
**56.1(c).**

     Further, Biron CB-Ex. 89 is ████████████████████
████████████████████████████████████████████████
██████████



**Biron CB-Ex. 89 at CB_DB02448102.** ██████████████████
██████████████████████████████████████
██████  *Id.* **at CB_DB02448100 – 02.  Therefore, the evidence reflects that** ██

███████████████████████████████████████████████████████

███████████

**Additionally, Eurohypo was acquired by Commerzbank in 2007,** *see* **¶¶ 40 –**

**40.4.2,** *supra* **(and responses and replies thereto), and John Reid, the relevant**

**RMBS specialist, was transferred to work at Commerzbank.  Kane Ex. 460 at**

**22:15 – 17 (J. Reid Dep. (Mar. 22, 2018)) (**███████████████████████

███████████████████████████████████**).**

56.3.   By February 2007, Commerzbank management considered the potential to

█████████████████████████████████████████████████████

███████   Biron CB-Ex. 90 at CB_HSBC000479509 – 10 (Feb. 16, 2007 email).  They

determined:   ███████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████ *Id*;

*see also* Biron CB-Ex. 127 at 215:24 – 216:6, (J. Reid Dep. (Mar. 15, 2017), CZB/WF)

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████

56.3.   *Plaintiff's Response*:  Disputed.  The cited email did not involve

*Commerzbank management and was between employees at Eurohypo.  The Eurohypo*

*employee who sent the email is summarizing information from others at an industry*

*conference.  Biron Ex. 90 at CB_HSBC000479509 – 10 (Feb. 16, 2007 email).*

*Additionally, Commerzbank employees* ████████████████████████████

████████████████████ *See Kane Ex. 456 at 198:15-20 (R. Boelstler Dep.*

*(Jun. 12, 2017), (CZB/HSBC) (*████████████████████████████

████████████████████████████████); *see also Kane Ex.*

*457 at 238:14-239:18 (S. Bryant Dep. (Jun. 13, 2017), CZB/HSBC) (testifying that*

███████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

██████████████); *Id. at 251:19-24 (testifying that* ████████████████

███████████████████████████████████████

██████████████████████); *Kane Ex. 460 at 175:10-176:4 (J. Reid Dep. (Mar. 22,*

*2018), CZB/DB) (testifying regarding* ████████████████████████████

██████████████████████); *Id. at 182:17-183:10 (testifying that* ████

████████████████████████████████████████████████████████

██████████████████████████████████).

**56.3.   Defendant's Reply: Plaintiff's response does not specifically controvert ¶ 56.3, and so this material fact should be deemed admitted.  Local Rule 56.1(c).**

Plaintiff's response that ████████████████████████████ ██████████████████████████████████ does not controvert Defendant's statement because the quoted statement was in response to the question, "████████████████████████████████ ████████████████████████████████████████████ Biron CB-Ex. 90 at CB_HSBC000479510 (emphasis added).  The statement included the employee's own assessment and determination.  *See id.* at CB_HSBC000479509.

Plaintiff's response that ████████████████████████ ████████████████████████████████████ is misleading, and in any event does not establish any material issue of disputed fact.  Biron CB-Ex. 90 is an email exchange involving, among others, ████████████████████ Documents produced by Plaintiff in discovery specifically show that both ████████████████████ were Managing Directors of Eurohypo during the time that Eurohypo was a subsidiary of Commerzbank.  *See* Goff R-Ex. 20 (Report of the Audit of Eurohypo AG New York Branch, Partial Audit Credit Risk and Real Estate Securities Investment Portfolio) at CB_DB01483495; ¶ 40.4.1 – 2, *supra*.

**Plaintiff's response regarding whether Commerzbank employees were "aware of R&W breaches in its RMBS requiring such an investigation" is irrelevant to ¶ 56.3.**

56.4.    By 2007, Commerzbank RMBS specialists believed ███████████ ███████████████████████████████████ ████████  Biron CB-Ex. 137 at 233:20 – 234:18 (B. Jetter Dep. (Feb. 2, 2017), CZB/WF); *see also* Biron CB-Ex. 128 at 137:3 –140:5, 143:17 – 144:10 (J. Reid Dep. (May 10, 2017), CZB/HSBC) ████████████████████████ ████████████████████████████; Biron CB-Ex. 91 at CB_WFB001525966 – 69 (Sep. 26, 2008 Commerzbank email) ████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ███████████

*56.4.    <u>Plaintiff's Response</u>:  Disputed to the extent that this paragraph suggests that, by 2007, Commerzbank RMBS specialists believed that* ███████████ ████████████████████████████████████████ *The quoted testimony merely stated that* ████████████████ *that "* ████████████████████████████*" Biron Ex. 137 at 234:2-8 (B. Jetter Dep. (Feb. 2, 2017), CZB/WF).  The other cited testimony is from John Reid who simply said that while he worked at Eurohypo he "* ██████████████ ████████████*" Biron Ex. 128 at 139:16-23.  The only other document is an email from an employee of Eaton Vance to John Reid commenting on an article*

89

*from 1999 entitled "Fannie Mae Eases Credit to Aid Mortgage Lending." Further*

*disputed to the extent that this paragraph suggests that Commerzbank knew* ██

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████. *See,*

*e.g., Kane Ex. 456 at 198:15-20 (R. Boelstler Dep. (Jun. 12, 2017), (CZB/HSBC)*

(████████████████████████████████████████████████

██████████████████████); *see also Kane Ex. 457 at 238:14-239:18 (S.*

*Bryant Dep. (Jun. 13, 2017), CZB/HSBC) (testifying that* ██████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████); *Id. at*

*251:19-24 (testifying that* ████████████████████████████████

██████████████████████████████████████████████████████);

*Kane Ex. 460 at 175:10-176:4 (J. Reid Dep. (Mar. 22, 2018), CZB/DB) (testifying*

*regarding* ████████████████████████████████████

████); *Id. at 182:17-183:10 (testifying that* ████████████████████████

██████████████████████████████████████████████████████

████████████████).

**56.4.   Defendant's Reply:  Plaintiff's response does not specifically**

**controvert ¶ 56.4, and so this material fact should be deemed admitted.  *See***

**Local Rule 56.1(c).**

Plaintiff's response that ███████████████████████████
███████████████████████████████████████████████████████

████████████ is incorrect and does not specifically controvert Defendant's

statement.  In fact, Mr. Jetter testified:



Biron Ex. 137 at 233:20 – 234:18 (B. Jetter Dep. (Feb. 2, 2017), CZB/WF).

Similarly, Mr. Reid testified:





**Biron CB-Ex. 128 at 137:3 – 140:5 (J. Reid Dep. (May 10, 2017), CZB/HSBC).**

**Mr. Reid also testified:**



*Id.* **at 143:17 – 25.**





56.5.   ████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████

████████████████████████████████

████████

56.5. *Plaintiff's Response*: ████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████████ *("* █████████

████████████████████████████████████

██████████████████████████████ *) (emphasis added).*

*Sharon Bryant, the only deponent whose testimony is cited, testified that* ████

████████████████████████████████████

████████████████ *Biron CB-Ex. 132 at 238:14-239:18; 251:19-24.*

**56.5.   Defendant's Reply: Plaintiff's response does not specifically controvert ¶ 56.5, and so this material fact should be deemed admitted. *See* Local Rule 56.1(c). Plaintiff's purported "dispute" regarding whether Commerzbank RMBS specialists** ███████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████

**Further, Biron CB-Ex. 132 does not contain pages 238, 239, or 251.**

**Therefore, the last sentence of Plaintiff's response is unsupported by the cited**

**evidence.**

56.6.    By 2008, Commerzbank RMBS specialists believed ████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████" Biron

CB-Ex. 127 at 302:16 – 305:17 (J. Reid Dep. (Mar. 15, 2017), CZB/WF); Biron CB-Ex.

92 at CB_WFB001228669 (Apr. 4, 2008 email).

*56.6.* *Plaintiff's Response:* *Disputed to the extent this paragraph suggests that, by*

*2008, Commerzbank RMBS specialists* ███████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████ *as Commerzbank was not aware of any*

*R&W breaches in the Covered Trusts, and Commerzbank had no way of determining*

*if R&W breaches affected the loans in the Covered Trusts.  See, e.g., Kane Ex. 456 at*

*198:15-20 (R. Boelstler Dep. (Jun. 12, 2017), (CZB/HSBC) (*███████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

95

██████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

███████████).

    **56.6.**  <u>**Defendant's Reply**</u>**: Plaintiff's response does not specifically controvert ¶ 56.6, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).  Plaintiff's purported "dispute" regarding whether Commerzbank** ████████████████████████████████

███████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

██████

    56.7.  ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

    *56.7.*  <u>*Plaintiff's Response*</u>*:  Undisputed.*

**56.7.   Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 56.7, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

56.7.1. 

*56.7.1.  Plaintiff's Response:  Undisputed.*

**56.7.1.  Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 56.7.1, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

56.7.2. 



*56.7.2   Plaintiff's Response:  Undisputed that this statement was contained in the PIMCO Reports.*

**56.7.2.  Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 56.7.2, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

56.7.3. The ███████████████████████████████████ ██████████████████████████████████████████ ██████████████████ Biron CB-Ex. 124 at 145:17 - 157:3 (V. Radhakishun Dep. (May 18, 2017), CZB/WF)); *see* Biron CB-Ex. 83 at CB_DB02938573.

*56.7.3   Plaintiff's Response:  Disputed to the extent this paragraph suggests that* ████████████████████████████ █████████████████████████████ ██████████████████████████████ ██████████████████████████████ ███████████████████████████ █████  *See Biron CB-Ex. 124 at 145:17 - 157:3 (V. Radhakishun Dep. (May 18, 2017).  The cited evidence* ██████████████████ ███████████████████████████████*

████████████████████ *Id.*  *In addition, the cited deposition*

*testimony* ███████████████████████████████

████████████████████████████████████████████████

███████████████ *Id.*

**56.7.3.  Defendant's Reply:** Plaintiff's response does not

specifically controvert ¶ 56.7.3, and so ██████████████████

██████████████████████████████

████████████████████████████

███████████████████████████████

██████████████████

Furthermore, as the cited evidence makes clear, in order to

determine ████████████████████████████

██████████ **Mr. Radhakishun** ████████████████████████

████████████████ **Indeed, he testified:**

████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████

**Biron CB-Ex. 124 at 136:26 – 148:15 (V. Radhakishun Dep. (May 18,**

**2017), CB/WF).  Moreover,** ████████████████████████

████████████████████████████████████

██████████████████████████████████

██████████████████████████████████

████████████████████████████



**Biron CB-Ex. 83 at** ███████████. **This email** ███████████

███████████████████████████████████

███████. *See id.*

56.8.   [RESERVED]

56.9.   ███████████████████████

Plaintiff's Response:  Disputed to the extent this paragraph suggests the

cited evidence involves claims surrounding "trustee duties." The cited evidence

███████████████████████████

███████████████████████  *Further disputed to the extent that this Paragraph*

*suggests that Commerzbank was regularly circulating articles about R&W related*

*repurchase efforts.  Further disputed to the extent that* ███████████

███████████████████████

███

**56.9.   Defendant's Reply: Plaintiff's response does not specifically controvert ¶ 56.9, and so this material fact should be deemed admitted.  *See Local Rule 56.1(c).*  Plaintiff's purported "dispute" regarding** ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮ **Further, Biron CB-Ex. 94 contains** ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮



▮▮▮▮▮▮▮▮▮▮.

**Each of Plaintiff's purported "disputes" regarding** ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮

56.10.  As it has alleged in prior lawsuits against other parties, Commerzbank believed by the end of 2010 that there had been widespread abuses of underwriters'

underwriting criteria.  Biron CB-Ex. 78 at ¶ 111 (Complaint, *Commerzbank AG London Branch v. UBS AG*, No. 654464/2013, Dkt.#28 (N.Y. Sup. Ct. May 20, 2014)).

56.10.  <u>Plaintiff's Response</u>:  Disputed.  The complaint against states:  "It was not until 2012, however, that Plaintiff discovered some reasonable means of determining whether evidence of this "waiver" scheme had anything to do with the losses at issue in this case."  Ex. 78 at ¶ 5 (Compl., <u>Commerzbank AG London Branch v. UBS AG</u>, No. 654464/2013, Dkt.#28 (N.Y. Sup. Ct. May 20, 2014)); <u>see also</u> <u>id.</u> at ¶ 8 ("In retrospect, it is now (as of May 20, 2014) clear that when the Investors' mortgage bonds started to incur losses in 2008, those losses were not the result of some mysterious market forces."); <u>Id.</u> at ¶ 172 ("No amount of due diligence or reasonable investigation could have uncovered the LIBOR or waiver schemes at issue in this case, and the Investors were more than reasonable in this regard.").  Undisputed that Commerzbank's May 20, 2014 complaint alleges "catastrophic results" due to "defective mortgages, masked by bad data, bad [R&Ws] and phony 'investment grade' support."  <u>Id.</u> at ¶¶ 54 – 55, 179 – 182.

**56.10.  <u>Defendant's Reply</u>:** **Plaintiff's response does not specifically controvert the fact that Commerzbank previously alleged that "[i]n 2010, . . . appalling evidence surfaced showing that the [defendants named in that complaint] not only knew about the widespread abuses but actually profited from them by participating in the new Wall Street 'waiver' scheme."  *See* Biron CB-Ex. 78 ¶ 111.  This material fact should therefore be deemed admitted.  *See* Local Rule 56.1(c).**

**Further, Commerzbank also alleged in Biron CB Ex. 78 that:**

> **Clayton [Holdings LLC] provided reports summarizing**
> **defective mortgage to its clients 'at the end of each day,'**
> **[and] it also summarized those daily reports in a**
> **confidential document that the government released in**
> **October 2010.  That document shows that only 54% of the**
> **nearly one million mortgages that it sampled satisfied**
> **originators' underwriting guidelines.**

**Biron CB-Ex. 78 ¶ 117.  And, the court in Plaintiff's prior action rejected its**

**assertion that "it was unable to discover fraud with respect to the particular**

**certificates at issue until it performed its own forensic loan level analysis in**

**2012" because "[a]s plaintiff acknowledges, however (*id.* at 25), forensic loan**

**level analysis was available in 2010 and 2011."  *See Commerzbank AG London***

**Branch v. UBS AG, No. 654464/2013, 2015 WL 3857321, at \*3 (Sup. Ct. N.Y. Cty.**

**June 17, 2015).**

56.11.  As it has alleged in prior lawsuits against other parties, Commerzbank

believed by the end of 2010 there was a large volume of mortgage loans that did not

comply with originators' underwriting standards.  Biron CB-Ex. 78 at ¶ 117 (Complaint,

Commerzbank AG London Branch v. UBS AG, No. 654464/2013, Dkt.#28 (N.Y. Sup.

Ct. May 20, 2014)).

    *56.11.  Plaintiff's Response:  Disputed.  The complaint against states:  "It was*

*not until 2012, however, that Plaintiff discovered some reasonable means of*

*determining whether evidence of this "waiver" scheme had anything to do with the*

*losses at issue in this case." Ex. 78 at ¶ 5 (Compl., Commerzbank AG London Branch*

*v. UBS AG, No. 654464/2013, Dkt.#28 (N.Y. Sup. Ct. May 20, 2014)); see also id. at*

*¶ 8 ("In retrospect, it is now (as of May 20, 2014) clear that when the Investors'*

*mortgage bonds started to incur losses in 2008, those losses were not the result of*

*some mysterious market forces."); id. at ¶ 172 ("No amount of due diligence or*

*reasonable investigation could have uncovered the LIBOR or waiver schemes at issue*

*in this case, and the Investors were more than reasonable in this regard.").*

*Undisputed that Commerzbank's May 20, 2014 complaint alleges "catastrophic*

*results" due to "defective mortgages, masked by bad data, bad [R&Ws] and phony*

*'investment grade' support." Id. at ¶¶ 54 – 55, 179 – 182.*

**56.11.  Defendant's Reply: Plaintiff's response does not specifically**

**controvert the fact that Commerzbank previously alleged that "a confidential**

**document that the government released in October 2010, . . shows that only 54%**

**of the nearly one million mortgages that [Clayton] sampled satisfied originators'**

**underwriting guidelines. This volume of defective mortgages flooding the market**

**disturbed Keith Johnson, who was Clayton's President during the relevant time.**

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████ **"**

*See* **Biron CB-Ex. 78 ¶ 117.  This material fact should therefore be deemed**

**admitted.  *See* Local Rule 56.1(c).**

**Plaintiff's response is irrelevant to the proposition asserted in ¶ 56.11.  In**

**any event, the court in Plaintiff's prior action rejected its assertion that "it was**

**unable to discover fraud with respect to the particular certificates at issue until**

**it performed its own forensic loan level analysis in 2012" because "[a]s plaintiff**

**acknowledges, however (*id.* at 25), forensic loan level analysis was available in**

**2010 and 2011."  *See Commerzbank AG London Branch v. UBS AG*, No.**

**654464/2013, 2015 WL 3857321, at \*3 (Sup. Ct. N.Y. Cty. June 17, 2015).**

56.12.  Commerzbank employees █████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████. Biron CB-Ex. 127

at 77:24 – 79:12 (J. Reid Dep. (Mar. 15, 2017), CZB/WF); Biron CB-Ex. 131 at 283:13 –

285:7 (S. Bryant Dep. (Feb. 15, 2017), CZB/WF); Biron CB-Ex. 132 at 135:10 – 137:6

(S. Bryant Dep. (June 13, 2017), CZB/HSBC); Biron CB-Ex. 137 at 208:15 – 212:11 (B.

Jetter Dep. (Feb. 2, 2017), CZB/WF); *see also* Biron CB-Ex. 96 CB_WFB001735307

(███████████████████████████████████████████████████████████

█████████████████████); Biron CB-Ex. 97 at CB_DB00705865, 79, 895 – 900 (██

████████████████████████████████████████████████████████████

██████████████████████████████████████████████).

