# Morgan Lewis

**Kevin J. Biron**
+1.212.309.6180
kevin.biron@morganlewis.com

October 12, 2021

**VIA ECF**

Honorable John G. Koeltl
United States District Court Judge for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 14A
New York, NY 10007

Re: *Phoenix Light SF DAC v. Deutsche Bank Nat'l Trust Co.*, No. 14-cv-10103 (S.D.N.Y.) ("*PL v. DB*")

Dear Judge Koeltl:

On behalf of Defendants, we write in response to the October 4, 2021 Order (*PL-DB* ECF No. 414) directing the parties to address the Second Circuit Court of Appeals' decision in *Phoenix Light SF DAC v. U.S. Bank National Association* ("*PL v. USB*"), No. 20-1312-cv, 2021 WL 4515256 (2d Cir. Oct. 4, 2021). In that decision, the Second Circuit affirmed Judge Broderick's grant of summary judgment dismissing a virtually identical lawsuit brought by plaintiffs against another RMBS trustee for lack of standing. Based on the Second Circuit's rulings, *PL v. DB* must be dismissed on collateral estoppel grounds.[1]

By way of background, a group of special purpose entities created to facilitate securitization transactions structured by German bank WestLB AG are plaintiffs in substantively identical lawsuits against various RMBS trustees, including Defendants and U.S. Bank. At the closing of each such securitization transaction, (i) WestLB caused an asset portfolio, including RMBS certificates at issue in these lawsuits, to be transferred to the relevant plaintiff, and (ii) pursuant to an indenture, security agreement and/or trust agreement, the relevant plaintiff simultaneously issued notes and transferred the asset portfolio to an indenture trustee to hold for the benefit of the noteholders. *E.g.*, *PL v. USB*, No. 14-CV-10116 (VSB), 2020 WL 1285783, at *1, 3-4 (S.D.N.Y. Mar. 18, 2020). As the Second Circuit and Judge Broderick recognized, those agreements effected a "complete transfer" of the securitized asset portfolio, including the relevant RMBS certificates, to the indenture trustees. *See, e.g.*, *PL v. USB*, 2021 WL 4515256, at *2. WestLB acquired most of the notes issued in those securitizations. *See PL v. USB*, 2020 WL 1285783, at *3-4.

WestLB failed as a result of the 2008 financial crisis, and the German government created an entity called Erste Abwicklungsanstalt ("EAA") to hold and wind-down certain of WestLB's assets, including the notes issued as part of the securitizations involving plaintiffs.

---

[1] In accordance with the October 4, 2021 Order, we are also submitting this letter in *Commerzbank AG v. Deutsche Bank Nat'l Trust Co.*, No. 15-cv-10031 (S.D.N.Y.).

**Morgan, Lewis & Bockius LLP**

101 Park Avenue
New York, NY 10178-0060     T +1.212.309.6000
United States               F +1.212.309.6001

*See id.* In December 2014, EAA caused plaintiffs to sue Defendants and other RMBS trustees. *See, e.g., id.* at *4-6; Complaint (*PL-DB* ECF No. 1). In their motions to dismiss, Defendants and other RMBS trustees demonstrated that plaintiffs lacked standing to bring those lawsuits because the relevant RMBS certificates and related claims belonged to the indenture trustees— not plaintiffs. *See PL v. USB*, 2020 WL 1285783, at *2, 13; Defendant's Motion to Dismiss (ECF No. 29) at 13-16. In an attempt to cure the lack of standing, EAA and plaintiffs directed the indenture trustees to assign the relevant claims to plaintiffs, and plaintiffs amended their complaints to reflect those assignments. *Phoenix v. USB*, 2020 WL 1285783, at *4-6; *PL-DB* ECF No. 33 (Second Amended Complaint) ¶¶ 40-46; *see also PL-DB* ECF No. 189 (Third Amended Complaint) ¶¶ 41-47. In response, Defendants pled the affirmative defense of champerty. *PL-DB* ECF Nos. 90, 197.

In March 2020, Judge Broderick granted U.S. Bank's motion for summary judgment in *PL v. USB*, holding that "the assignments at issue [from the indenture trustees to plaintiffs] are void under New York's prohibition on champerty, and that Plaintiffs do not have standing…." *PL v. USB*, 2020 WL 1285783, at *1 (S.D.N.Y. Mar. 18, 2020). On August 12, 2020, Judge Broderick denied plaintiffs' motion for reconsideration. 2020 WL 4699043 (S.D.N.Y. Aug. 12, 2020). On October 4, 2021, the Second Circuit affirmed Judge Broderick's orders. *PL v. USB*, 2021 WL 4515256, at *1-3.

