# WOLLMUTH MAHER & DEUTSCH LLP

500 FIFTH AVENUE
NEW YORK, NEW YORK 10110

———————

TELEPHONE (212) 382-3300
FACSIMILE (212) 382-0050

December 17, 2021

*By ECF*
The Honorable John G. Koeltl
United States District Judge for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 14A
New York, New York 10007

*Commerzbank AG v. Deutsche Bank Nat'l Trust Co., et al.*, 15-cv-10031-JGK-DF
**Subject: Response to Supplemental Authority (ECF No. 289)**

Dear Judge Koeltl:

Plaintiff Commerzbank responds to Deutsche Bank's notice of supplemental authority concerning Magistrate Judge Netburn's Report and Recommendation to Judge Failla (the "R&R") in Commerzbank's action against Wells Fargo. Commerzbank responds to the portions of Deutsche Bank's notice of supplemental authority that relate to Commerzbank's claims.

**Sold Certificates**. The R&R finds, as matters of fact, that the center of gravity for sales negotiated in London, executed in London, between London buyers and a London seller is New York. The analysis is faulty and the cases cited within are unsupportive. *First*, to ignore the London seller, the R&R relies exclusively upon *Commerzbank v. U.S. Bank*, 457 F. Supp. 3d 233, 243 (S.D.N.Y. 2020), which in turn relied on *HSH Nordbank AG v. RBS Holdings USA Inc.*, 2015 U.S. Dist. LEXIS 36087 (S.D.N.Y. March 23, 2015). R&R at 20. But *Nordbank* does not address the center of gravity at all; it instead relates only to determining the principal place of business under the New York borrowing statute. 2015 U.S. Dist. LEXIS 36087 at * 11. *Nordbank's* holding also is irrelevant because Deutsche Bank does not argue that sales activity took place in Germany due to Commerzbank's headquarters being located in Frankfurt.

*Second*, to ignore the London buyers, the R&R states that the buyers may have been "London branch offices." R&R at 21-22. But this would only matter if the question was the location of the principal place of business, as in *Nordbank*. Here, Deutsche Bank makes a different argument about the buyer, namely that their identity is unknown. ECF No. 162 at 13. This argument is wrong. The record contains unrebutted evidence demonstrating the identity of the buyers and their location in London. ECF No. 190 at 4; ECF No.183 at ¶ 5; ECF 237-1 at ¶ 1305.

*Third*, to ignore that the sales were executed in London, the R&R held that DTC settlement transformed them into New York sales. R&R at 20. Notably, Deutsche Bank has made no such argument. In any event, the R&R's holding conflates the trade execution date (when parties enter contract) and the later settlement date (when depository completes back-office mechanics). "In the

common speech of the industry," a "contract for the purchase or sale of the securities is referred to as executing the trade, and the transaction in which the securities are delivered and paid for is referred to as settlement." UCC Art. 8 prefatory note to 1994 amendments ("UCC Note"); *see also Petroleos de Venez S.A. v. Mufg Union Bank, NA*, 495 F. Supp. 3d 257, 284 (S.D.N.Y. 2020) (discussing difference between securities sales contracts and settlement)."For most practical economic purposes, the trade date is the date that counts, because that is the time at which the price is set, the risk of price changes shifts, and the parties become bound to perform." *UCC Note.* The activities to execute the trade occurred in London. DTC was not involved. Settlement has nothing to do with contracting, and is "nothing more than an automated, ministerial process." *In re Sanofi-Aventis Sec. Litig.*, 293 F.R.D. 449, 458 (S.D.N.Y. 2013). DTC's settlement function, days after the trade has been executed, cannot retroactively turn London sales into New York sales.

*Finally*, we submit that Judge Failla will not follow the R&R because her decision in *Pacific Life Ins. Co. v. Bank of N.Y. Mellon*, 2018 U.S. Dist. LEXIS 43602, *46-47 (S.D.N.Y. Mar. 16, 2018) held under analogous facts that California is the center of gravity for RMBS sales negotiated in California between California sellers and buyers, and because she has also written, perceptively, on the difference between trade/execution date (which happened here in England) and settlement date (after the trade has been executed) in *Petroleos,* 495 F. Supp. 3d at 284.

**German SOL**. The R&R's German SOL rulings are deeply flawed:

*Decides disputed issues of fact*. What Commerzbank knew, when it knew it, and whether it was grossly negligent in not knowing facts are hotly disputed issues of fact. For example, consider the issue of defective mortgage files. There is no evidence that Commerzbank knew that a single loan in any trust had a defective mortgage file. To the extent Deutsche Bank points to some generic news article not mentioning any trust as evidence of Commerzbank's knowledge, that is both wildly insufficient and a disputed issue of fact. The R&R recommends that Judge Failla decide such disputed issues of fact. We submit that those issues are for the jury to decide.