56.12.  <u>Plaintiff's Response</u>:  *Disputed to the extent this paragraph suggests that*

*Commerzbank* ██████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████. *See Biron CB-Ex. 127 at 77:24 – 79:12 (J. Reid Dep. (Mar. 15,*

*2017), CZB/WF) (discussing* ████████████████████████████████*);*

*Biron CB-Ex. 131 at 283:13 – 285:7 (S. Bryant Dep. (Feb. 15, 2017), CZB/WF*

*(discussing* ██████████████████████████*); Biron CB-Ex. 132 at 135:10 –*

*137:6 (S. Bryant Dep. (June 13, 2017), CZB/HSBC) (discussing* ████████████

████████*); Biron CB-Ex. 137 at 208:15 – 212:11 (B. Jetter Dep. (Feb. 2, 2017),*

*CZB/WF) (*████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████ ).

**56.12.** <u>**Defendant's Reply**</u>**:  Plaintiff's response does not specifically controvert ¶ 56.12, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).  Plaintiff's purported "dispute" regarding** ████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████ **testified:**



**Biron CB-Ex. 127 at 79:2 – 12 (J. Reid Dep. (Mar. 15, 2017), CZB/WF).**

████████████████ **testified:**

106

**Biron CB-Ex. 131 at 283:21 – 284:3 (S. Bryant Dep. (Feb. 15, 2017), CZB/WF).**





**Biron CB-Ex. 132 at 135:10 – 137:6 (S. Bryant Dep. (June 13, 2017),**

**CZB/HSBC).** ▇▇▇▇▇ **testified:**



**Biron Ex. 137 at 211:5 – 212:17 (B. Jetter Dep. (Feb. 2, 2017), CZB/WF).**





56.13.  Commerzbank RMBS analysts ███████████████████████

███████████████████████████████. Biron CB-Ex. 90 at

CB_HSBC00479509 (Feb. 16, 2007 email); Biron CB-Ex. 128 at 188:22 – 198:16

(███████████████) (J. Reid Dep. (May 10, 2017), CZB/HSBC).

   56.13.  *Plaintiff's Response: Disputed.  The cited evidence* ███████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████" *Ex. 128 at 188:22 – 198:16 (testifying about Ex. 90)*

*(J. Reid Dep. (May 10, 2017), CZB/HSBC).*

   **56.13.  Defendant's Reply: Plaintiff's response does not specifically**

**controvert ¶ 56.13, and so should be deemed admitted.  *See* Local Rule 56.1(c).**

**In fact,** █████████████████████████

110



**Biron CB-Ex. 90 at CB_HSBC00479509 (**

**Biron CB-Ex. 128 at 192:2 – 23 (J. Reid Dep. (May 10, 2017), CZB/HSBC).**

56.14.  Commerzbank

Biron CB-Ex. 95 at CB_WFB003206453

; Biron CB-Ex. 121 at 272:25 - 275:13 (CZB 30(b)(6) Dep. (June

7, 2017), CZB/WF); *see also* Biron CB-Ex. 135 at 52:15-54:5, 56:20-58:12 (R. Boelstler

Dep. (Feb. 24, 2017), CZB/WF); Biron CB-Ex. 134 at 89:20-90:16, 137:9-137:16 (R.

Boelstler Dep. (June 12, 2017), CZB/HSBC).

*56.14.  <u>Plaintiff's Response</u>:  Disputed.  The cited evidence does not support the*

*statement that* 

**56.14.  <u>Defendant's Reply</u>:  Plaintiff's response does not specifically**

**controvert ¶ 56.14, and so this material fact should be deemed admitted.**

**Biron CB-Ex. 95** 

**Ex. 95 at CB_WFB003206453 (**

**Biron CB-Ex. 121 at 274:22 – 275:13 (CZB 30(b)(6) Dep. (June 7, 2017),**

**CZB/WF).**



**Biron CB-Ex. 135 at 52:15 – 54:5 (R. Boelstler Dep. (Feb. 24, 2017), CZB/WF).**







**.  It is clear therefore that Commerzbank understood that different investors in the same RMBS trust could have different interests and could disagree about whether to take action against warrantors and servicers.**

56.15.  Before 2012, Commerzbank knew that absent a direction from the contractually specified percentage of investors, Defendant was not investigating whether loans in the Trusts breached R&Ws and/or pursuing repurchase actions against warrantors.  *See* Biron CB-Ex. 136 at 211:10 – 15 (B. Jetter Dep. (Jan. 23, 2018)) ("▮

▮"); Biron CB-Ex. 131 at 209:2 – 12 (S. Bryant Dep. (Feb. 15, 2017), CZB/WF) ("▮

▮"); Biron CB-Ex. 123 at 256:15 – 257:6 (V. Radhakishun Dep. (Apr. 27, 2018), CZB/HSBC); Biron CB-Ex. 122 at 152:18 – 154:3, 177:11 – 24 (V. Radhakishun Dep. (Jan. 19, 2018)); Biron CB-Ex. 124 at 140:12 – 142:20 (V. Radhakishun Dep. (May 18, 2017), CZB/WF); Biron CB-Ex. 126 at 238:7 –23 (J. Reid Dep. (Mar. 22, 2018)); Biron CB-Ex. 131 at 205:14 – 209:12 (S. Bryant Dep. (Feb. 15,

2017), CZB/WF); Biron CB-Ex. 132 at 245:15 – 24 (S. Bryant Dep. (June 13, 2017), CZB/HSBC); Biron CB-Ex. 121 at 263:15 – 266:11 (CZB 30(b)(6) Dep. (June 7, 2017), CZB/WF); Biron CB-Ex. 83 at CB_DB02938592; Biron CB-Ex. 19 at PIMCO-DB00000527 (███████████████); Biron CB-Ex. 98 at CB_DB01485919

(███████████████████████████████████

███████████).

    56.15.  _Plaintiff's Response_:  Disputed.  Before 2012, Commerzbank was not _aware that, absent a direction from the contractually specified percentage of investors, Defendant was not investigating whether loans in the Trusts breaches R&Ws and/or were not pursuing repurchase actions against warrantors.  Further, the cited evidence only discusses the percentage of investors necessary to direct the trustee to take action in the context of an RMBS trust, and does not state that_ Commerzbank ██████████████████████████ ████████████████████  _See Kane Ex. 469 at 211:10 – 15 (B. Jetter Dep. (Jan. 23, 2018)) (_███████████████████ ███████████████████);  _Biron CB-Ex. 131 at 209:2 – 12 (S. Bryant Dep. (Feb. 15, 2017), CZB/WF) (_██████████ ████████████████████████);  _Biron CB-Ex. 123 at 256:15 – 257:6 (V. Radhakishun Dep. (Apr. 27, 2018), CZB/HSBC) (_██████████████████████ ████████);  _Biron CB-Ex. 122 at 152:18 – 154:3, 177:11 – 24 (V. Radhakishun Dep. (Jan. 19, 2018)) (_████████████████████████ ██████████████████████);  _Biron CB-Ex._

*124 at 140:12 – 142:20 (V. Radhakishun Dep. (May 18, 2017), CZB/WF) (* ███

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████ *See Kane Ex. 456 at 12:15-13:2 (R. Boelstler Dep.*

*(Jun. 12, 2017) CZB/HSBC)* ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

118



**56.15.  <u>Defendant's Reply</u>:  Plaintiff's response does not specifically controvert ¶ 56.15, and so this material fact should be deemed admitted.**

The evidence cited by Defendant ███████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███   And the additional evidence Plaintiff cites in its response does not establish

any genuine issue of material fact relevant to this paragraph.

_Plaintiff's Attempts to Re-characterize Defendant's Evidence Fail._

**First**, Plaintiff attempts to revise Mr. Jetter's testimony (Biron CB-Ex. 136 at

211:10-15) by submitting an errata for Mr. Jetter.  That does not create a

genuine issue of material fact because, under New York law, changes to

deposition testimony through errata do not replace the original testimony, and

"at the summary judgment stage, a district court is 'on firm ground' if it does

not credit an errata sheet that reflects a party's attempt to 'retrieve the situation

by scratching out and recanting his original testimony.'"  *Barnes v. Ross*, No. 12

CIV. 1916 PKC, 2014 WL 1329128, at *11 (S.D.N.Y. Apr. 3, 2014) (quoting

*Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 103 (2d Cir. 1997)).

**Second**, Plaintiff attempts to ███████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████ *See also* **Biron**

**CB-Ex. 131 at 209:2 – 12** ███████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████

    *Third*, Plaintiff attempts to re-characterize ██████████████████

**(Biron CB-Exs. 122-24) as** █████████████████████████████████████

███████████████████████ **That, too, directly supports Defendant's**

**statement.  Indeed,** █████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████



**Fourth**, Plaintiff similarly ███████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████ **Biron CB-Ex. 126 at 238:7-15** ████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████ **Biron CB-Ex. 121 at 263:15-**

**266:11** ██████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████

***Fifth***, **Plaintiff argues that** 

 **Indeed,**

**Commerzbank** 

**This action would have been wholly unnecessary had Commerzbank believed Defendant was independently pursuing these actions.**

**Commerzbank's testimony and produced documents therefore show that before 2012, Commerzbank knew that absent a direction from the contractually specified percentage of investors, Defendant was not investigating whether loans in the Trusts breached R&Ws and/or pursuing repurchase actions against warrantors.**

**Plaintiff's response that Commerzbank witnesses have testified that Defendant was responsible for pursuing repurchase actions upon the occurrence of R&W breaches is unsupported by cited evidence. Specifically, the evidence cited is at odds with the testimony cited in support thereof as well as the relevant GAs.**

*First***,** 



**Kane Ex. 456 at 12:15 – 13:11 (R. Boelstler Dep. (June 12, 2017), CZB/HSBC)**

**(emphasis added).**

*Second,*

**Kane Ex. 457 at 240:8 – 25 (                              ); Biron**

**CB-Ex. 56 (Chart:  Trusts For Which Defendant Had No Duty to Enforce Any**

**Repurchase Obligations);** *see also* **Kane Ex. 459 at 131:5 – 132:19 (**

**) (testifying**



**Third,** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮. **To the extent Plaintiff** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮. **Kane Ex. 454 at 8:13 – 19 (B. Jetter Dep. (Apr. 20, 2017), CZB/HSBC).**

**Fourth,** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ **Kane Ex. 450 at 72:6 – 9.** ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮ *See id.*

**Fifth,** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ **(Kane Ex. 458 at 337:10-17),** ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮

56.16.  In ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮ Biron CB-Ex. 95 at CB_WFB003206450 – 55 (▮▮▮▮▮▮▮▮▮▮).

56.16.  *Plaintiff's Response:  Disputed to the extent this paragraph suggests that*

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



*Undisputed that* ██████████████████████████████ *See Biron CB-Ex. 95 at CB_WFB003206450 – 55* (████████████████████████). *Undisputed that* ██████████████████████████████

██████████████████████████████████

██████████████████████████████████

*Id.*

**56.16.   Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 56.16, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

**Plaintiff's citation to Biron CB-Ex. 95 does not support Plaintiff's purported "dispute."  Plaintiff concedes** ██████████████████████

██████ **Biron CB-Ex. 95.** ████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████ **Biron CB-Ex. 95 at CB_WFB003206451.** ████████████

███████████████████████████████████████

██████ ***See id.* at CB_WFB003206450 – 51.**

56.17.  By 2011, Commerzbank was communicating with several law firms about how it could independently pursue legal action relating to alleged R&W breaches, because it knew that Defendant and the other RMBS trustees were not pursuing such actions.  Biron CB-Ex. 124 at 186:25 – 187:24 (V. Radhakishun Dep. (May 18, 2017),

CZB/WF); Biron CB-Ex. 122 at 158:22 – 159:22 (V. Radhakishun Dep. (Jan. 19, 2018);

Biron CB-Ex. 121 at 301:2 – 302:4 (CZB 30(b)(6) Dep. (June 7, 2017), CZB/WF); Biron

CB-Ex. 125 at 19:14 – 26:15 (V. Radhakishun Dep. (Sep. 28, 2018), CZB/BNYM); *see*

Biron CB-Ex. 136 at 211:10 – 15 (B. Jetter Dep. (Jan. 23, 2018)).

   56.17.  <u>*Plaintiff's Response*</u>*:  Disputed.  Commerzbank was not aware of R&W*

*breaches in the Covered Trusts.  <u>See</u> Kane Ex. 456 at 198:15-20 (R. Boelstler Dep.*

*(Jun. 12, 2017), (CZB/HSBC) (*



*); <u>see also</u> Kane Ex.*

*457 at 238:14-239:18 (S. Bryant Dep. (Jun. 13, 2017), CZB/HSBC) (testifying that*

*); <u>Id.</u> at 251:19-24 (testifying that*

*); Kane Ex. 460 at 175:10-176:4 (*

*) (testifying regarding*

*); <u>Id.</u> at 182:17-183:10 (testifying that*

*).  Further disputed to the*

*extent that this Paragraph suggests that, by 2011, Commerzbank was considering*

*independent pursuit of legal actions related to R&W breaches.  Undisputed that by*

*2011, Commerzbank was considering whether it could work with the trustee to*

*investigate whether there were R&W breaches.*

**56.17.  Defendant's Reply:**  Plaintiff's response does not specifically controvert ¶ 56.17, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).

Plaintiff's response that ████████████████████████████ ████████████ is irrelevant to whether Commerzbank was communicating with law firms about how to pursue legal action relating to alleged R&W breaches.

Plaintiff's purported "dispute" regarding whether "Commerzbank was considering independent pursuit of legal actions related to R&W breaches" is unsupported by any evidence.

Further, the evidence Defendant cites in this paragraph shows that



Biron CB-Ex. 122 at 158:22 – 159:8 (████████████████████████).

56.18.  By 2011, Commerzbank's Portfolio Restructuring Unit was investigating



████████████████████████████████████████████████████████

████████████████████████████████████  Biron CB-Ex. 99 at CB_DB01258215 (█████

████████████████████████████████████████████████

████████████████████);  *see also* Biron CB-Ex. 100 at CB_HSBC000921700

(Oct. 28, 2010 email); Biron CB-Ex. 101 at CB_DB03087753 – 55 (Nov. 16, 2011 email

██████████████████████████████████████████

███████).

    *56.18.  Plaintiff's Response:  Disputed to the extent this paragraph suggests that*

*Commerzbank was aware of potential claims against any RMBS trustees prior to*

*January 1, 2012.  The cited evidence concerns* ███████████████████████████

█████████████████████████████ *Further disputed to the*

*extent this Paragraph suggests that* ██████████████████████████

███████████████████████████████████ *The cited*

*evidence states that* ████████████████████████████████████

██████████████████████████████████████████

████████████. *Biron Ex. 99 at CB_DB01258215 (*████████████

████████████████████████████████████████████

████████████████). *The cited evidence does not contain any discussion of*

█████████████████████████████████ *Id; see also* Biron Ex. 100 at

CB_HSBC000921700 (███████████████); *Biron Ex. 101 at CB_DB03087753 – 55*

██████████████████████████████████████

████████████████████████).

**56.18.  <u>Defendant's Reply</u>: Plaintiff's response does not specifically controvert ¶ 56.18, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

**Plaintiff's purported "dispute" regarding** ██████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████  **Likewise, Plaintiff's purported "dispute" regarding** ██████████████████ ██████████████████████████  **is also irrelevant to this paragraph.**

56.19.  In October 2011, ████████████████████████ ██████████████████████████████████████ ██████████████████████████████  ██████████████████ Biron CB-Ex. 124 at 139:5 – 25, 140:12 – 141:14, 144:12 – 145:5, 184:10 – 187:24 (V. Radhakishun Dep. (May 18, 2017), CZB/WF); Biron CB-Ex. 123 at 270:23 – 271:23, 282:6 – 18 (V. Radhakishun Dep. (Apr. 27, 2018), CZB/HSBC); Biron CB-Ex. 121 at 307:10 – 25 (CZB 30(b)(6) Dep. (June 7, 2017), CZB/WF); Biron CB-Ex. 120 at 54:2 – 13, 58:8 – 11 (CZB 30(b)(6) Dep. (Mar. 9, 2018)).

*56.19.  <u>Plaintiff's Response</u>:  Disputed to the extent that this Paragraph suggests that, in October 2011, Commerzbank was aware of claims concerning R&W breaches or servicing deficiencies in the Covered Trusts.  Undisputed that* ████████████ ████████████████████████████████████ ████████████████████████████████████ ██████████████ <u>See</u> Lucht Ex. 93 (████████████████████████) at DBNTC*



*PHOENIX LIGHT 00001833183.* 

**56.19.  Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 56.19, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

Plaintiff's purported "dispute" regarding whether "Commerzbank was aware of claims concerning R&W breaches or servicing deficiencies in the Covered Trusts" is irrelevant to this paragraph.  With respect to Lucht Ex. 93, Defendant refers the Court to ¶ 61, *infra*.

56.19.1. 

Biron CB-Ex. 102 at DBNTC_COMMERZBANK_000000876758 – 766 (

); Biron CB-Ex. 120 at 67:20-69:4 (CZB 30(b)(6) Dep. (Mar. 9, 2018)).

59.19.1. _Plaintiff's Response_:  Disputed to the extent that this

Paragraph suggests that in January 2012, Commerzbank was aware of

R&W breaches or servicing deficiencies in the Covered Trusts.

Undisputed that █████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████ _See_

_Lucht Ex. 93 (_████████████████████_) at DBNTC_

_PHOENIX LIGHT 00001833183._ █████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

██████████████

      █████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████



**56.19.1.** <u>**Defendant's Reply**</u>**:  Plaintiff's response does not specifically controvert ¶ 56.19.1, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

**Plaintiff's purported "dispute" regarding whether it was aware of R&W breaches or servicing deficiencies in the Covered Trusts is irrelevant to this paragraph.  Likewise, the second paragraph of Plaintiff's response is irrelevant to this paragraph.  With respect to Lucht Ex. 93, Defendant refers the Court to ¶ 61, *infra*.**

56.19.2.    .

Biron CB-Ex. 120 at 72:20 – 73:13 (███████████████████); Biron

CB-Ex. 121 at 266:23 – 268:2 (███████████████████████).