### Plaintiffs Are Collaterally Estopped from Pursuing this Action

Plaintiffs' claims against Defendants must be dismissed under the doctrine of collateral estoppel. "Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Stinnett v. Delta Air Lines, Inc.*, 803 F. App'x 505, 507 (2d Cir. 2020). Collateral estoppel applies when "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party raising the issue had a full and fair opportunity to litigate the issue in the prior proceeding; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Mir v. Kirchmeyer*, No. 20-1659, 2021 WL 4484916, at *2 (2d Cir. Oct. 1, 2021). "For the purposes of issue or claim preclusion, summary judgment is considered a decision on the merits." *DeCastro v. City of N.Y.*, 278 F. Supp. 3d 753, 764 (S.D.N.Y. 2017). Collateral estoppel can apply to a ruling that agreements are champertous and plaintiffs lack standing. *See, e.g., Prospect Funding Holdings, LLC v. Breen*, 757 F. App'x 130 (3d Cir. 2018) (holding collateral estoppel precluded relitigating contracts' validity after another court found the contracts usurious and champertous, and so void and unenforceable); *Lefkowitz v. McGraw-Hill Global Educ. Holdings, LLC*, 23 F. Supp. 3d 344, 360 (S.D.N.Y. 2014) ("In point of fact, courts in this District 'have previously applied collateral estoppel to the issue of standing.'") (citation omitted).

All of the requirements for collateral estoppel are satisfied here. First, *PL v. USB* resolved the identical issue. The assignment agreements that Judge Broderick and the Second Circuit held to be champertous are the *exact same* assignment agreements plaintiffs rely upon to assert their claims here. Second, the issue was litigated and actually decided in the orders entered by Judge Broderick and affirmed on appeal. Third, plaintiffs had a full and fair opportunity to litigate the issue—both before Judge Broderick and then the Second Circuit Court of Appeals. Indeed, in denying plaintiffs' motion for reconsideration, Judge Broderick

highlighted that "the history of this case together with the litigation strategy Plaintiffs elected in response undermines any notion that Plaintiffs were justified in failing to raise [additional] arguments." *PL v. USB*, 2020 WL 4699043, at *4. <u>Fourth</u>, the determination that the assignment agreements were void as champertous and plaintiffs' lacked standing was the basis for the order granting of summary judgment against plaintiffs that the Second Circuit affirmed.

Although two plaintiffs in this action – Blue Heron Funding V Ltd. and Blue Heron Funding IX Ltd. ("BH V and IX") – were not plaintiffs in *PL v. USB*, collateral estoppel still bars their claims because those entities, like all plaintiffs, are under the common control of, and in privity with, EAA.[2] "The Second Circuit has instructed district courts to apply the 'doctrine of privity ... with flexibility' for the purposes of finding preclusion, and that the inquiry 'depends on whether, under the circumstances, the interests of the nonparty were adequately represented.'" *Capitol Recs., LLC v. ReDigi Inc.*, No. 12-CV-95 RJS, 2015 WL 5076457, at *5 (S.D.N.Y. Aug. 27, 2015) *quoting Amalgamated Sugar Co. v. NL Indus., Inc.*, 825 F.2d 634, 640 (2d Cir.1987); *accord Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995) (privity for collateral estoppel purposes depends on "whether a party 'control[led] or substantially participate[d] in the control of the presentation on behalf of a party' to the prior action.") (citation omitted); *Benistar Emp. Serv. Tr. Co. v. United States*, 184 F. App'x 93 (2d Cir. 2006) (affirming application of collateral estoppel to a different but "related" party and noting "the parties have been represented by the same counsel in all of the litigations").

Here, all PL plaintiffs, including BH V and IX, are in privity with EAA. EAA is the controlling noteholder of plaintiff Phoenix Light SF Ltd. ("Phoenix Light"), which is the controlling noteholder of all other PL plaintiffs. *E.g.*, *PL-DB* ECF No. 352 (DB 56.1 Reply) at ¶¶ 38.1, 54-55. EAA, through Phoenix Light, has the economic stake in, and controls, all of plaintiffs' litigation against the RMBS trustees, and all plaintiffs are represented by the same counsel in all those litigations. *E.g., id.* at ¶¶ 60.4.8 (undisputed that "EAA caused Phoenix and other Plaintiffs to sue Defendant in this action, and other RMBS trustees"); 60.4.9 (undisputed that "EAA directed the indenture trustees to assign the claims against Defendant and other RMBS trustees to Plaintiffs"). EAA, Phoenix Light and the other commonly controlled plaintiffs had a full and fair opportunity to litigate standing in *PL v. USB*, and there are no differences between BH V and IX and the *PL v. USB* plaintiffs as to standing. BH V and IX were parties to one of the *same* purported assignment agreements that the Second Circuit confirmed was champertous in *PL v. USB*. *See PL v. USB*, 2020 WL 1285783, at *4; *PL-DB* ECF No. 352 (DB 56.1 Reply) at ¶¶ 60.4.9.

Accordingly, plaintiffs in *PL v. DB* are collaterally estopped from re-litigating the issue of their standing, and this Court should enter judgment in favor of Defendants.

Respectfully,<br>
*/s/ Kevin J. Biron*<br>
*Counsel for Defendants*

---

[2] BH V and IX only claim to have held an interest in two of the 87 investments at issue in this case. *PL-DB* ECF No. 189-2 at Rows 12, 33.