*Depends on "unity of damages"*.  The R&R's lynchpin is its application of "unity of damages" instead of the German Supreme Court cases holding that the limitations period must be separately calculated for each separate breach. R&R at 50-51. The bizarre practical result of this ruling is that the limitations period for post-2011 breaches starts before any such breach has occurred. The theory of "unity of damages" is limited to consequential damages and is not a "catchall" for separate breaches even of a "repeating character." ECF 279 at n.1. Judge Netburn ignores German Supreme Court decisions because they do not involve "inaction." R&R at 51. This is flatly wrong. For example, BGH Judgement of 11/9/07 involves claims for failing to make disclosures, *see* ECF 264-1 ¶ 17, and BGH Judgement of 4/28/15 entails applying separate limitations periods notwithstanding the "uniformity of the omission contrary to contract," *see* ECF 264-3, ¶ 52. The German Supreme Court explains clearly: "Each violation of obligation has rather to be treated independently with regard to the statute of limitation . . . . The separate examination with regard to the statute of limitation . . . does not presuppose that each of these violations of obligation has had independent or additional consequential damages." *See* ECF 264-2 at ¶ 9.

*Ignores requirement for expectation of success at trial in <u>Germany</u>*. The R&R recognizes that defendant has the burden to show that plaintiff has "obtain[ed] knowledge of the *facts*

necessary to commence an action *in Germany* with an expectation of success." R&R at 52 (emphasis added). The few general facts, largely from media reports, that the R&R finds Commerzbank knew clearly did not provide Commerzbank an expectation of success at trial in Germany given that Germany has no pretrial discovery and pleadings must include all evidence to be offered in the case. ECF 190 at 12-14; *see also*, Harms and Gerardy, *Germany*, GLOBAL ARBITRATION REVIEW (June 7, 2021), https://globalarbitrationreview.com/insight/know-how/litigation/report/germany ("German law follows stringent pleading standards. Notice pleading is not sufficient. A statement of claim has to provide all the facts supporting the relief requested and the evidence relied on by the plaintiff on an allegation-by-allegation basis.").

*Ignores gross negligence standard.* While the R&R states that defendant must show that plaintiffs "deliberately shut their eyes to a practically obvious means of gaining knowledge that is readily available to them, and which would not incur considerable effort." R&R at 52, it never analyzes Commerzbank's actions against that high standard. At a minimum, Commerzbank would need to know specific breaching loans for which Deutsch Bank failed to enforce remedies to have any chance of success in a German trial. After all, Deutsche Bank contends that Commerzbank cannot prove its claims even with the mountain of evidence it obtained in discovery and submitted to this Court. In any event, gross negligence is an issue of fact.

**New York SOL**. The R&R includes two incorrect rulings regarding the New York SOL:

- The R&R's recommendation that the court find post-Event of Default ("EOD") claims untimely if the trustee gave notice of the EOD more than six years prior to filing ignores the continuing nature of the trustees' post-EOD duties. The PSAs provide that when an EOD "has occurred and remains uncured" the trustee is required to exercise all of its "rights and powers" using "the same degree of care and skill in their exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs." ECF 159 at 14 (internal quotations omitted). By its terms, this is a continuing duty that is breached on each date that the trustee failed to exercise rights and remedies in a prudent manner. ECF 190 at 20-21; *see also Guilbert v. Gardner*, 480 F.3d 140, 150 (2d Cir. 2007).

- The R&R concludes that a claim against a trustee for failing to enforce repurchase obligation accrues on the same date that the *seller* became obligated to repurchase loans. R&R at 43-44. This conflation of accrual dates is incorrect because the mere fact that the seller is obligated to repurchase does not mean that the trustee breached its duties to take actions to enforce the obligations. Whether to enforce, how to enforce, and when to do so depends upon the specific facts and circumstances. ECF 190 at 21-23, 55-57. The R&R's characterization of claims as being based on "exception reports," R&R at 42, does not apply to Commerzbank's claims here: Deutsche Bank breached its duties to enforce repurchase of loans with defective mortgage files much later in time, including in 2010 and 2011 when Deutsche Bank discovered such loans, sent notices to the responsible parties, and failed to enforce remedies. ECF 190 at 57.

Respectfully submitted,

*/s/ Ryan A. Kane*
*Counsel for Commerzbank AG*

cc: Counsel of Record