*59.19.2.* <u>*Plaintiff's Response:*</u>  *Undisputed.*

**59.19.2.** <u>**Defendant's Reply**</u>**:  Plaintiff's response does not specifically controvert ¶ 59.19.2, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

56.19.3.   ████████████████████████████████████

████████████████████████   Biron CB-Ex. 120 at 72:20 – 73:13 (CZB

30(b)(6) Dep. (Mar. 9, 2018)).

> *56.19.3.*   <u>*Plaintiff's Response*</u>*:  Undisputed that Commerzbank did*
>
> *not further inquire with Defendant regarding the subject matter of the*
>
> *letter sent to Defendant by Gibbs & Bruns LLP.  Commerzbank had no*
>
> *duty to do so.*

**56.19.3.<u>Defendant's Reply</u>:  Plaintiff's response does not**

**specifically controvert ¶ 56.19.3, and so this material fact should be**

**deemed admitted.  *See* Local Rule 56.1(c).**

**The last sentence of Plaintiff's response is irrelevant to this**

**paragraph.**

56.19.4.   Commerzbank ██████████████████████████

██████████████████████████████████████

██████████████████████████████████████



Biron CB-Ex. 120 at 52:23-54:13, 72:20 – 73:13, 176:9 – 177:21 (████████

████████████); Biron CB-Ex. 103 (████████████████); Biron CB-

Ex. 24 at 10 – 18, 23 – 34 (██████████████); *see also* Biron CB-Ex.

127 at 324:24 – 325:5 (████████████████); Biron CB-Ex.

128 at 173:16 – 23 (██████████████████); Biron CB-Ex.

131 at 210:15 – 17 (████████████████████); Biron CB-Ex. 137

at 78:4 – 6 (██████████████████); Biron CB-Ex. 138 at 128:10

– 14 (████████████████████); Biron CB-Ex. 140 at 268:25 -

269:21 (█████████████████████████); Biron CB-Ex. 139 at 7:20 –

8:3 (█████████████████████████); Biron CB-Ex. 141 at 214:18 –

22 (██████████████████████████).



   *56.19.4. Plaintiff's Response: Disputed to the extent this paragraph*

*suggests that* ██████████████████████████████

█████████████████████████████████████

███████████. *Handlin Ex. 668 at 90:19-91:6 (*████████

████████████████████████████████████

██████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

█████████████████████████████████

██████████████████████████████); *id. at 97:9-18 (*██████

█████████████████████████████████

██████████████████████████████████████

███████████████████████████████).

*Undisputed that Commerzbank* ████████████████████████

███████████████████████████████

   **56.19.4.Defendant's Reply: Plaintiff's response does not**

**specifically controvert ¶ 56.19.4, and so should be deemed admitted.**

***See* Local Rule 56.1(c).**

   **Plaintiff's purported "dispute" regarding whether** ████████████

███████████████████████ **is irrelevant to this paragraph.  But in**

any case, as shown in ¶¶ 56 – 56.25, Plaintiff ████████████████████

████████████████████████████████████████

████████████████████████████

    **Further, Plaintiff's cite to pages that do not exist in Handlin Ex.**

**668 or anywhere else in the record.  Handlin Ex. 668 does not**

**otherwise contain the quoted language.  Plaintiff's response is thus**

**unsupported by any evidence.**

56.20.  The remittance reports for each Trust, ████████████████

████████████████████████████████████ Biron

CB-Ex. 60 (Chart:  Repurchases Reported in Remittance Reports as of December 2010

and December 2011); Biron CB-Ex. 125 at 240:2 – 242:13 (████████████████

████████████████).

    *56.20.  Plaintiff's Response:  Disputed to the extent this paragraph suggests that*

*Commerzbank* ████████████████████████████

████████████████████████████████ *Further*

*disputed to the extent this paragraph suggests that* ████████████████████

████████████████████████████████████

████████████████

    **56.20.  Defendant's Reply:  Plaintiff's response does not specifically**

**controvert ¶ 56.20 because it is unsupported by any evidence, and so this**

**material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

    **Moreover, the testimony cited by Defendant** ████████████████████

████████████████████████



**Biron CB-Ex. 125 at 242:5 – 242:13 (**

**).  The point is further emphasized in additional testimony from**

that deposition:



*Id.* at 238:25-239:25.

Plaintiff's purported "dispute" regarding ██████████████████ ████████████████████████████████████████ ████████████████████████████ is also irrelevant to this paragraph.

56.21.  The SAC references numerous pre-2012 government reports, lawsuits and news articles regarding allegations of widespread R&W breaches.  Biron CB-Ex. 62 (Chart:  Commerzbank's Allegations of Pre-2012 Public Information About R&W Breaches).

56.21.  *Plaintiff's Response*:  *Disputed to the extent this paragraph mischaracterizes Commerzbank's allegations of pre-2012 public information about R&W breaches.  The cited evidence concerns R&W breaches that are not specific to the Covered Trusts.  Biron Ex. 62.  Commerzbank was not aware of specific R&W breaches in the Covered Trusts until commencing discovery in this action.*  *Commerzbank v. Deutsche Bank*, No. 15-cv-10031-JGK, ECF No. 1.

56.21.  **Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 56.21, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).  Plaintiff's statement that "The cited evidence concerns R&W breaches that are not specific to the Covered Trusts" is irrelevant to whether the SAC references numerous pre-2012 government reports, lawsuits and news articles regarding allegations of widespread R&W breaches.**

56.22.  There is no evidence that Commerzbank informed Defendant that, absent a direction from the contractually specified percentage of investors, it should (much less,

was required to) investigate whether loans in the Trusts breached R&Ws and/or pursue repurchase actions against warrantors.

   56.22.  *Plaintiff's Response*:  Disputed.  Commerzbank informed Defendants that they should investigate or take other actions with respect to certain of the Covered Trusts. ███████████████████████████████

███████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

                                   *Lucht Ex. 93*

(███████████████████) *at DBNTC PHOENIX LIGHT 00001833183.* ███

████████████████████████████████████

████████████████████████████████████

█████████████

      █████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████

**56.22.  Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 56.22, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

**Lucht Ex. 93, which is duplicative of Biron CB-Ex. 102,** ████████████

███████████████████████████████████████████████ **Rather,**

**Lucht Ex. 93 demonstrates that—**████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████ **For a complete discussion of Lucht**

**Ex. 93, Defendant refers the Court to ¶ 61, *infra*.**


56.23.  There is no evidence that Commerzbank asked Defendant if it was investigating whether loans in the Trusts breached R&Ws.

*56.23.  Plaintiff's Response: Disputed.* ████████████████████

████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████



*See Lucht Ex. 93 (███████████████) at DBNTC PHOENIX LIGHT 00001833183.*

**56.23.  Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 56.23, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).  Nowhere in Lucht Ex. 93** ███████████████ ███████████████ ███████████████ ███████████████ ***See generally* Lucht Ex. 93.** ███ ███████████████ ███ ***Id.*  For a complete discussion of Lucht Ex. 93, Defendant refers the Court to ¶ 61, *infra*.**

56.24.  During the relevant period, including January 1, 2005 to the commencement of this action, Defendant did not notify investors that an EOD relating to R&W breaches occurred in any of the Trusts.  Reyes Decl. ¶ 34.

*56.24.  Plaintiff's Response:  Disputed to the extent this paragraph suggests that EODs had not occurred in the Trusts.  CBCSUF ¶¶ 1537-1755.  Undisputed that during the relevant period, including January 1, 2005 to the commencement of this action, Defendant did not notify investors that an EOD relating to R&W breaches occurred in any of the Trusts.*

**56.24.** <u>Defendant's Reply</u>: **Plaintiff's response does not specifically controvert ¶ 56.24, and so this material fact should be deemed admitted.** *See* **Local Rule 56.1(c).**

**Plaintiff's purported "dispute" regarding the alleged occurrence of EODs is irrelevant to whether Defendant notified investors that an EOD relating to R&W breaches occurred in any of the Trusts.**

**Plaintiff's citation to over 200 paragraphs of its CBCSUF also does not satisfy Plaintiff's burden of supporting its response with any evidence.** *See* **Local Rule 56.1(d).  Defendant restates CB-PSUF-Reply ¶¶ 1537 – 1755 and incorporates them by reference.**

56.25.  There is no evidence that any other deal party notified investors that an EOD relating to R&W breaches occurred in any of the Trusts.

*56.25.  <u>Plaintiff's Response</u>:  Disputed to the extent this paragraph suggests that EODs had not occurred in the Trusts.  CBCSUF ¶¶ 1537-1755.  Undisputed that during the relevant period, including January 1, 2005 to the commencement of this action, Defendant did not notify investors that an EOD relating to R&W breaches occurred in any of the Trusts.*

**56.25.** <u>Defendant's Reply</u>:  **Plaintiff's response does not specifically controvert ¶ 56.25, and so this material fact should be deemed admitted.** *See* **Local Rule 56.1(c).**

**Plaintiff's purported "dispute" regarding whether EODs occurred in any of the Trusts is irrelevant to whether any other deal party notified investors that an EOD relating to R&W breaches occurred in any of the Trusts.**

**Plaintiff's citation to over 200 paragraphs of its CBCSUF also does not satisfy Plaintiff's burden of supporting its response with any evidence.  *See* Local Rule 56.1(d).  Defendant restates CB-PSUF-Reply ¶¶ 1537 – 1755 and incorporates them by reference.**

>  ### iii.  *Before January 1, 2012, Commerzbank knew (i) of allegations of incomplete mortgage custody files, servicer robo-signing and other alleged post-default servicing misconduct and (ii) that Defendant had not declared EODs relating to those allegations*

57. Before January 1, 2012, Commerzbank knew of allegations that (i) RMBS trusts allegedly contained loans with incomplete mortgage custody files; (ii) RMBS servicers allegedly failed to cause the repurchase or substitution of loans with incomplete documentation and instead allegedly fabricated documents necessary to foreclose (i.e., "robo-signing"), and (iii) RMBS servicers were allegedly cheating borrowers and the Trusts after defaults by borrowers, including by not adequately maintaining real-estate owned ("REO") properties.

*57. Plaintiff's Response:  This paragraph cites no record evidence, and thus, no response is required.  To the extent a response is required, disputed.*

**57. Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 57, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).  This paragraph is supported and continued in subparagraphs 57.1 – 57.9.2 below and the record evidence cited therein, which follows this numbered paragraph in accordance with Local Rule 56.1(d).**

57.1.  ██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████

    *57.1.   <u>Plaintiff's Response</u>:  Disputed to the extent that this paragraph ignores*

*the context surrounding* ████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████  *Biron Ex. 83 at*

*CB_DB02938594-CB_DB02938600; Biron Ex. 19 at PIMCO-DB000532-PIMCO-*

*DB000538.  Further disputed because this paragraph suggests that* ████████

████████████████████████████████████████████████

██████████████████████████████████████████

██████  *Undisputed that the quoted language appears in* ██████████

    **57.1.  <u>Defendant's Reply</u>:  Plaintiff's response does not specifically**

**controvert ¶ 57.1, and so this material fact should be deemed admitted.  *See***

***Local Rule 56.1(c).***

    **Plaintiff's purported "dispute" regarding the "context" surrounding the**

████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████

█████████████

    **Plaintiff's purported "dispute" regarding** ██████████████████████████

████████████████████ **is also irrelevant.  In any case, Plaintiff is incorrect**

**because** █████████████████████████████████████████████

████████████████████████████████████████████ *E.g.*, **Biron CB-**
**Ex. 83 at** ████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████

████ **; Biron CB-Ex. 19 at PIMCO-DB000655** ████████████████

██████████████████████████████████████████

████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

██████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████

████████

57.1.1. The ████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████

57.1.1.  *Plaintiff's Response*:  *Disputed.  This paragraph suggests that*

████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████

147

███████████████████████████

████████████████████████████

███████████████████████████

██████████   *Undisputed that the quoted language appears in* ██

███

**57.1.1.   <u>Defendant's Reply</u>:  Plaintiff's response does not specifically controvert ¶ 57.1.1, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

**Plaintiff's purported "dispute"** ███████████████

████████████████████████████

███████████████████████████

████████████████████████████

███████████████████████████

███████████████████████████

████████████████

57.1.2.   █████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

██████████████████████████

███████████████████████████████████████████████

████

57.1.2.  *Plaintiff's Response*:  *Disputed to the extent that this*

*paragraph suggests that* ████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████  *Undisputed that the quoted*

*language appears in* ████████

**57.1.2.  Defendant's Reply:  Plaintiff's response does not**

**specifically controvert ¶ 57.1.2, and so this material fact should be**

**deemed admitted.  *See* Local Rule 56.1(c).**

**Plaintiff's purported "dispute" regarding** ███████████

███████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

57.2.   [RESERVED]

149

57.3.  █████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

57.3.   *Plaintiff's Response*:  *Disputed.  Undisputed that* █████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████  *Biron Ex. 104.*

57.3.   <u>**Defendant's Reply**</u>:  **Plaintiff's response does not specifically controvert ¶ 57.3, and so this material fact should be deemed admitted.**  ***See Local Rule 56.1(c).***  **Plaintiff's response that this material fact is "[d]isputed" is general and unsupported by any evidence.**

57.4.  ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████

57.4.   *Plaintiff's Response*:  *Disputed.  The evidence cited* ██████████████

████████████████████████████████████████████████

████████████████████████████████████████████████



**57.4.   <u>Defendant's Reply</u>:  Plaintiff's response does not specifically controvert ¶ 57.4, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

**Plaintiff's argument that**

███████████████████████ ███████████
███████████████████

███████████████████████████████████████

57.4.1. [RESERVED]

57.4.2. ████████████████████████████

███████████████████████████████████

███████████████████████████

*57.4.2. <u>Plaintiff's Response</u>: Disputed to the extent that this*

*paragraph and the cited evidence* ███████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████

██████████████████ *Undisputed that* ████████████

██████████████████████████████████████

**57.4.2. <u>Defendant's Reply</u>: Plaintiff's response does not**

**specifically controvert ¶ 57.4.2, and so this material fact should be**

**deemed admitted. *See* Local Rule 56.1(c).**

**Plaintiff's purported "dispute" regarding** ██████████████

███████████████████████████████████████ **is irrelevant**

**to this paragraph and unsupported by any evidence.**

57.5.  On October 25, 2010, Defendant sent a notice to investors in RMBS trusts,

including the Trusts, with respect to which Defendant acts as trustee concerning

allegations of servicer misconduct.  Reyes Decl. ¶ 16; Reyes Ex. C (Notice to Holders

Re:  Certain Allegations Regarding Loan Servicer Foreclosure Practices, October 25, 2010).

       57.5.   *Plaintiff's Response:  Disputed.  Paragraph 16 of the Reyes declaration indicates that the October 25, 2010 notice was not sent to individual investors, but instead was sent to DTC and made available to investors on DB's investor website. Undisputed that DB publicly disseminated the October 25, 2010 notice.*

       **57.5.   Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 57.5, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).  As Mr. Reyes declared:**

> **Defendant sent an informational notice to certificateholders regarding the memoranda on or about October 25, 2010. . . . Defendant distributed the October 25, 2010 notice to investors by: (i) emailing a copy of the informational notice to DTC, pursuant to the regular procedures of Defendant and DTC for such postings; and (ii) posting a copy of the informational notice to the Trustee-maintained website where investors may access statements relating to the Trusts.**

**Reyes CB-Decl. ¶ 16.**

       57.5.1. The October 25, 2010 notice informed investors of the allegations that servicers had (i) engaged in deficient practices relating to foreclosure proceedings, (ii) used "robo-signed" documents in connection with foreclosure proceedings, (iii) failed to adequately maintain REO properties, and/or (iv) otherwise failed to comply with federal, state, and local laws in connection with foreclosures and REO property maintenance.  *Id.*

       57.5.1.  *Plaintiff's Response:  Undisputed.*

**57.5.1.  <u>Defendant's Reply</u>:  Plaintiff's response does not specifically controvert ¶ 57.5.1, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

57.5.2. Attached to the October 25, 2010 investor notice were three memoranda Defendant had sent to servicers of RMBS trusts, including the Trusts, in August 2007, July 2008, and October 2010 regarding the allegations concerning servicing conduct.  *Id.*  In those memoranda, Defendant requested, among other things, that the servicers "assure that all foreclosures and all actions with respect to REO properties (including actions affecting tenants on such properties) are conducted in compliance with all federal, state and local rules and regulations."  *Id.* at DBNTC_COMMERZBANK_00001748506.

*57.5.2.  <u>Plaintiff's Response</u>:  Disputed.  The language is misquoted. The July 28, 2008 notice states that the servicers must "assure that they conduct all foreclosures and other actions with respect to REO properties (including actions affecting tenants of such properties) in compliance with all federal, state, and local laws, rules, regulations and court procedures." Reyes Decl. Ex. C at DBNTC_COMMERZBANK_00002550692.  Undisputed that three memoranda were attached to the October 25, 2010 notice.*

**57.5.2.  <u>Defendant's Reply</u>:  Plaintiff's response does not specifically controvert ¶ 57.5.2, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

First, Plaintiff's response does not specifically controvert the first sentence of ¶ 57.5.2, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).

Second, Plaintiff's response does not specifically controvert that, in the August 2007 memorandum, Defendant requested, among other things, that the servicers "assure that all foreclosures and all actions with respect to REO properties (including actions affecting tenants on such properties) are conducted in compliance with all federal, state and local rules and regulations."  Reyes CB-Ex. C (Notice to Holders Re:  Certain Allegations Regarding Loan Servicer Foreclosure Practices, October 25, 2010) at DBNTC_COMMERZBANK_00002550696.  Thus this material fact should be deemed admitted.  *See* Local Rule 56.1(c).

Defendant does not dispute that the July 28, 2008 memorandum also states "servicers must exercise diligence to assure that they conduct *all* foreclosures and other actions with respect to REO properties (including actions affecting tenants of such properties) in compliance with all federal, state, and local laws, rules, regulations and court procedures."  Reyes CB-Ex. C (Notice to Holders Re: Certain Allegations Regarding Loan Servicer Foreclosure Practices, October 25, 2010) at DBNTC_COMMERZBANK_00002550692.  But this does not controvert Defendant's statement in this paragraph. Both the July 2008 memorandum and the October 2010

**memorandum enclosed copies of the August 2007 memorandum,**
**which included the language quoted by Defendant in this paragraph.**
***Id.* at DBNTC_COMMERZBANK_00002550690,**
**DBNTC_COMMERZBANK_00002550692; *see id.* at**
**DBNTC_COMMERZBANK_00002550696.**

57.5.3. The October 25, 2010 notice also informed investors "that the governing documents for securitization trusts typically allow holders of a requisite percentage in principal amount of securities to direct the time, place and manner of any remedial actions by [Defendant], subject to conditions stated in the governing agreements.  In that regard, any such instructions or other communications concerning these issues should be directed to [Defendant]." *Id.* at DBNTC_COMMERZBANK_00001748498.  The notice provided Defendant's mailing address, telephone number and email address.  *Id.*

57.5.3.  *Plaintiff's Response*:  *Undisputed that the quoted language appears in the October 25, 2010 notice.*

**57.5.3.  Defendant's Reply:  Plaintiff's response does not**
**specifically controvert ¶ 57.5.3, and so this material fact should be**
**deemed admitted.  *See* Local Rule 56.1(c).**

57.5.4. Defendant distributed the October 25, 2010 notice to investors by:  (i) emailing a copy of the October 25, 2010 notice to the DTC, pursuant to the regular procedures of Defendant and DTC for such postings; and (ii) posting a copy of the October 25, 2010 notice to the Defendant-maintained website where investors may access statements relating to the Trusts.  Reyes Decl. ¶ 16.  Since it

was posted, the October 25, 2010 notice has been (and continues to be) available

on the Defendant-maintained website for investors to review.  *See id.*

> 57.5.4.  *Plaintiff's Response:  Disputed because lacks evidence to*
>
> *confirm how DB distributed the October 25, 2010 notice and how long it*
>
> *has been on DB's website.*

> **57.5.4.  Defendant's Reply: Plaintiff's response does not**
>
> **specifically controvert ¶ 57.5, and so this material fact should be**
>
> **deemed admitted.  *See* Local Rule 56.1(c).  As Mr. Reyes declared:**

> > **Defendant sent an informational notice to**
> > **certificateholders regarding the memoranda on**
> > **or about October 25, 2010. . . . Defendant**
> > **distributed the October 25, 2010 notice to**
> > **investors by: (i) emailing a copy of the**
> > **informational notice to DTC, pursuant to the**
> > **regular procedures of Defendant and DTC for**
> > **such postings; and (ii) posting a copy of the**
> > **informational notice to the Trustee-maintained**
> > **website where investors may access statements**
> > **relating to the Trusts.**

> **Reyes CB-Decl. ¶ 16.**

57.6.    According to Commerzbank, allegations concerning robo-signing and the

other purported servicing issues were publicly disclosed before 2012 in "high profile

government investigations, lawsuits and press coverage."  SAC ¶¶ 133; Biron CB-Ex. 63

(Chart:  Commerzbank's Allegations of Pre-2012 Public Information About Servicer

Misconduct).

> 57.6.    *Plaintiff's Response:  Undisputed that paragraph 133 of the SAC refers to*
>
> *government investigations, lawsuits and press coverage concerning robo-signing, but*

*disputed that there was any available information to CB to determine if robo-signing*

*impacted loans in the Covered Trusts.*

**57.6.   Defendant's Reply:   Plaintiff's response does not specifically controvert ¶ 57.6, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

**Plaintiff's purported "dispute" "that there was any available information to [Commerzbank] to determine if robo-signing impacted loans in the Covered Trusts" is irrelevant to this paragraph and unsupported by any evidence.**

57.6.1. In addition to the publicly available information cited in the SAC about alleged "robo-signing" and other purported post-default misconduct by servicers, there were other legal proceedings, government actions, and news reports concerning those allegations that were publicly disclosed before January 1, 2011.  Biron CB-Ex. 147 (Michael Orey, Dirty Deeds, Bloomberg Businessweek (January 7, 2008)).  Biron CB-Ex. 148 (Jason Czep, Cities Grapple with Surge in Abandoned Homes, Reuters (Mar. 24, 2008)); Biron CB-Ex. 146 (Alex Kotlowitz, All Boarded Up, New York Times Magazine (March 24, 2009)); Biron CB-Ex. 143 (Complaint, CHRP v. DBTCA, No. 1:08-cv-31389 (Dec. 15, 2008)); Biron CB-Ex. 144 (Amended Complaint, CHRP v. DBTCA, No. 1:08-cv-03003, Dkt. #63 (Dec. 13, 2010)); Biron CB-Ex. 145 (Mark Gillispie, Fight Is on to Get Bank to Deal with Local Sites, 2010 WLNR 25229954, Cleveland Plain Dealer (Dec. 21, 2010)).

57.6.1.   *Plaintiff's Response*:  *Disputed to the extent this paragraph suggests the cited evidence relates to servicing conduct in the Covered Trusts, or that Commerzbank received it.*

**57.6.1.  Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 57.6.1, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

**Plaintiff's purported "dispute" regarding whether "the cited evidence related to servicing conduct in the Covered Trusts, or that Commerzbank received it," is irrelevant to this paragraph and unsupported by any evidence.**

57.7.   There is no evidence that Commerzbank informed Defendant that, absent a direction from the contractually specified percentage of investors, it should (much less, was required to) investigate the servicing of loans in the Trusts.

57.7.   *Plaintiff's Response*:  *Disputed.*  ██████████████████
███████████████████████████████████
███████████████████████████████████
██████████████████████████████████
██████████████████████████████████
█████████████████████████████████
████████████████████████████████
████████████████████████████████████
███████████████████████████████████
████████████████████████████  *See* *Lucht Ex. 93*



(█████████████) *at DBNTC PHOENIX LIGHT 00001833183.* ████████

*Id.*

**57.7.**   **Defendant's Reply:**  Lucht Ex. 93, which is duplicative of Biron CB-Ex. 102, ██████████████████████

**Rather, Lucht Ex. 93 demonstrates that—**████████

**For a complete discussion of Lucht Ex. 93, Defendant refers the Court to ¶ 61,**

*infra.*

**The last paragraph of Plaintiff's response is irrelevant to whether there is any evidence that Commerzbank informed Defendant that, as Commerzbank now alleges, Defendant should (much less, was required to) investigate or take the other action absent investor direction.**

57.8.   There is no evidence that Commerzbank asked Defendant if it was investigating the servicing of loans in the Trusts.

*57.8. Plaintiff's Response:  Disputed.* 

*Lucht*

*Ex. 93 (⬛⬛⬛⬛⬛⬛⬛) at DBNTC PHOENIX LIGHT 00001833183.*

**57.8.   Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 57.8, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

***See generally* Lucht Ex. 93.**

███████████   *Id.*  **For a complete discussion of Lucht Ex. 93, Defendant refers the Court to ¶ 61, *infra*.**

57.9.    Before January 1, 2012, Commerzbank knew that Defendant had not declared EODs in the Trusts relating to allegations that (i) RMBS trusts contained loans with incomplete mortgage custody files; (ii) RMBS servicers failed to cause the repurchase or substitution of loans with incomplete documentation and engaged in "robo-signing," and (iii) RMBS servicers were cheating borrowers and the Trusts after defaults by borrowers, including by not adequately maintaining REO properties.

*57.9.    Plaintiff's Response:  This paragraph cites no record evidence, and thus, no response it required.  To the extent a response is required, disputed.*

**57.9.    Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 57.9, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

**This paragraph is supported and continued in subparagraphs 57.9.1 – 57.9.2 below and the record evidence cited therein, which follows this numbered paragraph in accordance with Local Rule 56.1(d).**

57.9.1. During the relevant period, including January 1, 2005 to the commencement of this action, Defendant did not notify investors that an EOD relating to incomplete mortgage custody files or material servicer breaches occurred in any of the Trusts.  Reyes Decl. ¶¶ 33-34.

*57.9.1.    Plaintiff's Response:  Disputed to the extent this paragraph suggests that EODs had not occurred in the Trusts.  CBCSUF ¶¶ 1537-1755.  Undisputed that during the relevant period, including January 1,*

*2005 to the commencement of this action, Defendant did not notify*

*investors that an EOD relating to incomplete mortgage custody files or*

*material servicer breaches occurred in any of the Trusts.*

**57.9.1.  Defendant's Reply:  Plaintiff's response does not**

**specifically controvert ¶ 56.24, and so this material fact should be**

**deemed admitted.  *See* Local Rule 56.1(c).**

**Plaintiff's purported "dispute" regarding the alleged occurrence**

**of EODs is irrelevant to whether Defendant notified investors that an**

**EOD relating to incomplete mortgage custody files or material**

**servicer breaches occurred in any of the Trusts.**

**Plaintiff's citation to over 200 paragraphs of its CBCSUF also does**

**not satisfy Plaintiff's burden of supporting its response with any**

**evidence.  *See* Local Rule 56.1(d).  Defendant restates CB-PSUF-**

**Reply ¶¶ 1537 – 1755 and incorporates them by reference.**

57.9.2. There is no evidence that any other deal party notified investors that an

EOD relating to incomplete mortgage custody files or material servicer breaches

occurred in any of the Trusts.

*57.9.2.  Plaintiff's Response:  Disputed to the extent this paragraph*

*suggests that EODs had not occurred in the Trusts.  CBCSUF ¶¶ 1537-*

*1755.  Undisputed that during the relevant period, including January 1,*

*2005 to the commencement of this action, Defendant did not notify*

*investors that an EOD relating to R&W breaches occurred in any of the*

*Trusts.*

**57.9.2.   Defendant's Reply:**  Plaintiff's response does not specifically controvert ¶ 56.25, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).

Plaintiff's purported "dispute" regarding the existence of EODs is irrelevant to whether any other deal party notified investors that an EOD relating to incomplete mortgage custody files or material servicer breaches occurred in any of the Trusts.

Plaintiff's citation to over 200 paragraphs of its CBCSUF also does not satisfy Plaintiff's burden of supporting its response with any evidence.  *See* Local Rule 56.1(d).  Defendant restates CB-PSUF-Reply ¶¶ 1537 – 1755 and incorporates them by reference.

Plaintiff's response regarding whether Defendant notified investors that an EOD relating to R&W breaches occurred in any of the Trusts is also irrelevant to this paragraph.

iv.   *Before January 1, 2012, Commerzbank knew that after Defendant declared EODs in certain Trusts in 2009 and 2010, it was not investigating (i) whether loans in those Trusts could be put back to Warrantors or (ii) whether servicers for those Trusts were breaching their obligations*

58. Between August 2008 and September 2010, Defendant notified investors that an EOD had occurred in the eight Trusts identified on Ex. 29 (the "Loss EODs"), and informed investors that they could direct Defendant to take action with respect to those EODs.  Biron CB-Ex. 29 (Chart:  Loss EODs).

*58  <u>Plaintiff's Response</u>:  Disputed to the extent this paragraph suggests that these*

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████   *See Handlin Ex.*

*701; Biron Ex. 112 (DBNTC_COMMERZBANK_00000032393); Handlin Ex. 705; Kane Ex.*

*464 (DBNTC_COMMERZBANK_00002123047); Biron Ex. 109*

*(DBNTC_COMMERZBANK_00002123233); Handlin Ex. 751; Handlin Ex. 744; Handlin*

*Ex. 711. Undisputed that* ████████████████████████████████

████████████████

**58. Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 58,
and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

58.1.   ████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████

    58.1.   *Plaintiff's Response:*  Undisputed that ████████████████

████████████████████████████████

████████████████████

**58.1.   Defendant's Reply:  Plaintiff's response does not specifically
controvert ¶ 58.1, and so this material fact should be deemed admitted.  *See*
Local Rule 56.1(c).**

58.2.   ████████████████████████████████

████████████████████████████████

██████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

███████████████████████████

*58.2.*   <u>*Plaintiff's Response*</u>:  *Undisputed that* ████████████████

█████████████████████████████████████

█████████████████████

**58.2.**   <u>**Defendant's Reply**</u>:  **Plaintiff's response does not specifically controvert ¶ 58.2, and so this material fact should be deemed admitted.**  ***See Local Rule 56.1(c).***

58.3.   ████████████████████████████████

█████████████████████████████████████

██████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████

██████████████████

*58.3.*   <u>*Plaintiff's Response*</u>:  *Undisputed that* ████████████████

█████████████████████████████████████

████████████████████

**58.3.** __Defendant's Reply__:  **Plaintiff's response does not specifically controvert ¶ 58.3, and so this material fact should be deemed admitted.**  *See* **Local Rule 56.1(c).**

58.4. ███████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████

58.4. *__Plaintiff's Response__:  Undisputed that* ███████████████

████████████████████████████████████████

███████████████████████████

**58.4.** __Defendant's Reply__:  **Plaintiff's response does not specifically controvert ¶ 58.4, and so this material fact should be deemed admitted.**  *See* **Local Rule 56.1(c).**

58.5. ██████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

58.5.   *Plaintiff's Response*:  Undisputed that ████████████

██████████████████████████████████████

████████████████

**58.5.   Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 58.5, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

58.6.   ████████████████████████

██████████████████████████████████████

████████████████████████████████

██████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████

58.6.   *Plaintiff's Response*:  Undisputed that ████████████

██████████████████████████████████

████████████████████

**58.6.   Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 58.6, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

58.7.   ██████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████

58.7.   *Plaintiff's Response*:  Undisputed that ████████████████████

██████████████████████████████████████████████████

█████████████████████████████

**58.7.**   **Defendant's Reply**:  **Plaintiff's response does not specifically controvert ¶ 58.7, and so this material fact should be deemed admitted.**  ***See Local Rule 56.1(c).***

58.8.   ████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████

58.8.   *Plaintiff's Response*:  Undisputed that ████████████████████

██████████████████████████████████████████████████

█████████████████████████████

**58.8.**   **Defendant's Reply**:  **Plaintiff's response does not specifically controvert ¶ 58.8, and so this material fact should be deemed admitted.**  ***See Local Rule 56.1(c).***

58.9.    Defendant distributed each of those notices to investors by:  (i) emailing the notice to the DTC, pursuant to the regular procedures of Defendant and DTC for such postings; and/or (ii) posting the notice to the Defendant-maintained website where investors may access statements relating to the Trusts.  Reyes Decl. ¶ 35.

58.9.    *Plaintiff's Response*:  *Undisputed to that this was stated in the Declaration of Ronaldo Reyes, however, Defendants have cited no record evidence in its support.*

**58.9.    Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 58.9, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).  Reyes CB-Decl. ¶ 35 is "evidence that would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  *See* Local Rule 56.1(d).**

58.10.   

58.10.  *Plaintiff's Response*:  *Disputed.* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Biron Ex. 29 (Chart:  Loss EODs, referencing GSAMP 2005-WMC1, GSAMP 2005-WMC2, GSAMP 2005-WMC3, SVHE 2005-OPT3, and SVHE 2005-OPT4 trusts); Biron Ex. 69 (Chart:  Assignors of Certificates to Commerzbank, referencing GSAMP 2005-WMC1, GSAMP 2005-WMC2, GSAMP 2005-WMC3, SVHE 2005-OPT3, and SVHE

170

*2005-OPT4 trusts).  Undisputed that* ███████████████████████████

███████████████████████████

**58.10.  Defendant's Reply:** ██████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

████████████████

59. [RESERVED]

60. There is no evidence that after Defendant declared the Loss EODs, Commerzbank asked whether Defendant was investigating (i) whether loans in the relevant Trusts could be put back to Warrantors or (ii) whether servicers for those Trusts had failed to cause the repurchase or substitution of loans with incomplete documentation and engaged in "robo-signing," or were cheating borrowers and those Trusts after defaults by borrowers, including by not adequately maintaining REO properties.

    60.    *Plaintiff's Response:  This paragraph cites no record evidence, and thus, no response is required.  To the extent a response is required, disputed.*

**60. Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 60, and so this material fact should be deemed admitted.  Plaintiff's response that this material fact is "[d]isputed" is general and unsupported by any evidence.**

61. There is no evidence that Commerzbank informed Defendant that it should (much less, was required to) conduct any investigation absent a direction from the contractually specified percentage of investors.

*61. Plaintiff's Response:  Disputed.* ██████████████████████

████████████████████████████████████████

██████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████ *Further, this fact*

*is immaterial because DB is required to comply with its contractually specified duties*

*regardless of whether an investor or other deal party instructs it to do so.*

**61. Defendant's Reply:** ████████████████████████

██████████████████████████████████████

██████████████████████████████████

███████████████████████████████████

██████████████████████████████████

█████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

**Plaintiff has no evidence that the** ████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████

█████████████████████ *See ¶¶ 56.19.2-56.19.4, supra.*

███████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

173



**SAC ¶¶ 78 – 81, 88 – 90, 94 – 97, 114; *see also id.* at Ex. F.**

**The last sentence of Plaintiff's response is improper legal argument, unsupported by any evidence.  Moreover, this fact is material for the reasons set forth in Defendant's memoranda of law in support of this motion.**

> ***v.   Before January 1, 2014 (i.e., German limitations cut off for claims first asserted in the SAC), Commerzbank knew that after Defendant declared EODs in certain Trusts in 2012, it did not investigate (i) whether loans in those Trusts could be put back to Warrantors or (ii) whether servicers for those Trusts were breaching their obligations***

62. In February 2012, Defendant notified investors that EODs occurred in four Trusts identified on Exhibit 30 because a rating agency downgraded the ratings of one of those Trusts' loan servicers, Ocwen Loan Servicing LLC (the "2012 Downgrade EODs").  Biron CB-Ex. 21 (Feb. 17, 2012 Notice of Servicer Event of Default).

174

62. *Plaintiff's Response*:  Undisputed.

**62. Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 62, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**



62.1.  *Plaintiff's Response*:  Undisputed that

**62.1.   Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 62.1, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

---

[9]      **Defendant's Note:** In its response to Defendant's statement of undisputed material facts, Plaintiff replaced Defendant's ¶ 62.1 with the following: "Undisputed that ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*"

62.2.   Defendant distributed that notice to investors by:  (i) emailing the notice to the DTC, pursuant to the regular procedures of Defendant and DTC for such postings; and (ii) posting the notice to the Defendant-maintained website where investors may access statements relating to the Trusts.  Reyes Decl. ¶ 35.

62.2.   *Plaintiff's Response*:  *Undisputed to the extent this was stated in the Declaration of Ronaldo Reyes, however, Defendants have cited no record evidence in its support.*

**62.2.   Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 62.2, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).  Reyes CB-Decl. ¶ 35 is "evidence that would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  *See* Local Rule 56.1(d).**

62.3.   ████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████

62.3.   *Plaintiff's Response*:  *Undisputed.*

**62.3.   Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 62.3, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

63. [RESERVED]

64. There is no evidence that after Defendant declared the 2012 Downgrade EODs, any of Commerzbank asked whether Defendant was investigating (i) whether loans in the relevant Trusts could be put back to Warrantors or (ii) whether servicers for those Trusts had failed to

cause the repurchase or substitution of loans with incomplete documentation and engaged in

"robo-signing," or were cheating borrowers and those Trusts after defaults by borrowers,

including by not adequately maintaining REO properties.

     64. *Plaintiff's Response*:  Disputed.  ███████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████

████████████████████████

     **64. <u>Defendant's Reply</u>**:  Plaintiff cites ██████████████████████

██████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████



**is irrelevant to whether** ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **The last sentence of**

**Plaintiff's response is likewise irrelevant to this paragraph.**

> ### vi.   *In 2011, investors sued RMBS trustees based on the same types of allegations made in this action*

65. In 2011, investors commenced four actions against RMBS trustees based on the same types of allegations made in this action (i.e., based on widespread allegations, the trustee was supposedly required to take action).  Biron CB-Ex. 9 (Compl., *Knights of Columbus v Bank of N.Y. Mellon*, No. 651442/2011, NYSCEF No. 1-1 (N.Y. Sup. Ct. May 26, 2011); Biron CB-Ex. 11 (Compl., *Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chicago v. Bank of N.Y. Mellon*, No. 11-cv-5459, Dkt.#1 (S.D.N.Y. Aug. 5, 2011)); Biron CB-Ex. 13 (Compl., *Okla. Police Pension & Ret. Sys. v. U.S. Bank Nat'l Ass'n*, No. 11-cv-8066, Dkt.#1 (S.D.N.Y. Nov. 9, 2011)); Biron CB-Ex. 15 (Compl., *Am. Fid. Assurance Co. v. Bank of N.Y. Mellon*, No. CIV-11-1284-D, Dkt. #1 (W.D. Okla. Nov. 1, 2011)).

65. *Plaintiff's Response:  Disputed.  None of these actions involved Trusts at issue here. Biron Ex. 9 at 1; Biron Ex. 11 at Exhibit A; Biron Ex. 13 at 1; Biron Ex. 15 at Exhibit 1. Additionally, Commerzbank's complaint against Defendant contains materially different allegations.*

**65. Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 65, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

**Plaintiff's response that "None of these actions involved Trusts at issue here" is irrelevant to whether investors commenced four actions in 2011 against RMBS trustees based on the same types of allegations in this action.  Plaintiff's response that "Commerzbank's complaint against Defendant contains materially different allegations" is improper legal argument, unsupported by a citation.**

65.1.    The court granted the trustee summary judgment in one of those actions. Biron CB-Ex. 16 (Order, *Am. Fid. Assurance Co. v. Bank of N.Y. Mellon*, No. CIV-11-1284-D, Dkt. #282 (W.D. Okla. Oct. 31, 2018)).

   *65.1.    Plaintiff's Response:  Undisputed.  This fact is immaterial because the action cited involved different trusts, a different defendant, different legal theories, and a wholly distinct factual record.*

   **65.1.    Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 65.1, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).  The last sentence of Plaintiff's response is improper legal argument, unsupported by any evidence.  Moreover, this fact is material for the reasons set forth in Defendant's memoranda of law in support of this motion.**

65.2.    Two of those actions were voluntarily dismissed.  Biron CB-Ex. 14 (Final Judgment & Order of Dismissal with Prejudice, *Oklahoma Police Pension & Ret. Sys. v. U.S. Bank Nat'l Ass'n*, No. 11-cv-8066, Dkt.#130 (S.D.N.Y. Jul. 24, 2015)); Biron CB-Ex. 12 (Order, *Ret. Bd. of the Policemen's Annuity and Benefit Fund of the City of Chicago v. Bank of N.Y. Mellon*, No. 11-cv-5459, Dkt.#203 (S.D.N.Y. Aug. 26, 2016)).

   *65.2.    Plaintiff's Response:  Disputed.  Commerzbank understands that the <u>Oklahoma Police Pension</u> case was settled.  Biron Ex. 14 (Final Judgment & Order*

*of Dismissal with Prejudice, <u>Oklahoma Police Pension & Ret. Sys. v. U.S. Bank Nat'l</u>*

*<u>Ass'n,</u> No. 11-cv-8066, Dkt.#130 (S.D.N.Y. Jul. 24, 2015))*

> **65.2.   <u>Defendant's Reply</u>:  Plaintiff's response does not specifically controvert ¶ 65.2, and so it should be deemed admitted.  *See* Local Rule 56.1(c).**

65.3.    One action is pending in New York state court (although most claims have been dismissed).  Biron CB-Ex. 10 (Docket, *Knights of Columbus v. Bank of N.Y. Mellon*, No. 651442/2011 (N.Y. Sup. Ct.)); *Commerce Bank v. Bank of New York Mellon*, 141 A.D.3d 413, 413, 35 N.Y.S.3d 63, 63 (N.Y. App. Div. 2016) (*modifying Knights of Columbus v. the Bank of New York Mellon*, No. 651442/11, 2013 WL 1822565, at *10 (N.Y. Sup. Ct. Apr. 26, 2013) and *Knights of Columbus v. the Bank of New York Mellon*, No. 651442/2011, 2015 WL 4501196, at *1 (N.Y. Sup. Ct. July 10, 2015)).

> *65.3.   <u>Plaintiff's Response</u>:  Disputed, and refers to the docket for that case for the complete contents of decisions in that case.*

> **65.3.   <u>Defendant's Reply</u>:  Plaintiff's response does not specifically controvert ¶ 65.3, and so it should be deemed admitted.  *See* Local Rule 56.1(c).**

66. *American Banker* published articles about those lawsuits in 2011, examining the underlying litigation strategy, and explaining how RMBS investors could sue other RMBS trustees for similar supposed breaches.  Biron CB-Ex. 17 ("Trust Banks Sued Over Faulty Records Claim," American Banker, Nov. 15, 2011); Biron CB-Ex. 18 ("Trustees Pulled into Loan Put-Back War," American Banker, June 17, 2011).

> *66. <u>Plaintiff's Response</u>:  Disputed that the cited articles "explained how RMBS investors could sue other RMBS trustees" or that the article "examined" litigation strategy, and refers to the articles for their complete contents.  Biron Ex. 17 ("Trust Banks Sued Over Faulty*

*Records Claim," American Banker, Nov. 15, 2011); Biron Ex. 18 ("Trustees Pulled into*

*Loan Put-Back War," American Banker, June 17, 2011).*

**66. Defendant's Reply:** **Plaintiff's response does not specifically controvert ¶ 66,**

**and so it should be deemed admitted.** *See* **Local Rule 56.1(c).**

**In the June 27, 2011 American Banker article titled, "Trustees Pulled into Loan**

**Put-Back War," Alex Ulam explained:**

> **Many attempted put-backs flamed out after investor coalitions**
> **failed to get the 25% of bondholder votes that pooling and**
> **servicing agreements require for a trustee to be forced to take**
> **action against a mortgage servicer.  But investors don't need to**
> **meet such a threshold to sue the trustees for failing to meet their**
> **obligations.**
>
> **The role of trustees in the mortgage securitization process also**
> **faces new scrutiny.  Attorney Generals Eric Schneiderman of New**
> **York and Joseph Biden 3rd of Delaware are looking into whether**
> **BNY Mellon and Deutsche Bank fulfilled their obligations to**
> **ensure loan files placed into the securities were complete.**

**Biron CB-Ex. 18 at 8.**

**Similarly, in the November 15, 2011 American Banker article titled, "Trust Banks**

**Sued Over Faulty Records Claims," Jeff Horwitz wrote:**

> **In filing its suits, the plaintiffs' firm is seeking class action status**
> **against both BNY Mellon and U.S. Bank, as well as unspecified**
> **damages for losses due to alleged failures in gathering and keeping**
> **records. While the agreements creating mortgage security trusts**
> **often require the trustee's approval before investors can pursue**
> **legal action, the Scott & Scott briefs argue that plaintiffs are free**
> **to sue over custodial matters.**

**Biron CB-Ex. 17 at 1.**

**Ulam also wrote:**

> **Last month the Knights of Columbus sued Bank of New York**
> **Mellon Corp., the trustee for two mortgage-backed securities that**
> **the Catholic fraternal group invested in.  The Plaintiffs' real**
> **target was not named as a defendant: Bank of America Corp.**

**Biron CB-Ex. 18 at 1.  And Horwitz wrote:**

> **Seeking to hold the trustee responsible for the poor performance of mortgage backed securities is an approach that plaintiffs** *[sic]* **attorneys have declined to take previously, given the largely passive role trustees play in administering mortgage securities trusts.  Making the case would require plaintiffs** *[sic]* **attorneys to show that missing documentation was the fault of the trustee or custodian, and that the gaps resulted in an inability to foreclose on properties.**

> **"I don't see that being a frequently repeated situation or a very high-dollar situation," says David Grais of Grais & Ellsworth, who has filed numerous mortgage securities suits on behalf of Federal Home Loan Banks and private investors.**

> **If the plaintiffs are able to demonstrate the trust banks routinely failed to keep track of foundational mortgage documents, however, that would further complicate the process of settling the foreclosure mess nationwide.**

> **Industry attorneys questioned that premise.**

> **"If there really was a serious problem, I think we would already know," says Jeffrey Naimon, an attorney for Buckley Sandler LLP who defends servicers.**

*Id.* **at 2.**

## IV.   THE EVIDENCE ESTABLISHES MANY OF COMMERZBANK'S CLAIMS ARE UNTIMELY UNDER NEW YORK LAW

### A.   <u>Commerzbank's claims that Defendant breached its pre-EOD duties relating to certain alleged R&W breaches are time-barred under New York law</u>

67. On occasion, Defendant received letters from other parties identifying specific loans in a Trust that allegedly breached one or more R&Ws (the "Alleged R&W Loans").  Reyes Decl. ¶ 17; Reyes Ex. F (Repurchase Log).

    *67. <u>Plaintiff's Response</u>:  Disputed.* ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████

**67. <u>Defendant's Reply</u>: Plaintiff's response does not specifically controvert ¶ 67, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

*First*, ██████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████

███████████



***Second,*** █████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
███████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

████████████████████████ **Plaintiff also fails to refute that, as detailed in the Reyes CB-Decl., the allegations of R&W breaches were often contested by the warrantors.  Reyes CB-Decl. ¶ 21.**

68. Defendant received notice of the Alleged R&W Loans on Reyes Exhibit I before December 23, 2009 (i.e., 6 years before the original complaint).  Reyes Ex. I.

*68. <u>Plaintiff's Response</u>:  Undisputed that some notices were dated prior to December 23, 2009.*

**68. Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 68,**

**and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

> **B.  Any claims that arose under the Palmer 3 Certificates before their transfer to Commerzbank are time-barred under New York law**

69. ███████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████

*69. Plaintiff's Response:  Disputed to the extent this paragraph suggests* ████████████

██████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████

**69. Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 69,**

**and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

## V.   DEFENDANT DID NOT BREACH ITS DUTIES BY NOT PURSUING REPURCHASE CLAIMS AGAINST BANKRUPT WARRANTORS

70. The Warrantors on Ex. 31 filed for bankruptcy or were placed into receivership (the "Bankrupt Warrantors"), and the claims bar date in each of those proceedings had passed, before December 23, 2009.  Biron CB-Ex. 31 (Chart:  Bankrupt Warrantors).

*70. Plaintiff's Response:  Disputed.  Fremont Investment & Loan ("Fremont") was never a bankrupt entity or placed into receivership.  Fremont General Corporation ("FGC") was the parent company of Fremont and filed for bankruptcy on June 18, 2008.  However, Fremont was sold and unaffiliated with FGC in April 2008 and therefore was never a*

*bankrupt party. CBCSUF ¶¶ 1425-1448. Further disputed to the extent that the claims bar date listed for Fremont on Biron Ex. 31 is applicable and enforceable because Fremont was never a bankrupt warrantor and therefore, no claims bar date applies. Undisputed that the remaining warrantors filed for bankruptcy and the claims bar dates were before December 23, 2009.*

**70. <u>Defendant's Reply</u>: Plaintiff does not specifically controvert ¶ 70, and so this material fact should be deemed admitted. *See* Local Rule 56.1(c). Plaintiff's response that Fremont "was never a bankrupt party" is false and contradicted by publicly available documents that Fremont (re-named "Fremont Reorganizing Corporation") continued to be a wholly-owned subsidiary of Fremont General Corporation, which had filed for bankruptcy on June 18, 2008. Goff R-Ex. 6 (FGC Form 8-K, dated July 25, 2008) at Item 2.01 (announcing the changing of Fremont's name to "Fremont Reorganizing Corporation," which continued to be a wholly-owned subsidiary of Fremont General Corporation); Biron CB-Ex. 31 (Chart: Bankrupt Warrantors).**

## VI.   PRIOR TO THIS LAWSUIT, DEFENDANT SETTLED AND RELEASED REPURCHASE CLAIMS AGAINST FREMONT INVESTMENT & LOAN

71. The three Trusts on Biron CB-Ex. 64 contain loans originated by Fremont Investment & Loan ("Fremont"). Biron CB-Ex. 64 (Chart: Fremont Settlement Trusts).

*71. <u>Plaintiff's Response</u>: Undisputed that the Trusts listed on Biron Ex. 64 contains loans originated by Fremont Investment & Loan.*

**71. <u>Defendant's Reply</u>: Plaintiff's response does not specifically controvert ¶ 71, and so this material fact should be deemed admitted. *See* Local Rule 56.1(c).**

72. On July 17, 2008, Defendant and Fremont entered into a settlement agreement pursuant to which Defendant released any R&W repurchase claims against Fremont relating to those Trusts.  Biron CB-Ex. 65 (Request for Consent Attaching Trust Settlement Agreement, dated as of July 17, 2008).

*72. Plaintiff's Response:  Disputed to the extent that the settlement entered into was valid and enforceable.  CBCSUF ¶¶ 1425-1448.  Undisputed that Defendants and Fremont entered into a settlement on July 17, 2008.*

**72. Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 72, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

**Plaintiff's purported "dispute" regarding whether the settlement was valid and enforceable is a legal conclusion, to which no response is required, unsupported by any evidence.  Defendant restates CB-PSUF-Reply ¶¶ 1425 – 1448 and incorporates them by reference.**

72.1.   That settlement was approved by investors holding more than 66 2/3% of the voting rights in those Trusts.  Biron CB-Ex. 64 (Chart:  Fremont Settlement Trusts); Biron CB-Ex. 66 (Fremont Settlement Notice of Approval).

*72.1.   Plaintiff's Response:  Undisputed.*

**72.1.   Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 72.1, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

72.2.   The GAs for those Trusts state that Defendant shall not be liable for any action taken or omitted by it in good faith at the direction of investors holding 25% or more of the voting rights.  Biron CB-Ex. 64 (Chart:  Fremont Settlement Trusts); Biron

CB-Ex. 39 (Chart:  Defendant Is Not Liable for Following Direction from Specified Percentage of Holders in Good Faith).

    *72.2.   Plaintiff's Response:  Undisputed.*

    **72.2.   Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 72.2, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

## VII.   DEFENDANT COULD NOT PURSUE UNTIMELY REPURCHASE CLAIMS

73. Both DBNTC and DBTCA administer RMBS trusts, including the Trusts, from offices in Santa Ana, California.  Reyes Decl. ¶ 2.

    *73. Plaintiff's Response:  Undisputed.*

    **73. Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 73, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

74. For the Alleged R&W Loans on Reyes Exhibit J, Defendant received notice of the alleged R&W breaches more than 4 years after the relevant Trust closing date.  Reyes Ex. J.

    *74. Plaintiff's Response:  Disputed.  The evidence cited cannot be verified.  Reyes Exhibit J purports to list row numbers on DB's repurchase log (Reyes Exhibit F) in order to identify loans.  But Reyes Exhibit F (the Commerzbank Repurchase Log) does not contain row numbers.  Thus, it is not possible to identify the loans DB alleges are relevant to this paragraph.  See Reyes Decl. ¶¶ 17-22.*

    **74. Defendant's Reply: Plaintiff's response does not specifically controvert ¶ 74, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**



75. For the Alleged R&W Loans on Reyes Exhibit K, Defendant received notice of the alleged R&W breaches more than 6 years after the relevant Trust closing date.  Reyes Ex. K.

75. *Plaintiff's Response:  Disputed.  The evidence cited cannot be verified.  Reyes Exhibit K lists the rows on the repurchase log that correspond to the Trust in which Deutsche Bank alleges receipt of notice more than six years after the Trust's Closing Date.  Reyes Exhibit F (the Commerzbank Repurchase Log) does not contain row numbers and therefore, the rows identified on Reyes Exhibit K corresponding to the notices allegedly received more than six years after the Closing Date cannot be confirmed.  See Reyes Decl. ¶¶ 17-22; Reyes Ex. F. Further disputed because, based on evidence produced to Plaintiff during discovery, some rows listed on Exhibit K do not exist.  For example, repurchase log row 62106 corresponding to the FFML 2006-FF11 Trust and rows 62070-62073 corresponding to the IXIS 2005-HE3 Trust, as listed on Reyes Exhibit K, contain no data.  Handlin Ex. 558.*

75. **Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 75, and so this material fact should be deemed admitted.  See Local Rule 56.1(c).**



76. The Declared EOD on Exhibit 32 occurred more than 4 years after the relevant Trust

closing date.  Biron CB-Ex. 32 (Chart:  Declared EOD More than 4 Years After Trust Closing

Date).

*76. Plaintiff's Response:  Disputed to the extent that this paragraph suggests the only*

*EOD that occurred in SVHE 2006-OPT5 was the Declared EOD referenced on Exhibit 32.*

*As set forth in Plaintiff's CBCSUF, multiple other EODs pre-dated the identified EOD.*

*CBCSUF ¶¶ 1166-1178.  Furthermore, any facts stated in this paragraph are immaterial*

*because in every trust Deutsche Bank was required to exercise its rights and remedies and*

*exercise the same standard of care that a prudent person would exercise in that person's own affairs while an EOD "was continuing." See, e.g., Handlin Ex. 35 (NHEL 2006-5 PSA) § 8.01 ("If a Servicing Default has occurred and is continuing, the Trustee shall exercise the rights and powers vested in it by this Agreement and use the same degree of care and skill in its exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs."). Thus, Deutsche Bank's duty was continuing and it breached that duty every day that it failed to exercise rights and remedies as required post-EOD.*

**76. Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 76, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

**Plaintiff's purported "dispute" regarding whether other EODs occurred in SVHE 2006-OPT5 is irrelevant to whether the Declared EOD on Biron CB-Ex. 32 occurred more than four years after the Trust's closing date, and unsupported by evidence which would be admissible.  Defendant restates CB-PSUF-Reply ¶¶ 1166-1178 and incorporates them by reference.**

**Plaintiff's response regarding Defendant's duties and obligations under the SVHE 2006-OPT5 PSA is irrelevant to this material fact.  Moreover, every RMBS transaction is governed by unique contracts, and Plaintiff's citation to the NHEL 2006-5 PSA does not support any statement regarding the SVHE 2006-OPT5 transaction or RMBS generally.**

**Plaintiff's arguments regarding the materiality of ¶ 76 and Defendant's duties and obligations under the SVHE 2006-OPT5 PSA are improper legal argument,**

unsupported by the cited evidence.  Moreover, this fact is material for the reasons set forth in Defendant's memoranda of law in support of this motion.

## VIII.   DEFENDANT COMPLIED WITH ITS PRE-EOD DUTIES

### A.   Defendant complied with any R&W notice obligations it had

> #### i.   *The GAs require that, in order for Defendant to have any pre-EOD duty to provide notice of an R&W breach or to enforce repurchase obligations, Defendant must have discovered (or, for certain trusts, discovered or received written notice of) a loan-level R&W breach*

77. Under the GAs for the Trusts on Biron CB-Ex. 54 (the "Discovery-Only Trusts"), if Defendant or another enumerated party "discovers" a material loan-level R&W breach, it is required to provide notice to other specified parties.  Ex. 54 (Chart:  Trusts for Which GAs Provide Defendant Must Provide Notice of R&W Breaches Only Upon Discovery).

*77. Plaintiff's Response:  Undisputed that the Trustee is required to provide notice it if discovers a R&W breach.*

**77. Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 77, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

77.1.   Defendant refers the Court to, *e.g.*, Biron CB-Ex. 6 at § 2.3(d) (SAST 2006-3 SSA Excerpts).

*77.1.   Plaintiff's Response:  [RESERVED]*

**77.1.   Defendant's Reply:  [RESERVED]**

78. Under the GAs for the Trusts on Biron CB-Ex. 55 (the "Discovery/Notice Trusts"), if Defendant or another enumerated party "discovers" or receives written notice of a material loan-level R&W breach, it is required to provide notice to other specified parties.  Ex. 55 (Chart:

Trusts for Which GAs Provide Defendant Must Provide Notice of R&W Breaches Upon

Discovery or Receipt of Written Notice).

*78. Plaintiff's Response:  Undisputed.*

**78. Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 78,**

**and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

78.1.   Defendant refers the Court to, *e.g.*, Biron CB-Ex. 5 § 2.03(a) (Excerpts of

NHEL 2006-5 PSA).

*78.1.   Plaintiff's Response:  [RESERVED]*

**78.1.   Defendant's Reply:  [RESERVED]**

79. Defendant refers the Court to, *e.g.*, Biron CB-Ex. 3 § 2.03(d), (k) (Excerpts of FFML

2006-FF11 PSA)

*79. Plaintiff's Response:  [RESERVED]*

**79. Defendant's Reply:  [RESERVED]**

> ***ii.    For all Discovery-Only Trusts, there is no loan-specific evidence that Defendant "discovered" any R&W breaches***

80. For all the Discovery-Only Trusts (which are listed on Exhibit 54), there is no loan-

specific evidence that Defendant "discovered" an R&W breach in any Trust.  *See* Biron CB-Ex.

54 (Chart:  Trusts for Which GAs Provide Defendant Must Provide Notice of R&W Breaches

Only Upon Discovery).

*80. Plaintiff's Response:  Disputed.  There is substantial evidence that DB discovered*

*R&W breaches.  For example, DB's Repurchase Log records repurchase requests received*

*from third-parties for all of the Trusts listed on Exhibit 54 except for ECR 2005-3, GSAMP*

*2005-HE4, and WAMU 2005-AR13.  Reyes Ex. F.  These repurchase requests contained the*

*specific loans with R&W breaches which provided DB discovery of loan-specific evidence. Even if the repurchase requests did not constitute discovery of a R&W breach for any specific loan, the notices alerted DB to issues with the underlying collateral and therefore, DB should have confirmed the existence of the notice R&W breaches.*



*478, 480, 485, 538, and 540; see also Kane Ex. 31; Kane Ex. 462 (DBNTC_COMMERZBANK_00002046711); Kane Ex. 463 (DBNTC_COMMERZBANK_00000272660); see also generally CBCSUF ¶¶ 1-16; ¶¶ 17-51; ¶¶ 153-186; ¶¶ 187-233; ¶¶ 234-264; ¶¶ 265-315; ¶¶ 347-381; ¶¶ 382-409; ¶¶ 505-545; ¶¶ 546-623; ¶¶ 1064-1098.*

**80. <u>Defendant's Reply:</u>  Plaintiff's response does not specifically controvert ¶ 80, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

Plaintiff' response does not raise a disputed question of fact, but rather highlights a *legal* dispute about the meaning of the contractual term "discovery," which is addressed in the parties' memoranda of law.  *See, e.g.*, CB-Br. 32-34.  When a GA says the Defendant has a duty that is triggered "upon discovery," that means Defendant's duty is triggered if Defendant is the first party to obtain "actual knowledge" of a loan-level R&W breach.  *See id.*  Plaintiff argues in its opposition brief that the term "discovery" should mean something else.  *See* Opp. 43-49.  But Plaintiff's response to ¶ 80 does not dispute that there is no evidence Defendant ever obtained actual knowledge of the existence of any R&W breaches as to the Discovery-Only Trusts.

*First*, Plaintiff cites to entries on Defendant's repurchase log (Reyes CB-Ex. F) indicating that Defendant received letters alleging that loans in the Discovery-Only Trusts breached R&Ws.  But knowing that an allegation has been made is not the same as knowing whether an R&W breach actually exists.  Indeed, as detailed in the Reyes CB-Decl., the allegations of R&W breaches contained in these letters were often contested by the warrantors.  Reyes CB-Decl. ¶ 21.

*Second*, Plaintiff argues that "if the repurchase requests did not constitute discovery of a R&W breach for any specific loan, the notices alerted DB to issues with the underlying collateral and therefore, DB should have confirmed the existence of the notice R&W breaches."  This is a purely legal argument about Defendant's supposed duties, which should be struck.  It is also unsupported by a citation to evidence.  *See* Local Rule 56.1(d).  Moreover, Plaintiff's response about what Defendant supposedly should have done if it did not discover R&W breaches is irrelevant to Defendant's statement that there is no loan-specific evidence it discovered any R&W breaches in the

Discovery-Only Trusts.  To the extent any response is required, the GAs are clear that Defendant had no duty to "confirm[] the existence" of any alleged R&W breaches. Biron CB-Ex. 35 (Chart:  Defendant Has Only the Duties Expressly Set Forth in the GAs); Biron CB-Ex. 36 (Chart:  No GA Provides That Defendant Has a Duty to Investigate Any Facts or Matters Absent Direction and Indemnity from a Contractually Specified Percentage of Investors); Biron CB-Ex. 37 (Chart:  Defendant May Rely On Any Statement, Opinion or Document It Believes to Be Genuine); Biron CB-Ex. 38 (Chart:  Defendant Is Not Responsible for the Accuracy or Content of Any Certificate, Statement, or Other Instrument Furnished to It).

*Third*, Plaintiff argues that Defendant "sent 2% Letters … which noted that documents required to be included in the Mortgage File were still missing or defective and that the seller or responsible party was required to repurchase loans with uncured exceptions pursuant to the Governing Agreements."  Plaintiff's reference to the 2% letters is irrelevant because Plaintiff has abandoned, and therefore is not entitled to pursue, any claims based upon incomplete or nonconforming mortgage files.  Dkt. #88, ¶ 35 ("Commerzbank's claims do not include claims against Deutsche Bank for breaching its document delivery-related duties.").  To the extent a response is required, the 2% letters did not provide Defendant with actual knowledge of any R&W breaches because Defendant lacked the servicing expertise necessary to determine which documents in a mortgage custody file were necessary to properly service the loans and, thus, whether any missing or nonconforming documents were material.  Reyes CB-Decl. ¶ 14. ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████

**Defendant restates CB-PSUF-Reply ¶¶ 1 – 16, 17 – 51, 153 – 186, 187 – 233, 234-264, 265-315, 347-381, 382-409, 505-545, 546-623, 1064-1098, and incorporates them by reference.**

> *iii.    When Defendant received letters from other parties alleging loan-specific R&W breaches, Defendant satisfied any obligation it had to provide notice of the alleged R&W breaches*

81. With respect to the loans in the Trusts on Reyes Exhibit F, Defendant received letters from other parties alleging loan-specific R&W breaches (such loans, the "Alleged R&W Loans").  Reyes Decl. ¶ 17; Reyes Ex. F (Repurchase Log).

*81. Plaintiff's Response:  Undisputed that DB received notices from third-parties that provided notice to DB of loan-specific R&W breaches.*

**81. Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 81, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

81.1.    The 17 Discovery-Only Trusts on Reyes Ex. L held Alleged R&W Loans. Reyes Decl. ¶ 28; Reyes Ex. L; *see* Reyes Ex. F (Repurchase Log); Biron CB-Ex. 54 (Chart:  Trusts for Which GAs Provide Defendant Must Provide Notice of R&W Breaches Only Upon Discovery).

*81.1.   Plaintiff's Response:  Undisputed that DB received notices from third-parties regarding R&W breaches for the Trusts listed on Reyes Exhibit L.*

**81.1.   Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 81.1, and so this material fact should be deemed admitted.  *See Local Rule 56.1(c).***

81.2.   With respect to the Alleged R&W Loans on Reyes Exhibit F, when Defendant received a letter identifying one or more Alleged R&W Loans, Defendant notified the other parties specified under the relevant GA—regardless of whether the Alleged Breach Loans were in a Discovery-Only or a Discovery/Notice Trust.  Reyes Decl. ¶¶ 18-20; Reyes Exs. D, E, F.

*81.2.   Plaintiff's Response:  Disputed to the extent that this* 

*See, e.g., Lucht Ex. 90 (Plaintiffs' Dep. Ex. 430) at DBNTC PHOENIX LIGHT 00001837969 (*

*).*

**81.2.   Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 81.2, and so this material fact should be deemed admitted.  *See Local Rule 56.1(c).***

81.3.    With respect to the Alleged R&W Loans on Reyes Exhibit H, Defendant received letters from other parties alleging loan-specific R&W breaches by Bankrupt Warrantors after they were debtors in bankruptcy or insolvency proceedings.  Reyes Decl. ¶ 24; Reyes Ex. H.

*81.4. [sic]* <u>*Plaintiff's Response*</u>*:  Disputed to the extent that this paragraph suggests that the only party responsible for repurchase of the affected loans was the Bankrupt Warrantor.  For example, in the MSAC 2005-HE7 and MSAC 2006-HE5 Trusts, there were other deal parties responsible for repurchase of loans with breaches of representations and warranties.  Handlin Ex. 107 (MSAC 2005-HE7 PSA) § 2.03(i), (g) (requiring the Depositor or the Responsible Parties (WMC and Decision One), respectively, to repurchase breaching mortgage loans); Handlin Ex. 109 (MSAC 2006-HE5 PSA) § 2.03(h), (i) (requiring the Responsible Parties (WMC and Decision One) to repurchase breaching mortgage loans).  Undisputed that DB received notices from third-parties for the Trusts listed on Reyes Exhibit H after NC Capital Corporation's bankruptcy filing on April 2, 2007.*

**81.3.    <u>Defendant's Reply</u>:  Plaintiff's response does not specifically controvert ¶ 81.3, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

**Plaintiff's purported "dispute" regarding whether other deal parties were responsible for repurchase of loans in certain Trusts is irrelevant to this paragraph.**

**B.  Defendant complied with any R&W enforcement obligations it had**

82. With respect to the 9 Trusts on Reyes Ex. G, Defendant did not receive written notice of any R&W breach, and there is no loan-specific evidence that Defendant ever "discovered" any R&W breach in those Trusts.  Reyes Decl. ¶ 23; Reyes Ex. G.

*82. Plaintiff's Response:  Disputed.  For example, the IMM 2007-A Trust on Reyes Exhibit G, the responsible party represented and warranted that all documents required to be included in the Mortgage File had been delivered to Deutsche Bank or the custodian.* ████

████████████████████████████████████████████████ *See Handlin Exs. 420, 421, 425-427, 468-469, 476-477, 547-550, and 555-556.* ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ *See also generally CBCSUF ¶¶ 1-16; ¶¶  52-76; ¶¶  77-100; ¶¶  439-477; ¶¶ 478-509; ¶¶ 1099-1178; ¶¶ 1179-1187.  Further disputed because the SVHE 2005-OPT5 Trust listed on Reyes Exhibit G is not an at-issue Trust in this litigation.*

**82. Defendant's Reply: Plaintiff's response does not specifically controvert ¶ 82, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

**Defendant restates CB-PSUF-Reply ¶¶ 1 – 16, 52 – 100, 439 – 509, 1099 – 1187, and incorporates them by reference.**



████████████████████████████████

██████████████████████████████████████

███████████████████████████████████

████████████████████████████████████

███████

### i. Under the GAs for 21 Trusts, Defendant had no duty to enforce any repurchase obligations

83. Defendant refers the Court to Biron CB-Ex. 56 (Chart:  Trusts For Which Defendant Had No Duty to Enforce Any Repurchase Obligations).

*83. Plaintiff's Response:  Plaintiff refers the Court to, e.g., Handlin Ex. 23 § 2.04 (MSAC 2006-HE6 PSA ("The Trustee agrees to hold the Trust Fund and exercise the rights referred to above for the benefit of all present and future Holders of the Certificates.")); Lucht Ex. 123 (Trusts Rights Referred to Above Chart); Handlin Ex. 390 ("Prudent Person Duties Tracking Chart").*

**83. Defendant's Reply:  Defendant refers the Court to Biron CB-Ex. 45 (Chart:  If an EOD is Continuing and Defendant has the Contractually Specified Knowledge Thereof, Defendant Has a Duty to Act as a Prudent Person Under the Circumstances); Goff Ex. 19 (Chart: Many GAs Expressly Address Who Enforces Remedies for R&W Breaches).**

83.1.   [RESERVED]

### ii. Under the GAs for 18 Trusts, Defendant only had an enforcement duty under certain specified conditions, and there is no evidence those conditions were satisfied

84. Defendant refers the Court to Biron CB-Ex. 57 (Chart:  Trusts for which GAs Provide Defendant Has R&W Enforcement Duty Under Specified Conditions).

*84. Plaintiff's Response: [RESERVED]*

**84. Defendant's Reply: [RESERVED]**

84.1.   Defendant refers the Court to, *e.g.*, Biron CB-Ex. 7 § 2.07 (MSIX 2006-2 PSA).

*84.1.   Plaintiff's Response: [RESERVED]*

**84.1.   Defendant's Reply: [RESERVED]**

85. For the Trusts on Biron CB-Ex. 57, there is no evidence that the conditions necessary in order for Defendant to have an enforcement duty were satisfied.  Reyes Decl. ¶ 29; *See* Biron CB-Ex. 57 (Chart:  Trusts for which GAs Provide Defendant Has R&W Enforcement Duty Under Specified Conditions).

*85. Plaintiff's Response:  Disputed.  This paragraph states a legal conclusion which is impermissible for a Rule 56.1 statement and to which no response is required.  To the extent a response is required, Plaintiffs have set forth the evidence demonstrating that the conditions necessary to trigger DB's enforcement duties were triggered for FFML 2005-FF2, FFMl 2006-FF13, GSAA 2006-15, GSAA 2006-16, GSAA 2006-17, GSAA 2007-4, GSAMP 2006-FM3, GSAMP 2006-S4, MSAC 2005-HE7, MSAC 2006-HE5, MSAC 2006-HE6, MSAC 2006-HE8, MSAC 2007-HE1, MSAC 2007-HE2, MSHEL 2005-4, MSHEL 2007-2, MSIX 2006-1 and MSIX 2006-2 and that DB failed to provide notice of R&W breaches for the remaining trusts.  CBCSUF ¶¶ 24-39; ¶¶ 164-174; ¶¶ 202-226; ¶¶ 325-338; ¶¶ 356-366; ¶¶ 635-645; ¶¶ 679-691; ¶¶ 717-729; ¶¶ 784-798; ¶¶ 843-856; ¶¶ 880-890; ¶¶ 911-922; ¶¶ 943-951; ¶¶ 975-988; ¶¶ 1023-1032.*

**85. Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 85, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

**Defendant restates CB-PSUF-Reply ¶¶ 24 – 39, 164 – 174, 202 – 226, 325 – 338, 356 – 366, 635 – 645, 679 – 691, 717 – 729, 784 – 798, 843 – 856, 880 – 890, 911 – 922, 943 – 951, 975 – 988, 1023 – 1032.**

> ### iii. To the extent Defendant had any duties to enforce repurchase obligations, it performed those duties

86. The Alleged R&W Loans on Reyes Exhibit U were paid in full.  Reyes Decl. ¶ 37; Reyes Ex. U; *see also* Biron Decl. ¶ 152; Biron CB-Ex. 149 (Declaration of Edmond Esses and list attached thereto).

*86. Plaintiff's Response:  Disputed.  The evidence cannot be verified.  Reyes Exhibit U purports to list row numbers on DB's repurchase log (Reyes Exhibit F) in order to identify 108 loans.  But Reyes Exhibit F (the Commerzbank Repurchase Log) does not contain row numbers.  Thus, it is not possible to identify the loans DB alleges are relevant to this paragraph.  See Reyes Decl. ¶¶ 17-22.  Further disputed because the term "paid in full" is vague and ambiguous.*

**86. Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 86, and it should be deemed admitted.  *See* Local Rule 56.1(c).**

[redacted]

████████████████████████████████████████████████████

█████████████

███████████████████████████████████████

██████████████████████████

87. In certain circumstances, Defendant did commence repurchase litigation with respect to Alleged R&W Loans after having received an appropriate direction and indemnity from certificate holders with the requisite voting rights as specified in the respective GA.  Reyes Decl. ¶ 31.  With respect to the Alleged R&W Loans on Reyes Exhibit N, the breach notice relating to the relevant Trust was or is the subject of repurchase litigation.  Reyes Decl. ¶ 31; Reyes Ex. N; *see also* Reyes Exs. O-S.

87. *Plaintiff's Response*:  *Disputed to the extent that this paragraph suggests* ███████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████

**87. Defendant's Reply:**  Plaintiff's response does not specifically controvert ¶ 87, and so this material fact should be deemed admitted.  *See* **Local Rule 56.1(c).**

Plaintiff's response is irrelevant to the fact that:  (i) "In certain circumstances, Defendant did commence repurchase litigation with respect to Alleged R&W Loans after having received an appropriate direction and indemnity from certificate holders with the requisite voting rights as specified in the respective GA"; and (ii) "With respect to the Alleged R&W Loans on Reyes Exhibit N, the breach notice relating to the relevant Trust was or is the subject of repurchase litigation."

Plaintiff's response is also improper legal argument, unsupported by citation to evidence which would be admissible, to which no response is required, and wrong.

88. After having received an appropriate direction and indemnity from certificateholders with the requisite voting rights as specified in the respective GA, Defendant entered into a tolling

agreement relating to the prosecution of repurchase claims in the HVMLT 2007-2 Trust.  Biron Decl. ¶ 154; Reyes Decl. ¶ 32.

*88. Plaintiff's Response:  Disputed.  This paragraph states a legal conclusion, which is impermissible for a Rule 56.1 statement and to which no response is required.  To the extent a response is required, tolling agreements must be in writing and DB failed to produce any tolling agreement for HVMLT 2007-2 in this case.*

**88. Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 88, and it should therefore be deemed admitted.  *See* Local Rule 56.1(c).**

88.1.   Prosecution of repurchase claims relating to the Alleged R&W Loans on Reyes Ex. T, which relate to the HVMLT 2007-2 Trust, currently is subject to the tolling agreement.  Reyes Decl. ¶ 32; Reyes Ex. T.

*88.1.   Plaintiff's Response:  Disputed.  This paragraph states a legal conclusion, which is impermissible for a Rule 56.1 statement and to which no response is required.  To the extent a response is required, further disputed for the reasons set forth above in Plaintiffs' response to paragraph 88 and because tolling agreements cannot indefinitely toll the running of a statute of limitations.*

**88.1.   Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 88.1, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).  Plaintiff's response that "tolling agreements cannot indefinitely toll the running of a statute of limitations," is irrelevant to this material fact and unsupported by any evidence.**

**Defendant restates its reply to ¶ 88, and incorporates it by reference.**

88.2.   The GA for the HVMLT 2007-2 Trust that contained the Alleged R&W Loans

on Reyes Exhibit T provides that "neither the Trustee nor the Securities Administrator

shall be personally liable with respect to any action taken, suffered or omitted to be taken

by it in good faith in accordance with the consent or at the direction of the Certificate

Insurer, any NIMS Insure, or Holders of Certificates as provided herein relating to the

time, method and place of conducting any remedy pursuant to this Agreement, or

exercising or omitting to exercise any trust or power conferred upon the Trustee or the

Securities Administrator, respectively, under this Agreement."  Biron CB-Ex. 150 §

8.01(iii) (Excerpts of HVMLT 2007-2 PSA); *see* Reyes Ex. T.

*88.2.   Plaintiff's Response:  This fact is immaterial because Plaintiffs' are not*

*asserting that entering into a tolling agreement breached DB's duties.  Plaintiffs are*

*asserting that DB's failure to enforce repurchases was a breach of its duties.*

*Undisputed to the extent that the language as quoted appears in the GA for the*

*HVMLT 2007-2 Trust.*

**88.2.   Defendant's Reply:  Plaintiff's response does not specifically**

**controvert ¶ 88.2, and this material fact should be deemed admitted.  *See* Local**

**Rule 56.1(c).**

89. Absent direction and indemnity from a contractually specified percentage of investors,

Defendant did not examine or re-underwrite Alleged R&W Loans to evaluate whether R&Ws

were breached.  Reyes Decl. ¶ 21.

*89. Plaintiff's Response:  Disputed.  For example, Deutsche Bank, in In re Lehman*

*Brothers Holdings, Inc., sought repurchase of mortgage loans with breaches of R&W without*

*certificateholder direction.  Lucht Ex. 91 (RMBS Trustees' Pre-Trial Brief) at 14.*

**89. Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 89, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

**Plaintiff's response regarding whether Defendant sought repurchase of mortgage loans in *In re Lehman Brothers Holdings Inc.*, No. 08-13555 (SCC) (Bankr. S.D.N.Y.) is irrelevant to whether Defendant examined or re-underwrote Alleged R&W Loans.**

90. Absent direction and indemnity from a contractually specified percentage of investors, Defendant did not institute repurchase litigation concerning Alleged R&W Loans.  Reyes Decl. ¶ 21.

*90. Plaintiff's Response:  Disputed to the extent that this paragraph suggests that DB never asserted claims for repurchase without first receiving a direction from certificateholders controlling the requisite Voting Rights in a Trust.  For example,*

*Handlin Ex. 384 (Co) at 99:4-9 (*

██████████████████████████████████████████████████████

██████████████████████████ *); Handlin Ex. 393 (Vaughan) at 216:19-218:1 (*████████

████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████ *).*

**90. Defendant's Reply:  Plaintiff's response does not controvert the fact** ██████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████

████████████████████████████████████████████

████████████████████████████████████████████████

---

[10]  **Defendant's Note:** ████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████



### C.  <u>Commerzbank no longer owned certain certificates by the time Defendant received notice of alleged R&W breaches regarding loans in those Trusts</u>

91. For the Alleged R&W Loans on Reyes Exhibit V, by the time Defendant received notice of the alleged R&W breaches, Commerzbank no longer owned any Certificates issued by the Trust holding those loans.  Biron CB-Ex. 27 (Chart:  Sold Certificates); Reyes Ex. V.

*91. <u>Plaintiff's Response</u>:  Disputed.  The evidence cited cannot be verified.  Reyes Exhibit V lists the rows on the repurchase log that correspond to the Trust in which Deutsche Bank alleges receipt of notice concerning R&W breaches after the sale date.  Reyes Exhibit F (the Commerzbank Repurchase Log) does not contain row numbers and therefore, the rows identified on Reyes Exhibit V corresponding to these notices cannot be confirmed.  <u>See</u> Reyes Decl. ¶¶ 17-22; Reyes Ex. F.  Further disputed because, based on evidence produced to Plaintiff during discovery, some rows listed on Exhibit V do not exist.  For example, repurchase log row 62106 corresponding to the FFML 2006-FF11 Trust and rows 62001 corresponding to the MSHEL 2007-2 Trust, as listed on Reyes Exhibit V, contain no data.  Handlin Ex. 558. Undisputed that Commerzbank sold the certificates on the dates specified in Reyes Exhibit V.*

**91. <u>Defendant's Reply</u>: Plaintiff's response does not specifically controvert ¶ 91, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**



**D.  Defendant believed in good faith that its practices complied with the GAs**

92. Defendant refers the Court to Biron CB-Ex. 40 (Chart:  Defendant Is Not Liable for Any Action or Omission It Takes In Good Faith).

*92. Plaintiff's Response:  Plaintiff refers the Court to, e.g., Handlin Ex. 23 (MSAC 2006-HE6 PSA) § 8.02 ("Except as otherwise provided in Section 8.01…"); § 8.01(b) ("[T]he Trustee shall not be liable for an error of judgment made in good faith by a Responsible Officer or Responsible Officers of the Trustee, unless it is finally proven that the Trustee was negligent in ascertaining the pertinent facts.").*

**92. Defendant's Reply:  [RESERVED]**

93. At all relevant times, including from January 1, 2005 through the commencement of this action, Defendant believed in good faith that its practices with respect to the Alleged R&W Loans complied with the GAs.  Co Decl. ¶ 7.

*93. Plaintiff's Response:  Disputed.* 

*Handlin Ex. 387 (Reyes 30(b)(6)) at 62:2-10.*

*Handlin Ex. 389 (Pilapil Tr.) at 83:3-84:2; Handlin Ex. 779 (Reyes 30(b)(6) Tr.) at 237:2-11 (Deutsche Bank did not*

*).*

*Handlin Ex. 383 (Avakian Tr.) at 273:11-76:24; Handlin Ex. 397 (Benvenuto Tr.) at 143:15-21.*

**93. Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 93, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**





Finally, the last two sentences of Plaintiff's response are legal argument and should be struck.

94. At all relevant times, including from January 1, 2005 through the commencement of this action, Defendant believed in good faith that it had no duty to investigate potential R&W breaches absent direction and indemnity.  Co Decl. ¶ 8.

      *94. Plaintiff's Response:  Disputed.* ████████████████████████████

████████████████████████████████████████████████████████

████████████████ *Handlin Ex. 393 (Vaughan) at 216:19-218:1 (Q:* ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████ *).  DB's unilateral action in the bankruptcy context demonstrates that DB did not view its enforcement duties as contingent upon direction.*

      **94. Defendant's Reply:  Plaintiff's response (which is identical to Plaintiff's response to ¶ 95) does not specifically controvert ¶ 94, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

████████████████████████████████████████████████████

████████████████████████████████████████████████



95. At all relevant times, including from January 1, 2005 through the commencement of this action, Defendant believed in good faith that it had no duty to commence repurchase litigation absent either (a) direction and indemnity permitting it to rely on unconfirmed allegations or (b) actual knowledge of an R&W breach.  Co Decl. ¶ 9.

95. *Plaintiff's Response*:

*Handlin Ex. 393 (Vaughan) at 216:19-218:1 (*

*).*

███████████████████████████████████████

████████

**95. <u>Defendant's Reply</u>:  Plaintiff's response (which is identical to Plaintiff's response to ¶ 94) does not specifically controvert ¶ 95, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).  Defendant restates its reply to Plaintiff's response to ¶ 94 and incorporates it by reference.**

95.1.   There is no evidence that Commerzbank informed Defendant that, absent direction from investors holding the contractually specified percentage of voting rights, it should, much less was required to, (i) investigate whether loans in RMBS trusts breached R&Ws or (ii) pursue repurchase actions against warrantors.



95.1.   *Plaintiff's Response*:  Disputed.  ████████████████████

████████████████████████████

██████████████████████████

██████   *Lucht Ex. 93* (█████████████████████

██████████████████████████████

█████████████████████████

██████████████████████████████

██████████████████████████████

████████████████████████████████████).

*Further, this fact is immaterial because DB is required to comply with its contractually specified duties regardless of whether an investor or other deal party instructs it to do so.*

95.1.   **Defendant's Reply**:  Lucht Ex. 93, which is duplicative of Biron CB-Ex. 102, is not "evidence that Commerzbank informed Defendant that, absent direction from investors holding the contractually specified percentage of voting rights, it should, much less was required to, (i) investigate whether loans in RMBS trusts breached R&Ws or (ii) pursue repurchase actions against warrantors."  It is evidence of the opposite.  Lucht Ex. 93 demonstrates that—

██████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

███████   For a complete discussion of Lucht Ex. 93, Defendant refers the Court to ¶ 61, *supra*.

The last sentence of Plaintiff's response is improper legal argument, unsupported by any evidence.  Moreover, this fact is material for the reasons set forth in Defendant's memoranda of law in support of this motion.

## IX.   COMMERZBANK HAS NO EVIDENCE THAT DEFENDANT'S POST-EOD DUTIES WERE TRIGGERED BY PURPORTED SERVICER OR ISSUER BREACHES

### A.   Commerzbank lacks loan- or trust-specific evidence that an EOD occurred in any Trust as the result of a servicer or issuer breach

96. Defendant refers the Court to Biron CB-Ex. 46 (Chart:  EODs Triggered By Servicer Breach).

96. *Plaintiff's Response:  Plaintiff refers the Court to, e.g., Handlin Ex. 23 (MSAC 2006-HE6 PSA) § 7.01.*

96. **Defendant's Reply:  [RESERVED]**

96.1.   Defendant refers the Court to, *e.g.*, Biron CB-Ex. 2 § 9.06(b) (HASC 2006-HE1 PSA).

> 96.1.   *Plaintiff's Response*:  [RESERVED]

> **96.1.   Defendant's Reply**:  **[RESERVED]**

96.2.   Defendant refers the Court to Biron CB-Ex. 46-B (Chart:  EODs Triggered By Servicer Breach).

> 96.2.   *Plaintiff's Response*:  [RESERVED]

> **96.2.   Defendant's Reply**:  **[RESERVED]**

96.3.   Defendant refers the Court to Biron CB-Ex. 46-A (Chart:  EODs Triggered By Master Servicer Breach, Not Servicer Breach).

> 96.3.   *Plaintiff's Response*:  [RESERVED]

> **96.3.   Defendant's Reply**:  **[RESERVED]**

97. Defendant refers the Court to Biron CB-Ex. 47 (Chart:  EODs Triggered By Issuer Breach).

> 97. *Plaintiff's Response*:  Plaintiff refers the Court to, *e.g.*, Handlin Ex. 44 (SAST 2006-3 Indenture) § 5.01(a)(iv).

> **97. Defendant's Reply**:  **[RESERVED]**

98. Commerzbank lacks sufficient admissible, loan- or Trust-specific evidence showing (i) that an EOD occurred because a contractually specified servicer or issuer engaged in the alleged misconduct with respect to loans in any Trust, and (ii) that Defendant had "actual knowledge" or "written notice" of any such EOD, as required to trigger its post-EOD duties.

*98. Plaintiff's Response:  Disputed.  Plaintiffs have an abundance of evidence showing that servicers and issuers engaged in pervasive misconduct throughout the Trusts and that DB had the required knowledge as to trigger its post-EOD prudent person duties.  See CBCSUF ¶¶ 1537-1755.*

**98. Defendant's Reply:  Plaintiff's response does not specifically controvert the fact that Commerzbank lacks admissible, loan-specific evidence showing (i) that an EOD occurred because a contractually specified servicer or issuer engaged in the alleged misconduct with respect to loans in any Trust, and (ii) that Defendant had "actual knowledge" or "written notice" of any such EOD, as required to trigger its post-EOD duties.  This material fact should therefore be deemed admitted.  *See* Local Rule 56.1(c).**

**Plaintiff's citation to over 200 paragraphs of its CBCSUF also does not satisfy Plaintiff's burden.  *See* Local Rule 56.1(d).  Defendant restates CB-PSUF-Reply ¶¶ 1537 – 1755 and incorporates them by reference.**

### B.  In any event, Commerzbank has no loan- or Trust-specific evidence that Defendant had "written notice" or "actual knowledge" of an EOD resulting from servicer or issuer breaches

99. Defendant refers the Court to Biron CB-Ex. 45 (Chart:  If an EOD is Continuing and Defendant has the Contractually Specified Knowledge Thereof, Defendant Has a Duty to Act as a Prudent Person Under the Circumstances).

*99. Plaintiff's Response:  Plaintiff refers the Court to, e.g., Handlin Ex. 23 (MSAC 2006-HE6 PSA) § 8.01 ("Unless an Event of Default known to the Trustee has occurred and is continuing…").  Plaintiff further refers the Court to, e.g., Handlin Ex. 35 (NHEL 2006-5 PSA) § 8.01(a) ("If a Servicing Default has occurred and is continuing, the Trustee shall exercise the rights and powers vested in it by this Agreement and use the same degree of care*

*and skill in its exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs."); see also; Handlin Ex. 75 (ECR 2005-3 Indenture) § 6.01(a); Handlin Ex. 102 (IMM 2007-A Indenture) § 6.01(b); Handlin Ex. 103 (IMSA 2006-3 PSA) § 8.01; Handlin Ex. 104 (IMSA 2006-4 PSA) § 8.01; Handlin Ex. 116 (NHEL 2007-2 PSA) § 8.01; Handlin Ex. 121 (SAST 2005-2 Indenture) § 6.01(b); Handlin Ex. 44 (SAST 2006-3 Indenture) § 6.01(b); Handlin Ex. 120 (WAMU 2005-AR13 PSA) § 8.01.*

**99. Defendant's Reply:  [RESERVED]**

100.   [RESERVED]

## X.   COMMERZBANK LACKS EVIDENCE THAT DEFENDANT BREACHED ITS POST-EOD DUTIES ARISING FROM DECLARED EODS

101.   In addition to the Loss EODs and the 2012 Downgrade EODs, ██████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

*101.   Plaintiff's Response:  Undisputed.*

**101.   Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 101, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

102.     In the SAC, Commerzbank incorrectly alleged that the events identified on Ex. 33

(the "Alleged Trigger Events"), purportedly triggered Defendant's post-EOD prudent person

duty in certain Trusts.

102.     _Plaintiff's Response:_  *This paragraph cites no record evidence and thus, no*

*response is required.  To the extent a response is required, Plaintiffs provide the basis for all*

*events triggering DB's prudent person duties in their counterstatement of undisputed facts.*

*CBCSUF ¶¶ 1537-1755.*

**102.     Defendant's Reply:  Plaintiff's response does not specifically controvert ¶**

**102, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

**Plaintiff is incorrect that "[t]his paragraph cites no record evidence" because**

**Defendant cited the SAC and referred to Biron CB-Ex. 33.  Biron CB-Ex. 33 contains**

**citations to the specific relevant paragraphs of the SAC.**

**Plaintiff's citation to over 200 paragraphs of its CBCSUF does not satisfy Plaintiff's**

**burden of supporting its response with admissible evidence.  Defendant restates CB-**

**PSUF-Reply ¶¶ 1537 – 1755 and incorporates them by reference.**

102.1.   Under the GAs for each of the Trusts relating to the Alleged Trigger Events,

the Alleged Trigger Events do not constitute a contractually defined event that may

trigger Defendant's prudent person duty; *i.e.* they are not EODs.  Ex. 33 (Chart:  Alleged

Trigger Events).

102.1.   _Plaintiff's Response:_  *Disputed.  This paragraph states a legal conclusion*

*which is impermissible for a Rule 56.1 statement and to which no response is*

*required.  To the extent a response is required, Plaintiffs set forth the facts showing*

*that there were EODs in each of the four trusts identified on Ex. 33 in Plaintiff's*

*CBCSUF. CBCSUF ¶¶ 367-381; ¶¶ 424-438; ¶¶ 582-623; ¶¶ 989-1012.  For example, in IXIS 2006-HE3, the Trustee's prudent person duties are triggered upon a Master Servicer Event of Default.  Handlin Ex. 106 (IXIS 2006-HE3 PSA) § 8.01. Pursuant to the IXIS 2006-HE3 PSA, the Master Servicer shall "cause the Servicers to duly and punctually perform their duties and obligations hereunder as applicable. Upon the occurrence of an Event of Default of which a Responsible Officer of the Master Servicer has actual knowledge, the Master Servicer shall promptly notify the Securities Administrator and the Trustee and shall specify in such notice the action, if any, the Master Servicer plans to take in respect of such default.  So long as an Event of Default shall occur and be continuing, the Master Servicer shall take the actions specified in Article VII."  Id. at § 9.01(a).  A Master Servicer Event of Default occurs under the IXIS 2006-HE3 PSA upon "failure by the Master Servicer to duly observe or perform, in any material respect, any other covenants, obligations or agreements of the Master Servicer as set forth in this Agreement which failure continues unremedied for a period of thirty (30) days after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to the Master Servicer by the Trustee…" Id. at § 9.04(b).  Wells Fargo, as Master Servicer and Securities Administrator, provided notice of the EOD which demonstrates its knowledge of same.  Kane Ex. 465.  Additionally, the notice demonstrates that the Master Servicer failed to cause the Servicer to perform its duties under the PSA, thereby resulting in a Master Servicer EOD and triggering DB's prudent person duties.*

**102.1.  <u>Defendant's Reply</u>:  Plaintiff's response does not specifically controvert ¶ 102.1, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

**Defendant restates CB-PSUF-Reply ¶¶ 367 – 381, 424 – 438, 582 – 623, 989 – 1012, and incorporates them by reference.**

**Plaintiff's legal arguments concerning the IXIS 2006-HE3 PSA are improper, and should be struck.  They are also flawed.**

**Plaintiff does not dispute that the IXIS 2006-HE3 Alleged Trigger Events it alleged in the SAC would, if they occurred, constitute an "Event of Default" under the IXIS 2006-HE3 PSA.  *See* Biron CB-Ex. 33.  Plaintiff also does not dispute that, under the IXIS 2006-HE3 PSA, only a "Master Servicer Event of Default" – not an Event of Default – can trigger Defendant's duty to act "as a prudent person . . . under the circumstances."  *See id*; Handlin Ex. 106 (IXIS 2006-HE3 PSA) § 8.01.  Rather, Plaintiff attempts to argue that the occurrence of an Event of Default automatically triggered the occurrence of a Master Servicer Event of Default.  Plaintiff is wrong.**

**Plaintiff misquotes Section 9.04(b) of the IXIS 2006-HE3 PSA, which provides:**

> **Section 9.04   Master Servicer Events of Default.  Each of the following shall constitute a "Master Servicer Event of Default": …**
>
> **(b) failure by the Master Servicer to duly observe or perform, in any material respect, any other covenants, obligations or agreements of the Master Servicer as set forth in this Agreement which failure continues unremedied for a period of thirty (30) days after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to the Master**

> **Servicer by the Trustee *or to the Master Servicer and Trustee by the holders of Certificates evidencing at least 25% of the Voting Rights*; … .**

**Handlin Ex. 106 (IXIS 2006-HE3 PSA) § 9.04(b). Defendant does not dispute that Wells Fargo Bank, N.A., as Master Servicer and Securities Administrator under the IXIS 2006-HE3 PSA, sent a "Notice of Event of Default," dated October 10, 2012, informing investors that an Event of Default had occurred and was continuing under the IXIS 2006-HE3 PSA as a result of a downgrade of Ocwen Loan Servicing LLC's servicer ratings. Kane Ex. 465. Plaintiff argues that Kane Ex. 465 "demonstrates that the Master Servicer failed to cause the Servicer to perform its duties under the PSA, thereby resulting in a Master Servicer EOD and triggering DB's prudent person duties." That argument fails for a multitude of reasons, including, among others: (i) nothing in the evidence Plaintiff cited reflects any duty the Servicer failed to perform; (ii) nothing in the evidence Plaintiff cited reflects any duty the Master Servicer failed to perform; and (iii) Plaintiff cited no evidence that any purported failure continued "unremedied for a period of thirty (30) days after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to the Master Servicer by the Trustee or to the Master Servicer and Trustee by the holders of Certificates evidencing at least 25% of the Voting Rights."**

**Thus Plaintiff's purported conclusion that a Master Servicer Event of Default occurred under the IXIS 2006-HE3 PSA is not supported the cited evidence.**

103. ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

*103.* _Plaintiff's Response_:  *Undisputed.*

**103.** <u>**Defendant's Reply**</u>**:  Plaintiff's response does not specifically controvert ¶ 103, and so this material fact should be deemed admitted.**  *See* **Local Rule 56.1(c).**

103.1. ████████████████████████████████

████████████████████████████████████████████████

████████████

*103.1.* _Plaintiff's Response_:  *Undisputed.*

**103.1.** <u>**Defendant's Reply**</u>**:  Plaintiff's response does not specifically controvert ¶ 103.1, and so this material fact should be deemed admitted.**  *See* **Local Rule 56.1(c).**

103.2. ██████████████████████████████████

████████████████████████████████████████████████

██████████████████████████

*103.2.* _Plaintiff's Response_:  *Undisputed.*

**103.2.** <u>**Defendant's Reply**</u>**:  Plaintiff's response does not specifically controvert ¶ 103.2, and so this material fact should be deemed admitted.**  *See* **Local Rule 56.1(c).**

103.3.   ██████████████████████████████████████

████████████████████████████████████████████████

██████████

*103.3.  Plaintiff's Response:  Undisputed.*

**103.3.  Defendant's Reply:  Plaintiff's response does not specifically controvert ¶ 103.3, and so this material fact should be deemed admitted.** ***See Local Rule 56.1(c).***

104.   [RESERVED]

104.1.  [RESERVED]

104.2.  [RESERVED]

104.3.  [RESERVED]

105.   Commerzbank has no evidence that after an event of default triggering an indenture/securitization trustee's prudent person duty, any such trustee has taken the type of actions proposed by Commerzbank under similar circumstances, let alone that after such an event of default, any RMBS trustee has taken the actions proposed by Commerzbank under similar circumstances.

*105.  Plaintiff's Response:  Disputed.  To the extent that DB contends its breaches are excused because other trustees committed the same breaches, disputed.* ████████████

████████████████████████████████████████████████

██████████████████████ *Further, in the Countrywide Article 77 proceeding, BNYM, as trustee, obtained servicing improvements when it was not directed to do so.  See In re The*

*Bank of New York Mellon*, 651786/2011, June 29, 2011 (N.Y. Sup.) NYSECF Doc. No. 3.  DB

and other trustees entered into similar agreements to obtain servicing improvements in the

JPMorgan Article 77 proceeding.  *See In re U.S. Bank National Association, et. al.*,

652382/2014 August 3, 2014 (N.Y. Sup.), NYSECF Doc. No. 3.  In addition to the JPMorgan

Article 77 proceeding, U.S. Bank terminated the servicer in the Chevy Chase Trusts.  *See*

*Phoenix Light SF DAC v. U.S. Bank Nat'l Ass'n*, 14-cv-10116 (S.D.N.Y. July 5, 2018), ECF

No. 324-279 at 53 ("U.S. Bank consulted counsel and, in accordance with Ambac's

direction, terminated Chevy Chase Funding F.S.B. as Servicer on January 8, 2010.").

**105.**   **Defendant's Reply:**  **Plaintiff's response does not specifically controvert ¶**

**105, and so this material fact should be deemed admitted.**  ***See* Local Rule 56.1(c).**

None of the legal proceedings Plaintiff cites is evidence of an RMBS trustee or any

other indenture/securitization trustee "taking the actions proposed by Commerzbank

under similar circumstances" after an event of default triggering that trustee's prudent

person duties.  Rather, each of those proceedings reflects the respective trustee's

participation in an investor driven process.

In the "Countrywide Article 77 proceeding," the Trustee brought the action seeking

judicial instructions and approval of a settlement on the basis of allegations from a

"group of Certificateholders" whose then-current holdings were "in the tens of billions

of dollars.  *In re The Bank of New York Mellon*, Index No. 651786/2011 ¶¶ 7 – 8 (N.Y.

Sup. Ct. Jun. 29, 2011).  Moreover, as The Bank of New York Mellon stated in its

petition:

> Since November 2010, the Institutional Investors, with the
> participation of the Trustee, have engaged in extensive, arm's-
> length negotiations with Countrywide and Bank of America in an
> attempt to reach a settlement for the benefit of the Trusts. These

negotiations sought to avoid the enormous costs of preparing for and pursuing claims in litigation that would involve complex issues of law and fact and a review of files for 530 Trusts and hundreds of thousands of loans. The negotiations also sought to avoid the risks and costs of waiting for an uncertain – and perhaps unattainable and unrecoverable – judgment many years from now. The negotiations have culminated in a request from the Institutional Investors that the Trustee enter into a settlement (the "Settlement"), memorialized in a settlement agreement, dated June 28, 2011 ("Settlement Agreement"), that the Trustee, in the exercise of its judgment, views as advantageous to and in the best interests of the Trusts.

*Id.* ¶ 10 (emphasis added).

Similarly, the very first page of the RMBS Trust Settlement Agreement Plaintiff cited from the "JPMorgan Article 77 proceeding" states:

WHEREAS, on December 15, 2011, the Institutional Investors <u>issued instructions to certain of the Trustees</u> to open an investigation into potential breaches of certain representations and warranties and potential servicing breaches in certain of the Trusts;

WHEREAS, the Institutional Investors have indicated their intent under the Governing Agreements for each Trust in which the Institutional Investors collectively hold or are authorized investment managers for <u>holders of at least 25% of certain of the Securities issued by such Trust</u> either to seek action by the Trustee for such Trust or to pursue claims, including but not limited to claims to compel JPMorgan to cure the alleged breaches of representations and warranties or repurchase the Mortgage Loans affected thereby and cure alleged servicing defaults;

*In re U.S. Bank National Association, et. al.*, 652382/2014 (N.Y. Cup. Ct. Aug. 3, 2014),

NYSECF Doc. No. 3, at 1 (emphasis added).  That agreement continues:

WHEREAS, <u>the Institutional Investors and JPMorgan, without the Trustees' involvement, reached agreement concerning a proposed settlement</u> that would resolve all Rep and Warranty Claims and, subject to certain exceptions, all Servicing Claims, and have since made certain changes to this Settlement Agreement at the Trustees' request;

*Id.* at 2 (emphasis added).



105.1.  Based on Commerzbank's allegations in its lawsuits against other RMBS trustees—it appears no RMBS trustee has done so.  Compl., *Commerzbank AG v. HSBC Bank USA, Nat'l Ass'n*, 15-cv-10032-LGS-SN ("CZB/HSBC"), Dkt.# 7 (S.D.N.Y. Dec. 28, 2015); Compl., *Commerzbank AG v. Wells Fargo Bank, N.A.*, 15-cv-10033-KPF-SN ("CZB/WF"), Dkt.#1 (S.D.N.Y. Dec. 24, 2015); Compl., *Commerzbank AG v. U.S. Bank Nat'l Ass'n, et al.*, 16-cv-04569-WHP ("CZB/USB"), Dkt.#1 (S.D.N.Y. Dec. 28, 2015); Compl., *Commerzbank AG v. The Bank of New York Mellon, et al.*, 15-cv-10029-GBD ("CZB/BNYM"), Dkt.# 1 (S.D.N.Y. Dec. 23, 2015).

105.1.  *Plaintiff's Response*:  Disputed.  To the extent that DB contends its breaches are excused because other trustees committed the same breaches, disputed. DB's post-EOD breaches were contrary to standards governing a trustee's post-EOD prudent person duties.  *See* Kane Ex. 22 at ¶¶ 113-122.  Further, in the Countrywide Article 77 proceeding, BNYM, as trustee, obtained servicing improvements when it was not directed to do so.  *See* In re The Bank of New York Mellon, 651786/2011, June 29, 2011 (N.Y. Sup.) NYSECF Doc. No. 3.  DB and other trustees entered into similar agreements to obtain servicing improvements in the JPMorgan Article 77

*proceeding.  See In re U.S. Bank National Association, et al, 652382/2014 August 3,*

*2014 (N.Y. Sup.), NYSECF Doc. No. 3.  In addition to the JPMorgan Article 77*

*proceeding, U.S. Bank terminated the servicer in the Chevy Chase Trusts.  See*

*Phoenix Light SF DAC v. U.S. Bank Nat'l Ass'n, 14-cv-10116 (S.D.N.Y. July 5,*

*2018), ECF No. 324-279 at 53 ("U.S. Bank consulted counsel and, in accordance*

*with Ambac's direction, terminated Chevy Chase Funding F.S.B. as Servicer on*

*January 8, 2010.").*

**105.1.  <u>Defendant's Reply</u>:  Plaintiff's response does not specifically
controvert ¶ 105.1, and so this material fact should be deemed admitted.  See
Local Rule 56.1(c).**

**Defendant restates its response to ¶ 105 and incorporates it by reference.
Moreover, Kane Ex. 22 is inadmissible hearsay.**

106.  ███████████████████████████████████████████

███████████████████  Biron CB-Ex. 120 at 52:23-54:13, 72:20 – 73:13, 176:9 – 177:21 (CZB

30(b)(6) Dep. (Mar. 9, 2018)); Biron CB-Ex. 103 (30(b)(6) deposition notice); Biron CB-Ex. 24

at 10 – 18, 23 – 34 (Pltf's Supp. 1st RFA R&O); *see also* Biron CB-Ex. 127 at 324:24 – 325:5 (J.

Reid Dep. (Mar. 15, 2017), CZB/WF); Biron CB-Ex. 128 at 173:16 – 23 (J. Reid Dep. (May 10,

2017), CZB/HSBC); Biron CB-Ex. 131 at 210:15 – 17 (S. Bryant Dep. (Feb. 15, 2017),

CZB/WF); Biron CB-Ex. 137 at 78:4 – 6 (B. Jetter Dep. (Feb. 2, 2017), CZB/WF); Biron CB-

Ex. 138 at 128:10 – 14 (B. Jetter Dep. (Apr. 20, 2017), CZB/HSBC); Biron CB-Ex. 140 at

268:25 - 269:21 (A. Holsten Dep. (Mar. 17, 2017), CZB/WF); Biron CB-Ex. 139 at 7:20 – 8:3

(A. Holsten Dep. (June 8, 2017), CZB/HSBC); Biron CB-Ex. 141 at 214:18 – 22 (J. Muench

Dep. (May 8, 2017), CZB/WF).

106.   *Plaintiff's Response*:  Disputed.  ███████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████████

**106.   Defendant's Reply:  Plaintiff's response does not specifically controvert ¶**

**106, and so this material fact should be deemed admitted.  *See* Local Rule 56.1(c).**

███████████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████



Dated: New York, New York                Respectfully submitted,

      July 19, 2019                              MORGAN, LEWIS & BOCKIUS, LLP

By:

      Michael S. Kraut (mkraut@morganlewis.com)

      Kevin J. Biron (kbiron@morganlewis.com)

101 Park Avenue
New York, New York 10178
Tel:  +1.212.309.6000
Fax:  +1.212.309.6001

*Attorneys for Defendants Deutsche Bank National
Trust Company and Deutsche Bank Trust Company
Americas, as Trustees*

234

# PAGES 235 – 294
# INTENTIONALLY OMITTED

### CERTIFICATE OF SERVICE

I, Nathan T. Shapiro, certify that on July 19, 2019, I caused the following documents to be served on all counsel of record by electronic delivery via secure file transfer: (i) Defendants' Revised Reply and Responses to Plaintiffs' Counterstatement of Undisputed Material Facts Pursuant to Rule 56.1 of the Local Civil Rules for the Southern District of New York; (ii) the Revised Declaration of Kevin J. Biron in Support of Defendants' Motions for Summary Judgment, and exhibits attached thereto; (iii) the Revised Declaration of Bryan P. Goff in Opposition to Plaintiffs' Joint Motion for Partial Summary Judgment, and exhibits attached thereto; and (iv) the Revised Declaration of Bryan P. Goff in Further Support of Defendants' Motions for Summary Judgment, and exhibits attached thereto.

By: _____
Nathan T. Shapiro